# EXHIBIT

# 1

Wexford Special Situations 1997, L.P.
c/o Wexford Capital LLC
411 Putnam Avenue
Greenwich, CT 06830

February 12, 2007

**BY CERTIFIED MAIL**
Internal Revenue Service Center
Andover, MA 05501-0011

**BY CERTIFIED MAIL**
Internal Revenue Service Center
Ogden, UT 84201-0011

**BY CERTIFIED MAIL**
Internal Revenue Service Center
Holtsville, NY 00501-0011

Re: Certification of Selection of Successor Tax Matters Partner for Imprimis Investors LLC (EIN 06-1486378) for the Taxable Year 2000 and All Tax Years Thereafter

To the IRS Service Centers:

Pursuant to Treasury Regulation § 301.6231(a)(7)-1(d), this is to certify to the Internal Revenue Service that another partner of Imprimis Investors LLC has been selected as the Tax Matters Partner for the taxable year 2000 and all tax years thereafter.

Just prior to the selection of the successor, Wexford Special Situations 1997, LP was the Tax Matters Partner of Imprimis Investors LLC. By this letter, Wexford Special Situations 1997, LP certifies to the Internal Revenue Service that Wexford Special Situations 1997 Institutional, LP has been designated as the Tax Matters Partner of Imprimis Investors LLC for the taxable year 2000 and all tax years thereafter.

In accordance with Treasury Regulation § 301.6231(a)(7)-1(d), the following information is certified by Wexford Special Situations 1997, LP:

Partnership Name: - Imprimis Investors LLC (EIN 06-1486378)

Partner Filing the Statement: - Wexford Special Situations 1997, LP
(EIN: 06-1476147)

EXHIBIT
1

Successor Tax Matters Partner: - Wexford Special Situations Institutional 1997, LP
address: c/o Wexford Capital LLC
411 Putnam Avenue
Greenwich, CT 06830
tax id: 06-1483925

Taxable Years to Which Designation Relates: 2000 and all tax years thereafter

In accordance with Treasury Regulation § 301.6231(a)(7)-1(d)(3), Wexford Special Situations 1997, LP declares that it has been properly designated as the Tax Matters Partner of the partnership for the partnership taxable year 2000, and all tax years thereafter, and that this designation was in effect immediately before the filing of this statement.

In accordance with Treasury Regulation § 301.6231(a)(7)-1(d)(4), Wexford Special Situations 1997, LP certifies that Wexford Special Situations Institutional 1997, LP has been selected as the Tax Matters Partner of Imprimis Investors LLC for the taxable year 2000 and all tax years thereafter in accordance with the procedures of Imprimis Investors LLC for making that selection.

Certified:

Wexford Special Situations 1997, LP

By: [signature] Date: 2/12/07

Jay Maymudes
Vice President of Wexford 97
Advisors LLC, the General Partner
of Wexford Special Situations 1997,
LP

cc: **BY CERTIFIED AND REGISTERED MAIL**
Mel Rosenbach
Appeals Officer
Internal Revenue Service Appeals Office
290 Broadway – 11th Floor
New York, NY 10007

US Postal Service
**Receipt for Certified Mail**
No Insurance Coverage Provided
Do Not Use for International Mail

7106 4575 1292 1239 8138

Postage $
Certified Fee
ANDOVER MA 05501
Return Receipt Fee (Endorsement Required)
Restricted Delivery Fee (Endorsement Required)
$0.37
$2.40
0113 Postmark Here
21

2. Article Number

7106 4575 1292 1239 8138

3. Service Type CERTIFIED MAIL

Restricted Delivery? (Extra Fee) [ ] Yes

1. Article Addressed to:

Internal Revenue Service Center
Andover, MA 05501-0013

**COMPLETE THIS SECTION ON DELIVERY**

A. Received by (Please Print Clearly)
B. Date of Delivery
C. Signature
FEB 21 2007
X
[ ] Agent
[ ] Addressee
D. Is delivery address different from item 1? [ ] Yes
If YES, enter delivery address below: [ ] No

RECEIVED IRS
ANDOVER / NORTH READING, MA
01820

PS Form 3811, June 2000 Domestic Return Receipt

US Postal Service
**Receipt for Certified Mail**
No Insurance Coverage Provided

7106 4575 1292 1239 8145

Postage $
Certified Fee
OGDEN UT 84201
Return Receipt Fee (Endorsement Required)
Restricted Delivery Fee (Endorsement Required)
$0.39
$2.40
0113 Postmark Here
21

2. Article Number

7106 4575 1292 1239 8145

3. Service Type CERTIFIED MAIL

Restricted Delivery? (Extra Fee) [ ] Yes

1. Article Addressed to:

Internal Revenue Service
Ogden, UT 84201-0013

**COMPLETE THIS SECTION ON DELIVERY**

A. Received by (Please Print Clearly)
B. Date of Delivery
C. Signature
X FEB 26 2007
[ ] Agent
[ ] Addressee
D. Is delivery address different from item 1? [ ] Yes
If YES, enter delivery address below: [ ] No

IRS - OSC
RECEIVED
OGDEN, UT 84201

PS Form 3811, June 2000 Domestic Return Receipt

US Postal Service
**Receipt for Certified Mail**
No Insurance Coverage

Postage $
Certified Fee
Return Receipt Fee (Endorsement Required)
Restricted Delivery Fee (Endorsement Required)
Postmark Here

Article Number

7106 4575 1292 1239 6152

Service Type CERTIFIED MAIL

Restricted Delivery? *(Extra Fee)* Yes

Article Addressed to:

Internal Revenue Service Center
Holtsville, NY 00501

COMPLETE THIS SECTION ON DELIVERY

A. Received by (Please Print Clearly)
B. Date of Delivery
C. Signature
x RECEIVED IRS MAIL
FEB 21 2007
Agent
Addressee
D. Is delivery address different from item 1? Yes
If YES, enter delivery address below: No

S Form 3811, June 2000 Domestic Return Receipt

US Postal Service
**Receipt for Certified**

Postage $
Certified Fee
Return Receipt Fee (Endorsement Required)
Postmark

CAPITAL STATION WASHINGTON DC FEB 2007

Article Number

7106 4575 1292 1239 6169

1. Service Type CERTIFIED MAIL

Restricted Delivery? *(Extra Fee)* Yes

Article Addressed to:

COMPLETE THIS SECTION ON DELIVERY

A. Received by (Please Print Clearly)
B. Date of Delivery
C. Signature
x LB 2-22-07
Agent
Addressee
D. Is delivery address different from item 1? Yes
If YES, enter delivery address below: No

S Form 3811, June 2000 Domestic Return Receipt

# EXHIBIT

# 2

**Internal Revenue Service**
Appeals Office
290 Broadway -11th Floor
New York, NY 10007

**Department of the Treasury**

**Person to Contact:**
Mel Rosenbach
Employee ID Number:
Tel: 212-298-2466
Fax: 212-298-2410
**Refer Reply to:**
AP:FE:MAN:MJR
**Name of Partnership:**
Imprimis Investors, LLC
**Partnership Identifying Number:**
06-1486378
**Date FPAA Mailed to Tax Matters Partner:**

**Taxpayer Identification Number:**
06-1486378
**Tax Year Ended:**
12/2000

Date: JAN 02 2007

TAX MATTERS PARTNER
IMPRIMIS INVESTORS LLC
C/O WEXFORD CAPITAL LLC
411 WEST PUTNAM AVENUE
GREENWICH CT 06830

**Certified Mail**

Dear Tax Matters Partner:

**NOTICE OF FINAL PARTNERSHIP ADMINISTRATIVE ADJUSTMENT**

The law requires us to send a Notice of Final Partnership Administrative Adjustment (FPAA) to the partnership named above, for the tax year shown above, and to each partner who is entitled to receive this notice.

