# EXHIBIT

# 7

SUPREME COURT OF THE STATE OF NEW YORK

COUNTY OF NEW YORK

-------------------------------------x

IMPRIMIS INVESTORS LLC and
WI SOFTWARE INVESTORS LLC,

Plaintiffs,

- against -

INSIGHT VENTURE MANAGEMENT, INC.,
JEFFREY HORING, JERRY MURDOCK,
INSIGHT VENTURE ASSOCIATES II, LLC and
INSIGHT VENTURE ASSOCIATES III, LLC,

Defendants.

-------------------------------------x

Index No.00-604431

IAS Part 49

Justice Cahn

INSIGHT VENTURE MANAGEMENT, INC.,
INSIGHT VENTURE ASSOCIATES II, LLC,
JEFFREY HORING, JERRY MURDOCK AND
PETER SOBILOFF

Counterclaim and
Third-Party Plaintiffs,

- against -

IMPRIMIS INVESTORS LLC,
WI SOFTWARE INVESTORS LLC and
WEXFORD CAPITAL LLC f/k/a
WEXFORD MANAGEMENT LLC,

Counterclaim and
Third-Party Defendants.

-------------------------------------x

**AMENDED
VERIFIED ANSWER,
AFFIRMATIVE DEFENSES,
COUNTERCLAIMS and
<u>THIRD-PARTY COMPLAINT</u>**

Defendants Insight Venture Management, Inc., Jeffrey Horing, Jerry Murdock, Insight Venture Associates II, LLC and Insight Venture Associates III, LLC, by their attorneys, Sullivan & Cromwell, for their response to the Complaint, aver as follows:

EXHIBIT
7

## ANSWER

1. Deny the allegations of paragraph 1 of the Complaint, except admit that plaintiffs purport to seek the relief to which they refer.

2. Deny the allegations of paragraph 2 of the Complaint, except respectfully refer this Court to the Agreements to which plaintiffs refer for their provisions, terms and requirements.

3. Deny the allegations of paragraph 3 of the Complaint.

4. Deny the allegations of paragraph 4 of the Complaint.

5. Deny the allegations of paragraph 5 of the Complaint.

6. Deny the allegations of paragraph 6 of the Complaint.

7. Admit, on information and belief, the allegations of paragraph 7 of the Complaint.

8. Admit, on information and belief, the allegations of paragraph 8 of the Complaint.

9. Deny the allegations of the first sentence of paragraph 9 of the Complaint and admit the allegations of the second and third sentences of paragraph 9.

10. Deny the allegations of paragraph 10 of the Complaint, except admit that Mr. Horing is an officer and director of Insight, a member of Insight Venture II and Insight Venture III and a limited partner of Insight II.

11. Deny the allegations of paragraph 11 of the Complaint, except admit that Mr. Murdock is an officer and director of Insight, a member of Insight Venture II and Insight Venture III and a limited partner of Insight II.

12. Deny the allegations of paragraph 12 of the Complaint, except admit that Insight Venture II is a Delaware limited liability company, that Insight Venture II is the General Partner of Insight II and Insight Cayman II, and that Mr. Murdock and Mr. Horing are two of the Managers of Insight Venture II.

13. Deny the allegations of paragraph 13 of the Complaint, except admit that Insight Venture III is a Delaware limited liability company, that Insight Venture III is the General Partner of Insight III, Insight Co-Investors and Insight Cayman III, and that Mr. Murdock and Mr. Horing are two of the Managers of Insight Venture III.

14. Deny the allegations of paragraph 14 of the Complaint, except admit that Insight, Insight Venture II and Insight Venture III maintain their principal offices in New York County.

15. Admit the allegations of paragraph 15 of the Complaint.

16. Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 16 of the Complaint.

17. Admit the allegations of paragraph 17 of the Complaint.

18. Deny the allegations of paragraph 18 of the Complaint, except admit that Insight and Wexford at one point entered into a consulting agreement and that Insight sub-leased office space from Wexford in the period from summer of 1996 until fall of 1997, and respectfully refer the Court to such consulting agreement for its provisions, terms and requirements.

19. Deny knowledge or information sufficient to form a belief as to the truth of the allegations of the second sentence of paragraph 19 of the Complaint, and admit the allegations of the first sentence of paragraph 19.

20. Deny the allegations of paragraph 20 of the Complaint, except admit that Wexford Insight LLC ("Wexford/ Insight") entered into a consulting agreement with Insight dated June 1, 1996, and respectfully refer the Court to such agreement for its provisions, terms and requirements.

21. Deny the allegations of paragraph 21 of the Complaint, except respectfully refer the Court to the agreement to which plaintiffs refer for its provisions, terms and requirements.

22. Deny the allegations of paragraph 22 of the Complaint, except respectfully refer the Court to the agreement to which plaintiffs refer for its provisions, terms and requirements.

23. Admit the allegations of paragraph 23 of the Complaint, and aver that as a result of the skill and efforts of Insight, Wexford/Insight made large profits.

24. Deny the allegations of paragraph 24 of the Complaint, except admit that WI Software Investors LLC ("WISI") and Insight entered into a consulting agreement dated April 3, 1997, and that Imprimis Investors LLC ("Imprimis") and Insight entered into a consulting agreement dated as of September 30, 1998.

25. Deny the allegations of paragraph 25 of the Complaint.

26. Admit the allegations of paragraph 26 of the Complaint, and further respectfully refer the Court to the Limited Liability Company Agreement of WI Software Investors LLC for a full understanding of its terms, provisions and requirements.

27. Admit the allegations of paragraph 27 of the Complaint, and further respectfully refer the Court to the Limited Liability Company Agreement of WI Software Investors LLC for a full understanding of its terms, provisions and requirements.

28. Deny the allegations of paragraph 28 of the Complaint, except respectfully refer the Court to the agreement to which plaintiffs refer for its provisions, terms and requirements.

29. Deny the allegations of paragraph 29 of the Complaint, except respectfully refer the Court to the agreement to which plaintiffs refer for its provisions, terms and requirements.

30. Deny the allegations of paragraph 30 of the Complaint, except respectfully refer the Court to the agreement to which plaintiffs refer for its provisions, terms and requirements.

31. Deny the allegations of paragraph 31 of the Complaint, except respectfully refer the Court to the agreement to which plaintiffs refer for its provisions, terms and requirements.

32. Deny the allegations of paragraph 32 of the Complaint, except respectfully refer the Court to the

agreement to which plaintiffs refer for its provisions, terms and requirements.

33. Deny the allegations of paragraph 33 of the Complaint, except respectfully refer the Court to the agreement to which plaintiffs refer for its provisions, terms and requirements.

34. Deny the allegations of paragraph 34 of the Complaint.

35. Admit the allegations of paragraph 35 of the Complaint and further aver that on some occasions, WISI declined to invest in opportunities identified to it by Insight, and, further, that WISI made large profits when it did make such investments.

36. Admit the allegations of paragraph 36 of the Complaint.

37. Admit the allegations of paragraph 37 of the Complaint.

38. Deny the allegations of paragraph 38 of the Complaint, except respectfully refer the Court to the agreement to which plaintiffs refer for its provisions, terms and requirements.

39. Deny the allegations of paragraph 39 of the Complaint, except respectfully refer the Court to the

agreement to which plaintiffs refer for its provisions, terms and requirements.

40. Deny the allegations of paragraph 40 of the Complaint, except respectfully refer the Court to the agreement to which plaintiffs refer for its provisions, terms and requirements.

41. Deny the allegations of paragraph 41 of the Complaint, except respectfully refer the Court to the agreement to which plaintiffs refer for its provisions, terms and requirements.

42. Deny the allegations of paragraph 42 of the Complaint, except respectfully refer the Court to the agreement to which plaintiffs refer for its provisions, terms and requirements.

43. Deny the allegations of paragraph 43 of the Complaint, except respectfully refer the Court to the agreement to which plaintiffs refer for its provisions, terms and requirements.

44. Deny the allegations of paragraph 44 of the Complaint, except respectfully refer the Court to the agreement to which plaintiffs refer for its provisions, terms and requirements.

45. Deny the allegations of paragraph 45 of the Complaint.

46. Admit the allegations of paragraph 46 of the Complaint and further aver that on some occasions, Imprimis declined to invest in opportunities identified to it by Insight, and, further, that Imprimis made large profits when it made such investments.

47. Deny the allegations of paragraph 47 of the Complaint, except admit that Illuminet provides advanced intelligent network, database and billing services to the telecommunications industry.

48. Deny the allegations of paragraph 48 of the Complaint, except admit that Insight was in contact with Illuminet in or prior to July 1998.

