# EXHIBIT

# 9

SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

125 Broad Street
New York, NY 10004-2498

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

May 29, 2003

By Facsimile

Arthur Amron,
Wexford Capital LLC,
Wexford Plaza,
411 West Putnam Avenue,
Greenwich, Connecticut 06830.

Martin Siegel,
Brown Rudnick Berlack Israels LLP,
120 West 45th Street,
New York, NY 10036.

Re: Imprimis Investors LLC et ano. v. Insight Venture Management, Inc., et al. (Index No. 00-604431)

Raghavendran v. Imprimis Investors LLC, et al. (Index No. 02-600071)

Imprimis Investors LLC et ano. v. Insight Capital Partners II, L.P., et al. (Index No. 02-601519)

Dear Arthur and Marty:

This is a confidential letter submitted in the course of settlement negotiations and is inadmissible for any purpose in the above-referenced actions.

We have considered Arthur's point about the difficulty of calculating all of the proper adjustments that could be made under the various agreements between the parties. And, although we disagree with the calculations Arthur presented to Daniel on May 22, we agree that, as a general proposition, simplicity is a virtue and that the settlement should contain broad mutual releases.

EXHIBIT
9

# EXHIBIT

# 10

WEXFORD℠

Wexford Capital LLC

Wexford Plaza
411 West Putnam Avenue
Greenwich, CT 06830
www.wexford.com
(203) 862-7000

Direct Dial: 862-7012
Direct Fax: 862-7312
aamron@wexford.com

May 30, 2003

David Tulchin
Sullivan & Cromwell
125 Broad Street
New York, NY 10004-2498
Fax No.: 212-558-3588

Imprimis Investors LLC v. Insight Venture Management Inc. et al.

Dear David:

This letter is a confidential settlement communication in response to your letter dated May 29, 2003. It is inadmissible for any purpose in the above-referenced action or in any other action, dispute or proceeding.

Your May 29 letter clarifies the aggregate settlement amount that Insight proposes be paid and provided a suggested structure for effectuating the settlement. It appears, however, that Insight may still contemplate that the settlement should include some further agreement relating to year 2000 tax allocations. In our view such tax issues are best addressed through the structure of the settlement, and it appears that the structure proposed in your letter may represent an effort to address such issues. If you are in agreement with this and do not contemplate any separate settlement terms relating to tax allocations, please so indicate and we will consider and respond to Insight's settlement offer. If, however, you contemplate that there will be some further agreement relating to tax issues, we believe it is critical to understand the nature and



EXHIBIT
10

consequences of such agreement before responding to Insight's proposal. Such an agreement could have material economic consequences on the parties, and we cannot fully consider your offer without understanding such consequences.

Sincerely,

Arthur H. Amron
Principal & General Counsel

Cc: Martin Siegel

# EXHIBIT

# 11

SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release ("Settlement Agreement"), dated July 14, 2003, is by and among Imprimis Investors LLC, WI Software Investors LLC, Wexford Capital LLC f/k/a Wexford Management LLC, Wexford Insight LLC, Wexford Special Situations 1997, L.P., Wexford Special Situations Institutional L.P., Wexford Spectrum Investors LLC, Robert Holtz, Charles Davidson and Joseph Jacobs (collectively, the "Wexford Parties"), Ramanan Raghavendran ("Raghavendran") and Insight Venture Management, Inc., Insight Venture Associates LLC, Insight Venture Associates II, LLC, Insight Venture Associates III, LLC, Insight Capital Partners II, L.P., Insight Capital Partners (Cayman) II, L.P., Insight Capital Partners III, L.P., Insight Capital Partners III Co-Investors, L.P., Insight Capital Partners (Cayman) III, L.P., Jeffrey Horing, Jerry Murdock and Peter Sobiloff (collectively, the "Insight Parties").

