IN THE UNITED STATES COURT OF FEDERAL CLAIMS
(Judge Marian Blank Horn)
No. 07-209 T

IMPRIMIS INVESTORS LLC, WEXFORD SPECIAL SITUATIONS 1997 INSTITUTIONAL, LP, TAX MATTERS PARTNER,

Plaintiff,

v.

THE UNITED STATES OF AMERICA,

Defendant.

**JOINT STIPULATION OF FACTS AND EXHIBITS**

Pursuant to the Court's Order dated July 30, 2007, the parties submit the following joint stipulation of facts and supporting appendix. Pursuant to the agreement of the parties, Exhibits 25 through 34 are not included in this submission at this time, certain redactions have been made to the plaintiff's separately identified material facts, and certain redactions have been made to the Declaration of Arthur H. Amron so that the parties may try to resolve certain confidentiality and authenticity concerns. With the permission of the Court, except as to motions pertaining to confidentiality issues, the parties have agreed not to proceed with discovery or filing motions until December 14, 2007, so that the parties have an opportunity to resolve these confidentiality and authenticity concerns.

The parties agree that the following facts are established. The parties also stipulate that all documents in the appendix, other than Exhibits 40 and 41, the Declarations of Arthur H. Amron and Jay Maymudes, are authentic. The plaintiff contends that the declarations are authentic. However, the parties do not waive any arguments with respect to the relevance,

weight, interpretation, and significance of the facts and documents; or any arguments, other than authenticity, with respect to the admissibility of the documents in the appendix. In addition, the parties agree that no inference should be drawn from the ordering or organization of the facts and documents. Unless otherwise specified, all references to "Section" are to the Internal Revenue Code of 1986 (26 U.S.C.) as amended and in effect for the period at issue.

Following the joint stipulation of facts, the plaintiff and participating partner have separately identified facts they contend are material, but which the parties were not able to stipulate to at this time.

The parties have been as thorough and comprehensive as possible in preparing this joint stipulation of facts based on the information available prior to conducting discovery. However, the parties agree that no inference should be drawn that this is the complete universe of facts relevant to the issues in this case. Indeed, the parties agree that after discovery has proceeded, it may be possible to supplement the joint stipulation of facts. In addition, the following documents have been identified as potentially material, but the parties have not been able to stipulate to them due to confidentiality and authenticity concerns: Exhibit 25, Letter from Amron to Tulchin, dated May 16, 2003; Exhibit 26, Letter from Amron to Tulchin, dated May 23, 2003; Exhibit 27, Letter from Tulchin to Amron, dated May 29, 2003; Exhibit 28, Letter from Amron to Tulchin, dated May 30, 2003; Exhibit 29, Letter from Tulchin to Amron, dated June 2, 2003; Exhibit 30, Letter from Amron to Tulchin, dated June 20, 2003; Exhibit 31, Settlement Agreement; Exhibit 32, Letter from Amron to Tulchin, dated February 9, 2004; Exhibit 33, Letter from Amron to Tulchin, dated March 5, 2004; Exhibit 34, Letter from Tulchin to Amron, dated March 16, 2004. The parties will work to resolve the concerns by no later than December 14, 2007, and will file a supplement to this joint stipulation of facts and appendix, as

appropriate. Unresolved concerns will in no way preclude any party from filing facts or documents after December 14, 2007.

**THE PLAINTIFF AND AFFILIATED ENTITIES**

1. Imprimis Investors LLC ("Imprimis") is an investment vehicle which makes, holds, and manages investments on behalf of certain investment funds for Wexford Capital LLC ("Wexford Capital"). *See* Exhibit 1, p. 4, ¶ 2.3 (Imprimis LLC Agreement).

2. Wexford Capital is an investment advisor registered with the Securities and Exchange Commission. Wexford Capital was formed in 1994 and manages a series of hedge funds and private equity funds from its Greenwich, Connecticut headquarters. *See* Exhibit 2, p. 36, ¶ 212 (Insight Amended Verified Answer, Affirmative Defenses, Counterclaims and Third-Party Complaint, dated May 10, 2001).

3. Imprimis was organized as a limited liability company under the state laws of Delaware in June 1997. For Federal income tax purposes, Imprimis is treated as a partnership. The principal place of business of Imprimis is at c/o Wexford Capital LLC, 411 West Putnam Avenue, Greenwich, CT 06830. Imprimis's Federal tax identification number is 06-1486378. In the 2000 tax year, Imprimis was an accrual basis taxpayer. Exhibit 1, p. 4, ¶ 2.1 (Imprimis LLC Agreement); *See* Exhibit 3, p. 1 (Imprimis Investors LLC Federal Partnership Tax Return for the 2000 tax year).

4. During the tax year ended December 31, 2000, Imprimis membership consisted of: Wexford Special Situations 1997 Institutional, L.P. ("Wexford"), Wexford Special Situations 1997, L.P., Wexford Spectrum Investors LLC, Wexford Partners Investment Company (collectively, the "Wexford Members"), and Insight Venture Associates II, LLC ("Insight").

5. Wexford is the Tax Matters Partner of Imprimis under Section 6231(a)(7). Wexford is a limited partnership whose principal place of business is located at c/o Wexford Capital LLC, 411 West Putnam Avenue, Greenwich, CT 06830. *See* Exhibit 4, pp. 1-2 (Certification of Tax Matters Partner).

**THE INTERVENING PARTICIPATING PARTNER AND AFFILIATES**

6. Insight is a limited liability company whose principal place of business is located at c/o Insight Venture Partners, 680 Fifth Avenue, 8th Floor, New York, NY 10019. Insight's Federal tax identification number is 06-1491774. Insight is a limited liability company that is in the business of investments. For Federal income tax purposes, Insight is treated as a partnership. During the 2000 tax year, Insight had six partners who were: (1) Jeffrey L. Horing, (2) Jerry Murdock, Jr., (3) Ramanan Raghavendran, (4) Peter Sobiloff, (5) William F. Doyle, and (6) Insight Capital Partners II – Coinvestors LP. In the tax year ended December 31, 2000, Insight was an accrual basis taxpayer. *See* Exhibit 5, p. 1 (Insight Venture Associates II LLC Federal Partnership Tax Return for the 2000 tax year); Exhibit 6, pp. 31-53 (Insight Venture Associates II LLC Agreement).

7. Insight is affiliated with Insight Venture Partners, a venture capital firm located at 680 Fifth Avenue, 8th Floor, New York, NY 10019. Insight Venture Partners offers a wide variety of investment advisory and venture capital services to a wide variety of investment firms and start-up companies. *See* Exhibit 2, p. 37, ¶ 216 (Insight Amended Verified Answer, Affirmative Defenses, Counterclaims and Third-Party Complaint, dated May 10, 2001); Exhibit 7, p. 5, ¶ 15 (Raghavendran Complaint).

