SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| RAMANAN RAGHAVENDRAN,<br>*Plaintiff,*<br>-against-<br>IMPRIMIS INVESTORS LLC, WEXFORD SPECIAL SITUATIONS 1997, L.P., WEXFORD SPECIAL SITUATIONS INSTITUTIONAL, L.P., WEXFORD SPECTRUM INVESTORS LLC, WEXFORD MANAGEMENT LLC, WEXFORD INSIGHT SOFTWARE INVESTORS LLC and DOES 1-10,<br>*Defendants.* | Index No.<br><br>COMPLAINT |

Plaintiff, Ramanan Raghavendran, for his complaint against defendants, Imprimis Investors, LLC, Wexford Special Situations 1997, Wexford Special Situations Institutional, L.P., Wexford Spectrum Investors LLC, Wexford Management LLC, Wexford Insight Software Investors LLC and Does 1-10, hereby alleges, through his undersigned counsel, as follows:

## NATURE OF THE ACTION

1. Defendant Imprimis is a limited liability company. Defendant Wexford Management LLC is its manager. The other Defendants are members of Imprimis. Through Defendant Imprimis, Defendants have issued and filed with the Internal Revenue Service a tax form K-1 that indicates $3 million of income ultimately attributable to Plaintiff. In violation of Imprimis' written operating agreement, Defendants never actually paid any part of that amount, but have divided that money amongst themselves. By issuing the improper K-1 without making the distribution

EXHIBIT
7

reflected thereon, Defendants have also shifted to Plaintiff the tax liability for that distribution. As a result of Defendants' improper actions, Plaintiff must now pay $1.2 million (plus possible interest and penalties) to the IRS that he never received. In order to make these payments and avoid enforcement proceedings by the tax authorities, Plaintiff has had to divert money from his own venture capital business, invade his retirement account and incurred various financial penalties.

2. Defendants cannot dispute their obligation to make this payment, because (a) Defendants had an obligation to make the payment pursuant to the written limited liability company agreement under which Imprimis operates; (b) Defendants' issuance and filing of the form K-1 showing approximately $3 million of income attributable to Plaintiff is a binding admission; and (c) Defendants' sole purported justification for withholding the distribution was as a "set-off" for claims they asserted against InSight Venture Associates II and III; but this Court has granted summary judgment dismissing those claims in a related litigation, and therefore vitiated the basis of the alleged set-off.

## PARTIES

### A. Plaintiff

3. Plaintiff Ramanan Raghavendran is a 33 year old venture capitalist, who has recently started his own venture capital fund, Connect Capital. He was formerly a member of InSight Capital. While there, he held a small equity position in certain limited liability companies used as investment vehicles by the InSight group. In

particular, he was a member of InSight Venture Associates II and InSight Venture Associates III. Both of these entities were members of defendant Imprimis LLC.

B. Defendants

4. Non-party Wexford Capital is a venture capital firm. Like most such firms, it does not participate directly in most of its investments. Rather, the various partners or principals of Wexford participate in various investments through other business entities, which typically have "Wexford" in their names. Thus, while there is no formal affiliation among the various Wexford defendants, in a practical sense there are all controlled by the same group of individuals, in acting in various combinations and with varying degrees of equity participation in each corporate vehicle.

5. Defendant Wexford Special Situations 1997, L.P. is a limited partnership controlled by members of Wexford Capital. Wexford Special Situations 1997, L.P. is, upon information and belief, a member of Defendant Imprimis.

6. Defendant Wexford Special Situations Institutional, L.P. is a limited partnership controlled by members of Wexford Capital. Wexford Special Situations Institutional, L.P. is, upon information and belief, a member of Defendant Imprimis.

7. Wexford Spectrum Investors, LLC, is a limited liability company controlled by members of Wexford Capital. Wexford Spectrum Investors, LLC is, upon information and belief, a member of Defendant Imprimis.

8. Wexford Insight Software Investors, LLC is a limited liability company controlled by members of Wexford Capital. Wexford Insight Software Investors, LLC is, upon information and belief, a member of Defendant Imprimis.

9. Upon information and belief, Defendants Doe 1-10 are limited liability entities controlled by members of Wexford Capital. Upon information and belief, Defendants Doe 1-10 are members of Defendant Imprimis.

