# CONSULTING AGREEMENT

This consulting agreement dated as of September 30, 1998 is by and between Imprimis Investors LLC (together with its direct and indirect subsidiaries, "Imprimis"), a Delaware limited liability company having an address at c/o Wexford Management LLC, 411 West Putnam Avenue, Greenwich, Connecticut 06830, and Insight Venture Management, Inc. ("InSight"), a corporation organized and existing under the laws of the State of Delaware with an address at 122 East 42 Street, New York, N.Y. 10168.

WHEREAS, Imprimis has been formed as a Delaware limited liability company for the purpose of making various investments, including investments in companies engaged in the software and other industries; and

WHEREAS, Imprimis desires to engage InSight to advise on investments in such industries, and InSight desires to advise Imprimis in such capacity, on the terms and conditions set forth herein.

WHEREAS, InSight has previously provided investment advice to WI Software Investors LLC ("WISI"), an affiliate of Imprimis pursuant to a Consulting Agreement (the "WISI Agreement") dated as of April 3, 1997 (the "Effective Date") by and between WISI and Insight.

NOW THEREFORE, in consideration of the mutual covenants and promises contained herein and other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, and intending to be legally bound hereby, the parties hereto agree as follows:

1. Investment Opportunities. During the period commencing on the date of this Agreement and ending on the second anniversary of the Effective Date (the "Investment Period"), InSight shall provide Imprimis with a right of first refusal for all investment opportunities in the software and related industries identified by InSight (each, an "Investment Opportunity"). For each Investment Opportunity, Imprimis' right of first refusal entitles it to participate in the Investment Opportunity to the extent of the greater of: (a) 50% of the amounts to be invested in the Investment Opportunity or (b) the percentage of the Investment Opportunity not invested in by InSight or its affiliates (including investors therein). Imprimis shall have the right, but not the obligation, to invest in all or any portion of the amount of the Investment Opportunity offered to it by InSight. For each proposed Investment Opportunity, InSight or its affiliates shall provide in a form satisfactory to Imprimis written details of such proposed Investment Opportunity. Within ten business days following receipt of such notice, Imprimis shall give notice to InSight as to whether it intends to invest in such Investment Opportunity and the amount of its proposed investment. In the event that any New Material Terms (as defined below) develop with respect to an Investment Opportunity following the original written notice, Imprimis' original acceptance or rejection shall be void and such New Material Terms shall constitute a new Investment Opportunity for which InSight or its affiliates shall submit a new written notice. For purposes of this agreement, "New Material Terms" shall mean a change in price of 10% or more, or a change in the proposed Investment Opportunity. For any Investment Opportunity that Imprimis declines to invest in, or for which Imprimis does not provide notice of its acceptance as set forth

109914.1



EXHIBIT
10

CFC000013

STIP0259

herein, InSight or its designee shall have the right to participate in up to 100% of such Investment Opportunity, subject to its requirement to submit a written notice to Imprimis in the event of any New Material Terms.

2. Proxy. Imprimis hereby constitutes and appoints InSight, or any nominee of InSight, with full power of substitution, prior to the Proxy Termination Date (as defined below), as Imprimis' true and lawful attorney and irrevocable proxy, for and in Imprimis' name, place and stead, to vote each of the shares of capital stock or other equity interests in all Investment Opportunities as Imprimis' proxy, at every annual, special or adjourned meeting of the shareholders or equity holders of any Investment Opportunity (including the right to sign Imprimis' name to any consent, certificate or other document relating to any such Investment Opportunity) for any lawful purpose other than for Significant Matters (as defined below). Except as otherwise expressly provided herein, Imprimis intends this proxy to be irrevocable (prior to the Proxy Termination Date) and coupled with an interest and will take such further action and execute such other instruments as may be necessary to effectuate the intent of this proxy. Imprimis shall have the right to terminate the proxy given pursuant to this provision with respect to any security in an Investment Opportunity on the date (the "Proxy Termination Date") which is the earliest of: (v) six months after (I) a public offering of at least twenty-five percent (25%) of the fully diluted capital stock of the respective Investment Opportunity, (II) the acquisition of at least twenty-five percent (25%) of the fully diluted capital stock of the respective Investment Opportunity by a publicly traded company, or (III) the merger into a publicly traded company of the respective investment opportunity; (w) four years after the date of this Agreement; (x) a material breach by InSight of its obligations under this Agreement; (y) the dissolution, bankruptcy or legal incapacity of Insight or its permitted assignee hereunder or (z) the death, legal incapacity, legal disability or conviction of a felony of Jeffrey Horing or Jerry Murdoch.

