Wex-InSight: JUDEX

Execution Copy

CONSULTING AGREEMENT

This consulting agreement dated as of June 1, 1996, is by and between Wexford InSight LLC ("Wexford"), a Delaware limited liability company having an address at 411 West Putnam Avenue, Greenwich, Connecticut 06830, and InSight Venture Management, Inc. ("InSight"), a corporation organized and existing under the laws of the State of Delaware with an address at 411 West Putnam Avenue, Greenwich, Connecticut 06830.

WHEREAS, Wexford has been formed as a Delaware limited liability company for the purpose of making investments in companies engaged in the software and other industries; and

WHEREAS, Wexford desires to engage InSight to advise on investments in such industries, and InSight desires to advise Wexford in such capacity, on the terms and conditions set forth herein.

NOW THEREFORE, in consideration of the mutual covenants and promises contained herein and other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, and intending to be legally bound hereby, the parties hereto agree as follows:

1. Investment Opportunities: During the period commencing on the date of this Agreement and ending on the first anniversary of the date hereof (the "Investment Period"), InSight shall identify for Wexford investment opportunities in the software and related industries (each, an "Investment Opportunity"). For each such Investment Opportunity, InSight or its affiliates shall give written notice to Wexford of its right of first refusal to participate in such Investment Opportunity to the extent of at least 50% of the amounts to be invested over the first $1,000,000 which shall be invested by InSight or its affiliates. Wexford shall have the right to invest in all or any portion of the amount of the Investment Opportunity offered to it by InSight. InSight and its affiliates shall have no obligation to offer Wexford the opportunity to participate in more than 50% of any proposed Investment Opportunity, except to the extent that InSight or its affiliates decline to participate in such Investment Opportunity, and Wexford shall have no obligation to make an investment of greater than 50% in any proposed Investment Opportunity. For each such proposed Investment Opportunity, InSight or its affiliates shall provide in a form satisfactory to Wexford written details of such proposed Investment Opportunity. Within ten business days following receipt of such notice, Wexford shall give notice to InSight as to whether it intends to invest in such Investment Opportunity and the amount of its proposed investment. In the event that any "New Material Terms" develop with respect to such Investment Opportunity following the original written notice, such New Material Terms shall constitute a new Investment Opportunity for which InSight or its affiliates shall submit a new written notice. For purposes of this agreement, "New Material Terms" shall mean a change in price of 10% or more, or a change in the proposed Investment Opportunity. For any Investment Opportunity that Wexford declines to invest in, or for which Wexford does not provide notice of its acceptance as set forth herein, InSight or its designee shall have the right to participate in up to 100% of such Investment Opportunity.



EXHIBIT 13

2. Proxy: Wexford hereby constitutes and appoints InSight, or any nominee of InSight, with full power of substitution, prior to the Proxy Termination Date (as defined in the following sentence of this paragraph 2), as Wexford's true and lawful attorney and irrevocable proxy, for and in Wexford's name, place and stead, to vote each of the shares of capital stock or other equity interests in all Investment Opportunities as Wexford's proxy, at every annual, special or adjourned meeting of the shareholders or equity holders of any Investment Opportunity (including the right to sign Wexford's name to any consent, certificate or other document relating to any such Investment Opportunity) for any lawful purpose other than for "Significant Matters" as that term is defined below in this paragraph 2; Wexford intends this proxy to be irrevocable (prior to the Proxy Termination Date) and coupled with an interest and will take such further action and execute such other instruments as may be necessary to effectuate the intent of this proxy. Wexford shall have the right to terminate the proxy given pursuant to this provision with respect to any security in an Investment Opportunity on the date (the "Proxy Termination Date") which is the earlier of: (x) six months after a public offering of at least twenty-five percent (25%) of the fully diluted capital stock of the Investment Opportunity which issued the securities held by Wexford, (y) four years after the date of this Agreement; or (z) a material breach by InSight of its obligations under this Agreement.

For "Significant Matters" (as specified in the following sentence) with respect to any Investment Opportunity, InSight agrees that it shall be required to provide prompt notice of such matters to Wexford and to vote Wexford's securities on such matters in the manner directed by Wexford. For purposes of this Agreement, "Significant Matters" shall mean: a) amendments to the certificate of incorporation of the Investment Opportunity requiring greater than a majority vote, or requiring a vote by a special class or series; b) mergers (other than mergers among affiliates) or consolidations; c) sale, lease, exchange or other disposition of all or substantially all of the Investment Opportunity's assets; or d) dissolution of the Investment Opportunity. Wexford shall have the right to terminate the proxy given pursuant to this provision with respect to any security in an Investment Opportunity on the Proxy Termination Date.

