# CONSULTING AGREEMENT

This consulting agreement dated as of April 3, 1997, is by and between WI Software Investors LLC ("WISI"), a Delaware limited liability company having an address at 411 West Putnam Avenue, Suite 125, Greenwich, Connecticut 06830, and InSight Venture Management, Inc. ("InSight"), a corporation organized and existing under the laws of the State of Delaware with an address at 411 West Putnam Avenue, Greenwich, Connecticut 06830.

WHEREAS, WISI has been formed as a Delaware limited liability company for the purpose of making investments in companies engaged in the software and other industries; and

WHEREAS, WISI desires to engage InSight to advise on investments in such industries, and InSight desires to advise WISI in such capacity, on the terms and conditions set forth herein.

NOW THEREFORE, in consideration of the mutual covenants and promises contained herein and other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, and intending to be legally bound hereby, the parties hereto agree as follows:

1. Investment Opportunities: During the period commencing on the date of this Agreement and ending on the second anniversary of the date hereof (the "Investment Period"), InSight shall identify for WISI investment opportunities in the software and related industries (each, an "Investment Opportunity"). For each such Investment Opportunity, InSight or its affiliates shall give written notice to WISI of its right of first refusal to participate in such Investment Opportunity to the extent of the greater of: (a) 50% of the amounts to be invested in the Investment Opportunity or (b) the percentage of the Investment Opportunity not invested in by InSight or its affiliates (including investors therein). WISI shall have the right, but not the obligation, to invest in all or any portion of the amount of the Investment Opportunity offered to it by InSight. For each such proposed Investment Opportunity, InSight or its affiliates shall provide in a form satisfactory to WISI written details of such proposed Investment Opportunity. Within ten business days following receipt of such notice, WISI shall give notice to InSight as to whether it intends to invest in such Investment Opportunity and the amount of its proposed investment. In the event that any "New Material Terms" develop with respect to such Investment Opportunity following the original written notice, WISI's original acceptance or rejection shall be void and such New Material Terms shall constitute a new Investment Opportunity for which InSight or its affiliates shall submit a new written notice. For purposes of this agreement, "New Material Terms" shall mean a change in price of 10% or more, or a change in the proposed Investment Opportunity. For any Investment Opportunity that WISI declines to invest in, or for which WISI does not provide notice of its acceptance as set forth herein, InSight or its designee shall have the right to participate in up to 100% of such Investment Opportunity, subject to its requirement to submit a written notice to WISI in the event of any New Material Terms.

2. Proxy: WISI hereby constitutes and appoints InSight, or any nominee of InSight, with full power of substitution, prior to the Proxy Termination Date (as defined in the following sentence of this paragraph 2), as WISI's true and lawful attorney and irrevocable proxy, for and in WISI's name, place and stead, to vote each of the shares of capital stock or other equity interests in all Investment



EXHIBIT 16

Opportunities as WISI's proxy, at every annual, special or adjourned meeting of the shareholders or equity holders of any Investment Opportunity (including the right to sign WISI's name to any consent, certificate or other document relating to any such Investment Opportunity) for any lawful purpose other than for "Significant Matters" as that term is defined below in this paragraph 2; WISI intends this proxy to be irrevocable (prior to the Proxy Termination Date) and coupled with an interest and will take such further action and execute such other instruments as may be necessary to effectuate the intent of this proxy. WISI shall have the right to terminate the proxy given pursuant to this provision with respect to any security in an Investment Opportunity on the date (the "Proxy Termination Date") which is the earliest of: (v) six months after a public offering of at least twenty-five percent (25%) of the fully diluted capital stock of the Investment Opportunity which issued the securities held by WISI, (w) four years after the date of this Agreement; (x) a material breach by InSight of its obligations under this Agreement; (y) the dissolution, bankruptcy or legal incapacity of Insight or its permitted assignee hereunder or (z) the death, legal incapacity, legal disability or conviction of a felony of Jeffrey Horing or Jerry Murdock.

For "Significant Matters" (as specified in the following sentence) with respect to any Investment Opportunity, InSight agrees that it shall be required to provide prompt notice of such matters to WISI and to vote WISI's securities on such matters in the manner directed by WISI. For purposes of this Agreement, "Significant Matters" shall mean: (a) amendments to the certificate of incorporation of the Investment Opportunity requiring greater than a majority vote, or requiring a vote by a special class or series; (b) mergers (other than mergers among affiliates) or consolidations; (c) sale, lease, exchange or other disposition of all or substantially all of the Investment Opportunity's assets; or (d) dissolution of the Investment Opportunity.

WISI shall have the right to terminate the proxy given pursuant to this Paragraph 2 with respect to any vote on a Significant Matter with respect to an Investment Opportunity prior to the Proxy Termination Date.

3. <u>Minimum Number and Amount</u>: InSight agrees that during the Investment Period it will identify to WISI at least six separate Investment Opportunities, all of which if invested in by WISI would allow for a total aggregate investment by WISI of at least $20 million; <u>provided</u> that in the event of InSight's failure to identify such Investment Opportunities to WISI during the Investment Period, InSight agrees that it shall promptly return to WISI any Management Fees (defined in paragraph 5 below) paid pursuant to this Agreement prior to April 3, 1999 to the extent such fees exceed 2% of the Outstanding Principal Amount (defined below).

For purposes of this Agreement, "Outstanding Principal Amount" shall mean the amount of cash invested by WISI pursuant to this Agreement in any securities of any Investment Opportunity minus distributions in respect of such securities representing a return of capital to WISI in respect of such initial cash investment.

