SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| IMPRIMIS INVESTORS LLC and WI SOFTWARE INVESTORS LLC, Plaintiffs, | Index No. 00-604431 |
| -against- | IAS Part 49 |
| INSIGHT VENTURE MANAGEMENT, INC., JEFFREY HORING, JERRY MURDOCK, INSIGHT VENTURE ASSOCIATES II, LLC, and INSIGHT VENTURE ASSOCIATES III, LLC, *Defendants.* | Justice Cahn **AMENDED COMPLAINT** |

Plaintiffs Imprimis Investors LLC ("Imprimis") and WI Software Investors LLC ("WISI" and, collectively with Imprimis, "Plaintiffs"), as and for their Amended Complaint against defendants Insight Venture Management, Inc. ("Insight"), Jeffrey Horing ("Horing"), Jerry Murdock ("Murdock"), Insight Venture Associates II, LLC, ("Insight Venture II"), and Insight Venture Associates III, LLC ("Insight Venture III"), allege, on actual knowledge as to Plaintiffs' status, actions, and knowledge, and on information and belief as to all other matters, as follows:

## Nature of this Action

1. Through this action, Plaintiffs seek redress from Insight and the other Defendants for the wrongful diversion of highly valuable investment opportunities from Plaintiffs to Defendants. In so doing, Defendants, inter alia, breached contractual and fiduciary obligations to Imprimis and WISI and made repeated, material misrepresentations to Plaintiffs in an effort to hide their wrongdoing, thereby depriving



EXHIBIT
21

Imprimis and WISI of more than $288.7 million in investment profits that properly should have flowed to Plaintiffs.

2. Defendants' wrongdoing stems from Defendant Insight's breaches of two contracts — the "Consulting Agreements" — with WISI and Imprimis. Under the Consulting Agreements, among other things, Insight was required to provide WISI and, subsequently, Imprimis, with a right of first refusal to participate in up to 50 percent (or more under certain circumstances) of investments in the software and related industries identified by Insight in accordance with those Consulting Agreements (the "Investment Opportunities").

3. Despite its clear obligations, Insight failed to provide Plaintiffs with numerous Investment Opportunities identified by Insight as required by the Consulting Agreements. Instead, Defendants Insight, Horing, Murdock, Insight Venture II, and Insight Venture III, inter alia, "cherry picked" the investments and diverted certain particularly lucrative Investment Opportunities to their own existing and to newly-formed managed limited partnerships and to prospective investors in those partnerships. Defendants' scheme was intended, inter alia, to facilitate the marketing of these new partnerships by: (i) permitting favored affiliates and others, who were in a position to invest in the new funds and/or encourage others to do so, to co-invest with Insight in the diverted Investment Opportunities; and (ii) allowing Insight to represent to prospective investors that its new funds would make investments in these lucrative Investment Opportunities. Key elements of this wrongful scheme were: (i) Defendants' intentional failure to provide Plaintiffs with notice of certain of the diverted Investment Opportunities; (ii) Defendants' failure to notify Plaintiffs of material changes in a

previously presented Investment Opportunities; (iii) Defendants' actions in delaying the closings of other diverted Investment Opportunities until after the expiration of the Consulting Agreements; and (iii) Defendants' false representations that Plaintiffs had no right to participate in the diverted Investment Opportunities.

4. Moreover, Defendants, for their own economic benefit, wrongfully caused valuable warrants acquired by WISI in connection with Plaintiffs' participation in one of the Investment Opportunities to be "assigned" to third parties. This "assignment" was entirely unauthorized by Plaintiffs and constituted the conversion of millions of dollars of WISI property. Defendants compounded this wrong by hiding this transaction and a related Investment Opportunity from Plaintiffs.

5. In addition, despite the obligations imposed by the Agreements, Insight, for its own benefit and for the benefit of Horing, Murdock, Insight Venture II, and Insight Venture III, failed to pay over to Plaintiffs their pro rata share of board fees, break-up fees, consulting fees, other fees, options, and other benefits that were allocable to investments covered by the Agreements, including allocations in "hot issue" initial public offerings received by Horing, Murdock, and their affiliates from the various Investment Opportunities or from underwriters as a quid pro quo for investment banking business arising from, inter alia, the Investment Opportunities.

6. In light of the foregoing, Plaintiffs are entitled to compensatory damages of at least $288.7 million as a result of Insight's breaches of contract and unjust enrichment, and compensatory and punitive damages as a result of the tortious interference (by Horing, Murdock, Insight Venture II, and Insight Venture III) with the Consulting Agreements, as well as the breaches of fiduciary duty, conversion,

affirmative misrepresentations, and other fraudulent conduct of all Defendants. Plaintiffs also are entitled to: (i) an accounting from Defendants Insight, Horing, Murdock, Insight Venture II, and Insight Venture III of all Investment Opportunities that should have flowed to Plaintiffs under the Consulting Agreements and of all fees, options, and other benefits, including allocations in "hot issue" public offerings, received by Defendants Insight, Horing, Murdock, Insight Venture II, and Insight Venture III, and/or their affiliates from, or in connection with, those investments; (ii) a mandatory injunction requiring Defendants Insight, Horing, Murdock, Insight Venture II, and Insight Venture III and their affiliates to turn over to Plaintiffs all securities or other property still in their possession that rightfully belong to Plaintiffs; and (iii) the imposition of a constructive trust over the proceeds of such investments.

**The Parties**

7. Plaintiff Imprimis is a Delaware limited liability company maintaining its principal place of business at 411 West Putnam Avenue, Suite 125, Greenwich, Connecticut 06830. Imprimis was formed for the purpose of making various investments, including investments in companies engaged in the software and related industries. Non-party Wexford Management LLC (now known as Wexford Capital LLC) ("Wexford") is the Manager of Imprimis.

8. Plaintiff WISI is a Delaware limited liability company maintaining its principal place of business at 411 West Putnam Avenue, Suite 125, Greenwich, Connecticut 06830. WISI is a wholly-owned subsidiary of Imprimis and was formed for the purpose of making investments in the software and related industries. Wexford is the Manager of WISI.

9. Defendant Insight is a Delaware corporation maintaining its principal offices at 527 Madison Avenue, New York, New York 10022. Pursuant to various agreements, Insight provides management and investment services to certain limited partnerships engaged in the business of making investments in the software and related industries. These limited partnerships include: Insight Capital Partners II, L.P. ("Insight II"); Insight Partners (Cayman) II, L.P. ("Insight Cayman II"); Insight Capital Partners III, L.P. ("Insight III"); Insight Capital Partners III Co-Investors, L.P. ("Insight Co-Investors"); and Insight Capital Partners (Cayman) III, L.P. ("Insight Cayman III"). (Insight II, Insight Cayman II, Insight III, Insight Co-Investors, and Insight Cayman III are collectively referred to in this Complaint as the "Limited Partnership Affiliates.")

10. Defendant Horing is an individual maintaining his principal place of business at 527 Madison Avenue, New York, New York 10022. Horing is a principal and control person of Insight, Insight Venture II, Insight Venture III, and the Limited Partnership Affiliates, and a limited partner of the Limited Partnership Affiliates.

11. Defendant Murdock is an individual maintaining places of business at 527 Madison Avenue, New York, New York 10022 and 300 Puppysmith Street, Suite 205, Aspen, Colorado 81611. Murdock is a principal and control person of Insight, Insight Venture II, Insight Venture III, and the Limited Partnership Affiliates, and a limited partner of the Limited Partnership Affiliates.

12. Defendant Insight Venture II is a Delaware limited liability company maintaining its principal place of business at 527 Madison Avenue, New York, New York, 10022. Insight Venture II is the general partner of Insight II and Insight Cayman II. Defendants Murdock and Horing are the managers of Insight Venture II. Insight

Venture II was a member of WISI and a party to the WISI Limited Liability Company Agreement (the "WISI LLC Agreement"), and is a member of Imprimis, and a party to the Imprimis Limited Liability Company Agreement (the "Imprimis LLC Agreement").

13. Defendant Insight Venture III is a limited liability company maintaining its principal place of business at 527 Madison Avenue, New York, New York 10022. Insight Venture III is the general partner of Insight III, Insight Co-Investors, and Insight Cayman II. Defendants Murdock and Horing are the managers of Insight Venture III.

14. In connection with the transactions complained of herein, Insight, Horing, Murdock, Insight Venture II, and Insight Venture III all were alter egos of each other. Among other things, in connection with these transactions: (1) the Defendants did not always preserve the formalities and paraphernalia that are part and parcel of the corporate existence of Insight and the limited liability company existence of Insight Venture II and Insight Venture III in that, inter alia, certain transactions which should have been made by one Insight entity, or by Horing and Murdock personally, were in fact made by another Insight entity and proper documentation was not kept; (2) Insight was inadequately capitalized and Insight Venture II was made the nominee/designee of Insight to receive performance-based fees as a result of Investment Opportunities identified under the Consulting Agreements, but Insight Venture II was not to keep those performance-based fees, which passed through it to Horing and Murdock (and, to a limited extent, to others); (3) in numerous instances, funds and/or investments were put in and/or taken out of one of the Insight entities to be transferred or given to another one of the Insight entities, or to Horing and Murdock, for the personal benefit of Horing and

Murdock, rather than for the benefit of Insight, Insight Venture II, or Insight Venture III, including the fact that any carry paid to Insight Venture II as a result of it being a member of WISI and Imprimis passed through Insight Venture II to Horing and Murdock; (4) there was an overlap in ownership, officers, directors, members, and personnel, among Insight, Insight Venture II and Insight Venture III; (5) Insight, Insight Venture II, Insight Venture III, Horing, and Murdock all shared common office space, address, and telephone numbers; (6) Insight, Insight Venture II, and Insight Venture III had no independent business discretion, and virtually all decisions for those entities were made by Horing and Murdock; (7) Insight, Insight Venture II, and Insight Venture III did not deal with each other at arms' length; (8) in numerous respects, Insight Venture II and Insight Venture III were not treated by Horing and Murdock as profit centers independent of Insight; (9) Insight Venture II and Insight Venture III paid various monies owed to or by Insight as a result of actions taken by Horing and Murdock, including having the "carry," that was payable to Insight as a result of Investment Opportunities identified pursuant to the Consulting Agreements, paid to Insight Venture II and passed through it to Horing and Murdock; and (10) Insight Venture II and Insight Venture III had their monies and other property used by Insight, Horing, and Murdock as if it was their own.

## Venue

15. Venue is proper in this county pursuant to CPLR 503(a), (c), and (d) in that, inter alia, Defendants Horing, Murdock, Insight, Insight Venture II, and Insight Venture III maintain their principal offices in this county.

**Facts Applicable to All Causes of Action**

**The Relationship Among Insight and Plaintiffs**

16. In late 1995, Horing was introduced to Wexford. Prior thereto, Horing and Murdock had established Insight to make investments in the software and related industries.

17. At the time Murdock and Horing were introduced to Wexford, Wexford had been in business since mid-1994, having been formed by experienced investment professionals, and Wexford had raised significant sums of money to make private equity investments. By late 1995, Wexford had established a significant reputation in the investment community and its principals were well known and respected.

18. After one of Wexford's principals made an initial small investment based on a recommendation by Horing and Murdock, Wexford and Insight agreed to establish a business relationship.

19. To develop their relationship further, Insight and Wexford agreed that they would enter into a consulting agreement pursuant to which Insight would provide advice to Wexford in connection with investments in the software and related industries, and Wexford would provide Insight with management fees and the reimbursement of expenses to help fund Insight's business. Wexford also initially provided Insight with office space in Wexford's offices and the utilization of support services.

20. On or about June 1, 1996, notwithstanding the fact that Insight and Wexford had not yet entered into a formal consulting agreement, Insight began

providing certain of the services contemplated by the parties. Moreover, on or about September 20, 1996, Wexford advanced to Insight $83,333, as a pro rata portion of the first year's fee.

21. Thereafter, Wexford, on behalf of a newly-formed Delaware limited liability company named Wexford Insight LLC ("Wexford/Insight"), entered into a consulting agreement with Insight, dated as of June 1, 1996, that required Insight to advise Wexford/Insight on investments in the software and other industries (the "Wexford/Insight Agreement").

22. As of June 1, 1996, the parties also entered into a limited liability company agreement, inter alia, to provide a means of paying the performance-based fees to Insight in a potentially tax-advantaged manner. Under the Limited Liability Company Agreement of Wexford Insight LLC (the "Wexford/Insight LLC Agreement"), Wexford was appointed Manager of Wexford/Insight, and the members of Wexford/Insight were certain other Wexford entities and Insight. Insight was made a member of Wexford/Insight LLC at the request of Insight, Horing, and Murdock solely to receive any "carry" -- i.e. a performance-based fee -- that Insight was to receive in connection with Investment Opportunities identified pursuant to the Wexford/Insight Agreement. Insight performed no services for Wexford/Insight LLC.

23. Under the Wexford/Insight Agreement, for a period of one year, Insight was required to identify for Wexford/Insight at least three separate investment opportunities in the software and related industries and Wexford/Insight received a right of first refusal to the extent of at least 50 percent of the amounts invested over the first $1 million to be invested by Insight or its other affiliates.