We are proposing adjustments to the partnership items of the partnership and tax year shown above. We will send the examination report outlining these adjustments to the Tax Matters Partner (TMP) of the partnership. (The TMP is the partner designated by the partnership to deal with the IRS.) He/she is also authorized to act for the partners who are not entitled to receive this notice. Any partner who wants a copy of the examination report should request it from the TMP. If the TMP is unable to provide you with a copy of the examination report, please contact the person named in the heading of this letter.

Taxable Years Ending Before August 6, 1997:

The adjustments to the partnership items reported on the partnership tax return may cause an increase or decrease to the tax liability on your individual return. Form 870-P, *Agreement to Assessment and Collection of Deficiency in Tax for Partnership Adjustments*, is a summary of the proposed adjustments to the partnership return. You may compute your share of the proposed adjustments by multiplying each adjusted partnership item by your percentage interest for that partnership item.

EXHIBIT
2

Taxable Years Ending After August 5, 1997:

The adjustments to the partnership items reported on the partnership tax return may cause an increase or decrease in the tax liability on your individual return. The adjustments may include partnership level determinations regarding penalties and additions to tax that relate to adjustments to partnership items. Form 870-PT, *Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax and Additional Amounts*, is a summary of the proposed adjustments to the partnership return. You can compute your share of the proposed adjustments by multiplying each adjusted partnership item by your percentage interest for that partnership item.

You have three options available to you.

1. **If you agree with the adjustments:**

Sign and return the enclosed Form 870-P/Form 870-PT. When you sign Form 870-P/Form 870-PT, you are agreeing to pay any additional tax and interest resulting from the adjustments to the partnership return. For tax years ending after August 5, 1997, you are also agreeing to any partnership level determination as to penalties, additions to tax and additional amounts that relate to adjustments to partnership items, if any. In addition, you are waiving your rights to participate in any administrative or judicial proceeding affecting partnership items and in partnership level determinations as to penalties, additions to tax and additional amounts that relate to adjustments to partnership items for the tax year in question. This is a binding settlement only if you sign and return Form 870-P/Form 870-PT and we sign on behalf of the Commissioner of Internal Revenue Service. When we sign the agreement form, the one-year extension of the period of limitations on assessments will begin under Internal Revenue Code section 6229(f). Once the agreement is signed by both parties, you may not file a claim to change the items in question or claim a refund/credit based on a readjustment.

Note: If you are the TMP of the partnership, see the section of this letter entitled, *"For the Tax Matters Partner of the Partnership"*.

2. **If you do not agree with the adjustments:**

If you are the TMP of the partnership and want to contest the adjustments in court, you must file a petition within 90 days from the date of this letter. During this 90-day period, no other partner may file a petition for judicial review. You can file your petition for readjustment of partnership items with:

1. the United States Tax Court;
2. the United States Court of Federal Claims; or
3. the District Court of the United States, in the district of the partnership's principal place of business.

A petition filed by the TMP precludes all other actions. If the TMP doesn't file a petition by the 90th day from the date the FPAA was mailed, any partner or any 5 percent group entitled to receive this notice may petition one of these courts. A "5 percent group" includes any group of partners who together have an interest of five percent or more in profits of the partnership. The petition must be filed after the 90th day, but on or before the 150th day from the date the FPAA was mailed to the TMP. If more that one petition is filed in Tax Court, the first petition filed will go forward. All other petitions (even those filed earlier in one of the other courts) will be dismissed. If no one files a petition in Tax Court, the first petition filed in one of the other courts will go forward and subsequent petitions will be dismissed.

Petitions filed with the United States Tax Court must be mailed to:

**United States Tax Court**
**400 Second Street, N.W.**
**Washington, D.C. 20217**

Attach a copy of this letter to the petition. The time in which you must file a petition with the court is fixed by law and the court cannot consider your case if your petition is filed late. If this letter is addressed to both a husband and wife, and both want to petition the Tax Court, both must sign the petition, or each must file a separate signed petition.

When a partner (including each member of a 5 percent group that files a petition) files a petition in either the appropriate District Court or the Court of Federal Claims, the partner filing the petition must deposit the amount that the partner's tax liability would be increased if the treatment of the partnership items on the partner's return were made consistent with the treatment of partnership items under the FPAA. If you reported the partnership items the way the partnership reported them on its return, you can generally determine the amount to deposit by taking your pro rata share of the partnership adjustments into account in recomputing your tax. You must deposit the appropriate amount with the IRS on or before the day you file your petition.

3. **If you do nothing:**

If a petition for readjustment is not filed in any of the courts listed in this letter, the FPAA becomes final, and we will bill you for any additional tax plus interest that you may owe under the FPAA. You will not be permitted to contest the treatment of the partnership items of the partnership under the FPAA in any refund claim or suit. The law allows the Service to bill you after 150 days from the mailing date of the FPAA to the TMP.

However, if a petition is filed in the Tax Court, and the Tax Court upholds the adjustments in whole or in part, we will not bill you until the Tax Court decision is final.

You may wish to contact the TMP of the partnership or your tax advisor to discuss this matter.

If you have any questions please write to the person whose name and address are shown in the heading of this letter. If you write, attach a copy of this letter to help identify your account. Also, include your telephone number and the most convenient time for us to call you in case we need additional information.

If you prefer, you may call the IRS contact person at the telephone number shown in the heading of this letter. If this number is outside your local calling area, there will be a long distance charge to you.

Thank you for your cooperation.

Sincerely,
Mark W. Everson
Commissioner
By

Frank Longo
Appeals Team Manager

cc: Lawrence M. Hill

## FOR THE TAX MATTERS PARTNER OF THE PARTNERSHIP

If you are the Tax Matters Partner (TMP), you are entitled to make an agreement to bind non-notice partners to the treatment of the partnership items as shown on the enclosed schedule of adjustments. You must add the following statement above the signature blocks on the Form 870-P or Form 870-PT:

"The undersigned Tax Matters Partner is signing this offer on behalf of himself (herself) and all other partners whom he (she) has the authority to bind; a final agreement resulting from the co-signature of the Commissioner of Internal Revenue will be binding on all such other partners."

As the TMP, you may submit a petition, as described above for the partnership on behalf of all partners.

If you have any questions, you can call the IRS contact person at the telephone number shown in the heading of this letter. Thank you for your cooperation.

| Form **870-PT** (Rev. 6/2006) | Department of the Treasury - Internal Revenue Service **Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts** | IN REPLY REFER TO: AP:FE:MAN:GCS |
|---|---|---|

| **Taxpayer(s) name(s), address, and ZIP code:** | **Name of Partnership:** | **Tax Year(s) Ended:** |
|---|---|---|
| TAX MATTERS PARTNER<br>IMPRIMIS INVESTORS LLC<br>C/0 WEXFORD MANAGEMENT LLC<br>411 WEST PUTNAM AVENUE<br>GREENWICH CT 06830 | IMPRIMIS INVESTORS LLC<br><br>**Taxpayer Identifying Number:**<br>**06-1486378** | 12/2000 |
| **Taxpayer Identifying Number:**<br>06-1486378 | **Name of Tax Matters Partner:** | |

**Offer of Agreement to Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts**

**&**

**Waiver of Restrictions on Assessment for Partnership Items, Penalties, Additions to Tax, and Additional Amounts**

Under sections 6224(c) and 7121 of the Internal Revenue Code (IRC) of 1986, the Commissioner of the Internal Revenue Service and the undersigned taxpayer(s) agree to the determination of partnership items and partnership level determinations as to penalties, additions to tax, and additional amounts that relate to adjustments to partnership items as shown on the attached schedule of adjustments.