49. Deny the allegations of paragraph 49 of the Complaint and aver that Illuminet was not an investment opportunity as defined in the Consulting Agreements.

50. Deny the allegations of paragraph 50 of the Complaint, except admit that on or about August 31, 1998, Insight II and Insight Cayman II purchased 240,000 shares (post-split) of Illuminet common stock for $1,335,000.

51. Deny the allegations of paragraph 51 of the Complaint, except admit that on or about December 10, 1998, Insight II and Insight Cayman II purchased 237,716 shares (post-split) of Illuminet common stock for $958,590.

52. Deny the allegations of paragraph 52 of the Complaint, except admit that HUON Holdings ("HUON") is a vendor of enterprise-wide property and casualty insurance software.

53. Deny the allegations of paragraph 53 of the Complaint, except admit that on or about December 21, 1998, Insight II and Insight Cayman II made a $4.8 million investment in HUON.

54. Deny the allegations of paragraph 54 of the Complaint, except admit that plaintiffs and Wexford were informed of the Illuminet and HUON investments in 1998 and were informed in or about August 1999 that Illuminet had filed a Form S-1 registration statement in connection with an initial public offering, and aver that plaintiffs thereafter chose not to make any investment in Illuminet or HUON.

55. Deny the allegations of paragraph 55 of the Complaint.

56. Deny the allegations of paragraph 56, except admit that plaintiffs stated that their files contained no information on Illuminet or Huon.

57. Admit the allegations of paragraph 57 of the Complaint, and aver that plaintiffs were informed about

Illuminet and HUON in 1998 and expressed no interest in participating in either.

58. Admit the allegations of paragraph 58 of the Complaint.

59. Deny the allegations of paragraph 59 of the Complaint, except admit that Mr. Murdock reminded plaintiffs that he had previously told them (a) about the Illuminet investment, (b) that the CEO of Illuminet had left that company, and (c) that the Illuminet valuation was "tough" because Illuminet, a telecommunications company, was outside Insight's area of expertise.

60. Deny the allegations of paragraph 60 of the Complaint.

61. Deny the allegations of paragraph 61 of the Complaint.

62. Deny the allegations of paragraph 62 of the Complaint.

63. Deny the allegations of paragraph 63 of the Complaint, except admit that Mr. Horing stated on or about October 8, 1999, with regard to recent discussions about the Illuminet investment, "I am sorry about the confusion as well as the poor communication. I am sure that we will have ample opportunity to make it up to you," and further aver that (a) plaintiffs failed then to assert that Insight had

breached any contractual or other obligations in connection with Illuminet and (b) neither Mr. Horing's statement nor any other statement conveyed or was intended to convey an acknowledgment of wrongdoing.

64. Deny the allegations of paragraph 64 of the Complaint, except admit that, although Insight had no obligation to do so after the Agreements expired, Insight identified investment opportunities to plaintiffs and offered to permit them to participate in such opportunities.

65. Deny the allegations of paragraph 65 of the Complaint, except admit that Insight II and Insight Cayman II invested $2,293,598 in Illuminet and that such investment in Illuminet has, to date, been profitable and that Illuminet completed an initial public offering on or about October 7, 1999 at $19 per share, and that the closing price of Illuminet stock on January 5, 2001 was $21 7/16.

66. Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 66.

67. For their response to the first paragraph numbered "67," defendants deny the allegations of that paragraph of the Complaint.

67. For their response to the second paragraph numbered "67," defendants deny the allegations of that

paragraph of the Complaint, except admit that Quest is engaged in the business of providing database tools and e-commerce infrastructure.

68. Deny the allegations of paragraph 68 of the Complaint, except admit that Insight conducted due diligence on Quest and that, on or about December 11, 1998, Insight prepared an investment memo on Quest.

69. Deny the allegations of paragraph 69 of the Complaint, except admit that Mr. Murdock informed plaintiffs of the Quest deal in a timely fashion and in 1999 offered plaintiffs the opportunity to invest in Quest, and further aver that the parties agreed that Quest was outside the Imprimis Agreement.

70. Deny the allegations of paragraph 70 of the Complaint.

71. Deny the allegations of paragraph 71 of the Complaint, except admit that Insight properly and in accordance with the applicable contracts and plaintiffs' investment, charged plaintiffs part of the due diligence expense incurred with respect to Quest.

72. Deny the allegations of paragraph 72 of the Complaint, except admit that Insight allowed WISI to invest $4.5 million in Quest and aver that plaintiffs chose to make such investment and never asserted that they had a

contractual or other right to make a larger investment, or to participate to a greater extent in Insight's investment in Quest.

73. Deny the allegations of paragraph 73 of the Complaint, and aver that the parties expressly agreed that Convergent Group ("Convergent"), Greenfield Online and Click Interactive (later known as Click Commerce) ("Click") fell outside the Imprimis Agreement.

74. Deny the allegations of paragraph 74 of the Complaint, except admit that (a) WISI invested $4.5 million for 800,000 shares of Quest Series A Preferred Stock, (b) Insight II and Insight Cayman II invested $4.95 million for 880,000 shares of Quest Series A Preferred Stock, (c) another investor purchased 977,778 shares of Quest Series A Preferred Stock for $5.5 million and 1,777,778 shares of Series B Redeemable Preferred Stock for $10 million, (d) Jerry Murdock acquired Quest shares years before the 1999 investment, and further aver that Mr. Murdock's investment was not covered by the Agreements, and (e) plaintiffs failed to indicate any interest in purchasing any Series B Redeemable Preferred Stock of Quest when they were given an opportunity to do so in early 1999.

75. Deny the allegations of paragraph 75 of the Complaint, except admit that (a) plaintiffs' investment in

Quest, as well as defendants' investment in Quest, has been profitable, (b) Quest completed its initial public offering on or about August 13, 1999 at a price of $14 per share, (c) the market price of Quest stock on December 31, 1999, was $102 and has fluctuated at other levels at various times, and (d) the adjusted closing price of Quest stock on January 5, 2001 was $23 3/16.

76. Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 76 of the Complaint, except admit that, on information and belief, WISI has sold shares of Quest stock, and further aver that WISI or other Wexford entities have realized a profit of at least $142 million from those sales.

77. Deny the allegations of paragraph 77 of the Complaint, except admit that Convergent is a provider of e-commerce systems integration services to the utility and public sectors.

78. Deny the allegations of paragraph 78 of the Complaint, except admit that (a) Insight prepared a draft letter of intent on or about March 10, 1999, and (b) in accordance with the applicable contracts and plaintiffs' investment, Insight charged plaintiffs part of the due diligence expense incurred with respect to Convergent.

79. Deny the allegations of paragraph 79 of the Complaint and aver that the parties expressly agreed that Convergent was outside the Imprimis Agreement.

80. Deny the allegations of paragraph 80 of the Complaint, except admit that (a) Imprimis chose to invest $5 million in Convergent and declined to invest more than such amount when it had an opportunity to do so, and (b) Insight III, Insight Co-Investors, and Insight Cayman III invested about $17.3 million and other investors invested an aggregate of about $23.3 million in Convergent.

81. Deny the allegations of paragraph 81 of the Complaint.

82. Deny the allegations of paragraph 82 of the Complaint, except admit that Greenfield Online is a provider of Internet-based marketing and research information services.

83. Deny the allegations of paragraph 83 of the Complaint, and aver that the parties agreed that Greenfield Online was outside the Imprimis Agreement.

84. Deny the allegations of paragraph 84 of the Complaint, except admit that Insight executed a letter of intent with Greenfield Online on or about March 4, 1999, and prepared an investment memo on or about April 1, 1999, stating that Greenfield Online "represents an opportunity

for Insight to invest in" that company, and that Insight later properly, and in accordance with the applicable contracts and plaintiffs' investment, charged plaintiffs part of the due diligence expenses incurred with respect to Greenfield Online.

85. Deny the allegations of paragraph 85 of the Complaint, except admit that (a) Imprimis was aware of the Greenfield Online investment, (b) Imprimis or Imprimis S.B., L.P., invested $2.5 million in Greenfield Online and declined to invest more than that although it had an opportunity to do so, (c) Insight III invested about $8.25 million in Greenfield Online, (d) Insight Cayman III invested about $2.5 million in Greenfield Online, (e) Insight Co-Investors invested about $1.37 million in Greenfield Online, (f) other investors invested about $5.5 million, and (g) aver that plaintiffs never sought to make a larger investment in Greenfield Online than $2.5 million nor asserted that they had the right to do so.