WHEREAS, Wexford Insight LLC and Insight Venture Management, Inc. entered into a Consulting Agreement dated as of June 1, 1996 ("1996 Consulting Agreement"); and

WHEREAS, WI Software Investors LLC and Insight Venture Management, Inc. entered into a Consulting Agreement dated as of April 3, 1997 ("1997 Consulting Agreement"); and

WHEREAS, Imprimis Investors LLC ("Imprimis") and Insight Venture Management, Inc. entered into a Consulting Agreement dated as of September 30, 1998 ("1998 Consulting Agreement"); and

WHEREAS, Insight Venture Associates LLC and certain entities controlled by Wexford Capital LLC entered into the Limited Liability Company Agreement of Wexford Insight LLC dated as of June 1, 1996 ("Wexford Insight LLC Agreement"); and

WHEREAS, Insight Venture Associates II, LLC ("Insight Venture II") and certain entities controlled by Wexford Capital LLC entered into the Limited Liability Company Agreement of WI Software Investors LLC dated as of April 3, 1997 ("WISI LLC Agreement"); and

WHEREAS, Insight Venture II and certain entities controlled by Wexford Capital LLC entered into the Amended and Restated Limited Liability Company Agreement of Imprimis Investors LLC dated as of September 30, 1998 ("Imprimis LLC Agreement"); and

WHEREAS, disputes arose between the Wexford Parties, the Insight Parties and Raghavendran over the 1996 Consulting Agreement, the 1997 Consulting Agreement, the 1998 Consulting Agreement (collectively the "Consulting Agreements"),

EXHIBIT
11

the Wexford Insight LLC Agreement, the WISI LLC Agreement, and the Imprimis LLC Agreement (collectively, the "LLC Agreements" and, together with the Consulting Agreements, the "Relevant Agreements") and various investments considered or made by the Insight Parties and/or the Wexford Parties; and

WHEREAS, certain of the Wexford Parties, certain of the Insight Parties and Raghavendran are parties to certain lawsuits, namely Imprimis Investors LLC et ano. v. Insight Venture Management, Inc., et al., Index No. 00-604431, Raghavendran v. Imprimis Investors LLC, et al., Index No. 02-600071, and Imprimis Investors LLC et ano. v. Insight Capital Partners II, L.P., et al., Index No. 02-601519 (collectively, the "Actions"), all of which are pending in Supreme Court of the State of New York, County of New York (the "Court"); and

WHEREAS, in the Actions certain of the Wexford Parties, certain of the Insight Parties and Raghavendran have interposed claims, counterclaims and third party claims; and

WHEREAS, the parties hereto desire to settle and terminate all of their disputes, including without limitation, their rights under the Relevant Agreements, all matters, claims, counterclaims and third party claims that have been asserted or that could have been asserted in the Actions; and

WHEREAS, to resolve their disputes without the burden and expense of further litigation, and without any admission of liability by any party, the parties have agreed to a settlement in respect of any and all such disputes;

NOW, THEREFORE, in consideration of the mutual promises, releases and covenants contained herein, and for other good and valuable consideration, the parties hereby agree as follows:

1. Payments.

Five business days after the execution of this Settlement Agreement, the following payments will be made.

(a) First, Imprimis shall (i) pay to Insight Venture II the total sum of twenty-eight million, seven hundred and forty-one thousand, six hundred and seventy-five U.S. Dollars ($28,741,675) by wire transfer to an account that shall be identified with specificity by the Insight Parties within two business days of the execution of this agreement, and (ii) pay to Insight Venture Management Inc. the total sum of one million, two hundred and fifty-eight thousand, three hundred and twenty-five U.S. Dollars ($1,258,325) by wire transfer to an account that shall be identified with specificity by the Insight Parties within two business days of the execution of this agreement;

(b) Second, after the payment described in 1(a) above is received by the Insight Parties, and on the same day as that payment is received, Insight Venture Management, Inc. shall pay to Imprimis the total sum of thirteen million U.S. Dollars ($13,000,000) by wire transfer to an account that shall be identified with specificity by the Wexford Parties within two business days of the execution of this agreement;

(c) Third, after the payment described in 1(b) above is received by Imprimis, and on the same day as that payment is received, Imprimis shall pay to Insight Venture II the total sum of thirteen million U.S. Dollars ($13,000,000) by wire transfer to an account that shall be identified with specificity by the Insight Parties within two business days of the execution of this agreement.

(d) Except as otherwise set forth herein, all of the transactions contemplated by this agreement shall be effective upon the receipt of the payments described in 1(c) above.