**THE DEFENDANT – THE UNITED STATES**

8. The United States is the defendant in this case. *See* Exhibit 8 (Answer, dated July 27, 2007).

**IMPRIMIS AND INSIGHT**

9. Effective as of September 30, 1998, the Wexford Members and Insight entered into a limited liability agreement ("the Imprimis LLC Agreement"). Jeffrey L. Horing executed the Imprimis LLC Agreement on behalf of Insight. *See* Exhibit 1 (Imprimis LLC Agreement).

10. The Imprimis LLC Agreement did not require Insight to make a capital contribution. *See* Exhibit 1 (Imprimis LLC Agreement).

11. Effective as of September 30, 1998, Imprimis entered into a consulting agreement (the "Imprimis Consulting Agreement") with Insight Venture Management, Inc. ("Insight Venture"). Insight Venture is an affiliate of Insight and Insight Venture Partners. Jeffrey L. Horing executed the Consulting Agreement on behalf of Insight Venture. *See* Exhibit 10, p. 5 (Imprimis Consulting Agreement); Exhibit 2, p. 37, 38, 40, 41 ¶¶ 218, 219, 220, 227, 228 (Insight Amended Verified Answer, Affirmative Defenses, Counterclaims and Third-Party Complaint, dated May 10, 2001).

**THE PARTNERSHIP ALLOCATION PROVISION AT ISSUE**

12. With regard to the Imprimis LLC Agreement, the allocation at issue in this proceeding was reflected in Section 3(f) of Exhibit B of the Imprimis LLC Agreement (the "Insight Allocation"). The Insight Allocation states the following:

> (f) thereafter, 80% to the Wexford Members and 20% to Insight; provided, however, that in the event any Net Profits consist of items of ordinary income, then, in lieu of the above allocations (i) a special gross income allocation shall be made to Insight of such items or ordinary income (to the extent thereof) equal to the Tentative Insight Allocation (as defined below) and (ii) the resulting Net

Profits, computed without regard to the items of gross income allocated under the preceding clause (i), shall be allocated:

(i) if the initial allocation made in clause (f)(i) above (the "Initial Insight Allocation") equals the Tentative Insight Allocation, to the Wexford Members, or

(ii) if the initial Insight Allocation is less than the Tentative Insight Allocation, an amount equal to such shortfall to Insight and the remainder to the Wexford Members.

For purposes of the preceding sentence the "Tentative Insight Allocation" shall mean the amount of Net Profits that would otherwise have been allocated to Insight under this Agreement absent the proviso of such preceding sentence.

*See* Exhibit 1, p. 5 of Exhibit B to Agreement (Imprimis LLC Agreement).

13. For the tax year ended December 31, 2000, Imprimis' capital gain was comprised of $99,821,405 of net short-term capital gain and $73,444,348 of net long-term capital gain. *See* Exhibit 3 (Imprimis Investors LLC Federal Partnership Tax Return for the 2000 tax year).

14. For the tax year ended December 31, 2000, Imprimis issued Schedule K-1s reflecting the following allocations:

| | Ordinary Income | Short Term Capital Gain | Long Term Capital Gain |
|---|---|---|---|
| Insight | $797,260 | $36,623,088 | $0 |
| Wexford | $231,824 | $13,792,529 | $16,034,076 |
| WSS | $830,048 | $49,384,376 | $57,410,272 |

*See* Exhibit 3, pp. 18, 22, 29 (Imprimis Investors LLC Federal Partnership Tax Return for the 2000 tax year).

**LAWSUITS BETWEEN WEXFORD-IMPRIMIS AND INSIGHT**

15. On October 12, 2000, Imprimis and WI Software filed a complaint in the Supreme Court of the State of New York, County of New York, Index No. 00-604431 (the "Imprimis Complaint") against Insight Venture, Horing, Murdock, Insight, and Insight Venture

Associates III, LLC (the "Insight Parties"). This action is hereinafter referred to as the "New York Lawsuit I." *See* Exhibit 17 (Imprimis Complaint, dated October 12, 2000).

16. On January 8, 2001, the Insight Parties filed a Verified Answer, Affirmative Defenses, Counterclaims, and Third-Party Complaint in the New York Lawsuit I. *See* Exhibit 18 (Insight Verified Answer, Affirmative Defenses, Counterclaims and Third-Party Complaint, dated January 8, 2001).

17. On May 10, 2001, the Insight Parties filed an Amended Verified Answer, Affirmative Defenses, Counterclaims, and Third Party Complaint ("Amended Answer and Counterclaim") in the New York Lawsuit I. *See* Exhibit 2 (Insight Amended Verified Answer, Affirmative Defenses, Counterclaims and Third-Party Complaint, dated May 10, 2001).

18. On December 12, 2001, the Supreme Court of the State of New York, Judge Cahn, issued an opinion in the New York Lawsuit I (the "New York State Opinion"). *See* Exhibit 19 (Supreme Court of the State of New York Opinion dated December 12, 2001).

19. On January 7, 2002, former Insight member Ramanan Raghavendran filed a Complaint against Imprimis in the Supreme Court of the State of New York, County of New York, Index No. 02-600071. This action is hereinafter referred to as the "New York Lawsuit II." *See* Exhibit 7, p. 8, ¶ 26 (Raghavendran Complaint).

20. On April 19, 2002, Imprimis and WISI filed a Complaint in New York Supreme Court against Insight Capital Partners II, L.P., Raghavendran, and others, Index No. 02-601519. This action is hereinafter referred to as the "New York Lawsuit III." *See* Exhibit 20 (Imprimis Complaint, dated April 19, 2002).

21. On June 10, 2002, Imprimis and other Wexford Capital entities filed an Amended Complaint in the New York Lawsuit I. *See* Exhibit 21 (Imprimis Amended Complaint, dated June 10, 2002).

22. On July 9, 2002, by the parties' stipulation, the New York Supreme Court consolidated the New York Lawsuit I, the New York Lawsuit II, and the New York Lawsuit III, hereinafter referred to as the "Consolidated New York Lawsuit." *See* Exhibit 22 (Stipulation of Consolidation, dated July 9, 2002).

23. On August 9, 2002, Imprimis filed an Amended and Consolidated Complaint in the Consolidated New York Lawsuit. *See* Exhibit 23 (Imprimis Amended and Consolidated Complaint, dated August 9, 2002).

24. On August 29, 2002, the Insight Parties filed a Verified Answer to the Amended and Consolidated Complaint, Affirmative Defenses, Counterclaims and Third Party Complaint in the Consolidated New York Lawsuit. *See* Exhibit 24 (Insight's Verified Answer to the Amended and Consolidated Complaint, Affirmative Defenses, Counterclaims and Third Party Complaint dated August 29, 2002).