10. Defendant Wexford Management LLC. is a limited liability company controlled by members of Wexford Capital. Upon information and belief, Wexford Management LLC handles the administrative management of Defendant Imprimis Upon information and belief, acting at the behest of the other Wexford Defendants and in concert with them, Wexford Management LLC directly caused Imprimis to issue the K-1s imposing unfunded tax liability upon Plaintiff, and also had the primary responsibility to distribute the profits withheld by Imprimis, and distributed to the Wexford Defendants.

11. Defendant Imprimis Investors LLC is a limited liability company controlled by members of Wexford Capital. Originally, Imprimis was created solely as a vehicle for the benefit of Wexford. In or about 1997. Wexford entered into a series of agreements with InSight Capital. As part of their course of doing business together, certain InSight entities became members of or otherwise affiliate with Imprimis. This reorganization led to the restated limited liability company operating agreement under which Plaintiff acquired his rights. Nevertheless, at all times, the Wexford Defendants managed and controlled all payments and business affairs of Imprimis.

**BACKGROUND**

12. Plaintiff is a 33 year old naturalized American and a native of India. He came to the United States in 1985 to attend the University of Pennsylvania. There, he earned dual bachelors degrees in finance and computer science engineering from the

University of Pennsylvania's Wharton School and Moore School of Engineering respectively.

13. After graduating, Plaintiff worked as a management consultant at McKinsey and Company, focusing primarily on the financial services and telecommunications industries.

14. In 1992, Plaintiff began his career in venture capital, as an associate at General Atlantic Partners. While at General Atlantic, he gathered significant experience in venture capital in the information technology industry. However, he was merely a salaried employee.

15. In late 1996, InSight Capital Partners offered Plaintiff his first opportunity to become an equity participant in a venture capital firm. InSight is a venture capital firm that focused almost exclusively on information technology companies. It is structured as a series of limited liability entities, typically with InSight in the name, such as "InSight Venture Associates II" or "InSight Capital Partners III". The different individual "members" of InSight have different participations in these different entities, and the various entities engage in separate investments and activities. InSight itself was run by the two individuals with the largest equity stakes -- Jeffrey Horing and Jerry Murdock. Plaintiff's equity stake in the company was quite small, ranging from 1% to 15%, in different entities and depending on various factors.

**A. Initial Dealings with Defendants**

16. One party with whom InSight had had a successful business relationship with was defendant Wexford Capital Partners.

17. Wexford was also in the venture capital industry, but, at that time, a much larger company than InSight. The parties continued their successful ventures together, after Plaintiff arrived at InSight.

18. After their initial successes, InSight and Wexford decided to embark on a closer, continuous business relationship. In or about September 1998, InSight – through InSight Venture Associates II and III (the "InSight Venture LLCs") and – joined Wexford and the Wexford Defendants as members of a defendant Imprimis.

19. Plaintiff held a small equity position in both of the Insight Venture LLCs. The InSight Venture LLCs were treated as partnerships for tax purposes, pursuant to section K of the Internal Revenue Code.

**B. The Imprimis Operating Agreement**

20. The InSight Venture LLCs held their interest in Imprimis, as did the various defendants, pursuant to a written agreement. That agreement provides rules governing the distribution of profits from Imprimis' activities. Upon information and belief, Schedule B of the agreement prescribes the treatment of proceeds from certain investments made by Imprimis. Those are, upon information and belief, the investments that generated the revenue attributed to me, which Plaintiff never received. Paragraph 5 of section B sets forth the priority of distributions. Specifically, 5(a) states that distributions shall be made:

> first, to each Member, not later than 90 days after the close of each Fiscal Year, in an amount equal to the local, state and Federal income tax liability of such Member (calculated as if each Member was a [sic] individual taxpayer subject to the highest marginal rates applicable to residents of New York City) in respect of the excess of Net Profits over Net Losses allocated to such Member fo such Fiscal Year (as shown on the Company's Federal income tax return), less all amounts distributed to

> such Member for the then current and all prior Fiscal Years pursuant to this Section 5.

Thus, Defendants were required to have Imprimis pay at least enough to fund tax liabilities to all Members before paying any other monies to any member.