Imprimis shall also have the right to terminate the proxy given pursuant to this provision prior to the Proxy Termination Date with respect to any vote on a Significant Matter. For Significant Matters with respect to any Investment Opportunity, InSight agrees that it shall be required to provide prompt notice of such matters to Imprimis and to vote Imprimis' securities on such matters in the manner directed by Imprimis. For purposes of this Agreement, "Significant Matters" shall mean: (a) amendments to the certificate of incorporation of the Investment Opportunity requiring greater than a majority vote, or requiring a vote by a special class or series; (b) mergers (other than mergers among affiliates) or consolidations; (c) sale, lease, exchange or other disposition of all or substantially all of the Investment Opportunity's assets; or (d) dissolution of the Investment Opportunity.

3. Minimum Number and Amount. InSight agrees that during the two year period following the Effective Date it will identify to Imprimis at least six separate Investment Opportunities, all of which if invested in by Imprimis would allow for a total aggregate investment by Imprimis of at least $20 million; provided that (a) any Investment Opportunity previously identified to WISI pursuant to the WISI Agreement shall be deemed to have been identified to Imprimis for purposes of this provision, and (b) in the event of InSight's failure to identify such Investment Opportunities to Imprimis during such period, InSight agrees that it shall promptly return to Imprimis any Management Fees (defined

in Section 5 below) paid pursuant to this Agreement prior to April 3, 1999 to the extent such fees exceed 2% of the Outstanding Principal Amount (as defined below).

For purposes of this Agreement, "Outstanding Principal Amount" shall mean the aggregate amount of cash invested by Imprimis pursuant to this Agreement and invested by WISI pursuant to the WISI Agreement, in each case in any securities of any Investment Opportunity minus distributions in respect of such securities representing a return of capital to Imprimis or WISI as the case may be in respect of such initial cash investments.

4. Sole Discretion. Imprimis shall have the right in its sole discretion to determine whether and to what extent to proceed with or participate in any Investment Opportunity originated by InSight. In the event that an entity affiliated with or controlled by Wexford Management LLC other than Imprimis shall directly participate in an Investment Opportunity pursuant to this Agreement, such event shall be deemed a breach of this Agreement absent InSight's written approval of such investment.

5. Management Fee. In consideration of the rights and benefits afforded to Imprimis hereunder, Imprimis shall pay to InSight or its designee (a) during the Investment Period, an annual fee of the greater of: (x) $375,000; or (y) 2% of the Outstanding Principal Amount, which fee will be paid in monthly installments in advance on the first day of each month ending with a payment on March 1, 1999, and (b) for the three-year period beginning April 3, 1999, an annual fee in the amount of 2% of the Outstanding Principal Amount, which fee will be paid in installments in advance on the first day of each month of such period, ending with a payment on March 1, 2002 (collectively, the "Management Fee"); provided, however, that the obligation to pay such Management Fee shall terminate prior to March 1, 2002 upon the earliest to occur of: (x) a material breach by InSight of its material obligations under this Agreement; (y) the dissolution, bankruptcy or legal incapacity of InSight or its permitted assignee; or (z) the death, legal incapacity, legal disability or conviction of a felony of Jeffrey Horing or Jerry Murdoch.

6. Allocation of Fees. Any board fees, break-up fees, closing fees, consulting fees, advisory fees, options, transaction fees or other fees paid to InSight or an affiliate but allocable in any manner to any investment by Imprimis or WISI in an Investment Opportunity pursuant to the terms of this Agreement or the WISI Agreement will be delivered by InSight to Imprimis within ten business days of InSight's receipt thereof, provided that any amounts of up to $25,000 allocated to Imprimis pursuant to this provision may be retained by InSight and credited against the Management Fee that is otherwise payable by Imprimis and then currently outstanding. The obligations under this Section 6 shall survive the termination of this Agreement.