3. Minimum Number and Amount: InSight agrees that during the Investment Period it will identify to Wexford at least three separate Investment Opportunities, all of which if invested in by Wexford would allow for a total aggregate investment by Wexford of at least $10 million.

4. Sole Discretion: Wexford shall have the right in its sole discretion to determine whether and to what extent to proceed with or participate in any Investment Opportunity originated by InSight. In the event that a Wexford entity other than Wexford InSight LLC shall directly participate in the Investment Opportunity pursuant to this Agreement, such event shall be deemed a breach of this Agreement.

5. Management Fee: In consideration of the rights afforded to Wexford hereunder: (a) during the Investment Period, Wexford shall pay to InSight or its designee an annual fee of $250,000, which fee will be paid in equal monthly installments of $20,833.33 in advance on the first day of each month commencing on June 1, 1996, and (b) for the three-year period beginning June 1, 1997, Wexford shall pay InSight or its designee an annual fee in the amount of 2% of the

Outstanding Principal Amount invested by Wexford pursuant to this Agreement, which fee will be paid in installments on the first day of each month of such period (collectively, the "Management Fee"). For purposes of this Agreement, "Outstanding Principal Amount" shall mean the initial amount of cash invested in any securities of any Investment Opportunity minus distributions in respect of such securities representing a return of capital to Wexford in respect of such initial cash investment.

6. Allocation of Fees: Any board fees, break-up fees, closing fees, consulting fees, advisory fees, options, transaction fees or other fees paid to InSight or an affiliate but allocable in any manner to any investment by Wexford in an Investment Opportunity pursuant to the terms of this Agreement will be delivered by InSight to Wexford within ten business days of InSight's receipt thereof, provided that any amounts of up to $25,000 allocated to Wexford pursuant to this provision may be retained by InSight and credited against the Management Fee that is otherwise payable by Wexford and then currently outstanding. The obligations under this Section 6 shall survive the termination of this Agreement.

7. Due Diligence Expense: Any due diligence expenses reasonably incurred by InSight in connection with the Investment Opportunity shall be borne pro rata by InSight and Wexford in proportion to their respective amounts invested in the Investment Opportunity. In the event that Wexford declines for any reason to invest in any Investment Opportunity, Wexford shall have no obligation to bear any portion of such due diligence expense.

8. Indemnification: Wexford shall indemnify InSight and each of its affiliates, advisors, officers, directors, shareholders, employees and agents from and against any and all material claims, losses and liabilities arising out of or resulting from a) any breach by Wexford of this Agreement; b) any action or omission by Wexford; or c) any action or omission by InSight in reliance on any written communication believed to be genuine and to have been given by or on behalf of Wexford (including, without limitation, any actions or inactions taken or not taken in any way related to the grant of the proxies contemplated hereby), except claims, losses or liabilities involving Insights gross negligence or willful misconduct. The obligations of Wexford under this Section 8 shall survive the termination of this Agreement.

InSight shall indemnify Wexford and each of its affiliates, advisors, officers, directors, shareholders, employees and agents from and against any and all material claims, losses and liabilities arising out of or resulting from a) any breach by InSight of this Agreement; b) any action or omission by InSight; or c) any action or omission by Wexford in reliance on any written communication believed to be genuine and to have been given by or on behalf of InSight, except claims, losses or liabilities involving Wexford gross negligence or willful misconduct. The obligations of InSight under this Section 8 shall survive the termination of this Agreement.

9. Liquidation of Investments: At any time after four years from the date of this Agreement, Wexford shall have the right to instruct InSight to liquidate any investments made pursuant to this Agreement, and InSight agrees to effect such liquidation as promptly as possible

following such instruction, provided, however, that InSight shall use its reasonable best efforts to effectuate such liquidation within 180 days after Wexford makes any such instruction. The obligations under this Section 9 shall survive the termination of this Agreement.

10. Notifications: Any notice required or permitted to be made hereunder shall be in writing and delivered to the appropriate party by hand or by overnight delivery service (such as Federal Express) at the address set forth above or at such other address as may be provided pursuant to this provision.

11. No Assignment: Neither party hereto shall be permitted to assign its rights or obligations under this Agreement without the prior written consent of the other party which consent shall not unreasonably be withheld.

12. No Amendment; Governing Law: This Agreement may not be amended or modified in any manner nor may any of its provisions be waived except by written amendment executed by the parties. This Agreement will be governed by the laws of the State of New York applicable to contracts made and performed within such state.

IN WITNESS WHEREOF, the parties have set their hands as of the date first written above.

WEXFORD INSIGHT LLC
By: Wexford Management LLC
as Manager

By: [signature]
Name:
Title:

INSIGHT VENTURE MANAGEMENT INC.

By: [signature]
Name: Jeffrey Horing
Title: Member



STIP0304