4. <u>Sole Discretion</u>: WISI shall have the right in its sole discretion to determine whether and to what extent to proceed with or participate in any Investment Opportunity originated by InSight. In the event that a WISI entity other than WISI InSight LLC shall directly participate in an Investment

Opportunity pursuant to this Agreement, such event shall be deemed a breach of this Agreement absent InSight's written approval of such investment.

5. Management Fee: In consideration of the rights and benefits afforded to WISI hereunder: (a) during the Investment Period, WISI shall pay to InSight or its designee an annual fee of the greater of: (x) $375,000; or (y) 2% of the Outstanding Principal Amount, which fee will be paid in monthly installments in advance beginning on April 3, 1997, and thereafter on the first day of each month ending with a payment on March 1, 1999, and (b) for the three-year period beginning April 3, 1999, WISI shall pay InSight or its designee an annual fee in the amount of 2% of the Outstanding Principal Amount invested pursuant to this Agreement, which fee will be paid in installments in advance on the first day of each month of such period, ending with a payment on March 1, 2002 (collectively, the "Management Fee"); provided, however, that the obligation to pay such Management Fee shall terminate prior to March 1, 2002 upon the earliest to occur of: (x) a material breach by InSight of its material obligations under this Agreement; (y) the dissolution, bankruptcy or legal incapacity of InSight or its permitted assignee; or (z) the death, legal incapacity, legal disability or conviction of a felony of Jeffrey Horing or Jerry Murdock.

6. Allocation of Fees: Any board fees, break-up fees, closing fees, consulting fees, advisory fees, options, transaction fees or other fees paid to InSight or an affiliate but allocable in any manner to any investment by WISI in an Investment Opportunity pursuant to the terms of this Agreement will be delivered by InSight to WISI within ten business days of InSight's receipt thereof, provided that any amounts of up to $25,000 allocated to WISI pursuant to this provision may be retained by InSight and credited against the Management Fee that is otherwise payable by WISI and then currently outstanding. The obligations under this Section 6 shall survive the termination of this Agreement.

7. Due Diligence Expense: Any due diligence expenses reasonably incurred by InSight in connection with the Investment Opportunity shall be borne pro-rata by InSight and WISI in proportion to their respective amounts invested in the Investment Opportunity, provided, however, that for prospective investments that do not become Investment Opportunities, WISI agrees to bear 50% (up to $100,000) of such expenses, and amounts greater than $100,000 subject to WISI giving prior written approval for such expenses. In the event that WISI declines for any reason to invest in any Investment Opportunity, WISI shall have no obligation to bear any portion of such due diligence expense.

8. Indemnification: WISI shall indemnify InSight and each of its affiliates, advisors, officers, directors, shareholders, employees and agents from and against any and all material claims, losses and liabilities arising out of or resulting from (a) any breach by WISI of this Agreement; (b) any action or omission by WISI; or (c) any action or omission by InSight in reliance on any written communication believed to be genuine and to have been given by or on behalf of WISI (including, without limitation, any actions or inactions taken or not taken in any way related to the grant of the proxies contemplated hereby), except claims, losses or liabilities involving Insights gross negligence or willful misconduct. The obligations of WISI under this Section 8 shall survive the termination of this Agreement.

InSight shall indemnify WISI and each of its affiliates, advisors, officers, directors, shareholders, employees and agents from and against any and all material claims, losses and liabilities arising out of or resulting from (a) any breach by InSight of this Agreement; (b) any action or omission by InSight; or (c) any action or omission by WISI in reliance on any written communication believed to be genuine and to have been given by or on behalf of InSight, except claims, losses or liabilities involving WISI gross negligence or willful misconduct. The obligations of InSight under this Section 8 shall survive the termination of this Agreement.

9. Liquidation of Investments: At any time after five years from the date of this Agreement, WISI shall have the right to instruct InSight to liquidate any investments made pursuant to this Agreement, and InSight agrees to effect such liquidation as promptly as possible following such instruction, provided, however, that InSight shall use its reasonable best efforts to effectuate such liquidation within 180 days after WISI makes any such instruction. The obligations under this Section 9 shall survive the termination of this Agreement.

10. Life Insurance: InSight agrees to make Jeffrey Horing and Jerry Murdoch available as reasonably requested by WISI or its affiliate to obtain life insurance on Mr. Horing and Mr. Murdoch.

11. Notifications: Any notice required or permitted to be made hereunder shall be in writing and delivered to the appropriate party by hand or by overnight delivery service (such as Federal Express) at the address set forth above or at such other address as may be provided pursuant to this provision.

12. No Assignment: Neither party hereto shall be permitted to assign its rights or obligations under this Agreement without the prior written consent of the other party which consent shall not unreasonably be withheld.

13. No Amendment; Governing Law: This Agreement may not be amended or modified in any manner nor may any of its provisions be waived except by written amendment executed by the parties. This Agreement will be governed by the laws of the State of New York applicable to contracts made and performed within such state.

IN WITNESS WHEREOF, the parties have set their hands as of the date first written above.

| | |
|---|---|
| WI SOFTWARE INVESTORS LLC<br>By: Wexford Management LLC<br>as Manager | INSIGHT VENTURE MANAGEMENT INC. |
| By: [signature] | By: [signature] |
| Name: | Name: |
| Title: | Title: Jeffrey Horing |