24. *In consideration of the right of first refusal and other rights granted* to Wexford under the Wexford/Insight Agreement, Wexford agreed to pay Insight various fees and expenses, and provided Insight with certain proxy and indemnification rights.

25. The Wexford/Insight Agreement was a successful business arrangement for all parties concerned. Insight identified numerous investment opportunities in the software and related fields to Wexford/Insight and Wexford/Insight made several investments through the exercise of its first refusal rights under the Wexford/Insight Agreement.

26. As a result of the relationship that had developed between Wexford and Insight and the prospects of additional successes, WISI, another entity managed by Wexford, and Insight entered into a new consulting agreement as of April 3, 1997 (the "WISI Consulting Agreement").

27. Thereafter, on or about September 30, 1998, Wexford, on behalf of Imprimis, entered into a consulting agreement with Insight (the "Imprimis Consulting Agreement") that superseded and replaced the WISI Consulting Agreement.

28. The relationship among the parties in the initial stages of WISI Consulting Agreement and Imprimis Consulting Agreement proceeded as contemplated. However, as more fully described below, when the Consulting Agreements were coming to a close, Defendants Insight, Horing, Murdock, Insight Venture II, and Insight Venture III, devised and implemented a scheme to divert lucrative Investment Opportunities from Plaintiffs to themselves and their affiliates. The stealing of those Investment Opportunities by Defendants led to this action.

**The WISI Consulting Agreement**

29. On or about April 3, 1997, WISI and Insight entered into the WISI Consulting Agreement, a two-year contract pursuant to which Insight agreed to advise WISI regarding investments in the software and related industries.

30. To implement the WISI Consulting Agreement, Wexford formed WISI as a Delaware limited liability company, and the parties entered into the WISI LLC Agreement, dated as of April 3, 1997, with Wexford as the Manager, and WI Software Holding LLC and Insight Venture II as the members. Insight Venture II was designated by Insight, Horing, and Murdock to be a member of WISI in order for it to receive performance-based fees (i.e., a "carry" or share of profits) due Insight as a result of investments identified under the WISI Consulting Agreement. Insight Venture II performed no services for WISI.

31. Under the WISI Consulting Agreement, Insight, inter alia, agreed to identify for WISI "investment opportunities in the software and related industries" during the term of the WISI Agreement (each, an "Investment Opportunity"). The WISI Consulting Agreement further provided that:

> For each such Investment Opportunity, Insight or its affiliates shall give written notice to WISI of its right of first refusal to participate in such Investment Opportunity to the extent of the greater of: (a) 50% of the amounts to be invested in the Investment Opportunity or (b) the percentage of the Investment Opportunity not invested in by Insight or its affiliates (including investors therein). WISI shall have the right, but not the obligation, to invest in all or any portion of the amount of the Investment Opportunity offered to it by Insight.

WISI Consulting Agreement § 1. (A true and complete copy of the WISI Consulting Agreement is annexed hereto as Exhibit A and is incorporated by reference herein.)

32. Thus, pursuant to the WISI Consulting Agreement, for a two-year period commencing April 3, 1997, Insight was obligated to offer to WISI a right of first refusal to invest up to at least 50 percent of the total amount to be invested in all Investment Opportunities in software and related industries identified by Insight during the term of the WISI Consulting Agreement. Moreover, under the WISI Consulting Agreement, *WISI had a right of first refusal to invest up to 100 percent in an Investment* Opportunity if Insight (or its affiliates) did not invest Insight's full 50 percent share.

33. The WISI Consulting Agreement also provided that, after Insight furnished written notice of WISI's right of first refusal to participate in an Investment Opportunity, along with written details of the investment, if there was any change in the terms of the Investment Opportunity, Insight was required to notify WISI in writing of such "New Material Terms." WISI Consulting Agreement § 1.

34. Pursuant to the WISI Consulting Agreement, Insight also was obligated to allocate to WISI on a pro rata basis any "board fees, break-up fees, closing fees, consulting fees, advisory fees, options, transaction fees or other fees paid to Insight or any of its affiliates, but allocable in any manner to any investment by WISI in an Investment Opportunity pursuant to the terms of this agreement. . . ." WISI Consulting Agreement § 6.

35. This right of WISI to share fees and options arising out of Investment Opportunities identified under the WISI Consulting Agreement survived the termination of the Agreement. See WISI Consulting Agreement § 6.

36. In consideration of the rights and benefits afforded to WISI under the WISI Consulting Agreement, WISI agreed to pay Insight certain fees, reimburse on

a pro rata basis certain due diligence expenses relating to Investment Opportunities, and to provide Insight with certain proxy and indemnification rights. See WISI Agreement §§ 2, 5, 7, 8.

37. As a result of the various agreements among the parties, Insight owed fiduciary duties to WISI.

38. After the commencement of the WISI Consulting Agreement, Insight identified for WISI a number of Investment Opportunities in the software and related industries. WISI exercised its right of first refusal with respect to several such Investment Opportunities.

**The Imprimis Consulting Agreement**

39. On or about September 30, 1998, Imprimis and Insight entered into the Imprimis Consulting Agreement. (A true and complete copy of the Imprimis Consulting Agreement is annexed hereto as Exhibit B and is incorporated by reference herein.)

40. To implement the Imprimis Consulting Agreement, Wexford created a new class of membership interests in Imprimis to invest in Insight-identified deals, and the parties entered into an amended and restated limited liability company agreement, dated as of September 30, 1998, with Wexford as the Manager, and three of Wexford's affiliates and Insight Venture II as the members. Insight Venture II was designated by Insight, Horing, and Murdock to be a member of Imprimis in order for it to receive performance-based fees (i.e., carry) payable to Insight as a result of investments made by Imprimis pursuant to its right of first refusal under the Imprimis Consulting Agreement. Insight Venture II performed no services for Imprimis.

41. The fact that the WISI and Imprimis Consulting Agreements were with one Horing/Murdock entity (Insight) and a different Horing/Murdock entity (Insight Venture II) became the member of WISI, and later of Imprimis, was immaterial to Wexford. Defendants Horing and Murdock decided, for their own purposes, that Insight Venture II should be the member of WISI and Imprimis to receive the performance-based fee for investments identified by Insight pursuant to the Consulting Agreements, just as they had previously decided that Insight would be the member of Wexford/Insight. Their decision to make Insight Venture II the entity that would receive the "carry" earned by Insight pursuant to the respective Consulting Agreements, in a manner that was potentially advantageous to Horing, Murdock, and Insight from a tax perspective, was based purely on their internal considerations and Wexford was not involved in that decision. From Wexford's perspective, all of the Horing/Murdock entities were alter egos of Defendants Horing and Murdock, especially because Insight Venture II did not act in any capacity as a member of Imprimis other than as the nominee/designee of Insight to receive any carry that Insight might earn under the Imprimis Consulting Agreement.

42. Significantly, Insight Venture II never purchased its membership interest in WISI or Imprimis, never contributed any capital, except for a nominal $1,000, (as compared to over $50 million contributed by the Wexford-related members), never performed any services for WISI or Imprimis (the only services were performed under the Consulting Agreements), never had any voting rights, and its sole entitlement to receive distributions from Imprimis is based on any carry earned by Insight under the Consulting Agreements.

43. The Imprimis Consulting Agreement, by its specific terms, superceded and replaced the WISI Consulting Agreement, and terminated on the same date the WISI Consulting Agreement would have ended, i.e., April 2, 1999. See Imprimis Consulting Agreement § 13.

44. Pursuant to the Imprimis Consulting Agreement, Insight, inter alia, agreed to "provide Imprimis with a right of first refusal for all investment opportunities in the software and related industries identified by Insight" during the term of the Imprimis Agreement (each, an "Investment Opportunity"). The Imprimis Consulting Agreement further provided that:

> For each Investment Opportunity, Imprimis' right of first refusal entitles it to participate in the Investment Opportunity to the extent of the greater of: (a) 50% of the amounts to be invested in the Investment Opportunity or (b) the percentage of the Investment Opportunity not invested in by Insight or its affiliates (including investors therein). Imprimis shall have the right, but not the obligation, to invest in all or any portion of the amount of the Investment Opportunity offered to it by Insight. For each proposed Investment Opportunity, Insight or its affiliates shall provide in a form satisfactory to Imprimis written details of such proposed Investment Opportunity.

Imprimis Consulting Agreement § 1.

45. Accordingly, pursuant to the Imprimis Consulting Agreement, Insight was obligated to provide Imprimis with its right of first refusal to invest up to at least 50 percent of the total amount to be invested in all Investment Opportunities in the software and related industries identified by Insight during the term of the Imprimis Consulting Agreement. Moreover, like the WISI Consulting Agreement, under the Imprimis Consulting Agreement, Imprimis had a right of first refusal to invest up to a 100 percent investment in an Investment Opportunity if Insight (or its affiliates) did not invest Insight's full 50 percent share.

46. Like the WISI Consulting Agreement, the Imprimis Consulting Agreement required Insight to provide written notice of Imprimis' right of first refusal to participate in an Investment Opportunity, along with written details of the investment, and, if there was any change in the Investment Opportunity thereafter, Insight was required to notify Imprimis in writing of any "New Material Terms."

47. Also, like the WISI Consulting Agreement, the Imprimis Consulting Agreement gave Imprimis the right to share, on a pro rata basis with Insight and its affiliates, all fees or other benefits paid to Insight or any of its affiliates by any third party in connection with an Investment Opportunity. As set forth in the Imprimis Agreement, § 6: "Any board fees, break-up fees, closing fees, consulting fees, advisory fees, options, transaction fees or other fees paid to Insight or an affiliate but allocable in any manner to any investment by Imprimis or WISI in any Investment Opportunity pursuant to the terms of this Agreement or the WISI Agreement shall be delivered by Insight to Imprimis in ten business days of Insight's receipt thereof. . . ."

48. In addition, again like the WISI Consulting Agreement, the Imprimis Consulting Agreement obligated Imprimis to pay Insight certain fees and share on a pro rata basis certain due diligence expenses incurred by Insight in connection with Investment Opportunities, and to provide certain proxy and indemnification rights to Insight. See Imprimis Consulting Agreement §§ 2, 5, 7, 8.

49. Under the terms of the Imprimis Consulting Agreement, Insight's obligation to turn over to Imprimis a pro rata share of fees and options arising out of Investment Opportunities survived the termination of the Imprimis Consulting Agreement. See Imprimis Consulting Agreement § 6.

50. As a result of the various agreements among the parties, Insight owed fiduciary duties to Imprimis.

51. After the commencement of the Imprimis Consulting Agreement, Insight identified for Imprimis a number of Investment Opportunities in the software and related industries. Imprimis exercised its right of first refusal with respect to several such Investment Opportunities.

**Defendants' Wrongful Actions and Inactions**

**Defendants' Wrongful Failure to Offer Wexford**
***Investment Opportunities in Illuminet and HUON***

52. Sometime prior to July 1998, during the term of the WISI Consulting Agreement, Insight identified Illuminet Holdings, Inc. ("Illuminet") as an Investment Opportunity. Illuminet provides advanced intelligent network, database, and billing services to the telecommunications industry.

53. Indeed, in or prior to July 1998, Insight was engaged in negotiations with Illuminet regarding an investment in Illuminet. Clearly, by that time, Insight had performed extensive due diligence and other financial analysis concerning a potential investment in Illuminet and thus had "identified" Illuminet as an Investment Opportunity during the term of the Consulting Agreements.

54. Nevertheless, neither Insight nor any of the other Defendants informed Wexford that Insight had identified Illuminet as an Investment Opportunity, nor did Insight provide WISI with the opportunity to participate in any such Investment Opportunity.

55. Instead of complying with its obligations under the WISI Consulting Agreement to provide WISI with its 50 percent right of first refusal in the Investment

Opportunity in Illuminet, Insight diverted such Investment Opportunity to Insight II. On or about August 31, 1998, during the term of the *WISI Consulting Agreement*, Insight Venture II, as the general partner of Insight II, executed documents pursuant to which Insight Venture II caused Insight II to purchase 240,000 shares of Illuminet common stock at a cost of $1,335,000, thus wrongfully converting an Investment Opportunity that should have been provided to WISI.

56. At some point prior to December 10, 1998, during the term of the *Imprimis Consulting Agreement*, Insight identified an additional Investment Opportunity in Illuminet. Insight again failed to afford Imprimis its first refusal right to participate in this Investment Opportunity. Instead, on December 10, 1998, Insight diverted that Investment Opportunity to Insight II and Insight Venture II, as the general partner of Insight II, executed documents pursuant to which Insight Venture II caused Insight II to purchase another 237,716 shares of Illuminet common stock at a cost of $958,590, thus wrongfully converting an Investment Opportunity that should have been provided to Imprimis.

57. Similarly, sometime prior to December 1998, during the term of the Agreements, Insight identified HUON Holdings ("HUON") as an Investment Opportunity. HUON is a vendor of enterprise-wide property and casualty insurance software.

58. On December 21, 1998, i.e., during the term of the Imprimis Consulting Agreement, Insight diverted the Investment Opportunity in HUON to Insight II and Insight Venture II, as the general partner of Insight II, executed documents pursuant to which Insight Venture II caused Insight II to make a $4.8 million investment in HUON, thus wrongfully converting an Investment Opportunity that should have been provided to

Imprimis. Again, Insight failed to afford Imprimis its first refusal right to participate in the Investment Opportunity in HUON.