The undersigned taxpayer(s), in accordance with IRC sections 6224(b) and 6213(d), also waive the restrictions provided by IRC sections 6225(a) and 6213(a) and consent to the assessment and collection of any deficiency attributable to partnership items, penalties, additions to tax, and additional amounts that relate to partnership items, as determined in this agreement, plus any interest provided by law.

This agreement is conditional and will not become effective or final until this agreement form is returned to the Commissioner and is signed on his or her behalf. The one-year extension of the period of limitations on assessments under IRC section 6229(f) will not begin to run until the date the Commissioner's representative signs this form on the Commissioner's behalf. If this is a partial agreement, the period of limitations for assessing any tax attributable to the settled items shall be determined as if this agreement had not been entered into.

If this part of this agreement form is signed for the Commissioner, the treatment of partnership items and partnership level determinations as to penalties, additions to tax and additional amounts that relate to adjustments to partnership items under this agreement will not be reopened in absence of fraud, malfeasance, or misrepresentation of fact. In addition, no claim for an adjustment of partnership items, refund or credit based on any change in the treatment of partnership items or partnership level determinations as to penalties, additions to tax, and additional amounts may be filed or prosecuted.

| Signature of Taxpayer | Date Signed | Phone Number |
|---|---|---|
| Signature of Taxpayer | Date Signed | Phone Number |
| By (Signature and title) | Date Signed | Phone Number |

| **For Internal Revenue Use Only** | Date accepted for Commissioner: | Signature: |
|---|---|---|
| | Office<br>New York | Title |

Catalog Number 57315A (See instructions for Signing Agreement) Form **870-PT**-c (Rev. 6/2006)

# INSTRUCTIONS FOR SIGNING FORM 870-PT

1. If a JOINT RETURN OF A HUSBAND AND WIFE was filed and both spouses intend to agree, both spouses should sign Form 870-PT. One spouse may sign as agent for the other if acting under a power of attorney, which, if not previously filed, must accompany this form. The IRS may accept the signature of only one spouse at its discretion. However, the agreement will only be binding on the signing spouse.

2. If the taxpayer is a corporation, the waiver should be signed with the corporate name followed by the signature and title of the officer authorized to sign Form 870-PT.

3. Your attorney or agent may sign for you if this action is specifically authorized by a power of attorney, which if not previously filed, must accompany this form.

4. If this offer is signed by a trust, the agreement must be signed with the trust name, followed by the signature and title of the person authorized to sign on behalf of the trust.

5. If this offer is with respect to the tax liability for the consolidated return year, the agreement should be signed in the name of the common parent of the consolidated group for the consolidated return year. The common parent corporation signs the agreement in its own name. The signature and title of a current officer of the common parent corporation, who is authorized to bind the corporation, should be displayed in the signature block.

6. If the Tax Matters Partner signs this offer, please include the title with the signature.

7. If this offer is signed by a Tax Matters Partner that is a subsidiary corporation, then an officer authorized to sign this agreement for the year(s) indicated on the form must sign for the parent corporation. An authorized officer for the subsidiary corporation should also sign if the Tax Matters Partner is binding non-notice partners under the agreement. See Treas. Reg. 1.1502-77(a)(3)(v).

Department of the Treasury - Internal Revenue Service

## Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax and Additional Amounts

### SCHEDULE OF ADJUSTMENTS

| Name of Partnership: IMPRIMIS INVESTORS LLC Taxpayer Identifying Number: 06-1486378 | Tax Year(s) Ended | | |
|---|---|---|---|
| | 12/31/2000 | | |
| Detail of Adjustments to Ordinary Income | | | |
| (1) Portfolio Income: Interest Income | | | |
| Per Return | $1,882,005.00 | | |
| As Corrected | $1,882,005.00 | | |
| Adjustment | $0.00 | | |
| (2) Portfolio Income: Dividends | | | |
| Per Return | $21,678.00 | | |
| As Corrected | $24,678.00 | | |
| Adjustment | $0.00 | | |
| Total Adjustments to Ordinary Income | None | | |
| Other Adjustments | | | |
| A. Net Short Term Capital Gain | | | |
| (1) Adjustment | $0.00 | | |
| (2) As Reported | $99,821,405.00 | | |
| (3) Corrected | $99,821,405.00 | | |
| B. Net Long Term Capital Gain | | | |
| (1) Adjustment | $0.00 | | |
| (2) As Reported | $73,444,348.00 | | |
| (3) Corrected | $73,488,348.00 | | |

Remarks:

After consideration of the above items and those listed on the following page, we have accepted the partnership return as filed. No petition needs to be filed with the court unless you disagree that the return as filed is correct.

# Form 870-PT, Other Adjustments (Continued)

| NAME OF PARTNERSHIP<br>IMPRIMIS INVESTORS LLC<br>TAXPAYER IDENTIFYING NUMBER 06-1486378 | TAX YEAR(S) ENDED<br>12/31/2000 | | |
|---|---|---|---|
| C. Other Portfolio Income | | | |
| (1) ADJUSTMENT | $0.00 | | |
| (2) AS REPORTED | $8,607.00 | | |
| (3) CORRECTED | $8,607.00 | | |
| D. Deductions Related To Portfolio Income: Investment Int. Exp. | | | |
| (1) ADJUSTMENT | $0.00 | > | |
| (2) AS REPORTED | $1,777,995.00 | | |
| (3) CORRECTED | $1,777,995.00 | | |
| E. Other Deductions | | | |
| (1) ADJUSTMENT | $0.00 | | |
| (2) AS REPORTED | $7,593.00 | | |
| (3) CORRECTED | $7,593.00 | | |
| F. Interest Expense on Investment Debts | | | |
| (1) ADJUSTMENT | $0.00 | | |
| (2) AS REPORTED | $19,735.00 | | |
| (3) CORRECTED | $19,735.00 | | |
| G. Investment Income Included in Portfolio Income | | | |
| (1) ADJUSTMENT | $0.00 | | |
| (2) AS REPORTED | $1,912,290.00 | | |
| (3) CORRECTED | $1,912,290.00 | | |
| H. Foreign Gross Income Sourced at Partnership Level | | | |
| (1) ADJUSTMENT | $0.00 | | |
| (2) AS REPORTED | $16,916.00 | | |
| (3) CORRECTED | $16,916.00 | | |
| I. Distribution of Money (Cash and Marketable Securities) | | | |
| (1) ADJUSTMENT | $0.00 | | |
| (2) AS REPORTED | $145,822,162.00 | | |
| (3) CORRECTED | $145,822,162.00 | | |

Explanation of Adjustments

| NAME OF TAXPAYER | TAX IDENTIFICATION NUMBER | YEAR/PERIOD ENDED |
|---|---|---|
| Imprimis Investors LLC | 06-1486378 | December 31,2000 |

**INCONSISTENT POSITION A**

The second tier partnership, Insight Venture Associates II LLC, filed its original Form 1065 partnership return for year ending December 31, 2000. As part of this return, the taxpayer filed Form 8082 claiming $36,623,088 of short-term capital gain issued from Imprimis Investors LLC per K-1 was incorrect. The taxpayer reallocated this amount as follows:

$18,942,926 short-term capital gain
$17,680,162 long-term capital gain
-------------
$36,623,088 Total Gain

Per Inconsistent Position A, the above revised allocation per Form 8082 is disallowed in full. The original issued K-1 issued by Imprimis Investors LLC to Insight Venture Associates II LLC for year ending December 31, 2000 is deemed to be correct. Short-Term Capital Gain of $36,623,088 is the proper amount of short-term capital gain to be reported by Insight Investors II LLC for year ending December 31, 2000.