86. Deny the allegations of paragraph 86 of the Complaint.

87. Deny the allegations of paragraph 87 of the Complaint, except admit that Click markets collaborative commerce solutions permitting automated information flows

within multi-channel distribution networks for Fortune 1000 manufacturers.

88. Deny the allegations of paragraph 88 of the Complaint, except admit that (a) the investment in Click was not covered by the Agreements and (b) Insight was looking into the possibility of making an investment in Click in February 1999, and further aver that the parties agreed that Click was outside the Imprimis Agreement.

89. Deny the allegations of paragraph 89 of the Complaint, except admit that Mr. Horing told plaintiffs that there was no room in the Click investment, and further aver that no plaintiff had any right by contract or otherwise to participate in the Click investment.

90. Admit the allegations of the first sentence of paragraph 90 of the Complaint, deny the allegations of the second sentence of paragraph 90, and further aver that no plaintiff was entitled to participate in the Click investment.

91. Deny the allegations of paragraph 91 of the Complaint.

92. Deny the allegations of paragraph 92 of the Complaint, except admit that Insight III, Insight Cayman III and Insight Co-Investors made a further investment in Click in January 2000.

93. Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 93 of the Complaint.

94. Deny the allegations of paragraph 94 of the Complaint, except admit that plaintiffs were told that Compaq's involvement in the Click deal made it impossible to involve plaintiffs, and further aver that no plaintiff had any right, contractual or otherwise, to participate in this investment in Click.

95. Deny the allegations of paragraph 95 of the Complaint, except admit that plaintiffs were offered the opportunity to purchase $500,000 of Click stock, that they chose to make such an investment, and further aver that no plaintiff had any right, contractual or otherwise, to participate in the Click investment.

96. Deny the allegations of paragraph 96 of the Complaint, except admit that the investments in Click have to date been profitable.

97. Deny the allegations of paragraph 97 of the Complaint.

98. Deny the allegations of paragraph 98 of the Complaint, except admit that Authorize.Net is a payment automation service for on-line business and that Authorize.Net was acquired by Go2Net.com, an internet portal

company whose stock is publicly traded on Nasdaq, on or about July 1, 1999.

99. Deny the allegations of paragraph 99 of the Complaint, except admit that Insight incurred due diligence expenses with respect to Authorize.Net in or about February 1999, and aver that no plaintiff had any right, contractual or otherwise, to participate in the Authorize.Net investment.

100. Deny the allegations of paragraph 100 of the Complaint, except admit that in April 1999, Insight III, Insight Cayman III and Insight Co-Investors lent Authorize.Net $900,000 and in June 1999, those Insight entities invested $500,000 in Authorize.Net.

101. Deny the allegations of paragraph 101 of the Complaint, except admit that (a) the investments by Insight III, Insight Cayman III and Insight Co-Investors in Authorize.Net have been profitable, (b) the above entities received about $778,643 as part of the transaction with Go2Net, and (c) the above entities sold 45,289 shares of Go2Net for more than $3 million.

102. Deny the allegations of paragraph 102 of the Complaint.

103. Admit the allegations of paragraph 103 of the Complaint.

104. Deny the allegations of paragraph 104 of the Complaint, except admit that (a) WISI made a $2.75 million investment in Altitude, (b) Insight II and Insight Cayman II made an equal investment, and (c) WISI and those Insight entities received warrants to purchase shares of Altitude at a set out price.

105. Deny the allegations of paragraph 105 of the Complaint, except admit that in or about July 1999, certain third-party private investors made an investment in Altitude and that Insight executed an "Investment Agreement" in connection with the transaction.

106. Deny the allegations of paragraph 106 of the Complaint, except respectfully refer the Court to the agreement to which plaintiffs refer for its provisions, terms and requirements.

107. Deny the allegations of paragraph 107 of the Complaint.

108. Deny the allegations of paragraph 108 of the Complaint.

109. Deny the allegations of paragraph 109 of the Complaint.

110. Deny the allegations of paragraph 110 of the Complaint.

111. Deny the allegations of paragraph 111 of the Complaint.

112. Deny the allegations of paragraph 112 of the Complaint.

113. Deny the allegations of paragraph 113 of the Complaint, except respectfully refer the Court to the agreement to which plaintiffs refer for its provisions, terms and requirements.

114. Deny the allegations of paragraph 114 of the Complaint.

115. Deny the allegations of paragraph 115 of the Complaint, except admit that Insight received certain fees in connection with Convergent.

116. Deny the allegations of paragraph 116 of the Complaint, except admit that certain defendants, including Mr. Horing and Mr. Murdock and/or their designees, have received allocations to buy stock in certain IPOs, and aver that no plaintiff has or had any right to share in these allocations or receipt of stock.

117. Deny the allegations of paragraph 117 of the Complaint, except admit that plaintiffs and Insight agreed that plaintiffs' auditors, Deloitte & Touche LLP, could review the records of Insight Venture Management Inc. and

that plaintiffs agreed to pay the fees and expenses in connection with that review.

118. Deny the allegations of paragraph 118 of the Complaint, except admit that Wexford Management LLC and Insight accepted an August 8, 2000 engagement letter and respectfully refer the Court to that document for its provisions, terms and requirements.

119. Deny the allegations of paragraph 119 of the Complaint, except respectfully refer the Court to the agreement to which plaintiffs refer for its provisions, terms and requirements.

120. Deny the allegations of paragraph 120 of the Complaint.

121. Deny the allegations of paragraph 121 of the Complaint.

122. Deny the allegations of paragraph 122 of the Complaint, except admit that certain of the unliquidated investments made by Insight II, Insight Cayman II, Insight III, Insight Co-Investors, and Insight Cayman III have increased in value.

**AS TO PLAINTIFFS' "FIRST CAUSE OF ACTION"**

123. Repeat and reallege the responses in paragraphs 1 through 122 above as if fully set forth herein.

124. Deny the allegations of paragraph 124 of the Complaint.

125. Deny the allegations of paragraph 125 of the Complaint.

126. Deny the allegations of paragraph 126 of the Complaint.

AS TO PLAINTIFFS' "SECOND CAUSE OF ACTION"

127. Repeat and reallege the responses in paragraphs 1 through 126 above as if fully set forth herein.

128. Deny the allegations of paragraph 128 of the Complaint.

129. Deny the allegations of paragraph 129 of the Complaint.

AS TO PLAINTIFFS' "THIRD CAUSE OF ACTION"

130. Repeat and reallege the responses in paragraphs 1 through 129 above as if fully set forth herein.

131. Deny the allegations of paragraph 131 of the Complaint, except admit that the parties entered into certain contractual agreements and that each defendant had some knowledge of and about those contracts.

132. Deny the allegations of paragraph 132 of the Complaint.

133. Deny the allegations of paragraph 133 of the Complaint.

134. Deny the allegations of paragraph 134 of the Complaint.

AS TO PLAINTIFFS' "FOURTH CAUSE OF ACTION"

135. Repeat and reallege the responses in paragraphs 1 through 134 above as if fully set forth herein.

136. Deny the allegations of paragraph 136 of the Complaint.

137. Deny the allegations of paragraph 137 of the Complaint.

138. Deny the allegations of paragraph 138 of the Complaint.

139. Deny the allegations of paragraph 139 of the Complaint.

140. Deny the allegations of paragraph 140 of the Complaint.

141. Deny the allegations of paragraph 141 of the Complaint.

142. Deny the allegations of paragraph 142 of the Complaint.

AS TO PLAINTIFFS' "FIFTH CAUSE OF ACTION"

143. Repeat and reallege the responses in paragraphs 1 through 142 above as if fully set forth herein.

144. Deny the allegations of paragraph 144 of the Complaint.

145. Deny the allegations of paragraph 145 of the Complaint.

146. Deny the allegations of paragraph 146 of the Complaint.

147. Deny the allegations of paragraph 147 of the Complaint.

148. Deny the allegations of paragraph 148 of the Complaint.

AS TO PLAINTIFFS' "SIXTH CAUSE OF ACTION"