2. Termination of Agreements and Sale of Interests.

(a) In consideration of the receipt by Imprimis of the payment described in 1(b) above, each of the Consulting Agreements shall terminate. Upon termination, no party shall have any further rights, liabilities or obligations to any other party under any of the Consulting Agreements and, to the extent that any of the Consulting Agreements provide for rights, liabilities or obligations that purport to survive termination of any such agreement (including but not limited to the obligation of any of the parties to indemnify any other party and/or the grant of any proxy), this Settlement Agreement shall be construed as an amendment to any such Consulting Agreement, terminating any such rights, liabilities or obligations.

(b) In consideration of the payments described in 1(a) and 1(c) above, the Insight Parties hereby sell, assign and convey the entirety of their interests, if any, in Wexford Insight LLC, WI Software Investors LLC and Imprimis to Imprimis. Upon such sale, no party shall have any further rights, liabilities or obligations to any other party under any of the LLC Agreements and, to the extent that any of the LLC Agreements provide for rights, liabilities or obligations between the settling parties that purport to survive the sale by the Insight Parties of their interest in the relevant entities, this Settlement Agreement shall be construed as an amendment to such LLC Agreement, terminating any such rights, liabilities or obligations.

3. Dismissal of the Actions. The parties shall execute and deliver to each other Stipulations of Dismissal of each of the Actions with prejudice (in the form attached hereto as Exhibits A, B and C), with each party to bear its own costs, attorneys' fees and expenses. Such Stipulations shall promptly be filed with the Court.

4. Mutual Releases.

(a) The Wexford Parties' Release of the Insight Parties and Raghavendran.

Except for the obligations and rights created or arising under this Settlement Agreement, and effective as of the receipt by Imprimis of the payment described in 1(b) above, each of the Wexford Parties on behalf of each of themselves and all persons claiming rights derivative of any of them, hereby releases and forever discharges each of the Insight Parties and Raghavendran, together with each of their predecessors, successors, agents, consultants, assigns, subsidiaries, affiliates, legal representatives, attorneys, officers, directors, shareholders, members, investors, parent companies, employees, heirs, administrators and executors, from any and all rights, claims, debts, promises, damages, causes of action, costs, losses, attorneys' fees, expenses, compensation, demands, liabilities or obligations of whatever kind or nature, whether known or unknown, suspected or unsuspected, disclosed or undisclosed, existing or contingent, concealed or hidden, at law or in equity, under statute, rule, regulation, at common law or otherwise, which any of the Wexford Parties now has or may have had against any of the Insight Parties and/or Raghavendran, from the beginning of time through the date of this Settlement Agreement, including but not limited to (a) claims, rights or obligations relating directly or indirectly to any of the Relevant Agreements and (b) any and all claims, counterclaims or third-party claims asserted or that could have been asserted in the Actions.

(b) The Insight Parties' and Raghavendran's Release of the Wexford Parties.

Except for the obligations and rights created or arising under this Settlement Agreement, and upon the receipt by Insight Venture II of the payment described in 1(c) above, each of the Insight Parties and Raghavendran on behalf of each of themselves and all persons claiming rights derivative of any of them, hereby releases and forever discharges each of the Wexford Parties, together with each of their predecessors, successors, agents, consultants, assigns, subsidiaries, affiliates, legal representatives, attorneys, officers, directors, shareholders, members, investors, parent companies, employees, heirs, administrators and executors from any and all rights, claims, debts, promises, damages, causes of action, costs, losses, attorneys' fees, expenses, compensation, demands, liabilities or obligations of whatever kind or nature, whether known or unknown, suspected or unsuspected, disclosed or undisclosed, existing or contingent, concealed or hidden, at law or in equity, under statute, rule, regulation, at common law or otherwise, which any the Insight Parties or Raghavendran now has or may have had against any of the Wexford Parties, from the beginning of time through the date of this Settlement Agreement, including but not limited to (a) claims, rights or obligations relating directly or indirectly to any of the Relevant Agreements and (b) any and all claims, counterclaims or third-party claims asserted or that could have been asserted in the Actions.

5. Entire Agreement. This Settlement Agreement constitutes the entire agreement between the parties hereto, and no change or modification shall be valid unless made in writing and signed by the parties hereto.

6. Governing Law. This Settlement Agreement shall be governed by and construed in accordance with the laws of the State of New York.