**THE SETTLEMENT OF THE NEW YORK LAWSUITS**

25. In July 2003, Imprimis, WI Software, Wexford Capital, Wexford Insight, Wexford, WSS, Wexford Spectrum Investors LLC, Robert Holtz, Charles Davidson, Joseph Jacobson, Raghavendran, Insight Venture, Insight Venture Associates LLC, Insight, Insight Venture Associates III, LLC, Insight Capital Partners II, L.P., Insight Capital Partners (Cayman) II, L.P., Insight Capital Partners III, L.P., Insight Capital Partners III Co-Investors, L.P., Insight Capital Partners (Cayman) III, L.P., Horing, Murdock, and Sobiloff executed a settlement agreement pertaining to the Consolidated New York Lawsuit (the "Settlement Agreement").

**IRS EXAMINATION**

26. For the 2000 tax year, Insight filed a Notice of Inconsistent Treatment (Form 8082) in which it explained that the allocation of all short-term capital gain and no long-term capital gain to it by Imprimis was improper. *See* Exhibit 35 (Insight's Notice of Inconsistent Treatment or Administrative Adjustment Request (Form 8082)).

27. The attachment to Insight's Form 8082 stated that Insight was seeking a reallocation of the $36,623,088 of short term capital reported on the Schedule K-1 issued to Insight. On the Form 8082, Insight did not seek a reallocation of ordinary income reported on the Schedule K-1 issued to Insight. *See* Exhibit 35, p. 2 (Insight's Notice of Inconsistent Treatment or Administrative Adjustment Request (Form 8082)).

28. The IRS commenced a partnership level tax examination of Imprimis for its tax year ended December 31, 2000. *See* Exhibit 36 (Notice of Beginning of Administrative Proceeding, dated July 27, 2004).

29. On February 7, 2005, the IRS issued a Summary Report. *See* Exhibit 38 (IRS Summary Report).

30. On April 21, 2005, the IRS issued a sixty-day letter to Imprimis. *See* Exhibit 42 (IRS 60 Day Letter to Insight Ventures Associates II, LLC).

31. Both Insight and Wexford filed protests in response to the IRS sixty-day letter.

32. On January 2, 2007, the IRS issued a Final Partnership Administrative Adjustment ("FPAA") containing two "Inconsistent Positions." See Exhibit 39 (Notice of Final Partnership Administrative Adjustments (FPAA)).

## PLAINTIFF'S SEPARATELY IDENTIFIED MATERIAL FACTS

**THE PLAINTIFF AND AFFILIATED ENTITIES**

1. During the tax year ended December 31, 2000, Imprimis had two participating members,[1] Wexford Special Situations 1997 Institutional, LP ("Wexford") and Wexford Special Situations 1997, LP ("WSS"). During the tax year ended December 31, 2000, Imprimis had one non-participating member, Insight Venture Associates II, LLC ("Insight").[2] During the 2000 tax year, Wexford and WSS, on one hand, and Insight, on the other, were not commonly controlled. Insight was not related or affiliated with Wexford or WSS. *See* Exhibit 1, p. 3, ¶ 1.16 (Imprimis LLC Agreement).

2. Wexford's Federal tax identification number is 06-1483925. Wexford is a partnership that is in the business of investments. During the 2000 tax year, Wexford had eight partners. During the 2000 tax year, seven of Wexford's partners were tax exempt organizations or individual retirement accounts, all seven of which were exempt from Federal income tax. Together, these seven tax exempt partners held an approximate 99% interest in Wexford. During the 2000 tax year, the eighth Wexford partner was a limited liability company, whose members were subject to Federal income tax. This eighth partner held an approximate 1% interest in Wexford. *See* Exhibit 3, p. 22 (Imprimis Investors LLC Federal Partnership Tax Return for the 2000 tax year); Exhibit 41, pp. 1-2, ¶¶ 4-5 (Maymudes Declaration).

---

[1] Since Imprimis is a partnership for Federal income tax purposes, use of the terms "members" and "partners" are used interchangeably to refer to the "members" of Imprimis.

[2] Other members of Imprimis included Wexford Spectrum Investors LLC and Wexford Partners Investment Company. However, the issues presented in this case have no Federal income tax implications to either Wexford Spectrum Investors LLC or Wexford Partners Investment Company.

3. WSS is a limited partnership whose principal place of business is located at c/o Wexford Capital LLC, 411 West Putnam Avenue, Greenwich, CT 06830. WSS's employer identification number is 06-1476147. WSS is a partnership that is in the business of investments. During the 2000 tax year, WSS had ninety-nine partners, twenty-four of which were limited liability companies or partnerships. *See* Exhibit 3, p. 18 (Imprimis Investors LLC Federal Partnership Tax Return for the 2000 tax year); Exhibit 41, p. 1-2, ¶¶ 1, 6 (Maymudes Declaration).

**THE INTERVENING PARTICIPATING PARTNER AND AFFILIATES**

4. Insight is affiliated with Insight Venture Partners, a venture capital firm located at 680 Fifth Avenue, 8th Floor, New York, NY 10019. Insight Venture Partners offers a wide variety of investment advisory and venture capital services to a wide variety of investment firms and start-up companies. In 2000, managing directors of Insight Venture Partners included Horing, Raghavendran, Murdock, Sobiloff, and Doyle. *See* Exhibit 2, p. 37, ¶ 216 (Insight Amended Verified Answer, Affirmative Defenses, Counterclaims and Third-Party Complaint, dated May 10, 2001); Exhibit 7, p. 5, ¶ 15 (Raghavendran Complaint).

**IMPRIMIS HIRES INSIGHT**

5. From its inception in 1995 through the period at issue, Insight Venture Partners and related entities provided investment advisory and venture capital services to several firms, including but not limited to Wexford Capital LLC and related entities, UBS, Goldman Sachs, MSD Capital, Warburg Pincus, Oak Investments, and Integral Capital Partners. *See* Exhibit 9, Schedule 3 (Insight Discovery Response).

6. On page 1, the Imprimis Consulting Agreement states the following: "WHEREAS, Imprimis desires to engage InSight [Venture] to advise on investments in such

industries, and InSight [Venture] desires to advise Imprimis in such capacity, on the terms and conditions set forth herein." *See* Exhibit 10, p. 1 (Imprimis Consulting Agreement).

7. Pursuant to the Imprimis Consulting Agreement, Imprimis agreed to pay Insight Venture for its investment advice and services. That compensation took two forms: (1) "fixed fees," which were based upon the capital Imprimis invested in investments identified by Insight Venture; and (2) "performance-based fees" or "incentive fees" that were based upon the profits realized by Imprimis from those investments. *See* Exhibit 2, pp. 38, 40, 41, ¶¶ 220, 227, 228, 229 (Insight Amended Verified Answer, Affirmative Defenses, Counterclaims and Third-Party Complaint, dated May 10, 2001); Exhibit 11, p. 2 (Decision of the New York Supreme Court Appellate Division, dated December 12, 2002); Exhibit 40, p. 2, ¶ 4 (Amron Declaration).