21. While this provision refers to "members," from its inception its expressly understood purpose was to benefit Plaintiff and the other individuals holding their interests in Imprimis through other limited liability entities. This is obvious because all of the member LLCs, including Plaintiff's, were treated as partnerships for tax purposes. Thus, the actual members of Imprimis were all tax reporting entities, not tax paying entities. All of the tax liability passed directly to the individuals, like Plaintiff. As such, the sole purpose of the requirement that tax distributions be made before any other distributions was to benefit nominal third-parties like Plaintiff, who became immediately liable for the taxes on the amounts listed in the K-1s.

22. Upon information and belief, the Imprimis operating agreement also provided for that, in assigning gains from its activities to the various members, the short and long-term gains would be assigned on a *pro rata* basis.

**C. Breach of the Agreement**

23. In 2000, Imprimis earned some $100 million on the transactions at issue. In 2001, it filed K-1s with the IRS indicating that approximately $35 million of this amount belonged to the InSight Venture LLCs.

24. Defendants caused Imprimis to distribute to them their respective full share of profits -- not just a tax distribution. However, Defendants caused Imprimis to

withhold all payment from the InSight Venture LLCs. Thus, while Defendants were paid their full share of profits, the InSight Venture LLCs received nothing.

25. The issuance of the K-1s showing $35 million in income to the InSight Venture LLCs exacerbated Defendants refusal to make the distribution, because it imposed a $1.2 million unfunced tax liability upon Plaintiff. Thus, Plaintiff has not only be deprived of his share of the profits, but has been forced to damage his own investment business by diverting funds to pay this liability. He may also be subject to interest payments and tax penalties, because he was not able to fund it in a timely fashion.

26. Upon information and belief, Defendants assigned a disproportionate amount of short-term gains to the InSight Venture LLCs. Because short-term gains are taxed at a higher rate than long-term gains, Plaintiff's tax liability was improperly inflated by this violation of the agreement.

27. Payment of the unfunded tax liability has slashed Plaintiff's net worth by some 50%. It has also hampered his ability to finance his own venture capital fund Connect Capital.

28. Moreover, Defendants are fully aware of the damages and hardship to which their actions have subjected Plaintiff, because they are investors in Connect Capital and have had direct discussions with him about the devastating impact of their misappropriation of the funds.

29. Defendants' sole purported justification for keeping Plaintiff's funds for themselves, is that they are entitled to do so by way of set-off. In October 2000, certain of the Defendants filed an action against, *inter alia*, the Imprimis Venture LLCs in this

Court, entitled, *Imprimis Investors LLC and WI Software Investors LLC v. InSight Venture Management, Inc., et al.*, Index No. 00/604431, assigned to the Hon. Herman Cahn (the "Related Litigation"). In the Related Litigation, Defendants asserted that other InSight affiliates breached obligations to Defendants under a consulting agreement relating to the investments entered into by Imprimis, and also claimed that the InSight Venture LLCs aided and abetted these breaches. Defendants sought some $540 million in damages from the InSight entities and certain of their principals, as well as from the InSight Venture LLCs. Plaintiff was not named in the Related Litigation, nor did the complaint allege any wrongdoing on his part. Defendants asserted that they were entitled to pay the InSight Venture LLCs' share of profits to themselves, by way of equitable set-off against the $540 million demanded in these claims.

30. By Order dated December12, 2001, this Court expressly dismissed all of Defendants' claims against the InSight Venture LLCs. A true and complete copy of that Order is annexed hereto as Exhibit 1.

**AS AND FOR A FIRST CAUSE OF ACTION**
**(Breach of Contract Against All Defendants)**

31. Plaintiff repeats and realleges the allegations of paragraphs 1 through 28 as if each were fully set forth herein.

32. The Restated and Amended Operating Agreement for Imprimis LLC constituted a binding, valid and enforceable agreement among, *inter alia*, Defendants and the InSight Venture LLCs.

33. The InSight Venture LLCs fully performed all of their material obligations under that agreement.

34. That agreement prohibited Imprimis and Defendants from making any distribution of profits from the transactions in which the Imprimis Venture LLCs were involved without first making a distribution sufficient to cover the potential tax liability of each of the individuals, including Plaintiff, who held interests directly or indirectly in Imprimis.

35. That agreement also required Imprimis and the other Defendants to allocated short and long term gains to the members on a *pro rata* basis.