7. Due Diligence Expense. Any due diligence expenses reasonably incurred by InSight in connection with the Investment Opportunity shall be borne pro rata by InSight and Imprimis in proportion to their respective amounts invested in the Investment Opportunity, provided, however, that for prospective investments that do not become Investment Opportunities, Imprimis agrees to bear 50% (up to $100,000) of such expenses, and amounts greater than $100,000 subject to Imprimis

giving prior written approval for such expenses. In the event that Imprimis declines for any reason to invest in any Investment Opportunity, Imprimis shall have no obligation to bear any portion of such due diligence expense.

8. Indemnification. Imprimis shall indemnify InSight and each of its affiliates and each of their advisors, officers, directors, shareholders, employees and agents from and against any and all material claims, losses and liabilities arising out of or resulting from (a) any breach by Imprimis or WISI of this Agreement or the WISI Agreement as the case may be; (b) any action or omission by Imprimis or WISI; or (c) any action or omission by InSight in reliance on any written communication believed to be genuine and to have been given by or on behalf of Imprimis or WISI (including, without limitation, any actions or inactions taken or not taken in any way related to the grant of the proxies contemplated hereby), except claims, losses or liabilities involving InSight's gross negligence or willful misconduct. The obligations of Imprimis under this Section 8 shall survive the termination of this Agreement.

InSight shall indemnify Imprimis and each of its affiliates and each of their advisors, officers, directors, shareholders, employees and agents from and against any and all material claims, losses and liabilities arising out of or resulting from (a) any breach by InSight of this Agreement or the WISI Agreement; (b) any action or omission by InSight; or (c) any action or omission by Imprimis in reliance on any written communication believed to be genuine and to have been given by or on behalf of InSight, except claims, losses or liabilities involving Imprimis' gross negligence or willful misconduct. The obligations of InSight under this Section 8 shall survive the termination of this Agreement.

9. Liquidation of Investments. At any time after five years from the Effective Date of this Agreement, Imprimis shall have the right to instruct InSight to liquidate any investments made pursuant to this Agreement or the WISI Agreement, and InSight agrees to effect such liquidation as promptly as possible following such instruction, provided, however, that InSight shall use its reasonable best efforts to effectuate such liquidation within 180 days after Imprimis makes any such instruction. The obligations under this Section 9 shall survive the termination of this Agreement.

10. Life Insurance. InSight agrees to make Jeffrey Horing and Jerry Murdoch available as reasonably requested by Imprimis or its affiliate to obtain life insurance on Mr. Horing and Mr. Murdoch.

11. *Notifications. Any notice required or permitted to be made hereunder shall be in writing and* delivered to the appropriate party by hand or by overnight delivery service (such as Federal Express) at the address set forth above or at such other address as may be provided pursuant to this provision.

12. No Assignment. Neither party hereto shall be permitted to assign its rights or obligations under this Agreement without the prior written consent of the other party which consent shall not unreasonably be withheld.

*109914.1*

13. WISI Agreement. The parties agree that this agreement shall supersede and replace the WISI Agreement in all respects and that notwithstanding any provision to the contrary in the WISI Agreement, with the sole exception of Section 2 of the WISI Agreement relating to the granting of proxies, no provision of the WISI Agreement shall survive.

14. No Amendment; Governing Law. This Agreement may not be amended or modified in any manner nor may any of its provisions be waived except by written amendment executed by the parties. This Agreement will be governed by the laws of the State of New York applicable to contracts made and performed within such state.

IN WITNESS WHEREOF, the parties have set their hands as of the date first written above.

IMPRIMIS INVESTORS LLC
By: Wexford Management LLC
as Manager

By: [signature]
Name: Arthur Amron
Title: SVP & General Counsel

INSIGHT VENTURE MANAGEMENT INC.

By: [signature]
Name:
Title:

109914.1



CFC000017

STIP0263