59. Plaintiffs first discovered that Insight had failed to advise Plaintiffs of an Investment Opportunity in Illuminet on or about August 25 or 26, 1999. At that time, an Insight partner advised Wexford that Illuminet had filed a form S-1 registration statement in connection with an initial public offering. Because Plaintiffs had not been presented with the Investment Opportunity in Illuminet or HUON by Defendants, Wexford began to make inquiries concerning Illuminet and HUON.

60. On August 29, 1999, in response to Wexford's inquiry requesting information regarding Illuminet and HUON, Defendant Horing, on his own behalf, and on behalf of Defendants Murdock, Insight, and Insight Venture II, first asserted that Illuminet had allegedly been "discussed" with Plaintiffs in January 1999. This statement, as Defendant Horing knew, or should have known, was completely false. Insight II's investments in Illuminet occurred in August and December 1998, and there was no reason for Defendants to have first discussed those investments with Plaintiffs in 1999, after the investments already were made. In any event, Insight later admitted that Defendants' alleged prior mention of Illuminet to Plaintiffs incorrectly described the size and desirability of an investment in Illuminet. Additionally, the alleged oral discussion did not comply with the express terms of the Consulting Agreements, which required Insight to present Plaintiffs with "written details" of each Investment Opportunity.

61. After receiving Defendants' initial excuse, Plaintiffs responded that their files contained no information on Illuminet or HUON and asked to be provided with any documents on Illuminet that allegedly had been sent to Plaintiffs.

62. On October 5, 1999, Defendant Horing responded by claiming that Illuminet and HUON had been "discussed" with Plaintiffs sometime in 1998, stating:

> *We discussed both . . . I told you on Illuminet that it was a small (< $1.5 mm) deal in common stock that given the size and the fact that we were only able to do it by buying a secondary position from a friend, who was unlikely to sell to anyone else, that we would do it solo.*
>
> *I also mentioned HUON, which was done with Warburg, priced rich and in Europe. You are not missing anything.*

63. On October 6, 1999, Plaintiffs again advised Defendant Horing that it had no information in its files regarding either Illuminet or HUON and that neither of these Investment Opportunities had been offered to Plaintiffs as the Consulting Agreements required. Plaintiffs asked Horing for an explanation.

64. In a telephone discussion on October 8, 1999, Defendant Murdock, on his own behalf, and on behalf of Defendants Horing, Insight and Insight Venture II, embellished on the purported discussions with Plaintiffs concerning Illuminet. In that communication, Murdock claimed that he told Plaintiffs about a potential Illuminet investment but recommended that Plaintiffs not participate because the investment was too small, Illuminet had no real financial statements, and had questionable management because its CEO had left. In addition, Murdock claimed that he told Plaintiffs in 1998 that the valuation of Illuminet was "tough."

65. Horing and Murdock had no such "discussions" with Plaintiffs about Illuminet in 1998 or early 1999. Even if there had been such "discussions," the

descriptions of the Illuminet investment allegedly given by Horing and Murdock were false and misleading. Contrary to the information these Defendants claimed to have given to Plaintiffs, and as Defendants well knew, Illuminet was not a "small deal," Illuminet had real financial statements, and its chief executive officer had not left.

66. Moreover, such alleged oral "discussions" were insufficient under the Consulting Agreements, because Insight was required to provide written details of the proposed Investment Opportunity and it admittedly did not do so. In addition, its alleged excuse that Illuminet was initially a small deal that later grew in size was both irrelevant, because there was no minimum size for an investment to qualify as an Investment Opportunity, and pretextural, because, under the Consulting Agreements, Insight was required to advise Plaintiffs of any material changes in an Investment Opportunity and submit to Plaintiffs a written notice of any New Material Terms. Even Horing and Murdock did not attempt to offer an excuse for Insight's failure to advise Plaintiffs of the second tranche of the Illuminet investment or to provide Imprimis with its right of first refusal as to that Investment Opportunity.

67. In the October 8, 1999 telephone conversation, Defendant Murdock, on his own behalf, and on behalf of Defendants Horing, Insight and Insight Venture II, effectively admitted that Insight's purported description of Illuminet in 1998 was inaccurate. Murdock also conceded that the Illuminet deal had grown in size and that Insight had not informed Wexford of either the increase in size of the investment or the second tranche of the investment that was purchased by Insight II in December 1998.

68. Also on October 8, 1999, Defendant Horing apologized to Plaintiffs about Insight's handling of the Illuminet Investment Opportunity, stating: "I am sorry about the confusion as well as the poor communication. I am sure that we will have ample opportunity to make it up to you."

69. On or about October 20, 1999, Horing, on his own behalf, and on behalf of Defendants Murdock, Insight and Insight Venture II, confirmed to Plaintiffs that Insight should have provided Plaintiffs with the Investment Opportunity in Illuminet. As a result of various discussions between Plaintiffs and Insight concerning Insight's failure to provide a right of first refusal for Illuminet, Insight promised to "make up" to Plaintiffs for such failure by permitting Plaintiffs to participate in at least $1.5 million in "cherries," i.e., investments that had a high potential of a near-term liquidity event at a minimum ten times profit that otherwise would not be available to Plaintiffs because the Agreements had expired. Nonetheless, Insight only afforded Plaintiffs the opportunity to invest $500,000 in one in one such "cherry" and therefore failed to live up to its promise.

70. The Investment Opportunity in Illuminet that Insight diverted to Insight II was extremely profitable to Insight II. Insight II's total cost of its investment in Illuminet was $2,293,590. Imprimis should have received a right of first refusal in 50 percent of that investment. Illuminet completed an initial public offering on October 7, 1999 at $19 per share and the value of Illuminet shares increased significantly thereafter. Insight's failure to offer Imprimis its minimum 50 percent right of first refusal in Illuminet deprived Plaintiffs of a gain of at least $9.7 million.

71. Plaintiffs at present lack knowledge or information sufficient to ascertain their damages, if any, as a result of the Defendants' wrongful failure to present HUON to them as an Investment Opportunity.

***Defendants' Wrongful Failure to Offer Plaintiffs the Revised Investment Opportunity in LPA Software***

72. On or about August 31, 1998, Insight prepared and sent to Wexford an investment memorandum describing "the opportunity to invest up to an initial total of $27.0 million in LPA Software." LPA Software ("LPA") is engaged in business-to-business e-commerce and supply chain management. The investment memorandum stated that the majority of the funds was to be used to provide LPA's co-founder liquidity ($25 million) and the remainder was to be used to fund LPA's working capital needs ($2.0 million). The investment memorandum further stated that the investment would be in "participating preferred stock at a pre-money valuation of $38.5 million." The investment memorandum further stated that Insight had agreed to invest $12 million in the initial round of financing with an unrelated entity to provide the remaining $15 million.

73. Based upon the information provided by Insight in the investment memorandum and related documents, on or about September 14, 1998, Wexford notified Insight that Imprimis declined to invest in LPA.

74. On September 21, 1998, only one week after Wexford declined to invest in LPA, Insight notified certain other potential investors that it had "re-cut terms with LPA on our transaction." The new proposed investment was "for $17MM in equity at a lower valuation than the prior deal, with $1MM going to the Company and $16M going to founders." The memorandum to these other investors stated that "[t]he new

transaction reduces our effective price per share, increases the value per share to the founders, based on performance, and gives them greater ownership going forward in the Company."

75. Insight did not provide the memorandum concerning the "re-cut" terms to Plaintiffs nor otherwise notify Plaintiffs in any manner that there were revised deal terms that had materially and favorably changed the proposed investment. Thus, Defendants did not reoffer the LPA Investment Opportunity to Imprimis – as the Imprimis Consulting Agreement expressly requires. Based on those new material terms, Plaintiffs would have re-evaluated the investment and agreed to participate to the full extent of Imprimis' first refusal right under the Imprimis Consulting Agreement.

76. On October 23, 1998, Insight diverted the Investment Opportunity in LPA, on the revised terms, to Insight II, and Insight Venture II, as the general partner of Insight II, executed documents pursuant to which Insight Venture II caused Insight Venture II to make a $4.2 million investment in LPA.

77. On December 29, 1998, Insight again diverted an Investment Opportunity in LPA to Insight II, and Insight Venture II executed documents pursuant to which Insight Venture II caused Insight II to make a $748,015 investment in LPA.

78. Plaintiffs at present lack knowledge or information sufficient to ascertain their damages, if any, as a result of the Defendants' wrongful failure to reoffer LPA to them as an Investment Opportunity.

**Defendants' Scheme to Divert**
**<u>Investment Opportunities</u>**

79. By the fall of 1998, Insight's then-existing investment partnerships were close to being fully invested. Accordingly, Insight, Horing, Murdock, and Insight

Venture II decided to create a new series of funds, named Insight Co-Investors, Insight Cayman III, and Insight III (the "New Funds"), each of which would have Insight Venture III as its general partner. At the same time, the Agreements with Plaintiffs were coming to a close. As a result of these factors, Insight, Murdock, and Horing, aided and abetted *by, and with the active assistance of, Insight Venture II and Insight Venture III*, devised and implemented a scheme to divert from Plaintiffs certain Investment Opportunities that had been identified during the term of the Consulting Agreements. The purpose of this scheme was, inter alia, to use such Investment Opportunities to facilitate the marketing of Insight's New Funds. In connection therewith, Defendants: (i) allowed favored parties, who were in a position to make significant investments in the New Funds and/or encourage other prospective investors to do so, separately to co-invest with Insight in these Investment Opportunities; (ii) represented to prospective investors in the New Funds that such New Funds would participate in these lucrative Investment Opportunities; and (iii) sought to make Plaintiffs believe that they had no right to participate in such Investment Opportunities by hiding the existence of such Investment Opportunities and delaying their closings until after the expiration of Agreements.

**Defendants' Wrongful Diversion of the**
**Investment Opportunity in Quest Software**

80. In the fall of 1998 — well within the term of the Imprimis Consulting Agreement — Insight identified Quest as an Investment Opportunity. Quest is engaged in the business of providing database tools and e-commerce infrastructure.

81. Insight negotiated a potential investment with Quest and, on December 11, 1998, Insight presented Plaintiffs with a deal memorandum for a proposed $33 million investment in Quest that anticipated a closing in January 1999.

That deal memorandum stated: "InSight Venture Associates has the opportunity to invest $33.0 million in Quest Software, Inc. . . ." (Emphasis added.)

82. Upon receiving the Quest deal memorandum in December 1998, in accordance with the parties past practice relating Plaintiff's exercise of their right of first refusal, Wexford advised Insight that it would exercise its right of first refusal to the fullest extent for the opportunity to invest in Quest.

83. In January 1999, Insight advised Wexford that the investment in Quest was "dead." However, shortly thereafter, Insight advised Wexford that the Quest Investment had merely "changed" and, on February 16, 1999, in response to an inquiry from Wexford asking to be brought up to date on the Quest Investment, Horing sent an e-mail stating: "Quest will be pretty close to the same . . . ."

84. On April 9, 1999, only six days after April 3, 1999, Imprimis was notified that "the [Quest] deal is back on" and that Imprimis had to tell Insight how much it wanted to invest by the following week. That same day, Insight e-mailed Wexford deal documents for the Quest investment. Among those documents was a deal memorandum for the revived investment in Quest. That modified deal memorandum states: "InSight Venture Associates has the opportunity to invest $25.0 million in Quest Software, Inc. . . ." (Emphasis added.)

85. The "opportunity to invest" in Quest contained in the April 9, 1999 deal memorandum was virtually the same as that contained in the December 11, 1998 deal memorandum, except that the total size of the investment was reduced from $33 million to $25 million and the price of the preferred shares to be issued was lowered by 10 percent. In all other material respects, the economic terms of the revived



CFC000148

STIP0613

"opportunity to invest" in Quest were substantially the same as to the December 1998 "opportunity to invest in Quest". Indeed, the "deal documents" used at closing for the revived Quest investment were substantially identical to the deal documents that Insight had forwarded to Wexford for the opportunity to invest in Quest in December 1998.

86. On April 12, 1999, Horing, on his own behalf, and on behalf of Defendants Murdock, Insight, and Insight Venture II, told Plaintiffs that the total Insight investment in Quest would be only $10 million, and he proposed that Insight take $7 million and Imprimis take $3 million. Horing, on his own behalf, and on behalf of Defendants Murdock, Insight, and Insight Venture II, also stated that the other $15 million investment in Quest was to be made by UBS, whom he represented to be an independent third-party, unrelated to Insight. On that same day, Plaintiffs responded to Horing by e-mail stating that Wexford was entitled to $5 million, or 50 percent, of what Plaintiffs believed was a $10 million Insight investment in Quest.

87. In a telephone conference on April 16, 1999 between Wexford and Murdock, Murdock, on his own behalf, and on behalf of Defendants Horing, Insight, and Insight Venture II, initially took the position that the Quest investment was outside the Imprimis Agreement. Murdock also raised a number of other purported "excuses" for failing to offer Imprimis its full 50 percent participation in Quest, all of which were pretextual. Murdock initially stated that Insight wanted to offer Plaintiffs the opportunity to invest $2.5 million of what was then represented to be an $8.5 million total investment by Insight and its affiliates, which amount was later changed to $9 million.