**INCONSISTENT POSITION B**

The first tier partnership, Imprimis Investors LLC, incorrectly allocated short-term capital gain to Insight Venture Associates II, LLC per K-1 issued for year ending December 31, 2000. The amount of short-term capital gain per K-1 was $36,623,088. The allocation was readjusted per audit examination.

The above short-term capital gain was reallocated among the three relevant partners, Wexford Special Situations 1997 L.P., Wexford Special Situations 1997 Institutional and Insight Venture Associates II LLC. as computed below:

| | | |
|---|---|---|
| Net Short Term Capital Gain | $99,799,993 | .57606 |
| Net Long Term Capital Gain | $73,444,348 | .42394 |
| | --------------- | ------- |
| Total Gain | $173,244,341 | 100% |

Insight Venture Associates II LLC, Net Short-Term Capital Gain per K-1 as originally filed by first tier Imprimis Investors LLC:

| | | |
|---|---|---|
| | $36,623,088 | |
| $36,623,088 x .57606 | $21,097,096 | Corrected Net Short Term Capital Gain |
| | --------------- | |
| | $15,525,992 | Adjustment to be reallocated to partners (See Schedule)<br>Wexford Special Situations 1997 L.P.<br>Wexford Special Situations 1997 Institutional |

Explanation of Adjustments

| NAME OF TAXPAYER | TAX IDENTIFICATION NUMBER | YEAR/PERIOD ENDED |
|---|---|---|
| Imprimis Investors LLC | 06-1486378 | December 31,2000 |

**Reallocation of Short Term Gain of $15,525,992:**

Per K-1 Imprimis Investors LLC original return: ( Net Short Term Capital Gain )

| | | |
|---|---|---|
| (A) Wexford Special Situations 1997 L.P. | $49,384,376 | .7817 |
| (B) Wexford Special Situations 1997 Institutional | $13,792,529 | .2183 |
| | -------------- | ------- |
| | $63,176,905 | 100% |

Per K-1 Imprimis Investors LLC original return: ( Net Long Term Capital Gain )

| | | |
|---|---|---|
| (A) Wexford Special Situations 1997 L.P. | $57,410,272 | .7817 |
| (B) Wexford Special Situations 1997 Institutio | $16,034,076 | .2183 |
| | -------------- | -------- |
| | $73,444,348 | 100% |

Adjustment To Imprimis Investors LLC:

| | |
|---|---|
| (A) $15,525,992 x .7817 = | $12,136,668 |
| (B) $15,525,992 x .2183 = | $ 3,,389,324 |
| | --------------- |
| | $15,525,992 |

**Conclusion: ( Re: INCONSISTENT POSITION B )**

There is an increase in Net Short Term Capital Gain to (A) Wexford Special Situations 1997 L.P. in the amount of $12,136,668 and a corresponding decrease in Net Long Term Capital Gain of $12,136,668.

There is an increase in Net Short Term Capital Gain to (B) Wexford Special Situations 1997 Institutional In the amount $3,389,324 and a corresponding decrease in Net Long Term Capital Gain of $3,389,324.

Per Form 8082, Insight Venture Associates II LLC picked up $18,942,926 as net short term capital gain. Per Inconsistent Position B, the correct amount of net short term capital gain recomputed per audit examination was $21,097,096 resulting in an increase adjustment to net short term capital gain of $2,154,170 to Insight Venture Associates II LLC and a corresponding decrease in net long term capital gain of $2,154,170.

Explanation of Adjustments

nprimis Investors, LLC

December 31, 2000

Schedule of Adjustments for Inconsistent Positions

| artner | EIN | Short-Term Gain | Long-Term Gain | Totals |
|---|---|---|---|---|
| Wexford Special Situations 1997 LP | 06-1476147 | 61,521,044 | 45,273,604 | 106,794,648 |
| Wexford Special Situations 1997 Institutional | 06-1483925 | 17,181,853 | 12,644,752 | 29,826,605 |
| /exford Spectrum Investors LLC | 06-1486385 | 21,412 | 0 | 21,412 |
| nsight Venture Associates II, LLC | 06-1491774 | 36,623,088 | 0 | 36,623,088 |
| Wexford Partners Investment Company | 06-1574406 | 0 | 0 | 0 |
| s Coorrected | | 115,347,397 | 57,918,356 | 173,265,753 |
| er Return | | 99,821,405 | 73,444,348 | 173,265,753 |
| Adjustment | | 15,525,992 | -15,525,992 | 0 |

# EXHIBIT

# 3

FILE COPY

Caplin&Drysdale
ATTORNEYS

Caplin & Drysdale, Chartered
One Thomas Circle, NW, Suite 1100
Washington, DC 20005
202-862-5000 202-429-3301 Fax
www.caplindrysdale.com

202-862-7834 Direct
cmr@capdale.com

March 21, 2007

*By Federal Express Overnight Mail*
Ogden Service Center
Internal Revenue Service
Mail Stop 4550
1973 North Rulon White Blvd.
Ogden, UT 84404-0049
Attn: Ms. Jackie Martinez

Re: Wexford Special Situations 1997 Institutional, LP (EIN: 06-1483925), the Tax Matters Partner for Imprimis Investors LLC (EIN: 06-1486367)

Dear Ms. Martinez:

Enclosed is a copy of an executed Form 2848 (Power of Attorney and Declaration of Representative) for Wexford Special Situations 1997 Institutional, LP (EIN: 06-1483925), the Tax Matters Partner ("TMP") for Imprimis Investors LLC (EIN: 06-1486367). Also enclosed is a copy of an executed Form 2848 for Imprimis Investors LLC. A Notice of Final Partnership Administrative Adjustment ("FPAA") was issued with respect to Imprimis Investors LLC by the IRS Appeals Office in New York, NY on January 2, 2007.

As we discussed by telephone, enclosed is check number 024576 in the amount of $6,778.65. Please apply this amount to the "open audit" of the TMP, Wexford Special Situations 1997 Institutional, LP (EIN: 06-1483925). Please date stamp the copy of the attached check and sign a copy of this letter and return both of them to me in the enclosed self-addressed, pre-paid, federal express envelope.

Pursuant to Section 6226(e) of the Internal Revenue Code (the "Code") and Treasury Regulation § 301.6226(e)-1(a)(1), this amount is deposited with respect to income tax allegedly due under the FPAA for Wexford Special Situations 1997 Institutional, LP, the TMP for Imprimis Investors LLC.[1] This payment is remitted solely in satisfaction of the jurisdictional

[1] The deposit amount was computed as follows. The FPAA re-allocates an additional $3,389,324 of short term capital gain to the TMP and simultaneously reduces $3,389,324 of long term capital gain to the TMP. Based on a

EXHIBIT
3

deposit requirement under Section 6226(e) of the Code; the taxpayer does not concede liability, and nothing contained herein should be construed as a concession of any tax, penalty, or interest liability. Rather, as provided in Section 6226(e)(1) of the Code, this constitutes the taxpayer's "good faith attempt to satisfy" the jurisdictional deposit requirement. As further provided in Section 6226(e)(1) of the Code, please contact me immediately if you contend that there is a "shortfall in the amount required to be deposited" so that the taxpayer can make a "timely correct[ion]."