149. Repeat and reallege the responses in paragraphs 1 through 148 above as if fully set forth herein.

150. Deny the allegations of paragraph 150 of the Complaint.

151. Deny the allegations of paragraph 151 of the Complaint.

152. Deny the allegations of paragraph 152 of the Complaint.

153. Deny the allegations of paragraph 153 of the Complaint.

154. Deny the allegations of paragraph 154 of the Complaint.

155. Deny the allegations of paragraph 155 of the Complaint.

156. Deny the allegations of paragraph 156 of the Complaint.

157. Deny the allegations of paragraph 157 of the Complaint.

**AS TO PLAINTIFFS' "SEVENTH CAUSE OF ACTION"**

158. Repeat and reallege the responses in paragraphs 1 through 157 above as if fully set forth herein.

159. Deny the allegations of paragraph 159 of the Complaint.

160. Deny the allegations of paragraph 160 of the Complaint.

161. Deny the allegations of paragraph 161 of the Complaint.

162. Deny the allegations of paragraph 162 of the Complaint.

163. Deny the allegations of paragraph 163 of the Complaint.

**AS TO PLAINTIFFS' "EIGHTH CAUSE OF ACTION"**

164. Repeat and reallege the responses in paragraphs 1 through 163 above as if fully set forth herein.

165. Deny the allegations of paragraph 165 of the Complaint.

166. Deny the allegations of paragraph 166 of the Complaint.

167. Deny the allegations of paragraph 167 of the Complaint.

168. Deny the allegations of paragraph 168 of the Complaint.

**AS TO PLAINTIFFS' "NINTH CAUSE OF ACTION"**

169. Repeat and reallege the responses in paragraphs 1 through 168 above as if fully set forth herein.

170. Deny the allegations of paragraph 170 of the Complaint.

171. Deny the allegations of paragraph 171 of the Complaint.

172. Deny the allegations of paragraph 172 of the Complaint.

173. Deny the allegations of paragraph 173 of the Complaint.

174. Deny the allegations of paragraph 174 of the Complaint.

175. Deny the allegations of paragraph 175 of the Complaint.

**AS TO PLAINTIFFS' "TENTH CAUSE OF ACTION"**

176. Repeat and reallege the responses in paragraphs 1 through 175 above as if fully set forth herein.

177. Deny the allegations of paragraph 177 of the Complaint.

178. Deny the allegations of paragraph 178 of the Complaint.

**AS TO PLAINTIFFS' "ELEVENTH CAUSE OF ACTION"**

179. Repeat and reallege the responses in paragraphs 1 through 178 above as if fully set forth herein.

180. Deny the allegations of paragraph 180 of the Complaint.

181. Deny the allegations of paragraph 181 of the Complaint.

182. Deny the allegations of paragraph 182 of the Complaint.

**AS TO PLAINTIFFS' "TWELFTH CAUSE OF ACTION"**

183. Repeat and reallege the responses in paragraphs 1 through 182 above as if fully set forth herein.

184. Deny the allegations of paragraph 183 of the Complaint.

185. Deny the allegations of paragraph 185 of the Complaint.

186. Deny the allegations of paragraph 186 of the Complaint.

187. Deny the allegations of paragraph 187 of the Complaint.

188. Deny the allegations of paragraph 188 of the Complaint.

**AS TO PLAINTIFFS' "THIRTEENTH CAUSE OF ACTION"**

189. Repeat and reallege the responses in paragraphs 1 through 188 above as if fully set forth herein.

190. Deny the allegations of paragraph 190 of the Complaint.

191. Deny the allegations of paragraph 191 of the Complaint.

**FIRST AFFIRMATIVE DEFENSE**

192. The Complaint, and each and every "cause of action" therein, fails to state a claim upon which relief can be granted.

SECOND AFFIRMATIVE DEFENSE

193. Plaintiffs' claims are barred under the doctrines of waiver, estoppel and/or laches.

THIRD AFFIRMATIVE DEFENSE

194. Plaintiffs' claims are barred because of their breach of contract.

FOURTH AFFIRMATIVE DEFENSE

195. Plaintiffs' claims are barred under the doctrine of unclean hands.

FIFTH AFFIRMATIVE DEFENSE

196. Defendants did not engage in any schemes or artifices to defraud and at all times acted without scienter or any intention to defraud.

SIXTH AFFIRMATIVE DEFENSE

197. Any injury allegedly sustained by plaintiffs was not directly or proximately caused by any conduct or act of defendants.

SEVENTH AFFIRMATIVE DEFENSE

198. The Complaint fails to plead fraud with particularity.

EIGHTH AFFIRMATIVE DEFENSE

199. Plaintiffs' claims are barred, in whole or in part, because they have not suffered any injury in fact.

NINTH AFFIRMATIVE DEFENSE

200. Plaintiffs' claims are barred, in whole or in part, by their failure to mitigate damages.

TENTH AFFIRMATIVE DEFENSE

201. Defendants are indemnified for their actions by plaintiffs.

ELEVENTH AFFIRMATIVE DEFENSE

202. Plaintiffs' claims are barred, in whole or in part, by the Statute of Frauds.

TWELFTH AFFIRMATIVE DEFENSE

203. Plaintiffs' claims are barred, in whole or in part, under the doctrine of accord and satisfaction.

THIRTEENTH AFFIRMATIVE DEFENSE

204. Jeffrey Horing and Jerry Murdock acted at all times on behalf of Insight Venture Management, Inc. or the LLC defendants and are not personally liable on any of the causes of action asserted against them.

**FOURTEENTH AFFIRMATIVE DEFENSE**

205. Plaintiffs' remedies are contractually limited to the recovery of the management fees plaintiffs paid Insight under the Agreements.

WHEREFORE, defendants respectfully demand judgment dismissing the complaint with prejudice, awarding them their costs and disbursements of this action (including reasonable attorneys' fees), and for such other and further relief as this Court may deem just and proper.

## AMENDED COUNTERCLAIMS
## AND THIRD-PARTY COMPLAINT

For their Counterclaims and Third-Party Complaint, Counterclaim and Third-Party Plaintiffs Insight Venture Management, Inc. ("Insight"), Insight Venture Associates II, LLC ("Insight Venture II"), Jeffrey Horing, Jerry Murdock and Peter Sobiloff, by their attorneys, Sullivan & Cromwell, allege as follows:

### Parties

**A. Counterclaim and Third-Party Plaintiffs**

206. Defendant and Counterclaim and Third-Party Plaintiff Insight is a corporation organized and existing under the laws of the State of Delaware and having its principal place of business at 680 Fifth Avenue, New York, New York, 10019. Jeffrey Horing and Jerry Murdock are officers and directors of Insight.

207. Defendant and Counterclaim and Third-Party Plaintiff Insight Venture II is a limited liability company organized and existing under the laws of the State of Delaware and having its principal place of business at 680 Fifth Avenue, New York, New York, 10019. Its Members include Jeffrey Horing, Jerry Murdock and Peter Sobiloff. Mr. Horing and Mr. Murdock serve as Insight Venture II's

Managing Members. Insight Venture II is a Member of Imprimis Investors LLC ("Imprimis").

208. Defendant and Counterclaim and Third-Party Plaintiff Jeffrey Horing is an individual with a principal place of business at 680 Fifth Avenue, New York, New York, 10019. Mr. Horing is a member of Insight Venture II.

209. Defendant and Counterclaim and Third-Party Plaintiff Jerry Murdock is an individual with a principal place of business at 680 Fifth Avenue, New York, New York, 10019. Mr. Murdock is a member of Insight Venture II.

210. Counterclaim and Third-Party Plaintiff Peter Sobiloff is an individual with a principal place of business at 680 Fifth Avenue, New York, New York, 10019. Mr. Sobiloff is a member of Insight Venture II.

**B. Counterclaim and Third-Party Defendants**

211. Plaintiff and Counterclaim Defendant WI Software Investors LLC ("WISI") is a limited liability company organized and existing under the laws of the State of Delaware and having its principal place of business at 411 West Putnam Avenue, Greenwich CT 06830. WISI was formed for the purpose of making investments in companies identified by Insight in the software and related industries. Wexford is the Manager of, and controls, WISI.

212. Plaintiff and Counterclaim Defendant Imprimis is a limited liability company organized and existing under the laws of the State of Delaware and having its principal place of business at 411 West Putnam Avenue, Greenwich CT 06830. Imprimis was formed for the purpose of making investments, including investments in companies engaged in the software and related industries. Wexford is the Manager of, and controls, Imprimis.

213. Third-Party Defendant Wexford Capital LLC (formerly known as Wexford Management LLC) ("Wexford") is a limited liability company organized and existing under the laws of the State of Connecticut and having its principal place of business at 411 West Putnam Avenue, Greenwich CT 06830. Wexford is in the business of making private equity investments, and is the Manager of Imprimis and WISI and controls both those entities. In connection with the matters described below, Wexford has transacted business within the State of New York, has contracted for delivery of services within the State of New York and has committed tortious acts within the State of New York.