7. Arbitration. Any dispute arising out of or relating to this Settlement Agreement shall be exclusively settled by one arbitrator appointed pursuant to the Commercial Arbitration Rules of the American Arbitration Association and the arbitration shall be governed by the Commercial Arbitration Rules of the American Arbitration Association. The losing party in any such arbitration shall pay the prevailing party's costs and attorneys' fees.

8. Counterparts and Facsimile Signatures. This Settlement Agreement may be executed in counterparts, each of which together shall constitute but one and the same agreement, but shall not become effective and enforceable until all the parties have signed this Settlement Agreement. Any signature delivered by facsimile shall be binding to the same extent as a manually signed original.

9. No Admission of Liability. This Settlement Agreement, and any of the terms contained herein, shall not be construed as an admission by any party of liability on the merits of the claims, counterclaims and third party claims asserted in the Actions, or any other claims.

10. Discovery Materials. The parties will comply with their duties under paragraphs 14 and 15 of the Stipulation and Order Governing Confidential Material.

11. Confidentiality and Non-disparagement.

(a) Each of the Wexford Parties, the Insight Parties and Raghavendran agree not to disclose or cause to be disclosed, either directly or indirectly, to any person or organization, including but not limited to their respective limited partners, any information regarding the amount of, terms of, facts or circumstances underlying this Settlement Agreement except as commanded by subpoena or other legal process (collectively, a "subpoena"). In such case, the subpoenaed party shall (i) give the other parties to the Actions notice of the subpoena within three business days of being served with it, (ii) shall not respond to the subpoena until ten business days after the provision of such notice, and (iii) shall give the other parties to the Actions prompt notice of any motion to compel the disclosure of such information.

(b) Each of the Wexford Parties, the Insight Parties and Raghavendran agree not to make disparaging or otherwise negative comments about the others, including, but not limited to, statements regarding the facts and circumstances resulting in the bringing and the resolution of the Actions, and the conduct of the parties in the course of the Actions.

IN WITNESS WHEREOF, the parties have duly executed this Agreement as of the date first written above.

IMPRIMIS INVESTORS LLC

Name: Robert Holtz
Title: Vice President

WI SOFTWARE INVESTORS LLC

Name: Robert Holtz
Title: Vice President

WEXFORD INSIGHT LLC

Name: Robert Holtz
Title: Vice President

WEXFORD CAPITAL LLC f/k/a WEXFORD MANAGEMENT LLC

Name: Robert Holtz
Title: Principal

WEXFORD SPECIAL SITUATIONS 1997, L.P.
By: Wexford 97 Advisors, LLC, its GP

Name: Robert Holtz
Title: Vice President

WEXFORD SPECIAL SITUATIONS INSTITUTIONAL L.P.
BY: WEXFORD 97 ADVISORS LLC, ITS GP.

Name: Robert Holtz
Title: Vice President

WEXFORD SPECTRUM INVESTORS LLC

Name: Robert Holtz
Title: Vice President

ROBERT HOLTZ

CHARLES DAVIDSON

JOSEPH JACOBS

INSIGHT VENTURE MANAGEMENT, INC.

Name: Jeff Horing
Title:

INSIGHT VENTURE ASSOCIATES LLC

Name: Jeff Horing
Title: Member

INSIGHT VENTURE ASSOCIATES II, LLC

Name: Jeff Horing
Title: Member

INSIGHT VENTURE ASSOCIATES III, LLC

Name: Jeff Horing
Title: Member

INSIGHT CAPITAL PARTNERS II, L.P.
By: Insight Venture Associates II, LLC

Name: Jeff Horing
Title: Member

INSIGHT CAPITAL PARTNERS (CAYMAN) II, L.P.
By: Insight Venture Associates II, LLC

Name: Jeff Horing
Title: Member

INSIGHT CAPITAL PARTNERS III, L.P.
By: Insight Venture Associates III, LLC

Name: Jeff Horing
Title: Member

INSIGHT CAPITAL PARTNERS III CO-INVESTORS, L.P.
By: Insight Venture Associates III, LLC

Name: Jeff Horing
Title: Member

INSIGHT CAPITAL PARTNERS (CAYMAN) III, L.P.
By: Insight Venture Associates

Name: Jeff Horing
Title: Member

JEFFREY HORING

JERRY MURDOCK

PETER SOBILOFF

RAMANAN RAGHAVENDRAN

INSIGHT CAPITAL PARTNERS III, L.P.