8. Imprimis agreed to distribute the incentive fees by providing Insight Venture (or an Insight Venture affiliate) with a non-participating interest in Imprimis. Insight, an Insight Venture affiliate, was designated by Insight Venture to become a non-participating member of Imprimis in order to receive the incentive fees. *See* Exhibit 2, pp. 38, 40, 41, ¶¶ 220, 227, 228, 229 (Insight Amended Verified Answer, Affirmative Defenses, Counterclaims and Third-Party Complaint, dated May 10, 2001); Exhibit 12, pp. 4-8 (Insight's Memorandum of Law In Support of Their Motion to Dismiss the Complaint); Exhibit 11, p. 2 (Decision of the New York Supreme Court Appellate Division, dated December 12, 2002); Exhibit 40, p. 2, ¶ 6 (Amron Declaration).

9. Imprimis incorporated Insight's incentive fee into the Imprimis LLC Agreement as an accommodation to Insight Venture. The purpose of providing Insight with a non-participating membership interest was to reflect the professional relationship between the parties – that is, Imprimis was providing the capital and Insight was providing its investment advice. *See* Exhibit 2, pp. 38, 40, 41, ¶¶ 220, 227, 228, 229 (Insight Amended Verified Answer,

Affirmative Defenses, Counterclaims and Third-Party Complaint, dated May 10, 2001); Exhibit 40, p. 2, ¶ 5 (Amron Declaration); Exhibit 11, p. 2 (Decision of the New York Supreme Court Appellate Division, dated December 12, 2002).

10. To reflect the character and substance of Insight's compensation, the parties agreed to structure Insight's non-participating membership interest in a way that provided Insight long term capital gains only to the extent that ordinary income or short term capital gains were not realized by Imprimis. But for providing Insight with a non-participating membership interest, all fees paid to Insight by Imprimis would have been taxable at ordinary rates. Imprimis agreed to this structure, which had the potential to provide Insight with income that would not be taxed at ordinary income rates. However, the parties' agreement did not reflect tax allocations that would provide distributions of long term capital gain to Insight to the detriment of the other members of Imprimis (*i.e.*, those members who provided the capital). *See* Exhibit 40, p. 2-3, ¶¶ 5-7 (Amron Declaration).

11. As provided by the Imprimis LLC Agreement (1) the capital accounts of the partners of Imprimis were maintained by the partners in accordance with the rules of Treas. Reg. § 1.704-1(b)(2)(iv); (2) upon liquidation of Imprimis, liquidating distributions would be made in accordance with the positive capital account balances of the partners pursuant to Treas. Reg. § 1.704-1(b)(2)(ii)(b)(2); and (3) the Imprimis LLC Agreement provided a "qualified income offset" within the meaning of Treas. Reg. § 1.704-1(b)(2)(ii)(d)(3). *See* Exhibit 1, ¶¶ 4.4, 7.3, 7.5 (Imprimis LLC Agreement).

12. With respect to the Imprimis LLC Agreement, Insight provided no capital contributions and provided no management functions. *See* Exhibit 1, ¶¶ 4.1, 5.1, and Exhibit A to Agreement (Imprimis LLC Agreement).

13. Prior to the Imprimis Consulting Agreement and Imprimis LLC Agreement, Wexford Capital and Insight Venture entered into similar consulting and limited liability agreements. *See* Exhibit 13 (Wexford/Insight Consulting Agreement); Exhibit 14 (Wexford Insight LLC Agreement); Exhibit 15 (WI Software Investors LLC Agreement); Exhibit 16 (WISI Consulting Agreement).

14. Effective as of June 1, 1996, Wexford Capital, on behalf of a newly-formed Delaware limited liability company named Wexford Insight LLC ("Wexford/Insight"), entered into a consulting agreement with Insight Venture that required Insight Venture to advise Wexford/Insight on investments in the software and other industries (the "Wexford/Insight Consulting Agreement"). *See* Exhibit 13 (Wexford/Insight Consulting Agreement).

15. To implement the Wexford/Insight Consulting Agreement, Wexford Capital formed Wexford Insight LLC, dated June 1, 1996. *See* Exhibit 14 (Wexford Insight LLC Agreement).

16. On or about April 3, 1997, WI Software Investors LLC, another entity managed by Wexford Capital, and Insight Venture entered into another consulting agreement in order to obtain Insight's investment advisory services. *See* Exhibit 15 (WI Software Investors LLC Agreement); Exhibit 16 (WISI Consulting Agreement).

17. To implement the WISI Consulting Agreement, Wexford Capital formed WI Software Investors LLC. *See* Exhibit 15 (WI Software Investors LLC Agreement); Exhibit 16 (WISI Consulting Agreement).

**THE PARTNERSHIP ALLOCATION PROVISION AT ISSUE**

18. With regard to the Imprimis LLC Agreement, the performance-based allocation was reflected in Section 3(f) of Exhibit B of the Imprimis LLC Agreement (the "Insight Allocation"). The Insight Allocation states the following:

> (f) thereafter, 80% to the Wexford Members and 20% to Insight; provided, however, that in the event any Net Profits consist of items of ordinary income, then, in lieu of the above allocations (i) a special gross income allocation shall be made to Insight of such items or ordinary income (to the extent thereof) equal to the Tentative Insight Allocation (as defined below) and (ii) the resulting Net Profits, computed without regard to the items of gross income allocated under the preceding clause (i), shall be allocated:
>
> (i) if the initial allocation made in clause (f)(i) above (the "Initial Insight Allocation") equals the Tentative Insight Allocation, to the Wexford Members, or
>
> (ii) if the initial Insight Allocation is less than the Tentative Insight Allocation, an amount equal to such shortfall to Insight and the remainder to the Wexford Members.
>
> For purposes of the preceding sentence the "Tentative Insight Allocation" shall mean the amount of Net Profits that would otherwise have been allocated to Insight under this Agreement absent the proviso of such preceding sentence.

*See* Exhibit 1, p. 5 of Exhibit B to Agreement (Imprimis LLC Agreement).

**LAWSUITS BETWEEN WEXFORD-IMPRIMIS AND INSIGHT**

19. In the New York Lawsuit I, Imprimis alleged that beginning in 1998, the Insight Parties began a systematic effort to divert profitable investment opportunities from Wexford Capital, Imprimis, and other Wexford Capital entities. This effort, Imprimis alleged, included (1) instances in which the Insight Parties failed to inform Imprimis of attractive investment opportunities, and instead participated in the investments on its own account or directed the investments to the accounts of others; (2) instances in which the Insight Parties presented an investment opportunity to Imprimis with unfavorable terms but then invested in the opportunity

on its own account, under more favorable, renegotiated terms; and (3) instances in which the Insight Parties reduced Imprimis' maximum allowable investment and directed the remaining portion of an available investment to itself or others. *See* Exhibit 17 (Imprimis Complaint, dated October 12, 2000).