36. Plaintiff was an intended and identified beneficiary of these provisions of the contract.

37. Defendants distributed profits to themselves, but made no distribution, including no tax distribution to Plaintiff, in violation of the agreement.

38. Upon information and belief, Defendants allocated a disproportionately large amount of short term gains to the InSight Venture LLCs. This improperly inflated the unfunded tax liability they imposed upon Plaintiff.

39. By reason of the foregoing, Defendants are liable to Plaintiff for breach of contract in an amount to be determined at trial, but which is believed to exceed $1.2 million, plus interest.

**AS AND FOR A SECOND CAUSE OF ACTION**
**(Breach of Fiduciary Duty)**

40. Plaintiff repeats and realleges the allegations of paragraphs 1 through 37 as if each were fully set forth herein.

41. Pursuant to the Restated and Amended Operating Agreement for Imprimis LLC, sole control of Imprimis rested with Wexford Capital through its affiliates,

the other Defendants. Upon information and belief, this extended to all authority to make all business decisions, distributions, payments and disclosure of information. The InSight entities had no control and no say in any decisions.

42. As a result of the position of control, superior information, trust and confidence that this arrangement conferred upon Defendants, they owed fiduciary duties to the InSight Venture LLCs, and, to the extent of making proper distributions, to Plaintiff.

43. By refusing to make the required distribution to Plaintiff, and by arrogating to themselves Plaintiff's share of profits, and by imposing the tax liability for the monies Defendants arrogated to themselves upon Plaintiff, Defendants breached their fiduciary duties to him of utmost care and loyalty.

44. This violation of fiduciary duty was exacerbated by the Defendants' refusal to make the distribution even after this Court dismissed the claims that provided the purported "set-off" justification for withholding the monies.

45. By reason of the foregoing, Defendants are liable to Plaintiff for breach of fiduciary duty in amount to be determined at trial, but currently believed to exceed $5 million, plus interest, penalties, costs and attorney's fees.

**AS AND FOR A THIRD CAUSE OF ACTION**
**(Unjust Enrichment)**

46. Plaintiff repeats and realleges the allegations of paragraphs 1 through 43 as if each were fully set forth herein.

47. Defendants have taken possession of Plaintiff's share of profits from the Imprimis business activities, and have imposed upon him the tax liability for the monies they have misappropriated.

48. Defendants' actions are without justification, and it would be unjust to permit them to retain these monies and tax benefits.

49. By reason of the foregoing, Defendants are liable to Plaintiff for unjust enrichment in an amount to be determined at trial, but currently believed to exceed $1 2 million, plus interest and penalties.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**(Conversion)**

50. Plaintiff repeats and realleges the allegations of paragraphs 1 through 49 as if each were fully set forth herein.

51. Certain Defendants came into possession of Plaintiff's tax distribution and other funds lawfully, pursuant to their proper roles under the Imprimis operating agreement.

52. However, Defendants have converted those funds to their own use, and deprived Plaintiff of the use thereof, and continue to do so despite due demand therefore.

53. By reason of the foregoing, Defendants are liable to Plaintiff for conversion, in an amount to be determined but currently believed to exceed $1.2 million, plus interest.

**WHEREFORE,** Plaintiff Ramanan Raghavendran demands judgement in his favor and against all Defendants, as follows:

A. On the First Cause of Action, for breach of contract in an amount to be determined at trial, but which is believed to exceed $1.2 million, plus interest;

B. On the Second Cause of Action, for breach of fiduciary duty in amount to be determined at trial, but currently believed to exceed $5 million, plus interest, penalties, costs and attorney's fees;

C. On the Third Cause of Action, for unjust enrichment in an amount to be determined at trial, but currently believed to exceed $1.2 million, plus interest and penalties;

D. On the Fourth Cause of Action, for conversion in an amount to be determined at trial, but currently believed to exceed $1.2 million, plus interest;

E. On All Causes of Action, for such other and further relief as to this Court seems just and proper.

Dated: January 7, 2002
New York, New York

John J.D. McFerrin-Clancy
**SCHLAM STONE & DOLAN**
**A Limited Liability Partnership**
26 Broadway
New York, New York 10004
(212) 344-5400

*Attorneys for Plaintiff*