88. In the April 16, 1999 telephone conference, Wexford insisted that the Quest Investment Opportunity was covered by the Imprimis Consulting Agreement

and that Plaintiffs were entitled to a full 50 percent participation. By the end of that conversation, Murdock agreed with Wexford.

89. In that April 16, 1999 conference, Murdock proposed that if Wexford would modify Insight's "carry" with respect to Quest, Plaintiffs would be permitted to: (i) invest between $5 and $10 million in Convergent Group ("Convergent"); and (ii) make significant investments in Greenfield Online and Click Interactive (later known as Click Commerce ("Click"), which Murdock, and later Horing, on their own behalf, and on behalf of Defendants Insight, Insight Venture II, and Insight Venture III, falsely represented fell outside of the Imprimis Agreement. Wexford agreed to Murdock's proposal and, therefore, agreed to modify Insight's "carry" on the Quest investment. ("Carry" refers to the performance-based fee that is calculated based on the profitability of an investment.)

90. The changes requested by Insight and agreed to by Wexford also significantly increased the benefits to Insight, Horing, and Murdock upon a liquidation of the Quest investment, through the payment of a carry to Insight Venture II, in its capacity as a member of Imprimis. Wexford did not know at that time that the representations by Murdock, and later Horing, which were made on their own behalf, and on behalf of Defendants Insight, Insight Venture II, and Insight Venture III, that Convergent, Greenfield Online, and Click were not covered by the Imprimis Agreement were false. In fact, as Wexford later learned, Convergent, Greenfield Online, and Click all had been identified by Insight as Investment Opportunities before April 3, 1999, and thus were covered by the right of first refusal afforded Plaintiffs under the Imprimis Consulting Agreement.

91. After Murdock agreed that Wexford, on behalf of WISI, would be entitled to the full 50 percent first refusal right on Insight's $9 million investment in Quest, Wexford asked him for copies of the deal documents so that it could review them. Instead, late in the evening on April 20, 1999, Wexford received what a Wexford executive described at the time as a "panicked call from Jerry Murdock, . . . telling me he needed to have me sign signature pages for the Quest deal right away. When I told him we hadn't received final documents yet, he told me if we don't sign tonight the deal would blow-up."

92. Prior to the Quest closing, Wexford believed that WISI was receiving 50 percent of a $9 million investment by Insight, and that the remaining $15.5 million investment by UBS was being taken by an unaffiliated third-party investor. In late 1999, well after the Quest investment closed, Wexford learned that UBS was an affiliate of Insight at the time of the Quest investment. As such, WISI was entitled to a right of first refusal of up to 50 percent of the total investment in Quest by Insight and its affiliates, including UBS.

93. Insight apparently takes the position that UBS was not its affiliate for purposes of the Quest investment. If that position is in fact correct, then, under the WISI Agreement, WISI was entitled to its right of first refusal of up to 100 percent of the total investment in Quest that was not taken by Insight and its affiliates.

94. The purported "accommodation" that Insight allegedly gave Plaintiffs regarding Quest was illusory. Notwithstanding Defendants' representation that Plaintiffs' $4.5 million investment would be 50 percent of the total Quest investment, Plaintiffs actually were permitted to invest only 18 percent of the total $25 million

financing arranged by Insight for Quest. At the same time that WISI was allowed to invest $4.5 million in Quest, Insight Venture II caused Insight II to invest $5 million, or 20 percent of the total investment in Quest. Further, UBS invested $15.5 million in Quest, or 62 percent of the total investment. In addition, at some point, Defendant Murdock personally acquired at least 265,000 shares of Quest common stock, either by outright purchases or in the form of options.

95. Insight later charged Plaintiffs for 50 percent of the due diligence costs for its investigation of Quest, including expenses incurred in December 1998, clearly indicating that it believed that the Quest investment was covered by the Agreements.

96. The investment in Quest was highly profitable. Quest completed its initial public offering on August 13, 1999, selling 4.4 million shares of common stock at $14 per share. That common stock, which had been purchased in April 1999 by Insight at the equivalent of $3.75 per share, rose to $102 per share on December 31, 1999.

97. On March 10, 2000, WISI sold 750,000 shares (pre-split) of Quest common stock for net proceeds of $100 million, and on June 14, 2000 WISI sold 50,000 shares (post-split) for net proceeds of $2.2 million. However, through their actions, Insight, Horing, Murdock, and Insight Venture II wrongfully denied Plaintiffs their full right of first refusal in the Investment Opportunity in Quest, thereby depriving Plaintiffs of at least a $196 million gain, to which they are entitled.

**Defendants' Wrongful Diversion of the**
**<u>Investment Opportunity in Convergent</u>**

98. Sometime prior to July 1998 – during the term of the WISI Consulting Agreement – Insight identified Convergent as an Investment Opportunity.

Convergent is a provider of e-commerce systems integration services to the utility and public sectors.

99. Insight began meeting with Convergent prior to July 1998 and Insight's expense records reveal that Insight performed its due diligence for an investment in Convergent no later than December 1998, during the term of the Imprimis Consulting Agreement. Indeed, Insight's due diligence on Convergent had progressed so far that, on or about March 12, 1999 – almost a month before April 3, 1999 – Insight prepared a draft letter of intent for an investment in Convergent. Moreover, Insight later billed Wexford for 50 percent of its due diligence expenses for Convergent, clearly indicating that Insight believed this investment was within the Consulting Agreements.

100. Thus, Murdock's representation on April 16, 1999, described above, which was made on his own behalf, and on behalf of Defendants Horing, Insight, Insight Venture II, and Insight Venture III, that Convergent was outside the Consulting Agreements was false and misleading when made. Plaintiffs did not know of the falsity of that representation and relied on Murdock's statement that Convergent was not an Investment Opportunity under the terms of the Consulting Agreements.

101. Despite the clear terms of the Imprimis Consulting Agreement that granted Imprimis a right to receive a minimum 50 percent right of first refusal in Convergent, and Murdock's statement which was made, on his own behalf, and on behalf of Defendants Horing, Insight, Insight Venture II, and Insight Venture III, that Plaintiffs would be permitted to invest between $5 and $10 million in Convergent, Imprimis was allocated only $5 million of Insight's total $45.5 million investment in Convergent, or only 11 percent of the total financing for Convergent. Instead of

providing Imprimis with its 50 percent right of first refusal (along with its right of first refusal to invest up to 100 percent if Insight (or its affiliates) did not take Insight's full 50 percent share), Insight III, as the general partner of Insight Co-Investors and Insight Cayman III, executed documents pursuant to which Insight Venture III caused those limited partnerships to invest $17.3 million of the total investment (more than three times the amount allocated to Imprimis), and other Insight co-investors and/or affiliates (including Insight Venture III which acquired 11 percent of the total investment) invested an aggregate of $23.2 million (more than four times the amount allocated to Imprimis).

102. Through their actions, Insight, Horing, Murdock, and Insight Venture III failed to provide Plaintiffs with their full right of first refusal in the Investment Opportunity in Convergent, thereby depriving Plaintiffs of at least a $62.4 million gain, to which they are entitled.

**Defendants' Wrongful Diversion of the**
**<u>Investment Opportunity in Greenfield Online</u>**

103. Sometime prior to March 1999 — before the termination date of the Imprimis Consulting Agreement — Insight identified an Investment Opportunity in Greenfield Online. Greenfield Online is a provider of internet-based marketing and research information services.

104. Instead of providing Imprimis with its 50 percent right of first refusal in the investment in Greenfield Online, as Insight was required to do under the Imprimis Consulting Agreement, on or about April 16, 1999, Murdock, on his own behalf, and on behalf of Defendants Horing, Insight, Insight Venture II, and Insight Venture III, represented to Plaintiffs that Greenfield Online was outside of the agreement because the Imprimis Consulting Agreement had expired. The same representation was made

to Plaintiffs by Horing, on his own behalf, and on behalf of Defendants Murdock, Insight, and Insight Venture III, on April 20, 1999.

105. Unknown to Plaintiffs at the time, these representations were false. In fact, after months of discussions, Insight signed a letter of intent for the investment in Greenfield Online on or about March 4, 1999 – a month before the termination date of the Imprimis Consulting Agreement. Indeed, on April 1, 1999, Insight prepared an investment memorandum analyzing the "opportunity for Insight to invest in" Greenfield Online, clearly establishing that Insight had identified Greenfield Online as an Investment Opportunity within the term of the Imprimis Consulting Agreement. Although Insight delayed closing the investment until after the Imprimis Consulting Agreement expired, Insight later charged Plaintiffs for a percentage of the expenses incurred prior to April 2, 1999 for its investment in Greenfield Online, clearly indicating that Insight believed that such investment was covered by the Imprimis Consulting Agreement.

106. In reliance on the false representation of Defendants Horing and Murdock, which were made on their own behalf, and on behalf of Insight, Insight Venture II, and Insight Venture III, that the investment Greenfield Online was outside the Imprimis Consulting Agreement, Imprimis agreed to invest only $2.5 million or 12 percent of the total investment arranged by Insight in Greenfield Online of $20.5 million. Instead of providing Imprimis with its minimum 50 percent right of first refusal and its right to invest a greater amount if Insight (or its affiliates) did not invest Insight's full 50 percent share, Insight allocated $8.25 million of the investment to Insight III, $2.5 million of the investment to Insight Cayman III, and $1.37 million of the investment to Insight Co-Investors III and Insight Venture III, as the general partner of those limited

partnerships, executed documents to cause those investments to be diverted from Plaintiffs to those limited partnerships and also acquired 11 percent of the total investment. Insight also allocated to other co-investors and/or affiliates a total of $5.5 million of the Greenfield Online investment.

107. Through their actions, Insight, Horing, Murdock, and Insight Venture III failed to provide Plaintiffs with their full right of first refusal in the Investment Opportunity in Greenfield Online, thereby depriving Plaintiffs of a substantial gain, in an amount that is presently unknown to Plaintiffs, to which they are entitled.

**Defendants' Wrongful Diversion of**
**the Investment Opportunity in Click**

108. At some point prior to February 1999 — again during the term of the Consulting Agreements — Defendants identified Click as an Investment Opportunity. Click markets collaborative commerce solutions permitting automated information flows within multi-channel distribution networks for Fortune 1000 manufacturers.

109. As alleged above, in April 1999, when Plaintiffs agreed to a special agreement with respect to the carry on Quest to be paid to Insight Venture II as a member of Imprimis, Murdock, on behalf of Insight, agreed to allow Plaintiffs to invest in Click, even though Murdock, on his own behalf, and on behalf of, Defendants Horing, Insight, Insight Venture II, and Insight Venture III, represented on or about April 16, 1999 that an investment in Click was not covered by the Agreements. As noted above, that assertion was false and misleading. Insight was working on the Click investment no later than February 1999, and Insight later sought reimbursement from Plaintiffs for

due diligence costs for this investment that were incurred in February 1999, i.e., before the termination of the Imprimis Agreement.

110. In a telephone conversation between Plaintiffs and Defendant Horing on June 7, 1999, Horing asserted that there was "no room" for Plaintiffs in the Click investment, which Horing described as a "$5 million deal."

111. In June and July 1999, Insight Venture III, as the general partner of Insight III, Insight Co-Investors, and Insight Cayman III executed documents pursuant to which Insight Venture III caused limited partnerships to purchase from Click an aggregate of 5,217,392 shares of its Series A Convertible Participating Preferred Stock for $6 million. Insight Venture III acquired 11 percent of the total investment. Insight did not tell Plaintiffs of the closing of that investment.

112. On December 20, 1999, after learning that Insight had closed on an investment in Click, Plaintiffs inquired of Defendant Murdock as to why Plaintiffs were not given the opportunity to invest in Click, as Murdock had promised. No reply was received to that communication.

113. In January 2000, Insight, Horing, Murdock, Insight Venture III, and their affiliates participated in a further financing for Click and Insight Venture III caused its limited partnership to purchase an additional 3,111,215 shares of Click stock for an aggregate price of approximately $16.33 million.

114. On January 30, 2000, Plaintiffs learned that Click had commenced the process for an initial public offering. Plaintiffs sent an e-mail to Defendant Murdock on February 1, 2000, noting that, as part of the "special deal" on Quest, Insight had agreed that Plaintiffs would be given an opportunity to invest in Click.

115. On February 1, 2000, in a telephone conversation among Plaintiffs and Defendant Murdock, Murdock attempted to explain away Defendants' failure to provide Plaintiffs with an Investment Opportunity in Click by making an amorphous reference to an unidentified "problem" with Compaq. He went on to concede that Click would be a "hot IPO." Murdock then proposed to make up, at least in part, for Plaintiffs' lost opportunity for a pre-IPO investment in Click by arranging to allocate to Plaintiffs an amount of Click stock in the initial public offering. Like many of Defendants' representations, Murdock never made good on this promise.