If you have any questions, please call me at 202-862-7834.

Very truly yours,

Charles M. Ruchelman

enclosures:
1. Deposit Check
2. Copies of Forms 2848
3. Copy of This Letter to Return "Acknowledged"
4. Copy of the Deposit Check to Date Stamp and Return
3. Return Self-Addressed, Pre-Paid Fed Ex Envelope

**ACKNOWLEDGED AND RECEIVED:**

By: ______________________________

Printed Name: ______________________

Date: _____________________________

INTERNAL REVENUE SERVICE

---

twenty percent differential between the maximum short term and long term capital gain rates in 2000, *see generally* Section 1(h)(1) of the Code, an approximate total tax effect of $677,865 (20% of $3,389,324) is produced. The TMP, Wexford Special Situations 1997 Institutional, LP, is itself a partnership, and only one partner of the TMP, a limited liability company, has taxable members. (The other members of the TMP are non-taxable entities, either IRA accounts or Section 501(c)(3) organizations.) That limited liability company has a 1% interest in the TMP, and therefore the tax deposit from the only taxable member of the TMP equals one percent of $677,865, or approximately $6,778.65. See Treas. Reg. § 301.6226(e)-1(a)(1) (in tiered partnership situation, required deposit is the amount by which ultimate taxable partners' tax would be increased).

| Inv Date | Inv. Amt | 3/21/2007 Pay Amt. |
|---|---|---|
| 3/21/2007 | 6,778.65 | 6,778.65 |

Wexford Special Situation 1997 Institutional, LP
EIN: 06-1483925
Tax Year Ended: 2000

Total: $6,778.65

WARNING: SECURITY SCREEN ON FRONT AND BACK. MICROPRINTING FRONT AND BACK. MAGNIFY TO VERIFY ORIGINAL DOCUMENT

024576

**CAPLIN & DRYSDALE**
CHARTERED
OPERATING ACCOUNT
ONE THOMAS CIRCLE, N.W.
WASHINGTON, D.C. 20005
(202) 862-5000

BANK OF AMERICA
WASHINGTON, D.C.
15-120/540

Check: NO. 00024576

03/21/2007 DATE

$6,778.65 AMOUNT

VOID

**SIX THOUSAND SEVEN HUNDRED SEVENTY-EIGHT AND 65 / 100

PAY TO THE ORDER OF Treasury of the United States

Wexford Special Situation 1997 Institutional, LP
EIN: 06-1483925
Tax Year Ended: 2000

CAPLIN & DRYSDALE

Deborah J. Block

⑈024576⑈ ⑆054001204⑆ 001920814809⑈

Form **2848** (Rev. March 2004) Department of the Treasury Internal Revenue Service

# Power of Attorney and Declaration of Representative

▶ Type or print. ▶ See the separate instructions.

OMB No. 1545-0150

For IRS Use Only
Received by:
Name
Telephone
Function
Date / /

**Part I** Power of Attorney

Caution: *Form 2848 will not be honored for any purpose other than representation before the IRS.*

1 Taxpayer information. Taxpayer(s) must sign and date this form on page 2, line 9.

| Taxpayer name(s) and address | Social security number(s) | Employer identification number |
|---|---|---|
| Wexford Special Situations 1997 Institutional, LP<br>c/o: Wexford Capital LLC<br>411 West Putnam Avenue<br>Greenwich, CT 06830 | | 06 1483925 |
| | Daytime telephone number<br>( 203 ) 862-7000 | Plan number (if applicable) |

hereby appoint(s) the following representative(s) as attorney(s)-in-fact:

2 Representative(s) must sign and date this form on page 2, Part II.

| Name and address | |
|---|---|
| Charles M. Ruchelman, Caplin & Drysdale, Chartered<br>One Thomas Circle, NW, Suite 1100<br>Washington, DC 20005 | CAF No. 0303-48587R<br>Telephone No. 202-862-7834<br>Fax No. 202-429-3301<br>Check if new: Address ☐ Telephone No. ☐ Fax No. ☐ |
| Christopher S. Rizek, Caplin & Drysdale, Chartered<br>One Thomas Circle, NW, Suite 1100<br>Washington, DC 20005 | CAF No. 8005-4851R<br>Telephone No. 202-862-8852<br>Fax No. 202-429-3301<br>Check if new: Address ☐ Telephone No. ☐ Fax No. ☐ |
| Brian R. Lynn, Caplin & Drysdale, Chartered<br>One Thomas Circle, NW, Suite 1100<br>Washington, DC 20005 | CAF No. 0100-597553R<br>Telephone No. 202-862-5048<br>Fax No. 202-429-3301<br>Check if new: Address ☐ Telephone No. ☐ Fax No. ☐ |

to represent the taxpayer(s) before the Internal Revenue Service for the following tax matters:

3 Tax matters

| Type of Tax (Income, Employment, Excise, etc.) or Civil Penalty (see the instructions for line 3) | Tax Form Number (1040, 941, 720, etc.) | Year(s) or Period(s) (see the instructions for line 3) |
|---|---|---|
| Income Tax | 1065 | 2000 |
| | | |
| | | |

4 **Specific use not recorded on Centralized Authorization File (CAF).** If the power of attorney is for a specific use not recorded on CAF, check this box. See the instructions for Line 4. **Specific uses not recorded on CAF** . . . . . ▶ ☐

5 **Acts authorized.** The representatives are authorized to receive and inspect confidential tax information and to perform any and all acts that I (we) can perform with respect to the tax matters described on line 3, for example, the authority to sign any agreements, consents, or other documents. The authority does not include the power to receive refund checks (see line 6 below), the power to substitute another representative, the power to sign certain returns, or the power to execute a request for disclosure of tax returns or return information to a third party. See the line 5 instructions for more information.

**Exceptions.** An unenrolled return preparer cannot sign any document for a taxpayer and may only represent taxpayers in limited situations. See **Unenrolled Return Preparer** on page 2 of the instructions. An enrolled actuary may only represent taxpayers to the extent provided in section 10.3(d) of Circular 230. See the line 5 instructions for restrictions on tax matters partners.

List any specific additions or deletions to the acts otherwise authorized in this power of attorney: ..........

6 **Receipt of refund checks.** If you want to authorize a representative named on line 2 to receive, BUT NOT TO ENDORSE OR CASH, refund checks, initial here ________ and list the name of that representative below.

Name of representative to receive refund check(s) ▶

7 **Notices and communications.** Original notices and other written communications will be sent to you and a copy to the first representative listed on line 2.

a If you also want the second representative listed to receive a copy of notices and communications, check this box . . . ▶ ☑

b If you do not want any notices or communications sent to your representative(s), check this box . . . . . . . ▶ ☐

8 **Retention/revocation of prior power(s) of attorney.** The filing of this power of attorney automatically revokes all earlier power(s) of attorney on file with the Internal Revenue Service for the same tax matters and years or periods covered by this document. If you do not want to revoke a prior power of attorney, check here. . . . . . . . . . . . . . . . ▶ ☐

**YOU MUST ATTACH A COPY OF ANY POWER OF ATTORNEY YOU WANT TO REMAIN IN EFFECT.**

9 **Signature of taxpayer(s).** If a tax matter concerns a joint return, both husband and wife must sign if joint representation is requested, otherwise, see the instructions. If signed by a corporate officer, partner, guardian, tax matters partner, executor, receiver, administrator, or trustee on behalf of the taxpayer, I certify that I have the authority to execute this form on behalf of the taxpayer.