214. Wexford manages and controls numerous other entities that are in the business of making investments, including Imprimis S.B., L.P., Wexford Special Situations 1997, L.P., Wexford Special Situations 1997 Institutional,

L.P., Wexford Spectrum Fund I, L.P., Wexford Spectrum Fund II, L.P., Wexford Offshore Spectrum Fund, Wexford Partners Investment Company LLC, Wexford Spectrum Investors LLC and WI Software Holding LLC.

215. On information and belief, Imprimis S.B., L.P. is a Limited Partnership organized under the laws of Delaware and affiliated with and controlled by Wexford.

**Background**

216. Jeffrey Horing and Jerry Murdock formed Insight in 1995 for the purpose of investing in companies in the software and related industries.

217. In 1996, Insight agreed to provide investment advice for a period of time and pursuant to certain contracts, to Wexford and entities controlled by Wexford (referred to herein as the "Wexford entities") in exchange for, among other things, payment of fees, payment of certain expenses, and a right to obtain a percentage of the profits gained by Wexford and Wexford entities from investments made on Insight's advice.

218. Since 1996, Insight has provided Wexford and Wexford entities with numerous opportunities to invest in companies in the software and related industries. Wexford and Wexford entities have greatly profited from the investments identified to them by Insight. These profits

are a direct result of Insight's skill and acumen, and not at all a result of any skill, effort or insight on the part of Wexford or Wexford entities.

219. Between 1996 and 1999, Wexford and Wexford entities executed a series of three Consulting Agreements and three Limited Liability Company Agreements with Insight and Insight affiliates. Each Limited Liability Company Agreement was executed to implement its corresponding Consulting Agreement, and, on information and belief, in each case the two corresponding agreements were dated as of the same day.

220. Pursuant to these agreements, Insight was to receive, among other things, management fees and reimbursement for certain costs, and was to identify certain investment opportunities for certain Wexford entities. In addition, under the applicable agreements, Insight or an Insight affiliate is entitled to receive, among other things, a percentage of any profits realized by the specified Wexford entity to which Insight identified investment opportunities.

<u>The Wexford/Insight Agreements in 1996</u>

221. Wexford Insight LLC ("Wexford/Insight") was formed through a limited liability company agreement dated as of June 1, 1996, for the purpose of investing in

companies in the software and related industries identified by Insight. Under the Limited Liability Company Agreement of Wexford Insight LLC (the "Wexford/Insight LLC Agreement"), Wexford was appointed Manager of Wexford/Insight, and the members of Wexford/Insight were Insight and certain other Wexford entities.

222. At the same time as the Wexford/Insight LLC Agreement was executed, Insight and Wexford/Insight executed a Consulting Agreement (the "Wexford/Insight Consulting Agreement"), under which Insight agreed to identify certain investment opportunities for Wexford/Insight, all as set forth in that contract, and for a period of one year.

223. Pursuant to the Wexford/Insight LLC Agreement, Insight had a right to obtain a percentage of Wexford/Insight's profits over and above certain rates of return on Wexford/Insight's investments. Such an entitlement to a share of profits is sometimes referred to in the industry as a "carry." Pursuant to the Wexford/Insight LLC Agreement, Insight received a 15 percent carry on investments until Wexford/Insight had reached an established level of profit, at which point Insight's carry was increased to 20 percent.

## The WISI Agreements in 1997

224. WISI was formed through a limited liability company agreement dated as of April 3, 1997, for the purpose of investing in companies in the software and related industries identified by Insight. Under the Limited Liability Company Agreement of WI Software Investors LLC (the "WISI LLC Agreement"), Wexford was appointed Manager of WISI, and the members of WISI were Insight Venture II and certain other Wexford entities.

225. At the same time as the WISI LLC Agreement was executed, Insight and WISI executed a Consulting Agreement (the "WISI Consulting Agreement"), under which Insight agreed to provide WISI with certain opportunities to invest, all as set forth in that contract, and for a period of two years.

226. Pursuant to the WISI LLC Agreement, Insight Venture II was entitled to a 20 percent carry on WISI's profits over and above certain rates of return.

## The Imprimis Agreements in 1998

227. Imprimis was formed through an amended and restated limited liability company agreement dated as of September 30, 1998, for the purpose of investing in companies in the software and related industries identified by Insight. Under the Amended and Restated Limited

Liability Company Agreement of Imprimis Investors LLC (the "Imprimis LLC Agreement"), Wexford was appointed Manager of Imprimis, and the members of Imprimis were Insight Venture II and certain other Wexford entities.

228. At the same time as the Imprimis LLC Agreement was executed, Insight and Imprimis executed a Consulting Agreement (the "Imprimis Consulting Agreement"), under which Insight agreed to provide Imprimis with certain opportunities to invest in companies in the software and related industries until April 3, 1999 (the "Investment Period"), all as set forth in that contract. In addition, on or about September 30, 1998, Insight Venture II executed a letter agreement transferring its interest in WISI to Imprimis. In return, Wexford agreed among other things to include the investments that Wexford entities had made prior to the date of the Imprimis LLC Agreement on the schedules attached to the Imprimis LLC Agreement.

229. Pursuant to the Imprimis LLC Agreement, Insight Venture II was entitled to a 20 percent or more carry on the profits from investments in companies listed on schedules attached to the Imprimis LLC Agreement.

230. Section 3(f) of Exhibit B to the Imprimis LLC Agreement provides that any Net Profits allocable to Insight Venture II as part of its carry be allocated first from any

ordinary income earned by Imprimis (up to Insight Venture II's share of Net Profits). To the extent that Insight Venture II's share of Imprimis' Net Profits exceeds Imprimis' ordinary income for the year, Insight Venture II is entitled to its proportionate share of short-term and long-term capital gains.

231. There is no provision of the Imprimis LLC Agreement that would allow Imprimis to allocate to Insight Venture II only Imprimis' short-term capital gains when long-term capital gains are also available for allocation.

232. The Imprimis LLC Agreement contains a provision that ensures that the Members of Imprimis (and, ultimately, the individuals who actually incur the tax liabilities) are financially able to satisfy in a timely manner any tax liabilities resulting from their participation in Imprimis. Section 5(a) of Exhibit B to the Imprimis LLC Agreement provides that, before any other Distribution is made, Imprimis will distribute a portion of the allocated Net Profits:

> "first, to each Member, not later than 90 days after the close of each Fiscal Year, in an amount equal to the local, state, and Federal Income tax liability of such Member (calculated as if each Member was a individual taxpayer subject to the highest marginal rates applicable to residents of New York City) in respect of the excess of Net Profits over Net Losses allocated to such Member for such Fiscal Year (as shown on the Company's Federal

> income tax return), less all amounts distributed to such Member for the then current and all prior Fiscal Years pursuant to Section 5."

233. Section 5(a) of the Imprimis LLC Agreement was included to insure that the individual members of Insight Venture II would have sufficient funds each year to pay any tax liabilities incurred as a result of any profits earned by Imprimis LLC and allocable to Insight Venture II.

234. The Imprimis LLC Agreement provided a procedure pursuant to which additional distributions could be made once distributions pursuant to section 5(a) of the Imprimis LLC Agreement had been made. Under these provisions of the Imprimis LLC Agreement, each Member of Imprimis was required to be treated equally, without any disparate treatment as against the other Members.

235. Section 4.4 of the Imprimis LLC Agreement requires that "Capital Accounts shall be established and maintained for each Member with an Interest in a particular Class on the Company's books representing each Members's respective capital contributions to the Company with respect to such Class and such Member's allocable share of the Company's Net Profit relating to such Class...."

236. The Capital Accounts created by section 4.4 of the Imprimis LLC Agreement comprise a series of specific, identifiable funds. Other provisions of the Imprimis LLC

Agreement, including but not limited to sections 3 and 5, provide the manner in which those specific, identifiable funds are to be treated for purposes of profit allocation and Distribution.

237. Section 10.1 of the Imprimis LLC Agreement requires that Imprimis maintain "[p]roper and complete books and records." It also provides that, "[e]ach Member, at its own expense, will have the right upon reasonable notice to inspect the books and records of [Imprimis] during business hours at the principal place of business of" Imprimis.

**Investments After April 3, 1999**

238. Pursuant to the Imprimis Consulting Agreement, the relevant Investment Period (the period in which Insight had a specified right of first refusal) ended on April 3, 1999. Even after the expiration of that Investment Period, however, Insight on certain occasions provided Imprimis and WISI with opportunities to invest in companies in the software and related industries. Although it had no obligation to do so, in 1999 Insight permitted specified Wexford entities to make certain investments in, each of Quest Software, Inc. ("Quest"), Convergent Group Corp. ("Convergent"), Greenfield Online ("Greenfield") and Click Interactive (now Click Commerce) ("Click"). These opportunities, as with those identified by Insight pursuant

to the contracts, were identified as a result of Insight's skill and acumen, and not at all as a result of any skill, effort or insight on the part of Wexford or Wexford entities.