Name:
Title:

INSIGHT CAPITAL PARTNERS III CO-INVESTORS, L.P.

Name:
Title:

INSIGHT CAPITAL PARTNERS (CAYMAN) III, L.P.

Name:
Title:

JEFFREY HORING

JERRY MURDOCK

PETER SOBILOFF

RAMANAN RAGHAVENDRAN

INSIGHT CAPITAL PARTNERS III, L.P.

______________________
Name:
Title:

INSIGHT CAPITAL PARTNERS III CO-INVESTORS, L.P.

______________________
Name:
Title:

INSIGHT CAPITAL PARTNERS (CAYMAN) III, L.P.

______________________
Name:
Title:

JEFFREY HORING

______________________

JERRY MURDOCK

______________________

PETER SOBILOFF

______________________

RAMANAN RAGHAVENDRAN

______________________

# EXHIBIT

# 12

WEXFORD℠

Wexford Capital LLC

Wexford Plaza
411 West Putnam Avenue
Greenwich, CT 06830
www.wexford.com
(203) 862-7000

Direct Dial: 862-7012
Direct Fax: 862-7312
aamron@wexford.com

February 9, 2004

David Tulchin
Sullivan & Cromwell
125 Broad Street
New York, NY 10004-2498
Fax No.: 212-558-3588

Imprimis Investors LLC & Insight Venture Management Inc.

Dear David:

We have recently had discussions with the IRS concerning the 2000 tax return filed by Imprimis. It appears from such discussions that Insight or certain of its members have filed, and continue to pursue, challenges to Imprimis' 2000 tax allocation to Insight. As you are aware, such challenges were also raised in the parties' lawsuit, and were settled pursuant to the settlement agreement. If the information we have received is correct that Insight is continuing to pursue challenges to the 2000 tax allocations, such conduct would be a serious breach of its obligations under the settlement agreement.

To enable us to respond to the IRS' inquiries, we request that Insight provide us as soon as possible with a full explanation of any challenges that it or its members have asserted to Imprimis' 2000 tax allocations to Insight and copies of any communications with the IRS relating to such challenges. In addition, we request that Insight and its members agree to withdraw any objection to the Imprimis tax allocations and cooperate with Imprimis and its tax advisors in advising the IRS that the parties are in agreement regarding Imprimis' 2000 allocations.

Also, we have been requested by the IRS to provide them with a copy of the settlement agreement, other underlying documents and an explanation of the relevant transactions, and we are advising you, as contemplated under Section 11(a) of the agreement that we intend to comply with this request.

138263.1

EXHIBIT
12

We ask for Insight's immediate response to these requests. We view its apparent conduct with great disapprobation. While we are not anxious to pursue renewed legal claims against Insight and its members, we are prepared to respond appropriately to violations of our agreement. Obviously, we reserve all of our rights.

Sincerely,

Arthur H. Amron
Principal & General Counsel

# EXHIBIT

# 13

SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

125 Broad Street
New York, NY 10004-2498

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

February 13, 2004

By Facsimile

Arthur Amron,
Wexford Capital LLC,
Wexford Plaza,
411 West Putnam Avenue,
Greenwich, Connecticut 06830.

Re: Insight Venture Partners

Dear Arthur:

Thank you for your February 9 letter. We would of course be happy to discuss exchanging information regarding the positions Insight and Wexford have taken with the IRS in connection with Imprimis' 2000 tax allocation to Insight Venture Associates II, LLC.

We are somewhat confused, however, by your apparent contention that Insight's tax filings or communications with the IRS constitute a breach of the Settlement Agreement. While we stand ready to hear your views on this, we know of nothing in the Settlement Agreement that in any way requires Insight to withdraw or amend its tax returns.

Sincerely,

David Tulchin

EXHIBIT
13

# EXHIBIT

# 14

WEXFORD[SM]
Wexford Capital LLC

Wexford Plaza
411 West Putnam Avenue
Greenwich, CT 06830
www. wexford.com
(203) 862-7000

Direct Dial: 862-7012 Direct Fax: 862-7312 aamron @wexford.com

March 5, 2004

David Tulchin, Esq.
Sullivan & Cromwell
125 Broad Street
New York, NY 10004

Re: <u>Imprimis Investors LLC & Insight Venture Management, Inc.</u>

Dear David:

I write to follow up on my letter dated February 9, 2004 and to respond to your letter dated February 13, 2004.