20. On November 22, 2000, Insight, Horing, Murdock, and other Insight Venture affiliates filed a motion to dismiss the Complaint and accompanying memorandum in support of the motion in the New York Lawsuit I. On page 5 of Insight's Memorandum in Support of Their Motion to Dismiss the Complaint, the Insight Parties stated the following:

> The Imprimis LLC Agreement was adopted so as "to implement the Imprimis [Consulting] Agreement" (Complaint, ¶ 37), and that second Consulting Agreement was entered into because "Imprimis desire[d] to engage InSight to advise on investments." (Imprimis Consulting Agreement (Maxwell Aff., Exh 4), at 1.) Thus, both plaintiffs were formed by Wexford and Insight Venture II so as to enter into the Consulting Agreements through which Insight provided them advice.
>
> Although plaintiffs do not disclose as much, defendant Insight Venture II has a 20% interest in investment profits made by Imprimis and WISI, meaning that the Insight parties had an incentive to see that Imprimis and WISI would make as much money as possible.

*See* Exhibit 12, p. 5 (Insight's Memorandum in Support of Their Motion to Dismiss the Complaint, dated November 22, 2000).

21. The Insight Parties' May 10, 2001, Amended Answer and Counterclaim specifically raised issues pertaining to the correctness of the Imprimis tax allocations of short term and long term capital gain as reflected in the Insight Allocation and the Schedule K-1 issued to Insight for the 2000 tax year. At paragraphs 248 through 251, the Insight Parties alleged:

> 248. Imprimis' 2000 earnings were comprised of $797,243 in "Interest Income," $97,991,181 in "short-term capital gains," and $91,458,825 in "long-term capital gains." After deduction of Imprimis' expenses, its total 2000 income was about $188 million.

> 249. At the end of March 2001 or the beginning of April 2001, Insight Venture II received from Imprimis a Schedule K-1 to IRS Form 1065, which reported Insight Venture II's shares of Imprimis' profits for 2000 (the "Insight Venture II K-1"). This K-1 reported Insight Venture II's share of Imprimis' interest income as $797,243 and its share of net short-term capital gain as $36,623,088. Insight Venture II was not allocated any long-term capital gains.
>
> 250. Imprimis' allocation to Insight Venture II of more than $36 million of short-term capital gains was wrongful. It substantially overstated the tax liabilities of the Members of Insight Venture II -- including Messrs. [Jeffrey] Horing, [Jerry] Murdock and [Peter] Sobiloff. This is because the highest marginal federal tax rate applicable to long-term capital gains is 20%, while the short-term marginal rate is 39.6%. Thus, by allocating to Insight Venture II more than $36 million in short-term capital gain (instead of approximately $18 million in short-term and $18 million in long-term capital gains), Imprimis improperly informed the Internal Revenue Service that Insight Venture II's Members owe for 2000 many millions of dollars more in taxes than they actually owe.
>
> 251. Imprimis has made no Distribution to Insight Venture II for the year 2000.

*See* Exhibit 2, pp. 46-47, ¶¶ 248, 249, 250, 251 (Insight Amended Verified Answer, Affirmative Defenses, Counterclaims and Third-Party Complaint, dated May 10, 2001).

22. The Insight Parties' May 10, 2001, Amended Answer and Counterclaim indicates that Insight Venture and Insight were primarily seeking to (1) obtain the $36,623,088 distribution and (2) re-allocate a portion of such amount (contrary to the Schedule K-1) from short term to long term capital gain for Federal income tax purposes. Of the fifteen counts brought by Insight, the majority focused on the $36,623,088 distribution and the tax characterization of the Insight Allocation as reflected on the Schedule K-1 issued to Insight for the 2000 tax year. *See* Exhibit 2, Count III, ¶ 264; Count IV, ¶ 269; Count VI, ¶ 278; Count VII, ¶ 284; Count IX, ¶ 293; Count X, ¶ 296; Count XI, ¶ 301; Count XV, ¶ 318 (Insight Amended Verified Answer, Affirmative Defenses, Counterclaims and Third-Party Complaint, dated May 10, 2001).

23. A dispute between the Imprimis parties and the Insight Parties in the New York Lawsuit I turned on the meaning of "items of ordinary income" in Section 3(f) of Exhibit B of the Imprimis LLC Agreement (*i.e.*, the Insight Allocation). *See* Exhibit 43, pp. 3-13, 18-19

(Insight Memorandum of Law In Support of the Application of Jeffrey Horing, Jerry Murdock and Insight Venture Associates II, LLC, for a Preliminary Injunction); Exhibit 40, p. 3, ¶ 9 (Amron Declaration).

24. The New York State Opinion concluded that Insight could not obtain a preliminary injunction to force Imprimis to prepare a restated partnership tax return or a re-stated Schedule K-1 because the Insight Parties could recover damages from Imprimis if such damages were appropriate. The New York State Opinion stated (citations omitted): "Since the tax burdens allegedly flowing to movants as a consequence of Imprimis' conduct, including penalties and interest, are readily calculable, movants have an adequate remedy at law." *See* Exhibit 19, p. 9 (Supreme Court of the State of New York Opinion dated December 12, 2001).

25. In the New York Lawsuit II, Raghavendran raised issues pertaining to the correctness of Imprimis tax allocation of short term and long term capital gain as reflected in the Insight Allocation and Schedule K-1 issued to Insight for the 2000 tax year. *See* Exhibit 7, p. 8, ¶ 26 (Raghavendran Complaint).

26. On June 10, 2002, Imprimis and other Wexford Capital entities filed an Amended Complaint in the New York Lawsuit I. The Amended Complaint sought at least $288.7 million in compensatory damages as a result of breach of contract and unjust enrichment, and compensatory and punitive damages as a result of tortious interference with the Imprimis Consulting Agreement, as well as breaches of fiduciary duty, conversion, affirmative misrepresentations, and other fraudulent conduct. Because of the outstanding claims against the Insight Parties, and the right of set-off, Imprimis did not make a partnership distribution to Insight for the tax year ended December 31, 2000. *See* Exhibit 21 (Imprimis Amended Complaint, dated June 10, 2002).

27. On August 29, 2002, the Insight Parties filed a Verified Answer to the Amended and Consolidated Complaint, Affirmative Defenses, Counterclaims and Third Party Complaint in the Consolidated New York Lawsuit. In this pleading, Insight restated its contentions concerning Imprimis's alleged improper allocation of short term capital gain and long term capital gain under the Imprimis LLC Agreement as reflected in the Schedule K-1 issued to Insight for the 2000 tax year. *See* Exhibit 24, ¶¶ 354, 355, 356, 357; Count III, ¶ 378; Count VI, ¶ 392; Count VII, ¶ 398; Count VIII, ¶ 402; Count IX, ¶ 407; Count X, ¶ 410; Count XI, ¶ 414; Count XV, ¶ 432; Count XVI, ¶¶ 436, 437 (Insight's Verified Answer to the Amended and Consolidated Complaint, Affirmative Defenses, Counterclaims and Third Party Complaint dated August 29, 2002).