116. No stock in Click's IPO was made available to Plaintiffs, although there was a discussion of Plaintiffs being allowed to purchase $500,000 of Click stock from Insight. However, on April 11, 2000, Horing added a new condition and insisted that any allocation of Click stock to Plaintiffs be contingent upon a release of Plaintiffs' claims against Insight, a condition that Defendants knew would be unacceptable to Plaintiffs. Ultimately, Defendants abandoned their demand for a release of claims. In June 2000, Plaintiffs were permitted to purchase $500,000 of Click stock from Insight (i.e., 3 percent of the $16.33 million in Click stock purchased by Insight in January 2000).

117. Insight's investment in Click was extremely profitable. By September 30, 2000, Insight's approximately $22 million investment in Click was worth an estimated $358 million.

118. Through their actions, Insight, Horing, Murdock, and Insight Venture III failed to provide Plaintiffs with their full right of first refusal in the Investment

Opportunity in Click, thereby depriving Plaintiffs of a gain of at least $17.6 million, to which they are entitled.

**Defendants' Wrongful Diversion of the**
**<u>Investment Opportunity in Authorize.Net</u>**

119. Sometime prior to February 1999, Insight identified Authorize.Net as an Investment Opportunity. Authorize.Net is a leading payment authorization service for online businesses. On July 1, 1999, Authorize.Net was acquired by Go2Net.com, an internet portal company whose stock is publicly traded on the Nasdaq market.

120. In violation of the Imprimis Agreement, Insight did not inform Imprimis of this Investment Opportunity, nor was Imprimis given an opportunity to participate in any investment in Authorize.Net. Plaintiffs later learned that Insight incurred due diligence expenses as early as February 1999 relating to this Investment Opportunity — well before the April 2, 1999 termination of the Imprimis Agreement.

121. Indeed, in or around April 1999, Insight Venture III, as the general partner of Insight III, made two investments for Insight Venture III in Authorize.Net totaling $1.4 million.

122. Defendants' investments in Authorize.Net were highly profitable. In July, 1999 Insight received $778,643 in cash as part of the transaction in which Go2Net acquired Authorize.Net. In August 1999, Insight III sold 45,289 shares of Go2Net for total proceeds in excess of $3 million. In addition, Insight III retained shares of Authorize.Net.

123. Through their actions, Insight, Horing, Murdock, and Insight Venture III failed to provide Plaintiffs with their full right of first refusal in the Investment

Opportunity in Authorize.Net, thereby depriving Plaintiffs of at least a $1.4 million gain, to which they are entitled.

**Defendants' Wrongful Diversion of an**
**Investment Opportunity in Altitude and**
**Wrongful "Assignment" of WISI's Altitude Warrants**

124. At some time prior to July 1998 — during the term of the WISI Agreement — Insight identified Altitude Software, then known as Easyphone ("Altitude"), as an Investment Opportunity. Altitude develops and markets contact center management software.

125. In July 1998, WISI made a $2.75 million investment in Altitude; Insight made an equal investment. In connection with those investments, each of WISI and Insight received warrants to purchase 618,000 shares of Altitude stock at $4.45 per share, expiring in August 2003.

126. Thereafter, in or about July 1999, third-party private investors made an investment in Altitude. To facilitate this investment, Insight executed an "Investment Agreement" in connection with the transaction. No notice of, or information about, this financing was provided by Defendants to Plaintiffs. In fact, Defendants affirmatively kept Plaintiffs in the dark about Altitude's July 1999 financing transaction.

127. This hidden financing transaction was in direct contravention of Plaintiffs' rights. As part of an "Investors Rights Agreement" entered into in connection with Plaintiffs' investment in Altitude, Plaintiffs were afforded a pre-emptive participation right, pro rata to Plaintiffs' ownership interest, with respect to any new financing by Altitude and a right of first refusal (with Insight) to purchase 100 percent of a private financing. Further, under the Investors Rights Agreement, Plaintiffs were entitled to

written notice of any such financing and a 20-day period to respond. No such notice was provided to Plaintiffs.

128. Moreover, as Plaintiffs have only recently discovered, as part of that July 1999 financing transaction, Defendant Horing, acting on his own behalf and on behalf of the other Defendants, purported to "assign" to the new investors 12.5 percent of the warrants received by WISI as part of the consideration for WISI's investment in Altitude in the July 1998 financing.

129. To accomplish this purported "assignment," defendant Horing, acting on his own behalf, and on behalf of Defendants Murdock, Insight, and Insight Venture II, without notice to, or authorization from, WISI, executed the "Investment Agreement" for WISI, purportedly assigning WISI's Altitude warrants to the new investors.

130. At no time did Plaintiffs authorize or otherwise consent to any assignment of WISI's Altitude warrants to these new investors (or, for that matter, to any other person or entity). Indeed, Plaintiffs were entirely unaware of the "assignment" of WISI's warrants. Plaintiffs only learned of the purported "assignment" of WISI's warrants when they obtained information in September 2000 regarding Altitude's capitalization in connection with Altitude's forthcoming initial public offering.

131. WISI received no consideration for the purported "assignment" of its Altitude warrants.

132. The acts of Insight, Horing, Murdock, and Insight Venture II in: (i) failing to provide Plaintiffs with any notice of or information regarding Altitude's July 1999 financing transaction; (ii) failing to ensure that Plaintiffs received their pre-emptive

pro rata rights to participate in that financing; (iii) executing the "Investment Agreement" on behalf of WISI effecting the wrongful "assignment" of WISI's Altitude warrants without authorization from, or notice to, Plaintiffs; and (iv) otherwise acting to steal Altitude warrants owned by WISI, wrongfully denied WISI a valuable Investment Opportunity, and wrongfully deprived WISI of warrants, whose value is presently unknown to Plaintiffs.

**Other Diverted Investment Opportunities**

133. Defendants Insight, Horing, Murdock, Insight Venture II, and Insight Venture III, wrongfully failed to inform Plaintiffs of other Investment Opportunities that Insight identified during the term of the Agreements, causing Plaintiffs additional damages, in amounts presently unknown to Plaintiffs.

**Defendants' Wrongful Diversion of**
**the Fees and Options Due Plaintiffs**
**That Flowed From Investment Opportunities**

134. As set forth above, pursuant to Section 6 of each of the WISI Consulting Agreement and the Imprimis Consulting Agreement, Defendants were obligated to share on a pro rata basis with Plaintiffs any and all fees or other benefits paid to Insight or any of its affiliates by any third-party in connection with any Investment Opportunity.

135. To date, Defendants have failed to comply with the terms of these provisions of the Consulting Agreements. Defendants have received a number of substantial management and board fees, and options, but have not provided Plaintiffs with their allocable share.

136. As but one example of Defendants' wrongful activities, in connection with the IPO of Convergent, Defendants received approximately $3 million in fees covered by the Consulting Agreements. Of that amount, Plaintiffs are entitled to approximately $1.5 million based on Imprimis's minimum 50 percent right of first refusal with respect to an investment in Convergent. Despite Defendants' acknowledgment that Imprimis is entitled to a portion of the fees received by Defendants, such funds have not been paid over to Plaintiffs.

137. In addition, Defendants, including Horing and Murdock, and/or their designees, are believed to have received allocations in "hot issue" IPOs as a result of business they directed to investment banks arising from Investment Opportunities in which Plaintiffs participated or were entitled to participate, as well as distributions of "friends and family" stock from Investment Opportunities (including an IPO allocation of Quest stock to Horing's mother-in-law) and stock as compensation for Murdock's service as a Quest board member. Nevertheless, neither Horing nor Murdock, nor any of the other Defendants, has turned over to Plaintiffs their share of the profits earned on any such allocations of "hot issue" IPO and "friends and family" stock.

**Defendants' Breach of Their Agreement to Participate in an Auditor's Analysis of Fees and Other Benefits Allocable to Plaintiffs Under the Consulting Agreements**

138. In an effort to resolve at least part of the dispute between Plaintiffs and Defendants, Plaintiffs proposed to retain outside auditors, Deloitte & Touche LLP, to analyze the transactions between Plaintiffs and Defendants in connection with the Consulting Agreements. Plaintiffs agreed to pay the professional fees and disbursements associated with this analysis.

139. After lengthy negotiations, the parties agreed to the proposed Deloitte & Touche analysis. This agreement (the "August 8 Agreement") was reflected in an engagement letter prepared by Deloitte & Touche and countersigned as "accepted" by Insight and Wexford Management LLC on behalf of Plaintiffs.

140. Under the August 8 Agreement, Deloitte & Touche was to (i) interview the appropriate personnel at Insight, (ii) interview CEOs, CFOs, and/or controllers of 28 identified investments entered into under the Agreements (based on scripts that were to be pre-approved in writing by Insight), and (iii) review documentation relating to fees and compensation arising out of those investments.

141. Despite their written promise to participate in this process as reflected in the August 8 Agreement, including Insight's specific commitment "to cooperate with D&T [i.e., Deloitte & Touche] in the performance by D&T of its services [under the August 8 Agreement], including, without limitation, providing D&T with reasonable facilities and timely access to data, information, and personnel of Insight," Defendants failed to cooperate with Deloitte & Touche. In late September 2000, Defendants indicated that they *would not* permit the Deloitte & Touche analysis to proceed.

The Damages to Plaintiffs

142. As a result of the foregoing, Plaintiffs have been denied the economic benefits to which they were entitled under the Consulting Agreements. As of September 30, 2000, Plaintiffs have been damaged as a result of Defendants wrongful conduct in at least the following amounts:

| Investment Opportunity | Minimum Damages to Plaintiffs |
|---|---|
| Illuminet | $ 9,740,300 |
| HUON | Presently Unknown |
| LPA Software | Presently Unknown |
| Quest – Series A Preferred Stock | 178,878,358 |
| Quest – Series B Redeemable Preferred Stock | 600,000 |
| Quest – Defendant Murdock personal participation | 16,536,878 |
| Convergent Group | 62,455,190 |
| Greenfield Online | Presently Unknown |
| Click | 17,613,067 |
| Authorize.Net | 1,462,348 |
| Altitude - converted warrants | Presently Unknown |
| Convergent fees | 1,500,000 |
| Other fees | Presently Unknown |
| IPO and other allocations of securities | Presently Unknown |
| **TOTAL** | **At least $288,786,194** |

143. To date, many of the uniliquidated Investment Opportunities wrongfully diverted to Insight II, Insight Cayman II, Insight III, Insight Co-Investment, and Insight Cayman III have significantly increased in value, thus enabling Insight, Horing, Murdock, Insight Venture II, Insight Venture III, and their affiliates to reap additional tens of millions of dollars from Investment Opportunities stolen from Plaintiffs.

**AS AND FOR A FIRST CAUSE OF**
**ACTION AGAINST INSIGHT**

**(Breach of Contract)**

144. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 143 of this Amended Complaint as if set forth in full herein.

145. By failing to provide Plaintiffs, in whole or in part, with their Investment Opportunities in Illuminet, Quest, LPA, Convergent, Greenfield Online, Click, Authorize.Net, and Altitude, Defendant Insight breached the Consulting Agreements.

146. In addition, by failing to provide Plaintiffs with their pro rata share of board fees, break-up fees, closing fees, consulting fees, advisory fees, options, transaction fees, or other benefits arising out of Investment Opportunities covered by the Consulting Agreements, Defendant Insight breached the Consulting Agreements.

147. As a result of the foregoing breaches of the Consulting Agreements, Plaintiffs have been damaged in an amount to be established at trial, but believed to be no less than $288.7 million, together with interest and costs as allowed by law.

**AS AND FOR A SECOND CAUSE**
**OF ACTION AGAINST INSIGHT**

**(Breach of Implied Duties of**
**Good Faith and Fair Dealing)**

148. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 147 of this Amended Complaint as if set forth in full herein.

149. By engaging in the wrongful scheme described herein in order to deny Plaintiffs the full benefits of the Consulting Agreements, Insight breached the duties of good faith and fair dealing implied by law in the Consulting Agreements.

150. As a result of the foregoing breaches of the Consulting Agreements, Plaintiffs have been damaged in an amount to be established at trial, but believed to be no less than $288.7 million, together with interest and costs as allowed by law.

**AS AND FOR A THIRD CAUSE OF ACTION AGAINST HORING, MURDOCK, INSIGHT VENTURE II, AND INSIGHT VENTURE III**

**(Tortious Interference)**

151. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 150 of this Amended Complaint as if set forth in full herein.

152. Each of Defendants Horing, Murdock, Insight Venture II, and Insight Venture III was aware of the contractual agreements between Insight and Plaintiffs as reflected in the Consulting Agreements.

153. Despite this knowledge, through the wrongful acts set forth herein, each of Horing, Murdock, Insight Venture II, and Insight Venture III intentionally and knowingly acted to interfere with those relations by assisting in, or otherwise procuring, Insight's breach of the Consulting Agreements through the failure properly to advise Plaintiffs regarding Investment Opportunities identified by Insight during the term of the Consulting Agreements and to provide Plaintiffs with their full rights of first refusal.

154. The actions of Defendants Horing, Murdock, Insight Venture II, and Insight Venture III in this regard were taken for the wrongful purpose of diverting to Defendants valuable Investment Opportunities that should have been made available to Plaintiffs pursuant to the Consulting Agreements.