▶ **IF NOT SIGNED AND DATED, THIS POWER OF ATTORNEY WILL BE RETURNED.**

| Signature | Date | Title (if applicable) |
|---|---|---|
| [signature] | 3/19/07 | VP, Wexford 97 Advisors LLC |

| Print Name | PIN Number | Print name of taxpayer from line 1 if other than individual |
|---|---|---|
| Jay L. Maymudes | ☐☐☐☐☐ | Wexford Special Situations 1997 Institutional, LP |

| Signature | Date | Title (if applicable) |
|---|---|---|
| | | |

| Print Name | PIN Number |
|---|---|
| | ☐☐☐☐☐ |

**Part II** Declaration of Representative

Caution: *Students with a special order to represent taxpayers in Qualified Low Income Taxpayer Clinics or the Student Tax Clinic Program, see the instructions for Part II.*

Under penalties of perjury, I declare that:

- I am not currently under suspension or disbarment from practice before the Internal Revenue Service;
- I am aware of regulations contained in Treasury Department Circular No. 230 (31 CFR, Part 10), as amended, concerning the practice of attorneys, certified public accountants, enrolled agents, enrolled actuaries, and others;
- I am authorized to represent the taxpayer(s) identified in Part I for the tax matter(s) specified there; and
- I am one of the following:
  - a Attorney—a member in good standing of the bar of the highest court of the jurisdiction shown below.
  - b Certified Public Accountant—duly qualified to practice as a certified public accountant in the jurisdiction shown below.
  - c Enrolled Agent—enrolled as an agent under the requirements of Treasury Department Circular No. 230.
  - d Officer—a bona fide officer of the taxpayer's organization.
  - e Full-Time Employee—a full-time employee of the taxpayer.
  - f Family Member—a member of the taxpayer's immediate family (i.e., spouse, parent, child, brother, or sister).
  - g Enrolled Actuary—enrolled as an actuary by the Joint Board for the Enrollment of Actuaries under 29 U.S.C. 1242 (the authority to practice before the Service is limited by section 10.3(d) of Treasury Department Circular No. 230).
  - h Unenrolled Return Preparer—the authority to practice before the Internal Revenue Service is limited by Treasury Department Circular No. 230, section 10.7(c)(1)(viii). You must have prepared the return in question and the return must be under examination by the IRS. See Unenrolled Return Preparer on page 2 of the instructions.

▶ **IF THIS DECLARATION OF REPRESENTATIVE IS NOT SIGNED AND DATED, THE POWER OF ATTORNEY WILL BE RETURNED.** See the Part II instructions.

| Designation—insert above letter (a–h) | Jurisdiction (state) or identification | Signature | Date |
|---|---|---|---|
| a | DC, NY | [signature] | 3/19/07 |
| a | DC, MD | [signature] | 3/19/07 |
| a | DC, CA | [signature] | 3/19/07 |

Form **2848**
(Rev. March 2004)
Department of the Treasury
Internal Revenue Service

# Power of Attorney and Declaration of Representative

▶ Type or print. ▶ See the separate instructions.

OMB No. 1545-0150
For IRS Use Only
Received by:
Name ______
Telephone ______
Function ______
Date / /

**Part I** Power of Attorney
Caution: *Form 2848 will not be honored for any purpose other than representation before the IRS.*

1 Taxpayer information. Taxpayer(s) must sign and date this form on page 2, line 9.

| Taxpayer name(s) and address | Social security number(s) | Employer identification number |
|---|---|---|
| Imprimis Investors LLC and Wexford Special Situations 1997, LP<br>care of: Wexford Capital LLC<br>411 West Putnam Avenue<br>Greenwich, CT 06830 | | 06 ; 1486378 |
| | Daytime telephone number<br>( 203 ) 862-7000 | Plan number (if applicable) |

hereby appoint(s) the following representative(s) as attorney(s)-in-fact:

2 Representative(s) must sign and date this form on page 2, Part II.

| Name and address | |
|---|---|
| Christopher S. Rizek, Caplin & Drysdale, Chartered,<br>One Thomas Circle, Suite 1100<br>Washington, DC 20005 | CAF No. 8005-4851R<br>Telephone No. 202-862-8852<br>Fax No. 202-429-3301<br>Check if new: Address ☐ Telephone No. ☐ Fax No. ☐ |
| Charles M. Ruchelman, Caplin & Drysdale, Chartered<br>One Thomas Circle, Suite 1100<br>Washington, DC 20005 | CAF No. none<br>Telephone No. 202-862-7834<br>Fax No. 202-429-3301<br>Check if new: Address ☑ Telephone No. ☑ Fax No. ☑ |
| Brian R. Lynn, Caplin & Drysdale, Chartered<br>One Thomas Circle, Suite 1100<br>Washington, DC 20005 | CAF No. 0100-59753R<br>Telephone No. 202-862-5048<br>Fax No. 202-429-3301<br>Check if new: Address ☐ Telephone No. ☐ Fax No. ☐ |

to represent the taxpayer(s) before the Internal Revenue Service for the following tax matters:

3 Tax matters

| Type of Tax (Income, Employment, Excise, etc.) or Civil Penalty (see the instructions for line 3) | Tax Form Number (1040, 941, 720, etc.) | Year(s) or Period(s) (see the instructions for line 3) |
|---|---|---|
| Income Tax | 1065 | 2000 |
| | | |
| | | |

4 **Specific use not recorded on Centralized Authorization File (CAF).** If the power of attorney is for a specific use not recorded on CAF, check this box. See the instructions for **Line 4. Specific uses not recorded on CAF** . . . . . . . . . . ▶ ☐

5 **Acts authorized.** The representatives are authorized to receive and inspect confidential tax information and to perform any and all acts that I (we) can perform with respect to the tax matters described on line 3, for example, the authority to sign any agreements, consents, or other documents. The authority does not include the power to receive refund checks (see line 6 below), the power to substitute another representative, the power to sign certain returns, or the power to execute a request for disclosure of tax returns or return information to a third party. See the line 5 instructions for more information.

**Exceptions.** An unenrolled return preparer cannot sign any document for a taxpayer and may only represent taxpayers in limited situations. See **Unenrolled Return Preparer** on page 2 of the instructions. An enrolled actuary may only represent taxpayers to the extent provided in section 10.3(d) of Circular 230. See the line 5 instructions for restrictions on tax matters partners.

List any specific additions or deletions to the acts otherwise authorized in this power of attorney: ..............................

.............................................................................................................

.............................................................................................................

.............................................................................................................

6 **Receipt of refund checks.** If you want to authorize a representative named on line 2 to receive, **BUT NOT TO ENDORSE OR CASH,** refund checks, initial here ______ and list the name of that representative below.

Name of representative to receive refund check(s) ▶

7 **Notices and communications.** Original notices and other written communications will be sent to you and a copy to the first representative listed on line 2.

a If you also want the second representative listed to receive a copy of notices and communications, check this box ▶ ☑

b If you do not want any notices or communications sent to your representative(s), check this box ▶ ☐

8 **Retention/revocation of prior power(s) of attorney.** The filing of this power of attorney automatically revokes all earlier power(s) of attorney on file with the Internal Revenue Service for the same tax matters and years or periods covered by this document. If you do not want to revoke a prior power of attorney, check here. ▶ ☐

**YOU MUST ATTACH A COPY OF ANY POWER OF ATTORNEY YOU WANT TO REMAIN IN EFFECT.**

9 **Signature of taxpayer(s).** If a tax matter concerns a joint return, both husband and wife must sign if joint representation is requested, otherwise, see the instructions. If signed by a corporate officer, partner, guardian, tax matters partner, executor, receiver, administrator, or trustee on behalf of the taxpayer, I certify that I have the authority to execute this form on behalf of the taxpayer.