239. Wexford, Imprimis and WISI declined to invest in certain investment opportunities provided to them by Insight in this same period.

240. In each case, the investments made by Imprimis, WISI and other Wexford entities in Quest, Convergent, Greenfield and Click have appreciated in value since the time they were made.

241. Insight Venture II is entitled to its carry on profits from the Quest and Convergent investments in the amount of at least $31 million. Insight Venture II is also entitled to its carry on profits from Click and Greenfield.

242. Wexford, Imprimis and WISI have not paid Insight Venture II its carry on any profits from Quest, Convergent, Click or Greenfield.

**Other Investments**

243. From May 1998 through March 1999, Imprimis S.B., L.P. and WISI invested in a company identified to WISI by Insight then called Software Technologies Corp. (now SeeBeyond Technology Corp.) ("SeeBeyond").

244. The investments in SeeBeyond by Imprimis S.B., L.P. and WISI have resulted in profits of at least $20 million.

245. Wexford, Imprimis and WISI have not paid Insight Venture II its carry on the profits from SeeBeyond.

246. WISI or other Wexford entities have invested in other companies identified by Insight under the Consulting Agreements. Insight Venture II is entitled to its carry on any profits from those investments.

247. Wexford, Imprimis and WISI have also failed to pay Insight management fees and expenses due under the Consulting Agreements.

**The Wexford Entities Wrongful Conduct**
**<u>With Respect to Imprimis' 2000 Profits</u>**

248. Imprimis' 2000 earnings were comprised of $797,243 in "Interest Income," $97,991,181 in "short-term capital gains," and $91,458,825 in "long-term capital gains." After deduction of Imprimis' expenses, its total 2000 income was about $188 million.

249. At the end of March 2001 or the beginning of April 2001, Insight Venture II received from Imprimis a Schedule K-1 to IRS Form 1065, which reported Insight Venture II's share of Imprimis' profits for 2000 (the "Insight Venture II K-1"). This K-1 reported Insight

Venture II's share of Imprimis' interest income as $797,243 and its share of net short-term capital gain as $36,623,088. Insight Venture II was not allocated any long-term capital gains.

250. Imprimis' allocation to Insight Venture II of more than $36 million of short-term capital gains was wrongful. It substantially overstated the tax liabilities of the Members of Insight Venture II -- including Messrs. Horing, Murdock and Sobiloff. This is because the highest marginal federal tax rate applicable to long-term capital gains is 20%, while the short-term marginal rate is 39.6%. Thus, by allocating to Insight Venture II more than $36 million in short-term capital gain (instead of approximately $18 million in short-term and $18 million in long-term capital gains), Imprimis improperly informed the Internal Revenue Service that Insight Venture II's Members owe for 2000 many millions of dollars more in taxes than they actually owe.

251. Imprimis has made no Distribution to Insight Venture II for the year 2000.

252. On information and belief, Imprimis Distributed more than $143 million to its Members other than Insight Venture II for 2000. These Distributions reflected those Members' share of Imprimis 2000 profits. Insight

Venture II's share of 2000 profits is more than $37 million, yet it has received nothing in Distributions.

253. Notwithstanding the fact that Insight Venture II requested upon reasonable notice to inspect the books and records of Imprimis during business hours at Imprimis' principal place of business, Imprimis has refused to provide Insight Venture II access to such books and records.

## COUNT I

**(Declaratory Judgment -- By Insight and Insight Venture II Against Wexford, Imprimis and WISI)**

254. Insight and Insight Venture II repeat and reallege the allegations contained in paragraphs 206-253 above and incorporate them by reference as if set forth fully herein.

255. Imprimis and WISI assert that they had a right to participate in investments made after the expiration of the respective Investment Periods set forth in the Imprimis and WISI Consulting Agreements. Based on this assertion, Imprimis and WISI have brought claims against Insight and the other defendants in this action.

256. Insight and Insight Venture II fulfilled their contractual and other obligations under and in connection with the Consulting and LLC Agreements.

257. Insight and Insight Venture II are entitled to a declaratory judgment that neither Imprimis nor WISI nor any other Wexford entity had any right of first refusal with respect to investments made after the expiration of the Investment Periods set forth in such contracts.

COUNT II

**(Breach of Contract -- By Insight Against Wexford, Imprimis and WISI)**

258. Insight repeats and realleges the allegations contained in paragraphs 206-257 above and incorporate them by reference as if set forth fully herein.

259. Wexford, Imprimis and WISI failed to fulfill their duties and obligations under the Imprimis and WISI Consulting Agreements by failing to pay Insight management fees and costs to which it is entitled.

260. Insight has suffered and continues to suffer damages as a result of this breach of contract.

261. Wexford, Imprimis and WISI's actions were outrageous, malicious and evidence a reckless disregard for Insight's rights and interests.

## COUNT III

**(Breach of Contract -- By Insight, Insight Venture II, Mr. Horing, Mr. Murdock and Mr. Sobiloff Against Wexford and Imprimis)**

262. Insight, Insight Venture II, Mr. Horing, Mr. Murdock and Mr. Sobiloff repeat and reallege the allegations contained in paragraphs 206-261 above and incorporate them by reference as if set forth fully herein.

263. Mr. Horing, Mr. Murdock and Mr. Sobiloff, as Members of Insight Venture II, were intended third-party beneficiaries of the Imprimis LLC Agreement.

264. Wexford and Imprimis failed to fulfill their duties and obligations under the Imprimis LLC Agreement by refusing to allocate to Insight Venture II its proportional share of both short-term and long-term capital gains for 2000.

265. Mr. Horing, Mr. Murdock, Mr. Sobiloff, Insight and Insight Venture II have suffered and continue to suffer damages as a result of this breach of contract.

266. Wexford and Imprimis' actions were outrageous, malicious and evidence a reckless disregard for Mr. Horing, Mr. Murdock, Mr. Sobiloff, Insight and Insight Venture II's rights and interests.

## COUNT IV

**(Breach of Contract -- By Insight, Insight Venture II, Mr. Horing, Mr. Murdock and Mr. Sobiloff Against Wexford and Imprimis)**

267. Insight, Insight Venture II, Mr. Horing, Mr. Murdock and Mr. Sobiloff repeat and reallege the allegations contained in paragraphs 206-266 above and incorporate them by reference as if set forth fully herein.

268. Mr. Horing, Mr. Murdock and Mr. Sobiloff were intended third-party beneficiaries of the Imprimis LLC Agreement.

269. Wexford and Imprimis failed to fulfill their duties and obligations under the Imprimis LLC Agreement by refusing to Distribute profits due Insight Venture II and by refusing to make a tax Distribution on or before the date on which they were obliged to do so under the Imprimis LLC Agreement.

270. Mr. Horing, Mr. Murdock, Mr. Sobiloff, Insight and Insight Venture II have suffered and continue to suffer damages as a result of this breach of contract.

271. Wexford and Imprimis' actions were outrageous, malicious and evidence a reckless disregard for Mr. Horing, Mr. Murdock, Mr. Sobiloff, Insight and Insight Venture II's rights and interests.

## COUNT V

**(Breach of Contract -- By Insight, Insight Venture II, Mr. Horing, Mr. Murdock and Mr. Sobiloff Against Wexford and Imprimis)**

272. Insight, Insight Venture II, Mr. Horing, Mr. Murdock and Mr. Sobiloff repeat and reallege the allegations contained in paragraphs 206-271 above and incorporate them by reference as if set forth fully herein.

273. Mr. Horing, Mr. Murdock and Mr. Sobiloff were intended third-party beneficiaries of the Imprimis LLC Agreement.

274. Wexford and Imprimis failed to fulfill their duties and obligations under the Imprimis LLC Agreement by refusing to grant Insight Venture II access to its books and records as required by section 10.1 of the Imprimis LLC Agreement.

275. Mr. Horing, Mr. Murdock, Mr. Sobiloff, Insight and Insight Venture II have suffered and continue to suffer damages as a result of this breach of contract.

276. Wexford and Imprimis' actions were outrageous, malicious and evidence a reckless disregard for Mr. Horing, Mr. Murdock, Mr. Sobiloff, Insight and Insight Venture II's rights and interests.