First, you have not complied with my request that Insight provide us with an explanation of any challenges that it or its members have asserted to Imprimis' 2000 tax allocations to Insight and copies of relevant communications with the IRS. It is those challenges that have lead to the IRS' inquiries of Imprimis and this current exchange between us. Therefore, if this issue is to be resolved consensually, I again ask that you provide us with such information promptly.

You are being disingenuous when you suggest in your February 9, 2004 letter that you would be willing to discuss exchanging information regarding the parties' respective positions before the IRS. As you well know, it is and always has been Imprimis' position that the 2000 tax allocations to Insight were appropriate under the Imprimis LLC Agreement.

Second, you also failed to respond to my February 9 request that Insight and its members agree to withdraw their objections to the Imprimis tax allocations. Instead, you profess confusion about Imprimis' belief that Insight's tax filings constitute a breach of the Settlement Agreement. To avoid any further real or feigned confusion on your part, please be advised that Imprimis believes that the challenges that Horing, Murdock and the other Insight Partners raised to the 2000 tax allocations in their counterclaims were completely and finally resolved under the Settlement Agreement. Under that settlement, in exchange for a substantial payment, Insight and its partners (among other things) waived any objection to Imprimis' year 2000 allocations of short and long-term capital gains.

EXHIBIT
14

Thus, in their Amended Verified Answer, Affirmative Defenses, Counterclaims and Third Party Complaint, dated May 10, 2001 (the "Amended Counterclaims"), prepared by your firm, Horing and Murdock alleged, inter alia, that the allocations made to Insight Venture in Imprimis' 2000 K-1 were improper. Specifically, the Amended Counterclaims alleged, in relevant part:

> 249. At the end of March 2001 or the beginning of April 2001, Insight Venture II received from Imprimis a Schedule K-1 to IRS Form 1065, which reported Insight Venture II's share of Imprimis' profits for 2000 (the "Insight Venture II K-1"). This K-1 reported Insight Venture II's share of Imprimis' interest income as $797,243 and its share of net short-term capital gains as $36,623,088. Insight Venture II was not allocated any long-term capital gains.
>
> 250. Imprimis' allocation to Insight Venture II of more than $36 million of short-term capital gains was wrongful. It substantially overstated the tax liabilities of the Members of Insight Venture II - including Messrs. Horing, Murdock and Sobiloff. This is because the highest marginal federal tax rate applicable to long-term capital gains is 20%, while the short-term marginal rate is 39.6%. Thus, by allocating to Insight Venture II more than $36 million in short-term capital gain (instead of approximately $18 in short term and $18 million in long-term capital gains), Imprimis improperly informed the Internal Revenue Service that Insight Venture II's Members owe for 2000 many millions of dollars more in taxes than they actually owe.]

See also, Amended Counterclaims ¶¶ 229-31, 248.

When Imprimis and Insight entered into the Settlement Agreement, that settlement resolved not only Imprimis' claims, but also Insight's Amended Counterclaims, including any claim that the 2000 allocations of short-term gains to Insight, and the subsequent pass-through to Horing and Murdock were improper. In this regard, the Settlement Agreement stated, in relevant part:

> WHEREAS, in the Actions certain of the Wexford Parties, certain of the Insight Parties and Raghavendran have interposed claims, counterclaims and third party claims; and
>
> WHEREAS, the parties hereto desire to settle and terminate all of their disputes, including without limitation, their rights under the Relevant Agreements, all matters, claims, counterclaims and third party claims that have been asserted or that could have been asserted in the Actions." (emphasis added.)

Imprimis believes that it is undisputable that, under the plain language of the Settlement Agreement, the parties resolved all disputes over the 2000 allocations by Imprimis. If the objections to the 2000 allocation that your clients apparently still are pursing were to be allowed by the IRS, the necessary result would be that the other members of Imprimis would have to be reallocated the short-term gains for the year 2000. But that was exactly the issue raised by the Amended Counterclaims, and resolved for all purposes by the Settlement Agreement. As such, the Settlement Agreement bars any further pursuit of those objections to Imprimis' 2000 allocations.