28. On December 12, 2002, the Supreme Court Appellate Division, First Department issued a decision in the New York Lawsuit I. The Supreme Court Appellate Division, First Department, concluded the following:

> The IAS court correctly held that an issue of fact exists as to whether defendant Insight Venture Associates II (Insight V-II)'s right to share of profits under its limited liability company agreement with plaintiff Imprimis Investors LLC (Imprimis) was dependent upon defendant Insight Venture Management (Insight Mgt.)'s compliance with its consulting agreement with Imprimis to identify investment opportunities (see Rudman v Cowles Communications, 30 NY2d 1, 13). Indeed, the interdependence of these two contemporaneous agreements (see Flemington Natl. Bank & Trust Co. v Domler Leasing Corp., 65 AD2d 29, 32, affd 48 NY2d 678) was alleged by the Insight parties in their original answer, which, although amended, constitutes an informal judicial admission (see Botoni v. Friedlander, 197 AD2d 281, 291-292, lv denied 84 NY2d 803, requiring further explanation (see New Haven Props. v Grinberg, 293 AD2d 386). Absent such further explanation, the only apparent reason for giving Insight V-II a performance-based share of the profits ("carry") on certain Imprimis's investments would be as consideration for Insight Mgt.'s services under the consulting agreement (cf. National Union Fire Ins. Co. v Clairmont, 231 AD2d 239, 242-243, lv dismissed 91 NY2d 866, 92 NY2d 868). A potential finding of interdependence is further supported by evidence that the Insight parties are alter egos.

Exhibit 11, pp. 1-2 (Decision of the New York Supreme Court Appellate Division, dated December 12, 2002).

**THE SETTLEMENT OF THE NEW YORK LAWSUITS**

29. ***Redacted.*** This paragraph is not included in this submission so that the parties may try to resolve certain confidentiality and/or authenticity concerns.

30. ***Redacted.*** This paragraph is not included in this submission so that the parties may try to resolve certain confidentiality and/or authenticity concerns.

31. In July 2003, Imprimis, WI Software, Wexford Capital, Wexford Insight, Wexford, WSS, Wexford Spectrum Investors LLC, Robert Holtz, Charles Davidson, Joseph Jacobson, Raghavendran, Insight Venture, Insight Venture Associates LLC, Insight, Insight Venture Associates III, LLC, Insight Capital Partners II, L.P., Insight Capital Partners (Cayman) II, L.P., Insight Capital Partners III, L.P., Insight Capital Partners III Co-Investors, L.P., Insight Capital Partners (Cayman) III, L.P., Horing, Murdock, and Sobiloff executed a settlement agreement of all claims pertaining to the Consolidated New York Lawsuit (the "Settlement Agreement").

32. ***Redacted.*** This paragraph is not included in this submission so that the parties may try to resolve certain confidentiality and/or authenticity concerns.

33. ***Redacted.*** This paragraph is not included in this submission so that the parties may try to resolve certain confidentiality and/or authenticity concerns.

34. ***Redacted.*** This paragraph is not included in this submission so that the parties may try to resolve certain confidentiality and/or authenticity concerns.

35. ***Redacted.*** This paragraph is not included in this submission so that the parties may try to resolve certain confidentiality and/or authenticity concerns.

36. ***Redacted.*** This paragraph is not included in this submission so that the parties may try to resolve certain confidentiality and/or authenticity concerns.

37. ***Redacted.*** This paragraph is not included in this submission so that the parties may try to resolve certain confidentiality and/or authenticity concerns.

38. ***Redacted.*** This paragraph is not included in this submission so that the parties may try to resolve certain confidentiality and/or authenticity concerns.

39. ***Redacted.*** This paragraph is not included in this submission so that the parties may try to resolve certain confidentiality and/or authenticity concerns.

40. ***Redacted.*** This paragraph is not included in this submission so that the parties may try to resolve certain confidentiality and/or authenticity concerns.

41. ***Redacted.*** This paragraph is not included in this submission so that the parties may try to resolve certain confidentiality and/or authenticity concerns.

42. Insight's current tax position with the IRS has harmed Imprimis, Wexford, and WSS, and will further damage these entities and their taxpayer members to the extent that the Court in these proceedings orders a re-allocation of ordinary income, short term capital gain, and/or long term capital gain between Wexford, WSS, and Insight for the 2000 tax year. *See* Exhibit 40, pp. 4-5, ¶ 14 (Amron Declaration).

**IRS EXAMINATION**

43. On August 9, 2001, Insight filed a Notice of Inconsistent Treatment or Administrative Adjustment Request (Form 8082) with the IRS for the 2000 tax year. The attachment to the Form 8082 stated:

> The $36,623,088 reported on Line 4d of the Schedule K-1 received by the taxpayer from Imprimis Investors, LLC ("Imprimis") was not properly reported. This amount reflects an allocation of entirely short-term capital gain that is an improper allocation under the terms of the operating agreement for Imprimis. This

> matter is presently the subject of litigation in the New York State Supreme Court. Part of this litigation is the misinterpretation of the Imprimis operating agreement by Imprimis which "specially" allocates all items of ordinary income to the taxpayer.

*See* Exhibit 35, p. 2 (Insight's Notice of Inconsistent Treatment or Administrative Adjustment Request (Form 8082)).

44. In response to Insight's inconsistent position, the IRS commenced a partnership level tax examination of Imprimis for its tax year ended December 31, 2000. *See* Exhibit 36 (Notice of Beginning of Administrative Proceeding, dated July 27, 2004).

45. After conducting a partnership level tax examination of Imprimis and conducting an examination of Insight's Notice of Inconsistent Treatment or Administrative Adjustment Request, IRS examining agent Edward Murphy completed an IRS Explanation of Items (Form 886-A), dated January 27, 2005. Murphy's analysis, set forth in the IRS Explanation of Items, concludes the following:

> CONCLUSION:
>
> An Inconsistent Position is being taken regarding the proper treatment of Short Term Capital Gain and Long Term Capital Gain reported by the first and second tier partnership entities.
>
> In the opinion of the examining agent, the Settlement Agreement contemplated compensating Insight Venture Associates LLC for the increase in its tax liability that resulted from the allocation per K-1 of all short term capital gain. The allocation of all Short Term Capital Gain originally reported to Insight Venture Associates II per K-1 from Imprimis Investors LLC was correct.
>
> As previously stated, the Settlement Agreement entered into as of July 14, 2003 provides that "the parties hereto desire to settle and terminate all of their disputes, including without limitation, their rights under Relevant Agreements, all matters, claims, counterclaims and third party claims that have been asserted or that could have been asserted in the Actions."

*See* Exhibit 37, p. 6 (IRS Explanation of Adjustment (Form 886-A)).