155. As an example, with full knowledge of Plaintiffs' rights pursuant to the Imprimis Consulting Agreement, Insight Venture II, as the general partner of Insight II and Insight Cayman II, in concert with Horing, Murdock, and Insight, caused Insight II and/or Insight Cayman II to purchase shares in Illuminet, HUON, LPA, and Quest and executed closing documents necessary to effect those purchases. The right to make the investment in these entities rightfully belonged to Plaintiffs pursuant to the Consulting Agreements.

156. As a further example, with full knowledge of Plaintiffs' rights pursuant to the Imprimis Consulting Agreement, Insight Venture III, as the general partner of Insight III, Insight Co-Investors, and Insight Cayman III, in concert with Horing, Murdock, and Insight caused Insight III, Insight Co-Investors, and/or Insight Cayman III to purchase shares in Click, Authorize.Net, Convergent, and Greenfield Online executed closing documents necessary to effect those purchases, and also acquired 11 percent of those investments. The right to make the investments in those entities rightfully belonged to Plaintiffs pursuant to the Consulting Agreements.

157. By reason of the foregoing, Plaintiffs are entitled to a judgment against Defendants other than Insight, awarding Plaintiffs compensatory and punitive damages in an amount to be determined at trial, but believed to be no less than $288.7 million, together with interest and costs as allowed by law.

**AS AND FOR A FOURTH CAUSE**
**OF ACTION AGAINST INSIGHT**

**(Breach of Fiduciary Duty)**

158. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 157 of this Amended Complaint as if set forth in full herein.

159. By virtue of its relationship as investment advisor to Plaintiffs pursuant to the terms of the Consulting Agreements, Defendant Insight owed the highest obligations and fiduciary duties to Plaintiffs. Insight was duty-bound to act in a responsible and lawful manner, and with utmost good faith, so as not to cause injury to Plaintiffs.

160. In particular, Insight owed duties to each of Plaintiffs to make full and candid disclosure of all material facts relating to Investment Opportunities identified by Insight, and to deal fairly and honestly with Plaintiffs. Insight was further obligated to refrain from any fraudulent or wrongfully self-benefiting conduct to the detriment of Plaintiffs or any of them.

161. In engaging in the systematic course of conduct alleged herein, and in collaborating with Defendants Horing, Murdock, Insight Venture II, and Insight Venture III in that wrongful conduct, Insight repeatedly breached its fiduciary and related obligations to Plaintiffs.

162. Insight's conduct was purposeful and malicious and departed in the extreme from the norms expected of an investment advisor in the position of Insight. Insight cavalierly disregarded its duties to, and the interests of, Plaintiffs.

163. Each of Plaintiffs has been damaged by the wrongful conduct of Insight in that, as a result of Insight's breaches of its fiduciary and related duties, Plaintiffs did not receive the full rights of first refusal to which they were entitled with respect to the Investment Opportunities described above, not did Plaintiffs receive their <u>pro rata</u> share of all fees, options, and other benefits obtained by Insight, Horing,

Murdock, Insight Venture II, and Insight Venture III (or their designees) in connection therewith, all to Plaintiffs' economic detriment.

164. Insight also breached its fiduciary duties to Plaintiffs when its principal and control person, Horing, wrongfully executed the "Investors Agreement" on behalf of WISI — without authorization from, or notice to, Plaintiffs — so as to cause the unlawful conversion of WISI-owned Altitude warrants worth millions of dollars.

165. By reason of the foregoing, Plaintiffs are entitled to a judgment against Insight, awarding them compensatory and punitive damages in an amount to be determined at trial, but believed to be no less than $288.7 million, together with interest and costs as allowed by law.

**AS AND FOR A FIFTH CAUSE OF ACTION AGAINST HORING, MURDOCK, INSIGHT VENTURE II, AND INSIGHT VENTURE III**

**(Aiding and Abetting Breach of Fiduciary Duty)**

166. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 165 of this Amended Complaint as if set forth in full herein.

167. Each of Defendants Horing, Murdock, Insight Venture II, and Insight Venture III, either directly or through Horing and/or Murdock, knew or recklessly disregarded the fact that Insight owed fiduciary and other obligations to Plaintiffs, and each of Defendants Horing, Murdock, Insight Venture II, and Insight Venture III, knew, or recklessly disregarded, the fact that Insight was breaching those obligations by engaging in the conduct alleged herein.

168. With such knowledge, Defendants Horing, Murdock, Insight Venture II, and Insight Venture III provided substantial assistance to, aided and abetted,

and conspired to bring about Insight's breaches of its fiduciary obligations to Plaintiffs by, inter alia, encouraging and enabling Insight and its and their representatives and agents, including, without limitation, Defendants Murdock and Horing, to misrepresent the availability of Investment Opportunities under the Agreements and to "assign" WISI-owned warrants to third parties.

169. Plaintiffs have been damaged by the wrongful conduct of Defendants Horing, Murdock, Insight Venture II, and Insight Venture III in that such conduct, inter alia, caused them to be deprived of their rights under the Agreements to make investments in the Investment Opportunities identified by Insight that were diverted to Defendants and/or their affiliates.

170. The conduct of Defendants Horing, Murdock, Insight Venture II, and Insight Venture III, as alleged herein, was done purposely, maliciously, recklessly, and without regard for the rights and interests of Plaintiffs.

171. By reason of the foregoing, Plaintiffs are entitled to a judgment against Defendants Horing, Murdock, Insight Venture II, and Insight Venture III, jointly and severally, awarding Plaintiffs compensatory and punitive damages in an amount to be determined at trial, but believed to be no less than $288.7 million, together with interest and costs as allowed by law.

**AS AND FOR A SIXTH CAUSE OF ACTION AGAINST INSIGHT, HORING, MURDOCK, *INSIGHT VENTURE II, AND INSIGHT VENTURE III***

**(Fraud and Misrepresentation)**

172. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 171 of this Amended Complaint as if set forth in full herein.

173. As more fully set forth above, Defendants Horing, Murdock, Insight, Insight Venture II, and Insight Venture III, either directly or through Horing and Murdock as their representatives and agents, made knowingly false and misleading statements of material facts, and omitted other facts necessary to make such statements not misleading, concerning certain of the Investment Opportunities, including, inter alia, the following:

- By representing to Plaintiffs in statements made on August 29, 1999 (through Defendant Horing), on October 6, 1999 (by Defendant Horing), and October 8, 1999 (through Defendant Murdock) that the Illuminet Investment Opportunity had been discussed with Plaintiffs in 1998 or early 1999;
- By representing to Plaintiffs in statements on October 6, 1999 (through Defendant Horing) and October 8, 1999 (through Defendant Murdock) that the Illuminet deal was "small" and that Illuminet lacked real financial data, had a questionable management structure, and was "tough" to value; and
- By representing on April 16, 1999 (through Defendant Murdock) that Quest was not an Investment Opportunity subject to the terms of the Consulting Agreements.

174. As also more fully set forth above, Defendants Horing, Murdock, Insight, and Insight Venture III, either directly or through Horing and Murdock as their representatives and agents, made knowingly false and misleading statements of

material facts, and omitted other facts necessary to make such statements not misleading, concerning the Investment Opportunities, including, inter alia, the following:

- By representing on April 16, 1999 (through Defendant Murdock) that Convergent Group was not an Investment Opportunity subject to the terms of the Consulting Agreements;
- By representing on or about April 16, 1999 (through Defendant Murdock) and on April 20, 1999 (through Defendant Horing) that Greenfield Online was not an Investment Opportunity subject to the terms of the Consulting Agreements; and
- By representing on or about April 16, 1999 (through Defendant Murdock) that Click was not an Investment Opportunity subject to the terms of the Consulting Agreements;
- By representing on June 7, 1999 (through Defendant Horing) that there was no "room" for Plaintiffs in the Click investments, which was purported to be $5 million "deal"; and
- By representing on February 1, 2000 (through Defendant Murdock) that Defendants' failure to provide Plaintiffs with an Investment Opportunity in Click was caused by some unidentified "problem" with Compaq.

175. Each of Defendants Insight, Horing, Murdock, Insight Venture II, and Insight Venture III knew that the foregoing statements made by them or on their behalf constituted a fraud and deceit on Plaintiffs and would result in, and did result in, Plaintiffs' reliance thereon and forbearance in seeking to enforce its rights under the

Consulting Agreements in response to Insight's wrongful allocation of Investment Opportunities, in whole or in part, to Defendants and/or their affiliates, to Plaintiffs' economic detriment. In particular, as a result of the misrepresentations of Insight, Horing, Murdock, Insight Venture II, and Insight Venture III, on which Plaintiffs relied, Plaintiffs did not demand its full investment rights with respect to the Investment Opportunities in Quest, Convergent Group, Greenfield Online, and Click.

176. *In addition, Defendants intentionally omitted to inform Plaintiffs of* Investment Opportunities in Illuminet, HUON, Authorize.Net, and Altitude, or that the terms of the Investment Opportunity in LPA changed materially and favorably.

177. Defendants Insight, Horing, Murdock, Insight Venture II, and Insight Venture III, either directly, or through Defendants Horing and Murdock, made the material misrepresentations, and omitted to disclose the material facts, as alleged herein, with the intention of inducing Plaintiffs to acquiesce in Defendants' allocations, in whole or in part, of Investment Opportunities to Plaintiffs in amount less than their full right of first refusal to which they were entitled under the Consulting Agreements, to the economic detriment of Plaintiffs.

178. Plaintiffs have been damaged by the fraudulent conduct of Defendants Insight, Horing, Murdock, Insight Venture II, and Insight Venture III in that Plaintiffs did not act to enforce their full rights of first refusal to which Plaintiffs were *entitled under the terms of the Consulting Agreements.*

179. Further, Defendants Insight, Horing, Murdock, Insight Venture II, and Insight Venture III perpetrated an additional fraud on Plaintiffs by "assigning" to third parties valuable warrants in Altitude owned by WISI, wrongfully executing an agreement

to that effect for WISI, without authorization from, or notice to, Plaintiffs, and intentionally hiding from Plaintiffs that "assignment" and the Investment Opportunity of which it was a part.

180. Defendants' fraudulent conduct, as alleged herein, was done purposely, maliciously, and without regard for the rights and interests of Plaintiffs.

181. By reason of the foregoing, Plaintiffs are entitled to a judgment against all Defendants, awarding Plaintiffs compensatory and punitive damages in an amount to be determined at trial, but believed to be no less than $288.7 million, together with interest and costs as allowed by law.

**AS AND FOR A SEVENTH CAUSE OF ACTION AGAINST INSIGHT, HORING, MURDOCK, INSIGHT VENTURE II, AND INSIGHT VENTURE III**

**(Aiding and Abetting Fraud or Misrepresentation)**

182. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 181 of this Amended Complaint as is set forth in full herein.

183. Each of Defendants Insight, Horing, Murdock, Insight Venture II, and Insight Venture III played a significant role in the fraudulent activities described herein, with knowledge or reckless disregard thereof. Each of Defendants Insight, Horing, Murdock, Insight Venture II, and Insight Venture III knowingly and substantially assisted in the fraud and misrepresentations perpetrated on Plaintiffs.

184. As an example, with full knowledge of Plaintiffs' rights pursuant to the Imprimis Consulting Agreement, Insight Venture II, as the general partner of Insight II and Insight Cayman II, in concert with Horing, Murdock, and Insight, caused Insight II and/or Insight Cayman II to purchase shares in Illuminet, HUON, LPA, and Quest and

executed closing documents necessary to effect those purchases. The right to make the investment in these entities rightfully belonged to Plaintiffs pursuant to the Consulting Agreements.

185. As a further example, with full knowledge of Plaintiffs' rights pursuant to the *Imprimis Consulting Agreement*, Insight Venture III, as the general partner of Insight III, Insight Co-Investors, and Insight Cayman III, in concert with Horing, Murdock, and Insight caused any of Insight III, Insight Co-Investors, and/or Insight Cayman III to purchase shares in Click, Authorize.Net, Convergent, and Greenfield Online executed closing documents necessary to effect those purchases, and acquired 11 percent of such investments. The right to make the investments in those entities rightfully belonged to Plaintiffs pursuant to the Consulting Agreements.

186. The conduct of each Defendants Insight, Horing, Murdock, Insight Venture II, and Insight Venture III proximately caused significant damages to Plaintiffs. The fraud and misrepresentations alleged herein could not have succeeded without the knowing and active participation of each Defendant.

187. The conduct of Defendants was purposeful and malicious, or reckless, and it departed in the extreme from the norms expected of commercial parties and their representatives. Defendants cavalierly disregarded their duties to, and the interests of, Plaintiffs.

188. Plaintiffs have been damaged by the wrongful conduct of all of Defendants in that Plaintiffs did not act to enforce their rights, including their full rights of first refusal under the terms of the Consulting Agreements.

189. By reason of the foregoing, Plaintiffs are entitled to a judgment against all Defendants, jointly and severally, awarding Plaintiffs compensatory and punitive damages in an amount to be determined at trial, but believed to be no less than $288.7 million, together with interest and costs as allowed by law.

**AS AND FOR A EIGHTH CAUSE OF ACTION AGAINST HORING, *MURDOCK, INSIGHT, AND INSIGHT VENTURE II***

**(Conversion of Altitude Warrants)**

190. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 189 of this Amended Complaint as is set forth in full herein.