▶ **IF NOT SIGNED AND DATED, THIS POWER OF ATTORNEY WILL BE RETURNED.**

[signature] Signature — 5/15/06 Date — Vice President Title (if applicable)

Jay L. Maymudes — Print Name

☐☐☐☐☐ PIN Number

Imprimis Investors LLC/Wexford Spec. Situations 1997 LP — Print name of taxpayer from line 1 if other than individual

Signature — Date — Title (if applicable)

Print Name — ☐☐☐☐☐ PIN Number

**Part II** **Declaration of Representative**

**Caution:** *Students with a special order to represent taxpayers in Qualified Low Income Taxpayer Clinics or the Student Tax Clinic Program, see the instructions for Part II.*

Under penalties of perjury, I declare that:

- I am not currently under suspension or disbarment from practice before the Internal Revenue Service;
- I am aware of regulations contained in Treasury Department Circular No. 230 (31 CFR, Part 10), as amended, concerning the practice of attorneys, certified public accountants, enrolled agents, enrolled actuaries, and others;
- I am authorized to represent the taxpayer(s) identified in Part I for the tax matter(s) specified there; and
- I am one of the following:

a Attorney—a member in good standing of the bar of the highest court of the jurisdiction shown below.
b Certified Public Accountant—duly qualified to practice as a certified public accountant in the jurisdiction shown below.
c Enrolled Agent—enrolled as an agent under the requirements of Treasury Department Circular No. 230.
d Officer—a bona fide officer of the taxpayer's organization.
e Full-Time Employee—a full-time employee of the taxpayer.
f Family Member—a member of the taxpayer's immediate family (i.e., spouse, parent, child, brother, or sister).
g Enrolled Actuary—enrolled as an actuary by the Joint Board for the Enrollment of Actuaries under 29 U.S.C. 1242 (the authority to practice before the Service is limited by section 10.3(d) of Treasury Department Circular No. 230).
h Unenrolled Return Preparer—the authority to practice before the Internal Revenue Service is limited by Treasury Department Circular No. 230, section 10.7(c)(1)(viii). You must have prepared the return in question and the return must be under examination by the IRS. See **Unenrolled Return Preparer** on page 2 of the instructions.

▶ **IF THIS DECLARATION OF REPRESENTATIVE IS NOT SIGNED AND DATED, THE POWER OF ATTORNEY WILL BE RETURNED.** See the Part II instructions.

| Designation—Insert above letter (a–h) | Jurisdiction (state) or identification | Signature | Date |
|---|---|---|---|
| a | DC, MD | [signature] | 5/16/2006 |
| a | DC, NY | [signature] | 5/16/06 |
| a | DC, CA | [signature] | 5/16/06 |

# EXHIBIT

# 4

# CONSULTING AGREEMENT

This consulting agreement dated as of September 30, 1998 is by and between Imprimis Investors LLC (together with its direct and indirect subsidiaries, "Imprimis"), a Delaware limited liability company having an address at c/o Wexford Management LLC, 411 West Putnam Avenue, Greenwich, Connecticut 06830, and Insight Venture Management, Inc. ("InSight"), a corporation organized and existing under the laws of the State of Delaware with an address at 122 East 42 Street, New York, N.Y. 10168.

WHEREAS, Imprimis has been formed as a Delaware limited liability company for the purpose of making various investments, including investments in companies engaged in the software and other industries; and

WHEREAS, Imprimis desires to engage InSight to advise on investments in such industries, and InSight desires to advise Imprimis in such capacity, on the terms and conditions set forth herein.

WHEREAS, InSight has previously provided investment advice to WI Software Investors LLC ("WISI"), an affiliate of Imprimis pursuant to a Consulting Agreement (the "WISI Agreement") dated as of April 3, 1997 (the "Effective Date") by and between WISI and Insight.

NOW THEREFORE, in consideration of the mutual covenants and promises contained herein and other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, and intending to be legally bound hereby, the parties hereto agree as follows:

1. Investment Opportunities. During the period commencing on the date of this Agreement and ending on the second anniversary of the Effective Date (the "Investment Period"), InSight shall provide Imprimis with a right of first refusal for all investment opportunities in the software and related industries identified by InSight (each, an "Investment Opportunity"). For each Investment Opportunity, Imprimis' right of first refusal entitles it to participate in the Investment Opportunity to the extent of the greater of: (a) 50% of the amounts to be invested in the Investment Opportunity or (b) the percentage of the Investment Opportunity not invested in by InSight or its affiliates (including investors therein). Imprimis shall have the right, but not the obligation, to invest in all or any portion of the amount of the Investment Opportunity offered to it by InSight. For each proposed Investment Opportunity, InSight or its affiliates shall provide in a form satisfactory to Imprimis written details of such proposed Investment Opportunity. Within ten business days following receipt of such notice, Imprimis shall give notice to InSight as to whether it intends to invest in such Investment Opportunity and the amount of its proposed investment. In the event that any New Material Terms (as defined below) develop with respect to an Investment Opportunity following the original written notice, Imprimis' original acceptance or rejection shall be void and such New Material Terms shall constitute a new Investment Opportunity for which InSight or its affiliates shall submit a new written notice. For purposes of this agreement, "New Material Terms" shall mean a change in price of 10% or more, or a change in the proposed Investment Opportunity. For any Investment Opportunity that Imprimis declines to invest in, or for which Imprimis does not provide notice of its acceptance as set forth

109914.1



EXHIBIT
4

herein, InSight or its designee shall have the right to participate in up to 100% of such Investment Opportunity, subject to its requirement to submit a written notice to Imprimis in the event of any New Material Terms.

2. Proxy. Imprimis hereby constitutes and appoints InSight, or any nominee of InSight, with full power of substitution, prior to the Proxy Termination Date (as defined below), as Imprimis' true and lawful attorney and irrevocable proxy, for and in Imprimis' name, place and stead, to vote each of the shares of capital stock or other equity interests in all Investment Opportunities as Imprimis' proxy, at every annual, special or adjourned meeting of the shareholders or equity holders of any Investment Opportunity (including the right to sign Imprimis' name to any consent, certificate or other document relating to any such Investment Opportunity) for any lawful purpose other than for Significant Matters (as defined below). Except as otherwise expressly provided herein, Imprimis intends this proxy to be irrevocable (prior to the Proxy Termination Date) and coupled with an interest and will take such further action and execute such other instruments as may be necessary to effectuate the intent of this proxy. Imprimis shall have the right to terminate the proxy given pursuant to this provision with respect to any security in an Investment Opportunity on the date (the "Proxy Termination Date") which is the earliest of: (v) six months after (I) a public offering of at least twenty-five percent (25%) of the fully diluted capital stock of the respective Investment Opportunity, (II) the acquisition of at least twenty-five percent (25%) of the fully diluted capital stock of the respective Investment Opportunity by a publicly traded company, or (III) the merger into a publicly traded company of the respective investment opportunity; (w) four years after the date of this Agreement; (x) a material breach by InSight of its obligations under this Agreement; (y) the dissolution, bankruptcy or legal incapacity of Insight or its permitted assignee hereunder or (z) the death, legal incapacity, legal disability or conviction of a felony of Jeffrey Horing or Jerry Murdoch.