## COUNT VI

**(Breach of Implied Duties of Good Faith and Fair Dealing -- By Insight, Insight Venture II, Mr. Horing, Mr. Murdock and Mr. Sobiloff Against Wexford and Imprimis)**

277. Insight, Insight Venture II, Mr. Horing, Mr. Murdock and Mr. Sobiloff repeat and reallege the allegations contained in paragraphs 206-276 above and incorporate them by reference as if set forth fully herein.

278. Wexford and Imprimis owed to Mr. Horing, Mr. Murdock, Mr. Sobiloff, Insight and Insight Venture II implied duties of good faith and fair dealing pursuant to the Imprimis LLC Agreement. These implied duties of good faith and fair dealing were breached when Wexford and Imprimis failed to: (i) properly allocate their share of the profits earned by Imprimis in 2000, including their share of Imprimis' 2000 short-term and long-term capital gains; (ii) Distribute to Insight and Insight Venture II the tax Distribution required under section 5(a) of Exhibit B of the Imprimis LLC Agreement; (iii) make Distributions in a fair and equitable manner to Insight and Insight Venture II; and (iv) treat each Member of Imprimis equally.

279. Mr. Horing, Mr. Murdock and Mr. Sobiloff were intended third-party beneficiaries of the Imprimis LLC Agreement.

280. Mr. Horing, Mr. Murdock, Mr. Sobiloff, Insight and Insight Venture II have suffered injury as a direct and foreseeable result of Wexford and Imprimis conduct.

281. Wexford, Imprimis and WISI's conduct was outrageous, malicious and evidenced a reckless disregard for Mr. Horing, Mr. Murdock, Mr. Sobiloff, Insight and Insight Venture II's interests.

**COUNT VII**

**(Breach of Fiduciary Duty -- By Insight Venture II, Mr. Horing, Mr. Murdock and Mr. Sobiloff Against Wexford and Imprimis)**

282. Insight Venture II, Mr. Horing, Mr. Murdock and Mr. Sobiloff repeat and reallege the allegations contained in paragraphs 206-281 above and incorporate them by reference as if set forth fully herein.

283. Wexford and Imprimis owed to Mr. Horing, Mr. Murdock, Mr. Sobiloff, Insight and Insight Venture II fiduciary duties, including, but not limited to, the duties of care, loyalty, good faith and fairness.

284. Wexford and Imprimis, acting alone and in conspiracy with others, breached their fiduciary duty to Insight and Insight Venture II by failing to (i) properly allocate their share of the profits earned by Imprimis in 2000, including their share of Imprimis' 2000 short-term and

long-term capital gains; (ii) pay the tax Distribution required under section 5(a) of Exhibit B of the Imprimis LLC Agreement; (iii) make Distributions in a fair and equitable manner to Insight Venture II and (iv) treat each Member of Imprimis equally.

285. Mr. Horing, Mr. Murdock, Mr. Sobiloff, Insight and Insight Venture II have suffered injury as a direct and foreseeable result of Wexford and Imprimis' conduct.

286. Wexford and Imprimis' conduct was outrageous, malicious and evidenced a reckless disregard for Mr. Horing, Mr. Murdock, Mr. Sobiloff, Insight and Insight Venture II's interests.

## COUNT VIII

**(Conversion -- By Insight, Insight Venture II, Mr. Horing, Mr. Murdock and Mr. Sobiloff Against Wexford and Imprimis)**

287. Insight, Insight Venture II, Mr. Horing, Mr. Murdock and Mr. Sobiloff repeat and reallege the allegations contained in paragraphs 206-286 above and incorporate them by reference as if set forth fully herein.

288. The Imprimis LLC Agreement created for the benefit of Insight Venture II, Mr. Horing, Mr. Murdock and Mr. Sobiloff a specific and identifiable fund and obligations regarding the manner in which that fund was to

be treated with respect to, among other things, the allocation of profits to that fund and the Distribution of profits from that fund.

289. Wexford and Imprimis, acting alone and in conspiracy with others, failed to treat the fund created in accordance with their obligations under the Imprimis LLC Agreement and wrongfully converted the fund created by the Imprimis LLC Agreement as part of its scheme to appropriate Insight Venture II's share of Imprimis' profits.

290. Mr. Horing, Mr. Murdock, Mr. Sobiloff, Insight and Insight Venture II have suffered injury as a direct and foreseeable result of Wexford and Imprimis' conduct.

291. Wexford, Imprimis and WISI's conduct was outrageous, malicious and evidenced a reckless disregard for Mr. Horing, Mr. Murdock, Mr. Sobiloff, Insight and Insight Venture II's interests.

## COUNT IX

**(Unjust Enrichment -- By Insight, Insight Venture II, Mr. Horing, Mr. Murdock and Mr. Sobiloff Against Wexford, Imprimis and WISI)**

292. Insight, Insight Venture II, Mr. Horing, Mr. Murdock and Mr. Sobiloff repeat and reallege the allegations contained in paragraphs 206-291 above and incorporate them by reference as if set forth fully herein.

293. By failing to properly allocate or Distribute profits due Insight Venture II, Wexford, Imprimis and WISI breached their contractual and fiduciary duties to Mr. Horing, Mr. Murdock, Mr. Sobiloff, Insight and Insight Venture II and have been unjustly enriched by the portion of profits from investments in companies identified by Insight due Insight Venture II.

294. Wexford, Imprimis and WISI's conduct was outrageous, malicious and evidenced a reckless disregard for Mr. Horing, Mr. Murdock, Mr. Sobiloff, Insight and Insight Venture II's interests.

## COUNT X

**(Unjust Enrichment -- By Insight and Insight Venture II Against Wexford, Imprimis and WISI)**

295. Insight and Insight Venture II repeat and reallege the allegations contained in paragraphs 206-294 above and incorporate them by reference as if set forth fully herein.

296. By failing to properly allocate or distribute profits due Insight Venture II, Wexford, Imprimis and WISI breached their fiduciary duties to Insight and Insight Venture II, breached the Consulting Agreements and failed to provide the consideration bargained for by Insight and Insight Venture II.

297. Accordingly, Wexford, Imprimis and WISI have been unjustly enriched by every investment they or their affiliates made in companies identified by Insight under the Imprimis and WISI Consulting Agreements, as well as by the investments made after April 3, 1999.

298. Wexford, Imprimis and WISI's conduct was outrageous, malicious and evidenced a reckless disregard for Insight and Insight Venture II's interests.

## COUNT XI

**(Imposition of a Constructive Trust -- By Insight, Insight Venture II, Mr. Horing, Mr. Murdock and Mr. Sobiloff Against Wexford, Imprimis and WISI)**

299. Mr. Horing, Mr. Murdock, Mr. Sobiloff, Insight and Insight Venture II repeat and reallege the allegations contained in paragraphs 206-298 above and incorporate them by reference as if set forth fully herein.

300. Under the arrangements between the parties, Wexford, Imprimis and WISI owed Insight and Insight Venture II a fiduciary duty.

301. By failing to properly allocate or Distribute Insight Venture II's carry from investments made by Wexford controlled entities in companies identified by Insight, Wexford, Imprimis and WISI breached that duty and unjustly enriched Wexford and Wexford entities, including WISI, Imprimis and Imprimis S.B., L.P.

302. Mr. Horing, Mr. Murdock, Mr. Sobiloff, Insight and Insight Venture II have no adequate remedy at law.

303. Accordingly, the Court should impose a Constructive Trust on all investments made by Wexford entities in companies identified by Insight and on any proceeds or profits realized from such investments.

## COUNT XII

**(Tortious Interference -- By Insight, Insight Venture II, Mr. Horing, Mr. Murdock and Mr. Sobiloff Against Wexford)**

304. Insight, Insight Venture II, Mr. Horing, Mr. Murdock and Mr. Sobiloff repeat and reallege the allegations contained in paragraphs 206-303 above incorporate them by reference as if set forth fully herein.

305. Wexford was aware of the contractual arrangements between the parties as reflected in the various agreements.

306. Despite this knowledge, through the wrongful acts set forth herein, Wexford intentionally and knowingly acted to interfere with those relations by assisting in, or otherwise procuring, Imprimis and WISI's breach of the agreements through the acts alleged above.

307. Mr. Horing, Mr. Murdock, Mr. Sobiloff, Insight and Insight Venture II have suffered injury as a direct and foreseeable result of Wexford's conduct.

308. Wexford's conduct was outrageous, malicious and evidenced a reckless disregard for Mr. Horing, Mr. Murdock, Mr. Sobiloff, Insight and Insight Venture II's interests.

**COUNT XIII**

**(Aiding and Abetting Breach of Fiduciary Duty -- By Insight, Insight Venture II, Mr. Horing, Mr. Murdock and Mr. Sobiloff Against Wexford)**

309. Insight, Insight Venture II, Mr. Horing, Mr. Murdock and Mr. Sobiloff repeat and reallege the allegations contained in paragraphs 206-330 above incorporate them by reference as if set forth fully herein.

310. Wexford knew or recklessly disregarded the fact that Imprimis owed Mr. Horing, Mr. Murdock, Mr. Sobiloff, Insight and Insight Venture II fiduciary duties and Wexford knew or recklessly disregarded the fact that Imprimis was breaching those obligations by engaging in the conduct alleged herein.

311. Wexford provided substantial assistance to, aided and abetted, encouraged, enabled and conspired to bring about Imprimis' breaches of its fiduciary obligations.

312. Mr. Horing, Mr. Murdock, Mr. Sobiloff, Insight and Insight Venture II have suffered injury as a direct and foreseeable result of Wexford's conduct.

313. Wexford's conduct was outrageous, malicious and evidenced a reckless disregard for Mr. Horing, Mr. Murdock, Mr. Sobiloff, Insight and Insight Venture II's interests.

## COUNT XIV

**(Accounting -- By Insight and Insight Venture II Against Wexford, Imprimis and WISI)**

314. Insight and Insight Venture II repeat and reallege the allegations contained in paragraphs 206-335 above and incorporate them by reference as if set forth fully herein.

315. In light of their actions, Wexford, Imprimis and WISI should be required to provide Insight and Insight Venture II with an accounting describing every investment made by either of them or by any Wexford controlled entity in any investment identified by Insight, the profits derived therefrom, any holdings still maintained, and any distributions made.

316. Insight and Insight Venture II have no adequate remedy at law.

## COUNT XV

**(Prima Facie Tort -- By Insight, Insight Venture II, Mr. Horing, Mr. Murdock and Mr. Sobiloff Against Wexford, Imprimis and WISI)**

317. Insight, Insight Venture II, Mr. Horing, Mr. Murdock and Mr. Sobiloff repeat and reallege the allegations contained in paragraphs 206-316 above and incorporate them by reference as if set forth fully herein.

318. Wexford, Imprimis and WISI, intentionally, without justification and with the malicious intent to harm Insight, Insight Venture II, Mr. Horing, Mr. Murdock and Mr. Sobiloff, failed to: (i) properly allocate their share of the profits earned by Imprimis in 2000, including their share of Imprimis' 2000 short-term and long-term capital gains; (ii) Distribute to Insight Venture II the tax Distribution required under section 5(a) of Exhibit B of the Imprimis LLC Agreement; (iii) make Distributions in a fair and equitable manner to Insight Venture II; and (iv) treat each Member of Imprimis equally.

319. As a result of these wrongful acts, Insight, Insight Venture II, Mr. Horing, Mr. Murdock and Mr. Sobiloff were damaged in the amount of $37,420,348 and in additional amounts to be proved at trial relating to certain transactional costs incurred as a result of Imprimis' failure to properly make a tax Distribution to Insight

Venture II, as required under section 5(a) of the Imprimis LLC Agreement.

WHEREFORE, Insight, Insight Venture II, Mr. Horing, Mr. Murdock and Mr. Sobiloff respectfully request that this Court enter an order:

(a) On Count I, declaring that neither Wexford, Imprimis, WISI nor any other Wexford entity had any right of first refusal with respect to investments made after the conclusion of the contractual Investment Periods;

(b) On Count II, directing Wexford, Imprimis and WISI to pay Insight compensatory damages in an amount to be determined at trial;

(c) On Count III, directing Wexford and Imprimis to pay Mr. Horing, Mr. Murdock, Mr. Sobiloff, Insight and/or Insight Venture II compensatory damages in an amount to be determined at trial, but in a sum no less than $37,420,348 plus interest;

(d) On Count IV, directing Wexford and Imprimis to pay Mr. Horing, Mr. Murdock, Mr. Sobiloff, Insight and/or Insight Venture II compensatory damages in an amount to be determined at trial, but in a sum no less than $37,420,348 plus interest;

(e) On Count V, directing Wexford and Imprimis to pay Mr. Horing, Mr. Murdock, Mr. Sobiloff, Insight and

Insight Venture II compensatory damages in an amount to be determined at trial and to provide specific performance of its obligations under section 10.1 of the Imprimis LLC Agreement;

(f) On Count VI, directing Wexford and Imprimis to pay Mr. Horing, Mr. Murdock, Mr. Sobiloff, Insight and/or Insight Venture II compensatory damages in an amount to be determined at trial, but in a sum no less than $37,420,348 plus interest;

(g) On Count VII, directing Wexford and Imprimis to pay Mr. Horing, Mr. Murdock, Mr. Sobiloff, Insight and/or Insight Venture II compensatory damages in an amount to be determined at trial, but in a sum no less than $37,420,348 plus interest;

(h) On Count VIII, directing Wexford, Imprimis and WISI to pay Mr. Horing, Mr. Murdock, Mr. Sobiloff, Insight and/or Insight Venture II compensatory damages in an amount to be determined at trial, but in a sum no less than $37,420,348 plus interest;

(i) On Count IX, directing Wexford, Imprimis and WISI to pay Mr. Horing, Mr. Murdock, Mr. Sobiloff, Insight and/or Insight Venture II compensatory damages in an amount to be determined at trial, but in a sum no less than $37,420,348 plus interest;

(j) On Count X, directing Wexford, Imprimis and WISI to pay Insight and/or Insight Venture II compensatory damages in an amount to be determined at trial, but in a sum no less than $206.4 million plus interest;

(k) On Count XI, imposing a Constructive Trust on all investments by any Wexford controlled entity in companies identified by Insight to Imprimis or WISI and on any proceeds or profits realized therefrom;

(l) On Count XII, directing Wexford to pay Mr. Horing, Mr. Murdock, Mr. Sobiloff, Insight and/or Insight Venture II compensatory damages in an amount to be determined at trial, but in a sum no less than $37,420,348 plus interest;

(m) On Count XIII, directing Wexford to pay Insight and/or Insight Venture II compensatory damages in an amount to be determined at trial, but in a sum no less than $32.4 million plus interest;

(n) On Count XIV, granting Insight and Insight Venture II an accounting of investments made by Wexford controlled entities in investments identified by Insight, the profits derived therefrom, any distributions of those profits and any remaining holdings in those companies;

(o) On Count XV, directing Wexford, Imprimis and WISI to pay Mr. Horing, Mr. Murdock, Mr. Sobiloff, Insight

and/or Insight Venture II compensatory damages in an amount to be determined at trial, but in a sum no less than $37,420,348 plus interest;

(p) Awarding Mr. Horing, Mr. Murdock, Mr. Sobiloff, Insight and Insight Venture II punitive damages with respect to the conduct alleged in the Amended Counterclaims and Third-Party Complaint, and in particular on Counts VII, XII and XIII;

(q) Granting Mr. Horing, Mr. Murdock, Mr. Sobiloff, Insight and Insight Venture II the costs of this action, including their reasonable attorney's fees; and

(r) Awarding Mr. Horing, Mr. Murdock, Mr. Sobiloff, Insight and Insight Venture II such further and other relief as this Court may deem appropriate.

Dated: New York, New York
May 10, 2001

David B. Tulchin
Daniel H.R. Laguardia

SULLIVAN & CROMWELL
125 Broad Street
New York, New York 10004
(212) 558-4000

Attorneys for Insight Venture Management, Inc., Jeffrey Horing, Jerry Murdock, Peter Sobiloff, Insight Venture Associates II, LLC and Insight Venture Associates III, LLC

**VERIFICATION**

STATE OF NEW YORK )
)SS:
COUNTY OF NEW YORK )

JEFFREY HORING, being duly sworn, deposes and says:

1. I am an officer of Insight Venture Management, Inc. and a Managing Member of Insight Venture Associates II, LLC and Insight Venture Associates III, LLC.

2. I have read the Amended Verified Answer, Affirmative Defenses, Counterclaim and Third-Party Complaint and know the contents thereof.

3. The Amended Verified Answer, Affirmative Defenses, Counterclaim and Third-Party Complaint is true to my own knowledge, except as to matters therein alleged to be on information and belief, and as to those matters I believe them to be true.

JEFFREY HORING

Sworn to before me this
10th day of May, 2001

Notary Public

TERRELL STEVENS
Notary Public, State of New York
No. 01ST6023643
Qualified in New York County
Commission Expires Aug. 23, 2001