That the settlement resolved any claims by Messrs. Horing and Murdock to a revised allocation of short-term capital gains is also amply demonstrated by the negotiations you and I conducted leading to the Settlement Agreement. For example, in your May 29, 2003 letter to me, you proposed that:

> The parties will agree upon some equitable manner of handling the tax consequences of the allocation of Imprimis' realized gains for the year 2000, including the proper division between short- and long-term capital gains.

In response, on June 4, 2003, I informed you that:

> We disagree with the suggestion that there was anything inappropriate in the year 2000 tax allocations. We will, however, modify our May 16 proposal to increase the price that we would pay for the purpose of Insight's interest in Imprimis and Wexford Insight to $25 million. Alternatively, we would be willing to proceed with a settlement under the alternative structure set forth in your June 2 letter that results in a net payment to Insight of $23.5 million. In each case the settlement would include a full exchange of releases and the dismissal with prejudice of all claims by all parties.

As you well know, the substance of the ultimate settlement, as reflected in the Settlement Agreement, incorporated this structure, and provided Insight an additional sum <u>to resolve any possible remaining dispute over the tax allocations</u>. The settlement included a full exchange of releases and a dismissal with prejudice of all claims by all parties, including the Amended Counterclaims concerning the 2000 tax allocations.

Additional evidence that the Insight Partners understood that the Settlement Agreement resolved all tax disputes relating to Imprimis' 2000 tax allocations is the fact that, by letter dated September 5, 2003, Horing withdrew an objection that he had filed and provided a copy of the letter withdrawing the objection to Imprimis.

For these reasons, it is clear that any dispute as to the 2000 tax allocations raised by Insight, Horing and Murdock was completely and fully resolved for all purposes as part of the settlement. Accordingly, any objection they already had filed to Imprimis' tax allocation should have been withdrawn because, as a result of the settlement, the parties were in agreement regarding Imprimis' 2000 allocations, and the settlement included, as an integral part thereof, a waiver by Horing and Murdock of any claims relating to the allocations of short-term and long-term capital gains by Imprimis for the year 2000.

In sum, we believe that the failure of Horing and Murdock to withdraw their already filed objection to the tax allocation is a clear violation of the Settlement Agreement. Accordingly, if Messrs. Horing and Murdock do not agree [within one week from the date of this letter] to withdraw, with prejudice, any objection to the Imprimis tax allocations and cooperate with Imprimis and its tax advisors in advising the IRS that the parties are in agreement regarding Imprimis' 2000 allocations, Imprimis will take such steps as are appropriate to protect its rights and enforce the Settlement Agreement.

Sincerely,

Arthur H. Amron
Principal & General Counsel

# EXHIBIT

# 15

SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

125 Broad Street
New York, NY 10004-2498

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

March 16, 2004

By Facsimile

Arthur Amron,
Wexford Capital LLC,
Wexford Plaza,
411 West Putnam Avenue,
Greenwich, Connecticut 06830.

Re: Insight Venture Partners/Imprimis

Dear Arthur:

This responds to your letter of March 5.

You state that the Internal Revenue Service has made inquiries of Imprimis, and in your February 9 letter you stated that Imprimis had responded to those inquiries. As I suggested on February 13, Insight is willing to discuss an exchange of information whereby we would provide you with the information you seek in return for Wexford's providing us with similar information regarding Imprimis' communications with the I.R.S.

As to your interpretation of the Settlement Agreement, it seems that we disagree. The Settlement Agreement does not require that Insight change its position with the Internal Revenue Service. During our negotiations, you knew all about Insight's position with the I.R.S. and never requested during our discussions that Insight abandon that position. Most importantly, there is no provision in the Settlement Agreement that so requires. Indeed, I don't understand you to contend otherwise. Of course, we settled our

EXHIBIT
15

Arthur Amron



claims against Wexford involving the year 2000 tax allocation issues, but the Settlement Agreement contains no requirement that Insight, Mr. Horing or Mr. Murdock abandon any position with the I.R.S. To the contrary, you waived any such demand in your execution of the agreement.

Sincerely,

David Tulchin /DL

David Tulchin