46. On February 7, 2005, the IRS issued a Summary Report. The IRS Summary Report indicates that the IRS is taking inconsistent positions vis-à-vis Imprimis and Insight in order to avoid a "whipsaw" by the taxpayers. *See* Exhibit 38 (IRS Summary Report).

47. As a result of the IRS examination, the IRS issued a "no-change" Notice of Final Partnership Administrative Adjustments ("FPAA"), dated January 2, 2007. The FPAA states: "After consideration of the above items and those listed on the following page, we have accepted the partnership return as filed." *See* Exhibit 39, p. 8 (FPAA).

48. In the FPAA, the IRS took two so-called "inconsistent positions" in order to avoid being whipsawed by the taxpayers. First, in "Inconsistent Position A," the IRS concluded that "[t]he original K-1 issued by Imprimis Investors LLC to Insight Venture Associates II LLC for year ending December 31, 2000 is deemed to be correct. Short-Term Capital Gain of $36,623,088 is the proper amount of short-term capital gain to be reported by Insight Investors II LLC for year ending December 31, 2000." Second, as set forth in "Inconsistent Position B," the IRS made a re-allocation of short term and long term capital gain pertaining to Wexford, WSS, and Insight as follows:

| | Ordinary Income | Short Term Capital Gain | Long Term Capital Gain |
|---|---|---|---|
| Insight | $797,260 | $21,097,096 | $15,525,992 |
| Wexford | $231,824 | $17,181,853 | $12,644,752 |
| WSS | $830,048 | $61,521,044 | $45,273,604 |

49. In the 2000 tax year, Horing, Murdock, Raghavendran, Sobiloff, and Doyle were all in the highest Federal income tax bracket and, therefore, were subject to a marginal Federal income tax rate of 39.6%. *See* Exhibit 2, p. 47, ¶ 250 (Insight Amended Verified Answer, Affirmative Defenses, Counterclaims and Third-Party Complaint, dated May 10, 2001); Exhibit 7 (Raghavendran Complaint).

50. In the 2000 tax year, except for the 1% interest held by member Wexford 97 Advisors LLC, all allocations of Imprimis ordinary income, short term capital gain, and long term capital gain to the members of Wexford were to tax exempt entities. *See* Exhibit 41, p. 2, ¶ 5 (Maymudes Declaration).

51. In the 2000 tax year, based on the tax attributes of the members of Imprimis and the partners and members of Wexford, WSS, and Insight, the Insight Allocation increases the combined (*i.e.*, total) Federal income tax liability of the members of Imprimis and the partners and members of Wexford, WSS, and Insight in comparison to the combined (*i.e.*, total) Federal income tax liability of the members of Imprimis and the partners and members of Wexford, WSS, and Insight if the Insight Allocation was not in the Imprimis LLC Agreement. *See* Exhibit 41, p. 2, ¶ 5 (Maymudes Declaration); Exhibit 5 (Insight Venture Associates II LLC Federal Partnership Tax Return for the 2000 tax year); Exhibit 6 (Insight Venture Associates II LLC Agreement); Exhibit 2, pp. 46-47, ¶¶ 248-251 (Insight Amended Verified Answer, Affirmative Defenses, Counterclaims and Third-Party Complaint, dated May 10, 2001); Exhibit 7 (Raghavendran Complaint); Exhibit 3 (Imprimis Investors LLC Federal Partnership Tax Return for the 2000 tax year).

52. In the 2000 tax year, the Insight Allocation as reflected in the Imprimis Partnership Tax Return and the related Schedule K-1s issued to Insight and Wexford allocates income taxed at higher Federal income tax rates (*i.e.*, interest, dividends, and short term capital gain) toward taxpayers in the highest Federal income tax bracket (*i.e.*, the members of Insight – Horing, Murdock, Raghavendran, Sobiloff, and Doyle) and away from tax exempt taxpayers (*i.e.*, the tax exempt members of Wexford). *See* Exhibit 6 (Insight Venture Associates II LLC Agreement); Exhibit 2, pp. 46-47, ¶¶ 248-251 (Insight Amended Verified Answer, Affirmative

Defenses, Counterclaims and Third-Party Complaint, dated May 10, 2001); Exhibit 7 (Raghavendran Complaint); Exhibit 41, p. 2, ¶ 5 (Maymudes Declaration); Exhibit 3 (Imprimis Investors LLC Federal Partnership Tax Return for the 2000 tax year).

---

## PARTICIPATING PARTNER'S SEPARATELY IDENTIFIED MATERIAL FACTS

---

**TAXPAYER INFORMATION**

1. On April 21, 2005, the IRS issued a sixty-day letter to Imprimis in which the IRS stated, "the short-term and long-term capital gains have been accepted as filed, but have been reallocated to the partners as shown on the attached schedule." *See* Exhibit 42, IRS 60 Day Letter to Insight Ventures Associates II, LLC.

2. In the schedule attached to the sixty-day letter, the IRS reallocated capital gain among the Wexford Members, allocating each its pro rata share of both short-term and long-term capital gain. The IRS did not reallocate short-term or long-term capital gain to Insight. The net result of these adjustments was an increase in Imprimis' short-term capital gain in the amount of $15,525,992 and a corresponding decrease in long-term capital gain in the amount of $15,525,992. *See* Exhibit 42, IRS 60 Day Letter to Insight Ventures Associates II, LLC.

3. IRS Appeals reviewed Insight's and Wexford's respective arguments. In its Appeals Case Memo, IRS Appeals concluded that Insight's position was correct under the partnership agreement. *See* Exhibit 44, IRS Appeals Transmittal and Case Memo, dated January 2, 2007.

4. Inconsistent Position A of the FPAA allocated Insight $36,623,088 of short-term capital gain and $0 of long-term capital gain. *See* Exhibit 39, Notice of Final Partnership Administrative Adjustments (FPAA).

5. Inconsistent Position A of the FPAA allocated Wexford Special Situations 1997 L.P. ("WSS") $49,384,376 of short-term capital gain and $57,410,272 of long-term capital gain. *See* Exhibit 39, Notice of Final Partnership Administrative Adjustments (FPAA).

6. Inconsistent Position A of the FPAA allocated Wexford Special Situations 1997 Institutional ("Wexford") $13,792,529 of short-term capital gain and $16,034,076 of long-term capital gain. *See* Exhibit 39, Notice of Final Partnership Administrative Adjustments (FPAA).

7. Inconsistent Position B of the FPAA reallocated Imprimis' short-term and long-term capital gain among Insight and the Wexford Members on a pro rata basis according to each partner's allocable share of total income. *See* Exhibit 39, Notice of Final Partnership Administrative Adjustments (FPAA).

8. Inconsistent Position B of the FPAA allocated Insight $21,097,096 of short-term capital gain and $15,525,992 of long-term capital gain. *See* Exhibit 39, Notice of Final Partnership Administrative Adjustments (FPAA).

9. Inconsistent Position B of the FPAA allocated WSS $61,521,044 of short-term capital gain and $45,273,604 of long term capital gain. *See* Exhibit 39, Notice of Final Partnership Administrative Adjustments (FPAA).

10. Inconsistent Position B of the FPAA allocated Wexford $17,181,853 of short-term capital gain and $12,644,752, of long-term capital gain. *See* Exhibit 39, Notice of Final Partnership Administrative Adjustments (FPAA).

11. The table below reflects the allocations made in each of the FPAA's inconsistent positions as described in stipulations 4 – 10 immediately above:

| Imprimis Member | Inconsistent Position A | | | Inconsistent Position B | | |
|---|---|---|---|---|---|---|
| | Short-Term Capital Gain | Long-Term Capital Gain | Total Capital Gain | Short-Term Capital Gain | Long-Term Capital Gain | Total Capital Gain |
| WSS | $49,384,376 | $57,410,272 | $106,794,648 | $61,521,044 | $45,273,604 | $106,794,648 |
| Wexford | $13,792,529 | $16,034,076 | $29,826,605 | $17,181,853 | $12,644,752 | $29,826,605 |
| Insight | $36,623,088 | $0 | $36,623,088 | $21,097,096 | $15,525,992 | $36,623,088 |

*See* Exhibit 39, Notice of Final Partnership Administrative Adjustments (FPAA).

**<u>INSIGHT BECOMES A MEMBER OF IMPRIMIS</u>**

12. The Imprimis LLC Agreement constituted the partnership agreement (within the meaning of Section 761(c)) of Imprimis for the taxable year ended December 31, 2000. *See* Exhibit 1, Imprimis LLC Agreement.

13. The Imprimis LLC Agreement was not further amended at any time prior to Insight's termination of its interest in Imprimis on July 16, 2003.

14. The Imprimis LLC Agreement constituted the complete agreement among the parties thereto with regard to the subject matter of the agreement and superseded all prior written and oral statements, discussions, and agreements relating to the subject matter of the agreement. *See* Exhibit 1 Imprimis LLC Agreement, Section 12.8.

15. Exhibit B, Section 3(f) of the Imprimis LLC Agreement provided that Imprimis' "Net Profits," defined to mean net income as determined by Section 703 with adjustments, should be allocated, on a pro rata basis, 80% to Wexford Members and 20% to Insight unless "Net Profits" contained items of "ordinary income." *See* Exhibit 1, Imprimis LLC Agreement.

16. Exhibit B, Section 3(f) of the Imprimis LLC Agreement further provided that if "Net Profits" contained items of "ordinary income," then Insight is allocated 100% of all such items

until Insight receives its full 20% share of partnership gross income. If such items of "ordinary income" are insufficient to fulfill Insight's 20% share of partnership gross income, then Insight is allocated a pro rata share of the remaining items of "Net Profit." *See* Exhibit 1, Imprimis LLC Agreement.

17. The special allocation of ordinary income to Insight under Exhibit B, Section 3(f) of the Imprimis LLC Agreement did not affect the total amount of income allocated to Insight or any other partner. *See* Exhibit 1, Imprimis LLC Agreement.

18. The special allocation of ordinary income to Insight under Exhibit B, Section 3(f) of the Imprimis LLC Agreement did not affect the capital account balance of any partner. *See* Exhibit 1, Imprimis LLC Agreement.

19. The special allocation of ordinary income to Insight under Section 3(f) of the Imprimis LLC Agreement did not affect the dollar amounts distributed or distributable to any partner. *See* Exhibit 1, Imprimis LLC Agreement.

20. The IRS' reallocation in the FPAA's Inconsistent Position B does not affect the aggregate amount of ordinary income, short-term capital gain, or long-term capital gain reported by Imprimis. *See* Exhibit 1, Imprimis LLC Agreement.

**DISTRIBUTIONS TO INSIGHT UNDER THE IMPRIMIS LLC AGREEMENT**

21. Insight's economic interest in Imprimis is equal to its distributive share under the Imprimis LLC Agreement. *See* Section 704(b).

22. Section 1.13A of the Imprimis LLC Agreement provides that "Net Cash Flow" is composed of "Net Profit" and "Net Loss" less certain expenses. *See* Exhibit 1, Imprimis LLC Agreement.

23. The Imprimis LLC Agreement does not define “Net Cash Flow,” “Net Profit,” or “Net Loss” as excluding any specific items of income such as long-term capital gain, short-term capital gain or ordinary income. *See* Exhibit 1, Imprimis LLC Agreement.

24. Exhibit B, Section 5(f) of the Imprimis LLC Agreement provided that “Net Cash Flow” is distributed “80% to the Wexford Members and 20% to Insight,” meaning that 20% of Imprimis’ aggregate income was to be distributed to Insight. *See* Exhibit 1, Imprimis LLC Agreement.

**SHORT TERM CAPITAL GAIN AND ORDINARY INCOME**

25. Exhibit B, Section 3(f) of the Imprimis LLC Agreement calls for the allocation of “ordinary income.” *See* Exhibit 1, Imprimis LLC Agreement.

26. The Imprimis LLC Agreement, including Exhibit B, Section 3(f), does not reference “short-term capital gain.” *See* Exhibit 1, Imprimis LLC Agreement.

27. The Imprimis LLC Agreement, including Exhibit B, Section 3(f), does not allocate any item of income on the basis of its applicable tax rate under the Code. *See* Exhibit 1, Imprimis LLC Agreement.

28. The phrase “short-term capital gain” is not defined in the Imprimis LLC Agreement. *See* Exhibit 1, Imprimis LLC Agreement.

29. “Short-term capital gain” is defined by Section 1222(1).

30. “Net short-term capital gain” is defined by Section 1222(6).

Respectfully submitted,

_s/ Charles M. Ruchelman_____
CHARLES M. RUCHELMAN
Caplin & Drysdale, Chartered
One Thomas Circle, NW
Washington, D.C. 20005
Telephone: (202) 862-7834
Facsimile: (202) 429-3301
Email: cmr@capdale.com
*Counsel of Record for Plaintiff*

__s/ Jennifer P. Wilson______
JENNIFER P. WILSON
Attorney of Record
U.S. Department of Justice - Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-6495
Facsimile: (202) 514-9440
Email: jennifer.p.wilson@usdoj.gov

__s/ William F. Nelson_______
WILLIAM F. NELSON
McKee Nelson LLP
1919 M Street, NW
Washington, D.C. 20036
Telephone: (202) 775-8582
Facsimile: (202) 775-8586
Email: wnelson@mckeenelson.com
*Counsel of Record for Participating Partner*

RICHARD T. MORRISON
Acting Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims
STEVEN I. FRAHM
Assistant Chief, Court of Federal Claims

___s/ Steven I. Frahm______________
Of Counsel
*Attorneys for Defendant*

November 13, 2007