191. The actions of defendant Horing, which were taken on his own behalf and on behalf of Defendants Murdock, Insight, and Insight Venture II, in causing the purported "assignment" of Altitude warrants owned by WISI to third parties was unauthorized by, and hidden from, Plaintiffs.

192. Defendants Horing, Murdock, Insight, and Insight Venture II exercised unlawful dominion and control over the Altitude warrants, which warrants rightfully belonged to Plaintiffs.

193. The wrongful actions of Defendants Horing, Murdock, Insight, and Insight Venture II in connection with the "assignment" of Altitude warrants held by WISI as aforesaid constituted the wrongful conversion of property owned by WISI.

194. The conduct of Defendants Horing, Murdock, Insight, and Insight Venture II was purposeful and malicious, or reckless, and it departed in the extreme from the norms expected of commercial parties and their representatives. Defendants

Horing, Murdock, Insight, and Insight Venture II cavalierly disregarded their duties to, and the interests of, Plaintiffs.

195. By reason of the foregoing, Plaintiff WISI is entitled to a judgment against all Defendants, jointly and severally, awarding Plaintiff WISI compensatory and punitive damages in an amount to be determined at trial, together with interest and costs as allowed by law.

**AS AND FOR A NINTH CAUSE OF**
**ACTION AGAINST INSIGHT, HORING, AND MURDOCK**

**(Conversion of Investment Opportunities)**

196. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 195 of this Amended Complaint as is set forth in full herein.

197. Through their actions described above, Insight, Horing, and Murdock exercised dominion and control over the securities of Illuminet, HUON, LPA, Quest, Convergent, Greenfield Online, Click, and Authorize.Net and interfered with Plaintiffs' rights to acquire up to 50 percent of Insight's investment in Illuminet, HUON, LPA, Quest, Convergent, Greenfield Online, Click, and Authorize.Net. Such actions constituted a conversion of securities of Illuminet, HUON, LPA, Quest, Convergent, Greenfield Online, Click, and Authorize.Net that rightfully belonged to Plaintiffs. Insight, Horing, and Murdock exercised such dominion and control over the securities of Illuminet, HUON, LPA, Quest, Convergent, Greenfield Online, Click, and Authorize.Net even though they it knew that the diversion of Illuminet, HUON, LPA, Quest, Convergent, Greenfield Online, Click, and Authorize.Net to their affiliates was in violation of Plaintiffs' rights under the Consulting Agreements.

198. Through the diversion by Insight, Horing, and Murdock of fees and options due Plaintiffs that flowed from Investment Opportunities and allocations in hot issue IPOs as a result of business they directed to investment banks arising from Investment Opportunities in which Plaintiffs participated or were entitled to participate, as well as distributions of "friends and family" stock from Investment Opportunities, Insight, Horing, and Murdock exercised dominion and control of these fees, options, allocations, and distributions and constituted a conversion and was in violation of Plaintiffs' rights under the Consulting Agreements.

199. Insight, Horing, and Murdock's conduct was outrageous, malicious and evidenced a reckless disregard of Plaintiffs' rights under the under the WISI and Imprimis Consulting Agreements.

200. By reason of the foregoing, Plaintiffs are entitled to a judgment against Defendants Insight, Horing, and Murdock, jointly and severally, awarding Plaintiffs compensatory and punitive damages in an amount to be determined at trial, but believed to be no less than $288.7 million, together with interest and costs as allowed by law.

**AS AND FOR A TENTH CAUSE OF**
**ACTION AGAINST INSIGHT VENTURE II**

**(Conversion of Investments in Illuminet, HUON, LPA, and Quest)**

201. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 200 of this Amended Complaint as is set forth in full herein.

202. On or about August 31, 1998, at the first closing of the Illuminet investment, Insight Venture II, as the general partner of Insight II, executed closing documents through which Insight II purchased 240,000 shares of Illuminet Common

Stock. Through the execution of those documents, Insight Venture II exercised dominion and control over, and interfered with, Plaintiffs' rights to acquire up to 50 percent of Insight's investment in Illuminet and such action constituted a conversion of Illuminet stock that rightfully belonged to Plaintiffs.

203. Insight Venture II exercised such dominion and control over the Illuminet stock even though it knew, through the knowledge of its managers, Horing and Murdock, that the purchase of the Illuminet stock by Insight II was in violation of Plaintiffs' rights under the WISI Consulting Agreement.

204. On or about December 10, 1998, at the second closing of the Illuminet investment, Insight Venture II, as the general partner of Insight II, executed closing documents through which Insight II purchased 237,716 shares of Illuminet Common Stock. Through the execution of those documents, Insight Venture II exercised dominion and control over, and interfered with, Plaintiffs' rights to acquire up to 50 percent of Insight's investment in Illuminet and such action constituted a conversion of the Illuminet stock that rightfully belonged to Plaintiffs.

205. Insight Venture II exercised such dominion and control over the Illuminet stock even though it knew, through the knowledge of its managers, Horing and Murdock, that the purchase of the Illuminet stock by Insight II was in violation of Plaintiffs' rights under the WISI Consulting Agreement.

206. On or about December 21, 1998, at the closing of the HUON investment, Insight Venture II, as the general partner of Insight II, executed closing documents through which Insight II made a $4.8 million investment in HUON. Through the execution of those documents, Insight Venture II exercised dominion and control

over, and interfered with, Plaintiffs' rights to acquire up to 50 percent of Insight's investment in HUON and such action constituted a conversion of the HUON stock that rightfully belonged to Plaintiffs.

207. Insight Venture II exercised such dominion and control over the HUON stock even though it knew, through the knowledge of its managers, Horing and Murdock, that the purchase of the HUON stock by Insight II was in violation of Plaintiffs' rights under the WISI Consulting Agreement.

208. On or about April 3, 1999, Insight Venture II, as the general partner of Insight II and Insight Cayman II, executed closing documents pursuant to which Insight II purchased 2,416,930 Series A Preferred Shares in LPA for $5 million. Through the execution of those documents, Insight Venture II exercised dominion and control over, and interfered with, Plaintiffs' right to acquire up to 50 percent of Insight's investment in LPA under the "re-cut" terms of the LPA investment, which were never disclosed to Plaintiffs. Such action constituted a conversion of the LPA stock that rightfully belonged to Plaintiffs.

209. Insight Venture II exercised such dominion and control over the LPA stock even though it knew, through the knowledge of its managers, Horing and Murdock, that the purchase of LPA stock by Insight II was in violation of Plaintiffs' rights under the Imprimis Consulting Agreement.

210. On or about April 21, 1999, at the closing of the Quest investment, Insight Venture II, as the general partner of Insight II, executed closing documents through which Insight II purchased 888,889 shares of Quest Series A Preferred Stock. Through the execution of those documents, Insight Venture II exercised dominion and

control over, and interfered with, Plaintiffs' rights to acquire up to 50 percent of Insight's investment in Quest and such action constituted a conversion of the Quest stock that rightfully belonged to Plaintiffs.

211. Insight Venture II exercised such dominion and control over the Quest stock even though it knew, through the knowledge of its managers, Horing and Murdock, that the purchase of the Quest stock by Insight II was in violation of Plaintiffs' rights under the Imprimis Consulting Agreement.

212. Insight Venture II's conduct was outrageous, malicious, and evidenced a reckless disregard of Plaintiffs' rights under the under the Consulting Agreements.

213. By reason of the foregoing, Plaintiffs are entitled to a judgment against Insight Venture II awarding Plaintiffs compensatory and punitive damages in an amount to be determined at trial, but believed to be no less than $209.7 million, plus the value of the converted Investment Opportunities in HUON and LPA, together with interest and costs as allowed by law.

**AS AND FOR A ELEVENTH CAUSE OF**
**ACTION AGAINST INSIGHT VENTURE III**

**(Conversion of Investments in Convergent,**
**Greenfield Online, Click, and Authorize.Net)**

214. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 213 of this Amended Complaint as is set forth in full herein.

215. On or about August 13, 1999, at the closing of the Convergent investment, Insight Venture III, as the general partner of Insight III, Insight Co-Investors, and Insight Cayman III, executed closing documents through which those limited

partnerships and Insight Venture III collectively invested $17.3 million in Convergent Common Stock. Through the execution of those documents, Insight Venture III exercised dominion and control over, and interfered with, Plaintiffs' rights to acquire up to 50 percent of Insight's investment in Convergent and such action constituted a conversion of the Convergent stock that rightfully belonged to Plaintiffs.

216. Insight Venture III exercised such dominion and control over the Convergent stock even though it knew, through the knowledge of its managers, Horing and Murdock, that the purchase of the Convergent stock by Insight III, Insight Co-Investors, Insight Cayman III, and Insight Venture III was in violation of Plaintiffs' rights under the Imprimis Consulting Agreement.

217. On or about May 17, 1999, at the closing of the Greenfield Online, Insight Venture III, as the general partner of Insight III, Insight Co-Investors III, and Insight Cayman III, executed closing documents through which those limited partnerships and Insight Venture III collectively invested $8.25 million in Greenfield Online Common Stock. Through the execution of those documents, Insight Venture III exercised dominion and control over, and interfered with, Plaintiffs' rights to acquire up to 50 percent of Insight's investment in Greenfield Online and such action constituted a conversion of the Greenfield Online stock that rightfully belonged to Plaintiffs.

218. Insight Venture III exercised such dominion and control over the Greenfield Online stock even though it knew, through the knowledge of its managers, Horing and Murdock, that the purchase of the Greenfield Online stock by Insight III, Insight Co-Investors III, Insight Cayman III, and Insight Venture III was in violation of Plaintiffs' rights under the Imprimis Consulting Agreement.

219. In June and July 1999, at the closing of the Click investment, Insight Venture III, as the general partner of Insight III, Insight Co-Investors, and Insight Cayman III, executed closing documents through which those limited partnerships and Insight Venture III purchased an aggregate of 5,217,392 shares of Click Series A Convertible Participating Preferred Stock for an aggregate price of $6 million. Through the execution of those documents, Insight Venture III exercised dominion and control over, and interfered with, Plaintiffs' rights to acquire up to 50 percent of Insight's investment in Click and such action constituted a conversion of the Click stock that rightfully belonged to Plaintiffs.

220. Insight Venture III exercised such dominion and control over the Click stock even though it knew, through the knowledge of its managers, Horing and Murdock, that the purchase of the Click stock by Insight III, Insight Co-Investors, Insight Cayman III, and Insight Venture III was in violation of Plaintiffs' rights under the Imprimis Consulting Agreement.

221. In or about April 1999, at the closings of the Authorize.Net investments, Insight Venture III, as the general partner of Insight III executed closing documents through which Insight III and Insight Venture III invested $1.4 million in Authorize.Net Stock. Through the execution of those documents, Insight Venture III exercised dominion and control over, and interfered with, Plaintiffs' rights to acquire up to 50 percent of Insight's investment in Authorize.Net and such action constituted a conversion of the Authorize.Net stock that rightfully belonged to Plaintiffs.

222. Insight Venture III exercised such dominion and control over the Authorize.Net stock even though it knew, through the knowledge of its managers,

Horing and Murdock, that the purchase of the Authorize.Net stock by Insight III and Insight Venture III was in violation of Plaintiffs' rights under the Imprimis Consulting Agreement.

223. Insight Venture III's conduct was outrageous, malicious, and evidenced a reckless disregard of Plaintiffs' rights under the under the Consulting Agreements.

224. By reason of the foregoing, Plaintiffs are entitled to a judgment against Insight Venture III awarding Plaintiffs compensatory and punitive damages in an amount to be determined at trial, but believed to be no less than $83 million plus the value of the converted Investment Opportunity in Greenfield Online, together with interest and costs as allowed by law.

**AS AND FOR A TWELFTH CAUSE OF ACTION AGAINST INSIGHT, HORING, MURDOCK, INSIGHT VENTURE II, AND INSIGHT VENTURE III**

**(Negligent Misrepresentation)**

225. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 224 of this Amended Complaint as is set forth in full herein.

226. As a consequence of the fact that Plaintiffs and Insight were parties to the Consulting Agreements, Plaintiffs and Insight were at all relevant times in privity.

227. As a consequence of the fact that Plaintiffs and Insight Venture II were parties to the LLC Agreements, the Plaintiffs and Insight Venture II were at all relevant times in privity.

228. Insight Venture II and Insight Venture III were and are the alter egos of Defendants Horing, Murdock, and Insight because, inter alia, of the domination

and control of Insight Venture II and Insight Venture III by Horing, Murdock, and Insight. As such, Insight Venture II and Insight Venture III owed Plaintiffs a duty, equivalent to that of Insight, not to make negligent misrepresentations to Plaintiffs.

229. As more fully set forth above, Defendants Insight, Horing, Murdock, and Insight Venture II either directly, or through Horing and Murdock as their representatives and agents, negligently made false and misleading statements of material facts and omitted other facts necessary to make the statements made not misleading, relating to Defendants' obligations under the Consulting Agreements, in gross disregard of Plaintiffs' rights, including, inter alia, the following:

- By representing to Plaintiffs in statements made on August 29, 1999 by Defendant Horing, on October 6, 1999 (through Defendant Horing) and October 8, 1999 (through Defendant Murdock) that the *Illuminet Investment had been discussed with Plaintiffs in 1998 or* early 1999;
- By representing to Plaintiffs in statements on October 6, 1999 (through Defendant Horing) and October 8, 1999 (through Defendant Murdock) that the Illuminet deal was "small" and that Illuminet lacked real financial data, had a questionable management structure, and was "tough" to value; and
- By representing on April 16, 1999 (through Defendant Murdock) that Quest was not an Investment Opportunity subject to the terms of the Consulting Agreements.

230. As more fully set forth above, Defendants Insight, Horing, Murdock, and Insight Venture III, either directly or through Horing and Murdock as their representatives and agents, negligently made false and misleading statements of material facts and omitted other facts necessary to make the statement not misleading, relating to Defendants obligations under the Consulting Agreements, in gross disregard of Plaintiffs' rights, including, inter alia, the following:

- By representing on April 16, 1999 (through Defendant Murdock) that Convergent Group was not an Investment Opportunity subject to the terms of the Consulting Agreements;
- By representing on or about April 16, 1999 (through Defendant Murdock) and on April 20, 1999 (through Defendant Horing) that Greenfield Online was not an Investment Opportunity subject to the terms of the Consulting Agreements; and
- By representing on or about April 16, 1999 (through Defendant Murdock) that Click was not an Investment Opportunity subject to the terms of the Consulting Agreements;
- By representing on June 7, 1999 (through Defendant Horing) that there was no "room" for Plaintiffs in the Click investments, which was purported to be $5 million "deal"; and
- By representing on February 1, 2000 (through Defendant Murdock) that Defendants' failure to provide Plaintiffs with an Investment Opportunity in Click was caused by some unidentified "problem" with Compaq.

231. In addition, Defendants Insight, Horing, Murdock, Insight Venture II, and Insight Venture III, either directly or through Horing and Murdock or their representatives and agents, negligently or recklessly omitted to inform Plaintiffs of the Investment Opportunity or related investment rights in Illuminet, Authorize.Net, and Altitude in flagrant and gross disregard of Plaintiffs' rights and of the material changes to the Investment Opportunity in LPA. Defendants also negligently or recklessly failed to inform Plaintiffs of the purported "assignment" of WISI's Altitude warrants.

232. Each Defendant should have known that the statements made to Plaintiffs were factually incorrect and would result in, and did result in, Plaintiffs' reliance thereon and acquiescence in Defendants' allocation of investment opportunities in whole or in part to themselves, despite the obligations of the Consulting Agreements, to Plaintiffs' economic detriment.

233. Defendants Insight, Horing, Murdock, Insight Venture II, and Insight Venture III, either directly or through Horing and Murdock or their representatives and agents, negligently or recklessly made the material misrepresentations, and omitted to disclose the material facts, as alleged herein, in flagrant and gross disregard of the rights of Plaintiffs.

234. Plaintiffs have been damaged by Defendants' grossly negligent and reckless conduct in that, inter alia, Plaintiffs did not act to enforce their full rights of first refusal under the terms of the Consulting Agreements, thus losing materially advantageous Investment Opportunities, or to block the "assignment" of WISI's valuable Altitude warrants to third parties.

235. By reason of the foregoing, Plaintiffs are entitled to a judgment against Defendants, jointly and severally, awarding Plaintiffs compensatory and punitive damages in an amount to be determined at trial, but believed to be no less than $288.7 million, together with interest and costs as allowed by law.

**AS AND FOR A THIRTEENTH CAUSE OF ACTION AGAINST INSIGHT, HORING, MURDOCK, INSIGHT VENTURE II, AND INSIGHT VENTURE III**

**(Unjust Enrichment)**

236. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 235 of this Amended Complaint as if set forth in full herein.

237. By virtue of the wrongful diversion by Defendants Insight, Horing, Murdock, Insight Venture II, and Insight Venture III of Investment Opportunities that rightfully should have been allocated to Plaintiffs as set forth herein, Insight, Horing, Murdock, Insight Venture II, Insight Venture III, Insight II, Insight Cayman II, Insight III, Insight Co-Investors, Insight Cayman III, and/or their affiliates have been unjustly enriched in the amount of at least $288.7 million.

238. By reason of the foregoing, Plaintiffs are entitled to a judgment against Defendants Insight, Horing, Murdock, Insight Venture II, and Insight Venture III, jointly and severally, awarding them compensatory damages in an amount to be determined at trial, but believed to be no less than $288.7 million, together with interests and costs as allowed by law.

**AS AND FOR A FOURTEENTH CAUSE OF**
**ACTION AGAINST INSIGHT, HORING, AND MURDOCK**

**(Value Had and Received)**

239. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 238 of this Amended Complaint as if set forth in full herein.

240. As a consequence of Defendants' breach of contract, wrongful diversion of Investment Opportunities that rightfully should have been allocated to Plaintiffs, the failure to turn over to Plaintiffs fees, options, "allocations" in hot issue IPOs, and distributions of "friends and family" stock that flowed from Investment Opportunities and thus were due Plaintiffs, Defendants Insight, Horing, and Murdock came into possession of the money and securities belonging to Plaintiffs that in equity and good conscience should not be retained by Defendants Insight, Horing and Murdock.

241. Plaintiffs have been damaged by the wrongful retention of such money and securities by Defendants Insight, Horing, and Murdock.

242. By reason of the foregoing, Plaintiffs are entitled to an Order requiring that such money and securities be turned over to Plaintiffs, together with interest and costs as allowed by law, or, in the alternative, to judgment against Insight, Horing, and Murdock, jointly and severally, in an amount to be determined at trial, reflecting the value of such money and securities, together with interest and costs and allowed by law.

**AS AND FOR A FIFTEENTH CAUSE OF ACTION AGAINST INSIGHT, HORING, MURDOCK, INSIGHT VENTURE II, AND INSIGHT VENTURE III**

**(Mandatory Injunction)**

243. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 242 of this Amended Complaint as if set forth in full herein.

244. As a result of the wrongful actions of Defendants as set forth herein, Defendants and/or their affiliates have wrongfully acquired or retained property, in the form of securities, options, and other non-cash property, rightfully belonging to Plaintiffs.

245. A mandatory injunction should be issued requiring Defendants and/or their affiliates to turn over to Plaintiffs all such wrongfully obtained and/or retained securities, options, and other property.

246. Plaintiffs have no adequate remedy at law to obtain these securities, options, and other non-cash property because each of these securities, options, and other non-cash property has increased significantly in value since their acquisition by Defendants and/or their affiliates and the opportunity to acquire those investments at the price they were acquired by Defendants and/or their affiliates no longer exists.

**AS AND FOR A SIXTEENTH CAUSE OF ACTION AGAINST INSIGHT, HORING, MURDOCK, INSIGHT VENTURE II, AND INSIGHT VENTURE III**

**(Imposition of a Constructive Trust)**

247. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 246 of this Amended Complaint as if set forth in full herein.

248. By virtue of the investment advisor relationship created by the Agreements, Insight was in a confidential and/or fiduciary relationship with Plaintiffs.

249. As a consequence of the wrongs alleged herein, Defendants Insight, Horing, Murdock, Insight Venture II, and Insight Venture III caused to be transferred to themselves or their affiliates Investment Opportunities rightfully belonging to Plaintiffs.

250. As a result of Defendants' wrongful diversion to themselves or their affiliates of Investment Opportunities that rightfully should have been allocated to Plaintiffs as set forth herein, Insight, Horing, Murdock, Insight Venture II, and Insight Venture III, and/or their affiliates have been unjustly enriched and are in the possession of securities, options, and other property that rightfully belongs to Plaintiffs, or if they have liquidated those investments, of the proceeds thereof.

251. As a consequence of the foregoing, Plaintiffs are entitled to the imposition of a constructive trust on all investments, and/or any proceeds or profits therefrom, made or received by Defendants Insight, Horing, Murdock, Insight Venture II, and Insight Venture III, and/or their affiliates, with respect to Investment Opportunities as to which Plaintiffs were wrongfully denied their rights under the Consulting Agreements.

252. Plaintiffs have no adequate remedy at law.

**AS AND FOR AN SEVENTEENTH CAUSE OF ACTION AGAINST INSIGHT, HORING, MURDOCK, INSIGHT VENTURE II, AND INSIGHT VENTURE III**

**(Accounting)**

253. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 252 of this Amended Complaint as if set forth in full herein.

254. In light of Defendants' wrongful actions as set forth herein, Plaintiffs are entitled to an accounting from Defendants Insight, Horing, Murdock, Insight Venture II, and Insight Venture III regarding all Investment Opportunities, whether or not presented to Plaintiffs or otherwise allocated to them pursuant to the terms of the Consulting Agreements, setting forth all investments made in such Opportunities, the profits and/or appreciation received therefrom or in connection therewith, and regarding all board, break-up fees, closing fees, consulting fees, advisory fees, transaction fees, other fees, options, hot issue IPO allocations, or other benefits paid to or received by Defendants or any of their affiliates that in any way arose from Investment Opportunities subject to the Consulting Agreements.

255. Plaintiffs have no adequate remedy at law.

**WHEREFORE**, Plaintiffs respectfully demand judgment as follows:

i. on the First Cause of Action, compensatory damages against Defendant Insight, in an amount to be established at trial, but believed to be no less than $288.7 million, together with interest and costs as allowed by law;

ii. on the Second Cause of Action, compensatory damages against Defendant Insight, in an amount to be established at trial, but

believed to be no less than $288.7 million, together with interest and costs as allowed by law;

iii. on the Third Cause of Action, compensatory and punitive damages against all Defendants other than Insight, in an amount to be established at trial, but believed to be no less than $288.7 million, together with interest and costs as allowed by law;

iv. on the Fourth Cause of Action, compensatory and punitive damages against Defendant Insight, in an amount to be established at trial, but believed to be no less than $288.7 million, together with interest and costs as allowed by law;

v. on the Fifth Cause of Action, compensatory and punitive damages against all Defendants other than Insight, in an amount to be established at trial, but believed to be no less than $288.7 million, together with interest and costs as allowed by law;

vi. on the Sixth Cause of Action, compensatory and punitive damages against all Defendants in an amount to be established at trial, but believed to be no less than $288.7 million, together with interest and costs as allowed by law;

vii. on the Seventh Cause of Action, compensatory and punitive damages against all Defendants in an amount to be established at trial, but believed to be no less than $288.7 million, together with interest and costs as allowed by law;

viii. on the Eighth Cause of Action, compensatory and punitive damages against Defendants Horing, Murdock, Insight, and Insight Venture II in an amount to be established at trial, together with interest and costs as allowed by law;

ix. on the Ninth Cause of Action, compensatory and punitive damages against Defendants Insight, Horing, and Murdock in an amount to be established at trial, but believed to be no less than $288.7 million, together with interest and costs as allowed by law;

x. on the Tenth Cause of Action, compensatory and punitive damages against Insight Venture II in an amount to be established at trial, but believed to be no less than $209.7 million, plus the value of the converted Investment Opportunities in HUON and LPA, together with interest and costs as allowed by law;

xi. on the Eleventh Cause of Action, compensatory and punitive damages against Insight Venture III in an amount to be established at trial, but believe to be no less than $83 million, plus the value of the converted Investment Opportunity in Greenfield Online, together with interest and costs as allowed by law;

xii. on the Twelfth Cause of Action, compensatory and punitive damages against all Defendants in an amount to be established at trial, but believed to be no less than $288.7 million, together with interest and costs as allowed by law;

xiii. on the Thirteenth Cause of Action, compensatory damages against all Defendants in an amount to be established at trial, but believed to be no less than $288.7 million, together with interest and costs as allowed by law;

xiv. on the Fourteenth Cause of Action, an Order requiring Defendants Insight, Horing, and Murdock to turn over to Plaintiffs all money and securities that belong to Plaintiffs, together with interest and costs as allowed by law, or, in the alternative, a money judgment for the value thereof, in an amount to be determined at trial, together with interest and costs as allowed by law;

xv. on the Fifteenth Cause of Action, for a mandatory injunction requiring Defendants to turn over to Plaintiffs all securities, options, or other non-cash property that rightfully belongs to Plaintiffs;

xvi. on the Sixteenth Cause of Action, imposing a constructive trust on all investments, and/or proceeds or profits flowing therefrom to Defendants or their affiliates, in connection with Investment Opportunities that wrongfully were denied to Plaintiffs;

xvii. on the Seventeenth Cause of Action, for an accounting from Defendants regarding all Investment Opportunities under the Agreements and all fees, options, "hot issue" IPO allocations, and other benefits received by Defendants that in any way arose from Investment Opportunities subject to the Consulting Agreements; and

xviii. for such other and further relief as to the Court deems just and proper.

Dated: New York, New York
June 10, 2002

BERLACK, ISRAELS & LIBERMAN LLP

By: Martin S. Siegel
Martin S. Siegel, Esq.
Andrew Dash, Esq.

120 West 45th Street
New York, New York 10036
(212) 704-0100

*Attorneys for Plaintiffs*

TO: David B. Tulchin, Esq.
Sullivan & Cromwell
125 Broad Street
New York, New York 10004
(212) 558-4000

Attorneys for Defendants