Imprimis shall also have the right to terminate the proxy given pursuant to this provision prior to the Proxy Termination Date with respect to any vote on a Significant Matter. For Significant Matters with respect to any Investment Opportunity, InSight agrees that it shall be required to provide prompt notice of such matters to Imprimis and to vote Imprimis' securities on such matters in the manner directed by Imprimis. For purposes of this Agreement, "Significant Matters" shall mean: (a) amendments to the certificate of incorporation of the Investment Opportunity requiring greater than a majority vote, or requiring a vote by a special class or series; (b) mergers (other than mergers among affiliates) or consolidations; (c) sale, lease, exchange or other disposition of all or substantially all of the Investment Opportunity's assets; or (d) dissolution of the Investment Opportunity.

3. Minimum Number and Amount. InSight agrees that during the two year period following the Effective Date it will identify to Imprimis at least six separate Investment Opportunities, all of which if invested in by Imprimis would allow for a total aggregate investment by Imprimis of at least $20 million; provided that (a) any Investment Opportunity previously identified to WISI pursuant to the WISI Agreement shall be deemed to have been identified to Imprimis for purposes of this provision, and (b) in the event of InSight's failure to identify such Investment Opportunities to Imprimis during such period, InSight agrees that it shall promptly return to Imprimis any Management Fees (defined

in Section 5 below) paid pursuant to this Agreement prior to April 3, 1999 to the extent such fees exceed 2% of the Outstanding Principal Amount (as defined below).

For purposes of this Agreement, "Outstanding Principal Amount" shall mean the aggregate amount of cash invested by Imprimis pursuant to this Agreement and invested by WISI pursuant to the WISI Agreement, in each case in any securities of any Investment Opportunity minus distributions in respect of such securities representing a return of capital to Imprimis or WISI as the case may be in respect of such initial cash investments.

4. Sole Discretion. Imprimis shall have the right in its sole discretion to determine whether and to what extent to proceed with or participate in any Investment Opportunity originated by InSight. In the event that an entity affiliated with or controlled by Wexford Management LLC other than Imprimis shall directly participate in an Investment Opportunity pursuant to this Agreement, such event shall be deemed a breach of this Agreement absent InSight's written approval of such investment.

5. Management Fee. In consideration of the rights and benefits afforded to Imprimis hereunder, Imprimis shall pay to InSight or its designee (a) during the Investment Period, an annual fee of the greater of: (x) $375,000; or (y) 2% of the Outstanding Principal Amount, which fee will be paid in monthly installments in advance on the first day of each month ending with a payment on March 1, 1999, and (b) for the three-year period beginning April 3, 1999, an annual fee in the amount of 2% of the Outstanding Principal Amount, which fee will be paid in installments in advance on the first day of each month of such period, ending with a payment on March 1, 2002 (collectively, the "Management Fee"); provided, however, that the obligation to pay such Management Fee shall terminate prior to March 1, 2002 upon the earliest to occur of: (x) a material breach by InSight of its material obligations under this Agreement; (y) the dissolution, bankruptcy or legal incapacity of InSight or its permitted assignee; or (z) the death, legal incapacity, legal disability or conviction of a felony of Jeffrey Horing or Jerry Murdoch.

6. Allocation of Fees. Any board fees, break-up fees, closing fees, consulting fees, advisory fees, options, transaction fees or other fees paid to InSight or an affiliate but allocable in any manner to any investment by Imprimis or WISI in an Investment Opportunity pursuant to the terms of this Agreement or the WISI Agreement will be delivered by InSight to Imprimis within ten business days of InSight's receipt thereof, provided that any amounts of up to $25,000 allocated to Imprimis pursuant to this provision may be retained by InSight and credited against the Management Fee that is otherwise payable by Imprimis and then currently outstanding. The obligations under this Section 6 shall survive the termination of this Agreement.

7. Due Diligence Expense. Any due diligence expenses reasonably incurred by InSight in connection with the Investment Opportunity shall be borne pro rata by InSight and Imprimis in proportion to their respective amounts invested in the Investment Opportunity, provided, however, that for prospective investments that do not become Investment Opportunities, Imprimis agrees to bear 50% (up to $100,000) of such expenses, and amounts greater than $100,000 subject to Imprimis

giving prior written approval for such expenses. In the event that Imprimis declines for any reason to invest in any Investment Opportunity, Imprimis shall have no obligation to bear any portion of such due diligence expense.

8. Indemnification. Imprimis shall indemnify InSight and each of its affiliates and each of their advisors, officers, directors, shareholders, employees and agents from and against any and all material claims, losses and liabilities arising out of or resulting from (a) any breach by Imprimis or WISI of this Agreement or the WISI Agreement as the case may be; (b) any action or omission by Imprimis or WISI; or (c) any action or omission by InSight in reliance on any written communication believed to be genuine and to have been given by or on behalf of Imprimis or WISI (including, without limitation, any actions or inactions taken or not taken in any way related to the grant of the proxies contemplated hereby), except claims, losses or liabilities involving InSight's gross negligence or willful misconduct. The obligations of Imprimis under this Section 8 shall survive the termination of this Agreement.

InSight shall indemnify Imprimis and each of its affiliates and each of their advisors, officers, directors, shareholders, employees and agents from and against any and all material claims, losses and liabilities arising out of or resulting from (a) any breach by InSight of this Agreement or the WISI Agreement; (b) any action or omission by InSight; or (c) any action or omission by Imprimis in reliance on any written communication believed to be genuine and to have been given by or on behalf of InSight, except claims, losses or liabilities involving Imprimis' gross negligence or willful misconduct. The obligations of InSight under this Section 8 shall survive the termination of this Agreement.

9. Liquidation of Investments. At any time after five years from the Effective Date of this Agreement, Imprimis shall have the right to instruct InSight to liquidate any investments made pursuant to this Agreement or the WISI Agreement, and InSight agrees to effect such liquidation as promptly as possible following such instruction, provided, however, that InSight shall use its reasonable best efforts to effectuate such liquidation within 180 days after Imprimis makes any such instruction. The obligations under this Section 9 shall survive the termination of this Agreement.

10. Life Insurance. InSight agrees to make Jeffrey Horing and Jerry Murdoch available as reasonably requested by Imprimis or its affiliate to obtain life insurance on Mr. Horing and Mr. Murdoch.

11. Notifications. Any notice required or permitted to be made hereunder shall be in writing and delivered to the appropriate party by hand or by overnight delivery service (such as Federal Express) at the address set forth above or at such other address as may be provided pursuant to this provision.

12. No Assignment. Neither party hereto shall be permitted to assign its rights or obligations under this Agreement without the prior written consent of the other party which consent shall not unreasonably be withheld.

13. WISI Agreement. The parties agree that this agreement shall supersede and replace the WISI Agreement in all respects and that notwithstanding any provision to the contrary in the WISI Agreement, with the sole exception of Section 2 of the WISI Agreement relating to the granting of proxies, no provision of the WISI Agreement shall survive.

14. No Amendment; Governing Law. This Agreement may not be amended or modified in any manner nor may any of its provisions be waived except by written amendment executed by the parties. This Agreement will be governed by the laws of the State of New York applicable to contracts made and performed within such state.

IN WITNESS WHEREOF, the parties have set their hands as of the date first written above.

IMPRIMIS INVESTORS LLC
By: Wexford Management LLC
as Manager

By: [signature]
Name: Arthur Amron
Title: SVP & General Counsel

INSIGHT VENTURE MANAGEMENT INC.

By: [signature]
Name:
Title: