149. Through their actions, Insight, Horing, Murdock, Insight Venture III and Insight III converted Plaintiffs' right to acquire 50 percent of the Investment Opportunity in Authorize.Net, thereby depriving Plaintiffs of at least a $1.4 million gain, to which they are entitled.

**The Wrongful Diversion of an Investment Opportunity in Altitude and <u>Wrongful "Assignment" of WISI's Altitude Warrants</u>**

150. At some time prior to July 1998 — during the term of the WISI Agreement — Insight identified Altitude Software, then known as Easyphone ("Altitude"), as an Investment Opportunity. Altitude develops and markets contact center management software.

151. In July 1998, WISI made a $2.75 million investment in Altitude; Insight made an equal investment. In connection with those investments, each of WISI and Insight received warrants to purchase 618,000 shares of Altitude stock at $4.45 per share, expiring in August 2003.

152. Thereafter, in or about July 1999, third-party private investors made an investment in Altitude. To facilitate this investment, Insight executed an "Investment Agreement" in connection with the transaction. No notice of, or information about, this financing was provided to Plaintiffs by Insight or the Insight Principals. In fact, Insight and the Insight Principals affirmatively kept Plaintiffs in the dark about Altitude's July 1999 financing transaction.

153. This hidden financing transaction was in direct contravention of Plaintiffs' rights. As part of an "Investors Rights Agreement" entered into in connection with Plaintiffs' investment in Altitude, Plaintiffs were afforded a pre-emptive participation

right, pro rata to Plaintiffs' ownership interest, with respect to any new financing by Altitude and a right of first refusal (with Insight) to purchase 100 percent of a private financing. Further, under the Investors Rights Agreement, Plaintiffs were entitled to written notice of any such financing and a 20-day period to respond. No such notice was provided to Plaintiffs.

154. Moreover, as Plaintiffs have only recently discovered, as part of that July 1999 financing transaction, Defendant Horing, acting on his own behalf and on behalf of Insight, Murdock, and Insight Venture II, purported to "assign" to the new investors 12.5 percent of the warrants received by WISI as part of the consideration for WISI's investment in Altitude in the July 1998 financing.

155. To accomplish this purported "assignment," defendant Horing, acting on his own behalf, and on behalf of Insight, Murdock, and Insight Venture II, without notice to, or authorization from, WISI, executed the "Investment Agreement" for WISI, purportedly assigning WISI's Altitude warrants to the new investors.

156. At no time did Plaintiffs authorize or otherwise consent to any assignment of WISI's Altitude warrants to these new investors (or, for that matter, to any other person or entity). Indeed, Plaintiffs were entirely unaware of the "assignment" of WISI's warrants. Plaintiffs only learned of the purported "assignment" of WISI's warrants when they obtained information in September 2000 regarding Altitude's capitalization in connection with Altitude's forthcoming initial public offering.

157. WISI received no consideration for the purported "assignment" of its Altitude warrants.

158. The acts of Insight, Horing, Murdock, and Insight Venture II in: (i) failing to provide Plaintiffs with any notice of or information regarding Altitude's July 1999 financing transaction; (ii) failing to ensure that Plaintiffs received their pre-emptive pro rata rights to participate in that financing; (iii) executing the "Investment Agreement" on behalf of WISI effecting the wrongful "assignment" of WISI's Altitude warrants without authorization from, or notice to, Plaintiffs; and (iv) otherwise acting to steal Altitude warrants owned by WISI, wrongfully denied WISI a valuable Investment Opportunity, and wrongfully deprived WISI of warrants, whose value is presently unknown to Plaintiffs.

**Other Diverted Investment Opportunities**

159. Defendants Insight, Horing, Murdock, Insight Venture II, Insight Venture III, Insight II, Insight Cayman II and the New Funds and/or their affiliates, designees or nominees, wrongfully converted other Investment Opportunities that Insight identified during the term of the Agreements, causing Plaintiffs additional damages, in amounts presently unknown to Plaintiffs.

**The Wrongful Diversion of**
**the Fees and Options Due Plaintiffs**
**That Flowed From Investment Opportunities**

160. As set forth above, pursuant to Section 6 of each of the WISI Consulting Agreement and the Imprimis Consulting Agreement, Insight and its affiliates, including each of the Insight Defendants were obligated to share on a pro rata basis with Plaintiffs any and all fees or other benefits paid to Insight or any of its affiliates by any third-party in connection with any Investment Opportunity.

161. To date, the Insight Defendants have failed to comply with the terms of these provisions of the Consulting Agreements. The Insight Defendants have received a number of substantial management and board fees, and options, but have not provided Plaintiffs with their allocable share.

162. As but one example of the Insight Defendants' wrongful activities, in connection with the IPO of Convergent, Insight or its affiliates received approximately $3 million in fees covered by the Consulting Agreements. Of that amount, Plaintiffs are entitled to approximately $1.5 million based on Imprimis's minimum 50 percent right of first refusal with respect to an investment in Convergent. Despite Insight's acknowledgment that Imprimis is entitled to a portion of the fees received by Insight and its affiliates, such funds have not been paid over to Plaintiffs.

163. In addition, various defendants, including Horing and Murdock, and/or their designees, are believed to have received allocations in "hot issue" IPOs as a result of business they directed to investment banks arising from Investment Opportunities in which Plaintiffs participated or were entitled to participate, as well as distributions of "friends and family" stock from Investment Opportunities (including an IPO allocation of Quest stock to Horing's mother-in-law) and stock as compensation for Murdock's service as a Quest board member. Nevertheless, neither Horing nor Murdock, nor any of the other Insight Defendants, or UBS, has turned over to Plaintiffs their share of the profits earned on any such allocations of "hot issue" IPO and "friends and family" stock.

**The Insight Defendants' Breach of Their Agreement to Participate in an Auditor's Analysis of Fees and Other Benefits Allocable to Plaintiffs Under the Consulting Agreements**

164. In an effort to resolve at least part of the dispute between Plaintiffs and Defendants, Plaintiffs proposed to retain outside auditors, Deloitte & Touche LLP, to analyze the transactions between Plaintiffs and Insight and its affiliates in connection with the Consulting Agreements. Plaintiffs agreed to pay the professional fees and disbursements associated with this analysis.

165. After lengthy negotiations, the parties agreed to the proposed Deloitte & Touche analysis. This agreement (the "August 8 Agreement") was reflected in an engagement letter prepared by Deloitte & Touche and countersigned as "accepted" by Insight and Wexford Management LLC on behalf of Plaintiffs.

166. Under the August 8 Agreement, Deloitte & Touche was to (i) interview the appropriate personnel at Insight, (ii) interview CEOs, CFOs, and/or controllers of 28 identified investments entered into under the Agreements (based on scripts that were to be pre-approved in writing by Insight), and (iii) review documentation relating to fees and compensation arising out of those investments.

167. Despite their written promise to participate in this process as reflected in the August 8 Agreement, including Insight's specific commitment "to cooperate with D&T [i.e., Deloitte & Touche] in the performance by D&T of its services [under the August 8 Agreement], including, without limitation, providing D&T with reasonable facilities and timely access to data, information, and personnel of Insight," Insight failed to cooperate with Deloitte & Touche. In late September 2000, Insight indicated that it would not permit the Deloitte & Touche analysis to proceed.

**The Damages to Plaintiffs**

168. As a result of the foregoing, Plaintiffs have been denied the economic benefits to which they were entitled under the Consulting Agreements. As of September 30, 2000, Plaintiffs have been damaged as a result of Defendants wrongful conduct in at least the following amounts:

| Investment Opportunity | Minimum Damages to Plaintiffs |
|---|---|
| Illuminet | At least $ 9,740,300 |
| HUON | Presently Unknown |
| LPA Software | Presently Unknown |
| Quest – Series A Preferred Stock | At least $178,878,358 |
| Quest – Series B Redeemable Preferred Stock | At least $600,000 |
| Quest – Defendant Murdock personal participation | At least $16,536,878 |
| Convergent Group | At least $62,455,190 |
| Greenfield Online | Presently Unknown |
| Click | At least $17,613,067 |
| Authorize.Net | At least $1,462,348 |
| Altitude - converted warrants | Presently Unknown |
| Convergent fees | At least $1,500,000 |
| Other fees | Presently Unknown |
| IPO and other allocations of securities | Presently Unknown |
| **TOTAL** | At least $288,786,194 |

169. Many of the unliquidated Investment Opportunities wrongfully diverted to the Insight Defendants significantly increased in value, thus enabling Insight, Horing, Murdock, Raghavendran, Sobiloff, the other Insight Defendants, UBS and their

affiliates to reap additional tens of millions of dollars from Investment Opportunities stolen from Plaintiffs.

**AS AND FOR A FIRST CAUSE OF**
**ACTION AGAINST INSIGHT**

**(Breach of Contract)**

170. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 169 of this Amended and Consolidated Complaint as if set forth in full herein.

171. By failing to provide Plaintiffs, in whole or in part, with their Investment Opportunities in Illuminet, Quest, LPA, Convergent, Greenfield Online, Click, and Authorize.Net, Defendant Insight breached the Consulting Agreements.

172. In addition, by failing to provide Plaintiffs with their pro rata share of board fees, break-up fees, closing fees, consulting fees, advisory fees, options, transaction fees, or other benefits arising out of Investment Opportunities covered by the Consulting Agreements, Defendant Insight breached the Consulting Agreements.

173. As a result of the foregoing breaches of the Consulting Agreements, Plaintiffs have been damaged in an amount to be established at trial, but believed to be no less than $288.7 million, together with interest and costs as allowed by law.

**AS AND FOR A SECOND CAUSE**
**OF ACTION AGAINST INSIGHT**

**(Breach of Implied Duties of**
**Good Faith and Fair Dealing)**

174. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 173 of this Amended and Consolidated Complaint as if set forth in full herein.

175. By engaging in the wrongful scheme described herein in order to deny Plaintiffs the full benefits of the Consulting Agreements, Insight breached the duties of good faith and fair dealing implied by law in the Consulting Agreements.

176. *As a result of the foregoing breaches of the Consulting* Agreements, Plaintiffs have been damaged in an amount to be established at trial, but believed to be no less than $288.7 million, together with interest and costs as allowed by law.

**AS AND FOR A THIRD CAUSE OF ACTION AGAINST HORING, MURDOCK, INSIGHT VENTURE II, INSIGHT VENTURE III, INSIGHT II, INSIGHT CAYMAN II, INSIGHT III, INSIGHT CO-INVESTORS, INSIGHT CAYMAN III, RAGHAVENDRAN AND SOBILOFF**

**(Tortious Interference)**

177. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 176 of this Amended and Consolidated Complaint as if set forth in full herein.

178. Each of Defendants Horing, Murdock, Insight Venture II, Insight Venture III, Insight II, Insight Cayman II, Insight III, Insight Co-investors, Insight Cayman III, Raghavendran, and Sobiloff was aware of the contractual agreements between Insight and Plaintiffs as reflected in the Consulting Agreements.

179. Despite this knowledge, through the wrongful acts set forth herein, each of Horing, Murdock, Insight Venture II, Insight Venture III, Insight II, Insight Cayman II, Insight III, Insight Co-investors, Insight Cayman III, Raghavendran, and Sobiloff intentionally and knowingly acted to interfere with those relations by (i) assisting in, or otherwise procuring, Insight's breach of the Consulting Agreements through the failure properly to advise Plaintiffs regarding Investment Opportunities identified by

Insight during the term of the Consulting Agreements and to provide Plaintiffs with their full rights of first refusal; and (ii) inducing additional investors, including UBS, to participate in the conversion of Plaintiffs' Investment Opportunity rights in breach of the Consulting Agreements.

180. The actions of Defendants Horing, Murdock, Insight Venture II, Insight Venture III, Insight II, Insight Cayman II, Insight III, Insight Co-investors, Insight Cayman III, Raghavendran, and Sobiloff in this regard were taken for the wrongful purpose of diverting to Defendants valuable Investment Opportunities that should have been made available to Plaintiffs pursuant to the Consulting Agreements.

181. As an example, with full knowledge of Plaintiffs' rights pursuant to the Imprimis Consulting Agreement, Insight Venture II, as the general partner of Insight II and Insight Cayman II, in concert with, inter alia, Horing, Murdock, and Insight, caused Insight II and/or Insight Cayman II to purchase shares in Illuminet, HUON, LPA, and Quest and executed closing documents necessary to effect those purchases. The right to make the investment in these entities rightfully belonged to Plaintiffs pursuant to the Consulting Agreements.

182. As a further example, with full knowledge of Plaintiffs' rights pursuant to the Imprimis Consulting Agreement, Insight Venture III, as the general partner of Insight III, Insight Co-Investors, and Insight Cayman III, in concert with, inter alia, Horing, Murdock, Raghavendran and Sobiloff and Insight caused Insight III, Insight Co-Investors, and/or Insight Cayman III to purchase shares in Click, Authorize.Net, Convergent, and Greenfield Online executed closing documents necessary to effect those purchases, and also acquired 11 percent of those investments. The right to make

the investments in those entities rightfully belonged to Plaintiffs pursuant to the Consulting Agreements.

183. By reason of the foregoing, Plaintiffs are entitled to a judgment against Defendants Horing, Murdock, Insight Venture II, Insight Venture III, Insight II, Insight Cayman II, Insight III, Insight Co-Investors, Insight Cayman III, Raghavendran and Sobiloff awarding Plaintiffs compensatory and punitive damages in an amount to be determined at trial, but believed to be no less than $288.7 million, together with interest, costs, and attorneys fees as allowed by law.

**AS AND FOR A FOURTH CAUSE**
**OF ACTION AGAINST INSIGHT**

**(Breach of Fiduciary Duty)**

184. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 183 of this Amended and Consolidated Complaint as if set forth in full herein.

185. By virtue of its relationship as investment advisor to Plaintiffs pursuant to the terms of the Consulting Agreements, Defendant Insight owed the highest obligations and fiduciary duties to Plaintiffs. Insight was duty-bound to act in a responsible and lawful manner, and with utmost good faith, so as not to cause injury to Plaintiffs.

186. In particular, Insight owed duties to each of Plaintiffs to make full and candid disclosure of all material facts relating to Investment Opportunities identified by Insight, and to deal fairly and honestly with Plaintiffs. Insight was further obligated to refrain from any fraudulent or wrongfully self-benefiting conduct to the detriment of Plaintiffs or any of them.

187. In engaging in the systematic course of conduct alleged herein, and in collaborating with the other of the Insight Defendants in that wrongful conduct, Insight repeatedly breached its fiduciary and related obligations to Plaintiffs.

188. Insight's conduct was purposeful and malicious and departed in the extreme from the norms expected of an investment advisor in the position of Insight. Insight cavalierly disregarded its duties to, and the interests of, Plaintiffs.

189. Each of Plaintiffs has been damaged by the wrongful conduct of Insight in that, as a result of Insight's breaches of its fiduciary and related duties, Plaintiffs did not receive the full rights of first refusal to which they were entitled with respect to the Investment Opportunities described above, not did Plaintiffs receive their pro rata share of all fees, options, and other benefits obtained by the Insight Defendants (or their designees) in connection therewith, all to Plaintiffs' economic detriment.

190. Insight also breached its fiduciary duties to Plaintiffs when its principal and control person, Horing, wrongfully executed the July 1999 "Investment Agreement" on behalf of WISI — without authorization from, or notice to, Plaintiffs — so as to cause the unlawful conversion of WISI-owned Altitude warrants worth millions of dollars.

191. By reason of the foregoing, Plaintiffs are entitled to a judgment against Insight, awarding them compensatory and punitive damages in an amount to be determined at trial, but believed to be no less than $288.7 million, together with interest, costs, and attorneys fees as allowed by law.

**AS AND FOR A FIFTH CAUSE OF ACTION AGAINST HORING, MURDOCK, INSIGHT VENTURE II, INSIGHT VENTURE III, INSIGHT II, INSIGHT CAYMAN II, INSIGHT III, INSIGHT CO-INVESTORS, INSIGHT CAYMAN III, RAGHAVENDRAN, AND SOBILOFF**

**(Aiding and Abetting Breach of Fiduciary Duty)**

192. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 191 of this Amended Complaint as if set forth in full herein.

193. Each of Defendants Horing, Murdock, Insight Venture II, Insight Venture III, Insight II, Insight Cayman II, Insight III, Insight Co-investors, Insight Cayman III, Raghavendran, and Sobiloff, either directly or through Horing and/or Murdock, knew or recklessly disregarded the fact that Insight owed fiduciary and other obligations to Plaintiffs, and each of Defendants Horing, Murdock, Insight Venture II, Insight Venture III, Insight II, Insight Cayman II, Insight III, Insight Co-investors, Insight Cayman III, Raghavendran, and Sobiloff, knew, or recklessly disregarded, the fact that Insight was breaching those obligations by engaging in the conduct alleged herein.

194. With such knowledge, Defendants Horing, Murdock, Insight Venture II, Insight Venture III, Insight II, Insight Cayman II, Insight III, Insight Co-investors, Insight Cayman III, Raghavendran, and Sobiloff provided substantial assistance to, aided and abetted, and conspired to bring about Insight's breaches of its fiduciary obligations to Plaintiffs by, inter alia, encouraging and enabling Insight and its and their representatives and agents, including, without limitation, Defendants Murdock and Horing, to misrepresent the availability of Investment Opportunities under the Agreements, to misrepresent Insight's investment relationships with its co-investors, including UBS, and to "assign" WISI-owned Altitude warrants to third parties.

195. Plaintiffs have been damaged by the wrongful conduct of Defendants Horing, Murdock, Insight Venture II, Insight Venture III, Insight II, Insight Cayman II, Insight III, Insight Co-investors, Insight Cayman III, Raghavendran, and Sobiloff in that such conduct, inter alia, caused Plaintiffs to be deprived of their rights under the Agreements to make investments in the Investment Opportunities identified by Insight that were diverted to these Defendants and/or their affiliates and co-investors.

196. The conduct of Defendants Horing, Murdock, Insight Venture II, Insight Venture III, Insight II, Insight Cayman II, Insight III, Insight Co-investors, Insight Cayman III, Raghavendran, and Sobiloff, as alleged herein, was done purposely, maliciously, recklessly, and without regard for the rights and interests of Plaintiffs.

197. By reason of the foregoing, Plaintiffs are entitled to a judgment against Defendants Horing, Murdock, Insight Venture II, Insight Venture III, Insight II, Insight Cayman II, Insight III, Insight Co-investors, Insight Cayman III, Raghavendran, and Sobiloff, jointly and severally, awarding Plaintiffs compensatory and punitive damages in an amount to be determined at trial, but believed to be no less than $288.7 million, together with interest, costs, and attorneys fees as allowed by law.

**AS AND FOR A SIXTH CAUSE OF ACTION AGAINST INSIGHT, HORING, MURDOCK, INSIGHT VENTURE II, INSIGHT VENTURE III, INSIGHT II, INSIGHT CAYMAN II, INSIGHT III, INSIGHT CO-INVESTORS, INSIGHT CAYMAN III, RAGHAVENDRAN, AND SOBILOFF**

**(Fraud and Misrepresentation)**

198. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 197 of this Amended and Consolidated Complaint as if set forth in full herein.

199. As more fully set forth above, Defendants Insight, Horing, Murdock, Insight Venture II and Insight Venture III, either directly or through Horing and Murdock as their representatives and agents, made knowingly false and misleading statements of material facts, and omitted other facts necessary to make such statements not misleading, concerning certain of the Investment Opportunities, including, inter alia, the following:

- By representing to Plaintiffs in statements made on August 29, 1999 (through Defendant Horing), on October 6, 1999 (by Defendant Horing), and October 8, 1999 (through Defendant Murdock) that the Illuminet Investment Opportunity had been discussed with Plaintiffs in 1998 or early 1999; and
- By representing to Plaintiffs in statements on October 6, 1999 (through Defendant Horing) and October 8, 1999 (through Defendant Murdock) that the Illuminet deal was "small" and that Illuminet lacked real financial data, had a questionable management structure, and was "tough" to value.

200. As more fully set forth above, Defendants Insight, Horing, Murdock, Insight Venture II, Insight Venture III, Insight II, Insight Cayman II, Insight III, Insight Co-investors, Insight Cayman III, Raghavendran, and Sobiloff, either directly or through Horing and Murdock as their representatives and agents, made knowingly false and misleading statements of material facts, and omitted other facts necessary to make such statements not misleading, concerning certain of the Investment Opportunities, including, inter alia, the following:

- By first representing on April 16, 1999 (through Defendant Murdock) that Quest was not an Investment Opportunity subject to the terms of the Consulting Agreements, and later, by representing (through Murdock) that Plaintiffs were being afforded their full right of first refusal to invest 50 percent of Insight's opportunity to invest in Quest; and
- By representing that UBS was an independent third-party investor.

201. As more fully set forth above, Defendants Insight, Horing, Murdock, Insight Venture II, Insight Venture III, Insight III, Insight Co-investors, Insight Cayman III, Raghavendran, and Sobiloff, either directly or through Horing and Murdock as their representatives and agents, made knowingly false and misleading statements of material facts, and omitted other facts necessary to make such statements not misleading, concerning certain of the Investment Opportunities, including, inter alia, the following:

- By representing on April 16, 1999 (through Defendant Murdock) that Convergent Group was not an Investment Opportunity subject to the terms of the Consulting Agreements;
- By representing on or about April 16, 1999 (through Defendant Murdock) and on April 20, 1999 (through Defendant Horing) that Greenfield Online was not an Investment Opportunity subject to the terms of the Consulting Agreements; and

- By representing on or about April 16, 1999 (through Defendant Murdock) that Click was not an Investment Opportunity subject to the terms of the Consulting Agreements;
- By representing on June 7, 1999 (through Defendant Horing) that there was no "room" for Plaintiffs in the Click investments, which was purported to be $5 million "deal"; and
- By representing on February 1, 2000 (through Defendant Murdock) that Defendants' failure to provide Plaintiffs with an Investment Opportunity in Click was caused by some unidentified "problem" with Compaq.

202. In addition, Defendants Insight, Horing, Murdock, Insight Venture II, and Insight Venture III, either directly, or through Defendants Horing and Murdock intentionally omitted to inform Plaintiffs of Investment Opportunities in Illuminet, HUON, Authorize.Net, and Altitude, or that the terms of the Investment Opportunity in LPA changed materially and favorably. Defendants Raghavendran, Sobiloff and Insight III, either directly or through their agents and representatives, Horing and Murdock, and Insight intentionally failed to inform Plaintiffs of the Investment Opportunity in Authorize.Net, despite obligations to do so.

203. Further, Defendants Insight, Horing, Murdock and Insight Venture II perpetrated an additional fraud on Plaintiffs by "assigning" to third parties valuable warrants in Altitude owned by WISI, wrongfully executing an agreement to that effect for WISI, without authorization from, or notice to, Plaintiffs, and intentionally hiding from Plaintiffs that "assignment" and the Investment Opportunity of which it was a part.

204. Each of the Insight Defendants knew that the foregoing statements and actions made by them or on their behalf constituted a fraud and deceit on Plaintiffs and would result in, and did result in, Plaintiffs' reliance thereon and forbearance in seeking to enforce its rights under the Consulting Agreements in response to the improper conversion of Plaintiffs' Investment Opportunity rights, in whole or in part, to Plaintiffs' economic detriment. In particular, as a result of the misrepresentations on which Plaintiffs relied, Plaintiffs did not demand, or forebore from asserting, their full investment rights with respect to the Investment Opportunities in Quest, Convergent Group, Greenfield Online, and Click.

205. The Insight Defendants, either directly, or through Defendants Horing and Murdock, made the material misrepresentations, and omitted to disclose the material facts, as alleged herein, with the intention of inducing Plaintiffs to acquiesce in the Insight Defendants' allocations, in whole or in part, of Investment Opportunities to Plaintiffs in amount less than their full right of first refusal to which they were entitled under the Consulting Agreements, to the economic detriment of Plaintiffs.

206. Plaintiffs have been damaged by the fraudulent conduct of the Insight Defendants in that Plaintiffs did not act to enforce their full rights of first refusal to which Plaintiffs were entitled under the terms of the Consulting Agreements.

207. The Insight Defendants' fraudulent conduct, as alleged herein, was done purposely, maliciously, and without regard for the rights and interests of Plaintiffs.

208. By reason of the foregoing, Plaintiffs are entitled to a judgment against the Insight Defendants, jointly and severally, awarding Plaintiffs compensatory

and punitive damages in an amount to be determined at trial, but believed to be no less than $288.7 million, together with interest, costs, and attorneys fees as allowed by law.

**AS AND FOR A SEVENTH CAUSE OF ACTION AGAINST INSIGHT, HORING, MURDOCK, INSIGHT VENTURE II, INSIGHT VENTURE III, INSIGHT II, INSIGHT CAYMAN II, INSIGHT III, INSIGHT CO-INVESTORS, INSIGHT CAYMAN III, RAGHAVENDRAN, AND SOBILOFF**

**(Aiding and Abetting Fraud or Misrepresentation)**

209. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 208 of this Amended and Consolidated Complaint as is set forth in full herein.

210. Each of Defendants Insight, Horing, Murdock, Insight Venture II, Insight Venture III, Insight II, Insight Cayman II, Insight III, Insight Co-investors, Insight Cayman III, Raghavendran, and Sobiloff, played a significant role in the fraudulent activities described herein, with knowledge or reckless disregard thereof. Each of Insight, Horing, Murdock, Insight Venture II, Insight Venture III, Insight II, Insight Cayman II, Insight III, Insight Co-investors, Insight Cayman III, Raghavendran, and Sobiloff, knowingly and substantially assisted in the fraud and misrepresentations perpetrated on Plaintiffs.

211. For example, with full knowledge of Plaintiffs' rights pursuant to the Imprimis Consulting Agreement, Insight Venture II, as the general partner of Insight II and Insight Cayman II, in concert with, inter alia, Horing, Murdock, and Insight, caused Insight II and/or Insight Cayman II to purchase shares in Illuminet, HUON, LPA, and Quest and executed closing documents necessary to effect those purchases. The right to make the investment in these entities rightfully belonged to Plaintiffs pursuant to the Consulting Agreements.

212. As a further example, with full knowledge of Plaintiffs' rights pursuant to the Imprimis Consulting Agreement, Insight Venture III, as the general partner of Insight III, Insight Co-Investors, and Insight Cayman III, in concert with, inter alia, Horing, Murdock, Raghavendran, Sobiloff and Insight caused any of Insight III, Insight Co-Investors, and/or Insight Cayman III to purchase shares in Click, Authorize.Net, Convergent, and Greenfield Online executed closing documents necessary to effect those purchases, and acquired 11 percent of such investments. The right to make the investments in those entities rightfully belonged to Plaintiffs pursuant to the Consulting Agreements.

213. In addition, with full knowledge of Plaintiffs' rights pursuant to the Consulting Agreements, defendants Insight, Horing, Murdock, Insight II, Insight Cayman II, Insight III, Insight Co-investors, Insight Cayman III, Raghavendran, and Sobiloff, *inter alia*, purchased and/or caused to be purchased, securities in Investment Opportunities that they knew or recklessly failed to know had been falsely represented to Plaintiffs as falling outside of the Consulting Agreements, and Insight III purchased shares of Authorize.Net when it knew or recklessly failed to know that such investment was hidden from Plaintiffs even though Authorize.Net had been identified by Insight as an Investment Opportunity prior to April 3, 1999. Such conduct aided and abetted the fraud and misrepresentations of Insight, Horing, Murdock and/or the other defendants herein.

214. The conduct of each of the Insight Defendants proximately caused significant damages to Plaintiffs. The fraud and misrepresentations alleged herein

could not have succeeded without the knowing and active participation of each Insight Defendant.

215. The conduct of Insight Defendants was purposeful and malicious, or reckless, and it departed in the extreme from the norms expected of commercial parties and their representatives. The Insight Defendants cavalierly disregarded their duties to, and the interests of, Plaintiffs.

216. Plaintiffs have been damaged by the wrongful conduct of all of the Insight Defendants in that, inter alia, Plaintiffs did not act to enforce their full rights of first refusal under the terms of the Consulting Agreements.

217. By reason of the foregoing, Plaintiffs are entitled to a judgment against all of the Insight Defendants, jointly and severally, awarding Plaintiffs compensatory and punitive damages in an amount to be determined at trial, but believed to be no less than $288.7 million, together with interest, costs, and attorneys fees as allowed by law.

**AS AND FOR A EIGHTH CAUSE OF ACTION AGAINST HORING, MURDOCK, INSIGHT, AND INSIGHT VENTURE II**

**(Conversion of Altitude Warrants)**

218. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 217 of this Amended and Consolidated Complaint as is set forth in full herein.

219. The actions of defendant Horing, which were taken on his own behalf and on behalf of Defendants Murdock, Insight, and Insight Venture II, in causing the purported "assignment" of Altitude warrants owned by WISI to third parties was unauthorized by, and hidden from, Plaintiffs.

220. Defendants Horing, Murdock, Insight, and Insight Venture II exercised unlawful dominion and control over the Altitude warrants, which warrants rightfully belonged to Plaintiffs.

221. The wrongful actions of Defendants Horing, Murdock, Insight, and Insight Venture II in connection with the "assignment" of Altitude warrants held by WISI as aforesaid constituted the wrongful conversion of property owned by WISI.

222. The conduct of Defendants Horing, Murdock, Insight, and Insight Venture II was purposeful and malicious, or reckless, and it departed in the extreme from the norms expected of commercial parties and their representatives. Defendants Horing, Murdock, Insight, and Insight Venture II cavalierly disregarded their duties to, and the interests of, Plaintiffs.

223. By reason of the foregoing, Plaintiff WISI is entitled to a judgment against all Defendants, jointly and severally, awarding Plaintiff WISI compensatory and punitive damages in an amount to be determined at trial, together with interest, costs, and attorneys fees as allowed by law.

**AS AND FOR A NINTH CAUSE OF ACTION**
**AGAINST INSIGHT, HORING, MURDOCK,**
**<u>RAGHAVENDRAN, AND SOBILOFF</u>**

**(Conversion of Investment Opportunities and Related Entitlements)**

224. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 223 of this Amended and Consolidated Complaint as is set forth in full herein.

225. Through their actions described above, Insight, Horing, and Murdock exercised dominion and control over the securities of Illuminet, HUON, LPA, Quest, Convergent, Greenfield Online, Click, and Authorize.Net and interfered with

Plaintiffs' rights to acquire up to 50 percent of Insight's investment in Illuminet, HUON, LPA, Quest, Convergent, Greenfield Online, Click, and Authorize.Net. Such actions constituted a conversion of securities of Illuminet, HUON, LPA, Quest, Convergent, Greenfield Online, Click, and Authorize.Net that rightfully belonged to Plaintiffs. Insight, Horing, and Murdock exercised such dominion and control over the securities of Illuminet, HUON, LPA, Quest, Convergent, Greenfield Online, Click, and Authorize.Net even though they knew that the diversion of Illuminet, HUON, LPA, Quest, Convergent, Greenfield Online, Click, and Authorize.Net to their affiliates was in violation of Plaintiffs' rights under the Consulting Agreements.

226. Through their actions described above, Raghavendran and Sobiloff exercised dominion and control over the securities of Quest, Convergent, Greenfield Online, Click, and Authorize.Net and interfered with Plaintiffs' rights to acquire up to 50 percent of Insight's investment in Quest, Convergent, Greenfield Online, Click, and Authorize.Net. Such actions constituted a conversion of securities of Quest, Convergent, Greenfield Online, Click, and Authorize.Net that rightfully belonged to Plaintiffs. Raghavendran and Sobiloff exercised such dominion and control over the securities of Quest, Convergent, Greenfield Online, Click, and Authorize.Net even though they knew that the diversion of Quest, Convergent, Greenfield Online, Click, and Authorize.Net to their affiliates was in violation of Plaintiffs' rights under the Consulting Agreements.

227. Through the diversion by Insight, Horing, Murdock, Raghavendran and Sobiloff of fees and options due Plaintiffs that flowed from Investment Opportunities and allocations in hot issue IPOs as a result of business they directed to investment

banks arising from Investment Opportunities in which Plaintiffs participated or were entitled to participate, as well as distributions of "friends and family" stock from Investment Opportunities, Insight, Horing, Murdock, Raghavendran and Sobiloff exercised dominion and control of these fees, options, allocations, and distributions and constituted a conversion and was in violation of Plaintiffs' rights under the Consulting Agreements.

228. The conduct of Insight, Murdock, Horing, Raghavendran and Sobiloff was outrageous, malicious and evidenced a reckless disregard of Plaintiffs' rights under the under the WISI and Imprimis Consulting Agreements.

229. By reason of the foregoing, Plaintiffs are entitled to a judgment against Insight, Murdock, Horing, Raghavendran and Sobiloff, jointly and severally, awarding Plaintiffs compensatory and punitive damages in an amount to be determined at trial, including but not limited to lost opportunity damages represented by, in the case of securities still possessed by said defendants, the difference between the highest intermediate value of the securities during the period of conversion and their value as of the date of judgment, and in the case of securities disposed of by said defendants, the highest intermediate value of the securities during the period of conversion, along with the value of any fees, options, allocations or other distributions to which Plaintiffs are entitled, together with interest, costs, and attorneys fees as allowed by law.

**AS AND FOR AN TENTH CAUSE OF ACTION AGAINST INSIGHT VENTURE II, INSIGHT II AND INSIGHT CAYMAN II**

**(Conversion of Investments in Illuminet, HUON, LPA, and Quest)**

230. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 229 of this Amended and Consolidated Complaint as is set forth in full herein.

231. On or about August 31, 1998, at the first closing of the Illuminet investment, Insight Venture II, as the general partner of Insight II, executed closing documents through which Insight II purchased 240,000 shares of Illuminet Common Stock. Through the execution of those documents, Insight Venture II exercised dominion and control over, and interfered with, Plaintiffs' rights to acquire at least 50 percent of Insight's investment in Illuminet and such action constituted a conversion of Illuminet stock that rightfully belonged to Plaintiffs.

232. Insight Venture II exercised such dominion and control over the Illuminet stock even though it knew, through the knowledge of its managers, Horing and Murdock, that the purchase of the Illuminet stock by Insight II was in violation of Plaintiffs' rights under the WISI Consulting Agreement.

233. On or about December 10, 1998, at the second closing of the Illuminet investment, Insight Venture II, as the general partner of Insight II, executed closing documents through which Insight II purchased 237,716 shares of Illuminet Common Stock. Through the execution of those documents, Insight Venture II exercised dominion and control over, and interfered with, Plaintiffs' rights to acquire at least 50 percent of Insight's investment in Illuminet and such action constituted a conversion of the Illuminet stock that rightfully belonged to Plaintiffs.

234. Insight Venture II exercised such dominion and control over the Illuminet stock even though it knew, through the knowledge of its managers, Horing and Murdock, that the purchase of the Illuminet stock by Insight II was in violation of Plaintiffs' rights under the WISI Consulting Agreement.

235. On or about December 21, 1998, at the closing of the HUON investment, Insight Venture II, as the general partner of Insight II, executed closing documents through which Insight II made a $4.8 million investment in HUON. Through the execution of those documents, Insight Venture II exercised dominion and control over, and interfered with, Plaintiffs' rights to acquire up to 50 percent of Insight's investment in HUON. Moreover, Insight diverted a portion of the HUON investment to co-defendant UBS, additionally exercising dominion and control over, and interfering with, Plaintiffs' rights to acquire up to 50% of Insight's investment in HUON. These actions constituted a conversion of the HUON stock that rightfully belonged to Plaintiffs.

236. Insight Venture II exercised such dominion and control over the HUON stock even though it knew, through the knowledge of its managers, Horing and Murdock, that the purchase of the HUON stock by Insight II and UBS was in violation of Plaintiffs' rights under the WISI Consulting Agreement.

237. On or about October 23, and December 29, 1998, Insight Venture II, as the general partner of Insight II and Insight Cayman II, executed closing documents pursuant to which Insight II purchased 2,416,930 Series A Preferred Shares in LPA for $5 million. Through the execution of those documents, Insight Venture II exercised dominion and control over, and interfered with, Plaintiffs' right to acquire at least 50 percent of Insight's investment in LPA under the "re-cut" terms of the LPA

investment, which were never disclosed to Plaintiffs. Moreover, Insight diverted a portion of the LPA investments to co-defendant UBS, additionally exercising dominion and control over, and interfering with, Plaintiffs' rights to acquire up to 50% of Insight's investment in LPA. These actions constituted a conversion of the LPA stock that rightfully belonged to Plaintiffs.

238. Insight Venture II exercised such dominion and control over the LPA stock even though it knew, through the knowledge of its managers, Horing and Murdock, that the purchase of LPA stock by Insight II and UBS was in violation of Plaintiffs' rights under the Imprimis Consulting Agreement.

239. On or about April 21, 1999, at the closing of the Quest investment, Insight Venture II, as the general partner of Insight II and Insight Cayman II, executed closing documents through which Insight II and Insight Cayman II purchased 888,889 shares of Quest Series A Preferred Stock. Through the execution of those documents, Insight Venture II, Insight II and Insight Cayman II exercised dominion and control over, and interfered with, Plaintiffs' rights to acquire at least 50 percent of the investment in Quest by Insight or its affiliates, or up to 100 percent of the investment to the extent not taken by Insight or its affiliates, and converted Quest stock, and/or the right to acquire such stock, that rightfully belonged to Plaintiffs.

240. Insight Venture II, Insight II and Insight Cayman II exercised such dominion and control over the Quest stock even though they knew, through the knowledge of their managers, Horing and Murdock, that the purchase of the Quest stock by Insight II and Insight Cayman II was in violation of Plaintiffs' rights under the Imprimis Consulting Agreement.

241. Defendants Insight Venture II, Insight II and Insight Cayman II, also converted fees and options due Plaintiffs that flowed from Investment Opportunities and allocations in "hot issue" IPOs, and of valuable "friends and family" stock, in which Plaintiffs were entitled to participate. By exercising such dominion and control over these fees, options, allocations, and distributions, defendants Insight Venture II, Insight II and Insight Cayman II converted these fees, options, allocations, and other valuable benefits belonging to Plaintiffs in violation of Plaintiffs' rights under the Consulting Agreements.

242. The conduct of Insight Venture II, Insight II and Insight Cayman II was outrageous, malicious, and evidenced a reckless disregard of Plaintiffs' rights under the under the Consulting Agreements.

243. By reason of the foregoing, Plaintiffs are entitled to a judgment against Insight Venture II, Insight II and Insight Cayman II awarding Plaintiffs compensatory and punitive damages in an amount to be determined at trial, including but not limited to lost opportunity damages represented by, in the case of securities still possessed by said defendants, the difference between the highest intermediate value of the securities during the period of conversion and their value as of the date of judgment, and in the case of securities disposed of by said defendants, the highest intermediate value of the securities during the period of conversion, along with the value of any fees, options, allocations or other distributions to which Plaintiffs are entitled, together with interest, costs, and attorneys fees as allowed by law.

**AS AND FOR A ELEVENTH CAUSE OF ACTION AGAINST INSIGHT VENTURE III, INSIGHT III, INSIGHT CO-INVESTORS AND INSIGHT CAYMAN III**

**(Conversion of Investments in Convergent, *Greenfield Online, Click, and Authorize.Net*)**

244. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 243 of this Amended and Consolidated Complaint as is set forth in full herein.

245. On or about August 13, 1999, at the closing of the Convergent investment, Insight Venture III, as the general partner of Insight III, Insight Co-Investors, and Insight Cayman III, executed closing documents through which those limited partnerships and Insight Venture III collectively purchased 15,920,106 shares of Convergent Common Stock. *Through the execution of those documents, Insight* Venture III, Insight III, Insight Co-Investors and Insight Cayman III exercised dominion and control over, and interfered with, Plaintiffs' rights to acquire at least 50 percent of the investment to be made in Convergent by Insight or its affiliates, or up to 100 percent of the investment to the extent not taken by Insight or its affiliates, and converted Convergent stock and/or the right to acquire such stock, that rightfully belonged to Plaintiffs.

246. *Insight Venture III, Insight III, Insight Co-Investors and Insight* Cayman III exercised such dominion and control over the Convergent stock even though they knew, through the knowledge of their managers, Horing and Murdock, that the purchase of the Convergent stock by Insight III, Insight Co-Investors, Insight Cayman III, and Insight Venture III was in violation of Plaintiffs' rights under the Imprimis Consulting Agreement.

247. On or about May 17, 1999, at the closing of the Greenfield Online investment, Insight Venture III, as the general partner of Insight III, Insight Co-Investors III, and Insight Cayman III, executed closing documents through which those limited partnerships and Insight Venture III collectively purchased 528.26 Member Units of Greenfield Online. Through the execution of those documents, Insight Venture III exercised dominion and control over, and interfered with, Plaintiffs' rights to acquire at least 50 percent of the investment to be made in Greenfield Online by Insight or its affiliates, or up to 100 percent of the investment to the extent not taken by Insight or its affiliates, and converted Greenfield Online Units, and/or the right to acquire such Units, that rightfully belonged to Plaintiffs.

248. Insight Venture III, Insight III, Insight Co-Investors III, and Insight Cayman III, exercised such dominion and control over the Greenfield Online stock even though they knew, through the knowledge of their managers, Horing and Murdock, that the purchase of the Greenfield Online Units by Insight III, Insight Co-Investors III, Insight Cayman III, and Insight Venture III was in violation of Plaintiffs' rights under the Imprimis Consulting Agreement.

249. In June and July 1999, at the closing of the Click investment, Insight Venture III, as the general partner of Insight III, Insight Co-Investors, and Insight Cayman III, executed closing documents through which those limited partnerships and Insight Venture III purchased an aggregate of 5,217,392 shares of Click Series A Convertible Participating Preferred Stock for an aggregate price of $6 million. Through the execution of those documents, Insight Venture III, Insight III, Insight Co-Investors, and Insight Cayman III, exercised dominion and control over, and interfered with,

Plaintiffs' rights to acquire at least 50 percent of the investment to be made in Click by Insight or its affiliates, or up to 100 percent of the investment to the extent not taken by Insight or its affiliates, and converted Click stock, and/or the right to acquire such stock, that rightfully belonged to Plaintiffs.

250. Insight Venture III, Insight III, Insight Co-Investors, and Insight Cayman III exercised such dominion and control over the Click stock even though they knew, through the knowledge of their managers, Horing and Murdock, that the purchase of the Click stock by Insight III, Insight Co-Investors, Insight Cayman III, and Insight Venture III was in violation of Plaintiffs' rights under the Imprimis Consulting Agreement.

251. In or about April 1999, at the closings of the Authorize.Net investments, Insight Venture III, as the general partner of Insight III, executed closing documents through which Insight III and Insight Venture III purchased 45,289 shares of Authorize.Net Stock. Through the execution of those documents, Insight Venture III and Insight III exercised dominion and control over, and interfered with, Plaintiffs' rights to acquire at least 50 percent of the investment to be made in Authorize.Net stock by Insight or its affiliates, or up to 100 percent of the investment to the extent not taken by Insight or its affiliates, and converted of Authorize.Net stock, and/or the right to acquire such stock, that rightfully belonged to Plaintiffs.

252. Insight Venture III and Insight III exercised such dominion and control over the Authorize.Net stock even though they knew, through the knowledge of their managers, Horing and Murdock, that the purchase of the Authorize.Net stock by Insight III and Insight Venture III was in violation of Plaintiffs' rights under the Imprimis Consulting Agreement.

253. Defendants Insight Venture III, Insight III, Insight Co-Investors and Insight Cayman III, also converted fees and options due Plaintiffs that flowed from Investment Opportunities and allocations in "hot issue" IPOs, and of valuable "friends and family" stock, in which Plaintiffs were entitled to participate. By exercising such dominion and control over these fees, options, allocations, and distributions, defendants Insight Venture III, Insight III, Insight Co-Investors and Insight Cayman III converted these fees, options, allocations, and other valuable benefits belonging to Plaintiffs in violation of Plaintiffs' rights under the Consulting Agreements.

254. The conduct of Insight Venture III, Insight III, Insight Co-Investors and Insight Cayman III was outrageous, malicious, and evidenced a reckless disregard of Plaintiffs' rights under the under the Consulting Agreements.

255. By reason of the foregoing, Plaintiffs are entitled to a judgment against Insight Venture III awarding Plaintiffs compensatory and punitive damages in an amount to be determined at trial, including but not limited to lost opportunity damages represented by, in the case of securities still possessed by said defendants, the difference between the highest intermediate value of the securities during the period of conversion and their value as of the date of judgment, and in the case of securities disposed of by said defendants, the highest intermediate value of the securities during the period of conversion, along with the value of any fees, options, allocations or other distributions to which Plaintiffs are entitled, together with interest, costs, and attorneys fees as allowed by law.

**AS AND FOR A TWELFTH CAUSE OF**
**ACTION AGAINST DEFENDANT UBS**

**(Conversion of Investment Opportunities and Related Entitlements)**

256. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 255 of this Amended and Consolidated Complaint as if set forth in full herein.

257. Upon the closing of the Quest transaction, defendant UBS exercised dominion and control over 977,778 shares of Quest Series A Preferred Stock, and 1,777,778 shares of Quest Series B Redeemed Preferred Stock. Through that dominion and control over the Quest stock, defendant UBS interfered with Plaintiffs' rights to acquire at least 50 percent of the investment to be made in Quest by Insight or its affiliates, or 100 percent of the investment to the extent not taken by Insight or its affiliates, and converted Quest securities, and/or the right to acquire such stock, that rightfully belonged to Plaintiffs.

258. Upon the closing of the Convergent transaction, defendant UBS exercised dominion and control of 15,920,076 shares of Convergent stock. Through that dominion and control over such Convergent stock, defendant UBS interfered with Plaintiffs' rights to acquire at least 50 percent of the investment to be made in Convergent by Insight or its affiliates, or up to 100 percent of the investment to the extent not taken by Insight or its affiliates, and converted Convergent stock, and/or the right to acquire such stock, that rightfully belonged to Plaintiffs.

259. Upon the closing of the Greenfield Online transaction, defendant UBS exercised dominion and control over 108.70 Member Units of Greenfield Online. Through that dominion and control over the Greenfield Online Units, defendant UBS interfered with Plaintiffs' rights to acquire at least 50 percent of the investment to be

made in Greenfield Online by Insight or its affiliates, or up to 100 percent of the investment to the extent not taken by Insight or its affiliates, and converted Greenfield Online stock, and/or the right to acquire such Units, that rightfully belonged to Plaintiffs.

260. Additionally, the defendant UBS may have converted fees, options, allocations, and other valuable benefits that rightfully belonged to Plaintiffs under the Consulting Agreements.

261. By reason of the foregoing, Plaintiffs are entitled to a judgment against defendant UBS, awarding Plaintiffs compensatory and punitive damages in an amount to be determined at trial, including but limited to lost opportunity damages represented by, in the case of securities still possessed by said defendant, the difference between the highest intermediate value of the securities during the period of conversion and their value as of the date of judgment, and in the case of securities disposed of by said defendant, the highest intermediate value of the securities during the period of conversion, together with interest, costs, and attorneys fees as allowed by law.

**AS AND FOR A THIRTEENTH CAUSE OF ACTION AGAINST INSIGHT, HORING, MURDOCK, INSIGHT VENTURE II AND INSIGHT VENTURE III**

**(Negligent Misrepresentation)**

262. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 261 of this Amended and Consolidated Complaint as is set forth in full herein.

263. As a consequence of the fact that Plaintiffs and Insight were parties to the Consulting Agreements, Plaintiffs and Insight were at all relevant times in privity.

264. As a consequence of the fact that Plaintiffs and Insight Venture II were parties to the LLC Agreements, the Plaintiffs and Insight Venture II were at all relevant times in privity.

265. Insight Venture II and Insight Venture III were and are the alter egos of Defendants Horing, Murdock, and Insight because, inter alia, of the domination and control of Insight Venture II and Insight Venture III by Horing, Murdock, and Insight. As such, Insight Venture II and Insight Venture III owed Plaintiffs a duty, equivalent to that of Insight, not to make negligent misrepresentations to Plaintiffs.

266. As more fully set forth above, Defendants Insight, Horing, Murdock, and Insight Venture II, either directly, or through Horing and Murdock as their representatives and agents, negligently made false and misleading statements of material facts and omitted other facts necessary to make the statements made not misleading, relating to Defendants' obligations under the Consulting Agreements, in gross disregard of Plaintiffs' rights, including, inter alia, the following:

- By representing to Plaintiffs in statements made on August 29, 1999 by Defendant Horing, on October 6, 1999 (through Defendant Horing) and October 8, 1999 (through Defendant Murdock) that the Illuminet Investment had been discussed with Plaintiffs in 1998 or early 1999;
- By representing to Plaintiffs in statements on October 6, 1999 (through Defendant Horing) and October 8, 1999 (through Defendant Murdock) that the Illuminet deal was "small" and that

Illuminet lacked real financial data, had a questionable management structure, and was "tough" to value; and

- By representing on April 16, 1999 (through Defendant Murdock) that Quest was not an Investment Opportunity subject to the terms of the Consulting Agreements and, later, by representing (through Murdock) that Plaintiffs were being afforded their full right of first refusal to invest 50 percent of Insight's opportunity to invest in Quest;
- By representing that UBS was an independent, third-party investor in Quest;

267. As more fully set forth above, Defendants Insight, Horing, Murdock, and Insight Venture III, either directly or through Horing and Murdock as their representatives and agents, negligently made false and misleading statements of material facts and omitted other facts necessary to make the statement not misleading, relating to Defendants obligations under the Consulting Agreements, in gross disregard of Plaintiffs' rights, including, inter alia, the following:

- By representing on April 16, 1999 (through Defendant Murdock) that Convergent Group was not an Investment Opportunity subject to the terms of the Consulting Agreements;
- By representing on or about April 16, 1999 (through Defendant Murdock) and on April 20, 1999 (through Defendant Horing) that Greenfield Online was not an Investment Opportunity subject to the terms of the Consulting Agreements; and

- By representing on or about April 16, 1999 (through Defendant Murdock) that Click was not an Investment Opportunity subject to the terms of the Consulting Agreements;
- By representing on June 7, 1999 (through Defendant Horing) that there was no "room" for Plaintiffs in the Click investments, which was purported to be $5 million "deal"; and
- By representing on February 1, 2000 (through Defendant Murdock) that Defendants' failure to provide Plaintiffs with an Investment Opportunity in Click was caused by some unidentified "problem" with Compaq.

268. In addition, Defendants Insight, Horing, Murdock, Insight Venture II, and Insight Venture III, either directly or through Horing and Murdock or their representatives and agents, negligently or recklessly omitted to inform Plaintiffs of the Investment Opportunity or related investment rights in Illuminet, HUON, Authorize.Net, and Altitude in flagrant and gross disregard of Plaintiffs' rights and of the material changes to the Investment Opportunity in LPA. Defendants also negligently or recklessly failed to inform Plaintiffs of the purported "assignment" of WISI's Altitude warrants.

269. Each of these Defendant should have known that the statements made to Plaintiffs were factually incorrect and would result in, and did result in, Plaintiffs' reliance thereon and acquiescence in Defendants' allocation of investment opportunities in whole or in part to themselves, despite the obligations of the Consulting Agreements, to Plaintiffs' economic detriment.

270. Defendants Insight, Horing, Murdock, Insight Venture II, and Insight Venture III, either directly or through Horing and Murdock or their representatives and agents, negligently or recklessly made the material misrepresentations, and omitted to disclose the material facts, as alleged herein, in flagrant and gross disregard of the rights of Plaintiffs.

271. Plaintiffs have been damaged by the grossly negligent and reckless conduct of Horing, Murdock, Insight Venture II and Insight Venture II, in that, inter alia, Plaintiffs did not act to enforce their full rights of first refusal under the terms of the Consulting Agreements, thus losing materially advantageous Investment Opportunities, or to block the "assignment" of WISI's valuable Altitude warrants to third parties.

272. By reason of the foregoing, Plaintiffs are entitled to a judgment *against* Horing, Murdock, *Insight Venture II and Insight Venture II, jointly and severally,* awarding Plaintiffs compensatory and punitive damages in an amount to be determined at trial, but believed to be no less than $288.7 million, together with interest, costs, and attorneys fees as allowed by law.

**AS AND FOR A FOURTEENTH CAUSE OF ACTION AGAINST INSIGHT, HORING, MURDOCK, INSIGHT VENTURE II, INSIGHT VENTURE III, INSIGHT II, INSIGHT CAYMAN II, INSIGHT III, INSIGHT CO-INVESTORS, INSIGHT CAYMAN III, RAGHAVENDRAN, SOBILOFF AND UBS**

**(Unjust Enrichment)**

273. *Plaintiffs repeat and reallege the allegations of paragraphs 1 through 272 of this Amended and Consolidated Complaint as if set forth in full herein.*

274. By virtue of the wrongful conversion by each of the defendants Insight, Horing, Murdock, Insight Venture II, Insight Venture III, Insight II, Insight

Cayman II, Insight III, Insight Co-investors, Insight Cayman III, Raghavendran, Sobiloff and UBS of Investment Opportunities, and related entitlements and benefits, that rightfully should have been allocated to Plaintiffs as set forth herein, said Defendants have been unjustly enriched in an amount to be determined at trial.

275. By reason of the foregoing, Plaintiffs are entitled to a judgment against the Insight Defendants and UBS, awarding them compensatory damages in an amount to be determined at trial, together with interests, costs, and attorneys fees as allowed by law.

**AS AND FOR A FIFTEENTH CAUSE OF ACTION AGAINST INSIGHT, HORING, MURDOCK, INSIGHT II, INSIGHT CAYMAN II, INSIGHT III, INSIGHT CO-INVESTORS, INSIGHT CAYMAN III, RAGHAVENDRAN, SOBILOFF AND UBS**

**(Value Had and Received)**

276. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 275 of this Amended and Consolidated Complaint as if set forth in full herein.

277. As a consequence of the breach of contract, the wrongful diversion of Investment Opportunities that rightfully should have been allocated to Plaintiffs, the failure to turn over to Plaintiffs fees, options, "allocations" in hot issue IPOs, and distributions of "friends and family" stock that flowed from Investment Opportunities and thus were due Plaintiffs, Defendants Insight, Horing, Murdock, Insight II, Insight Cayman II, Insight III, Insight Co-Investors, Insight Cayman III, Raghavendran, Sobiloff and UBS came into possession of the money and securities belonging to Plaintiffs that in equity and good conscience should not be retained these Defendants.

278. Plaintiffs have been damaged by the wrongful retention of such money and securities by Defendants Insight, Horing, Murdock, Insight II, Insight Cayman II, Insight III, Insight Co-Investors, Insight Cayman III, Raghavendran, Sobiloff and UBS.

279. By reason of the foregoing, Plaintiffs are entitled to an Order requiring that such money and securities be turned over to Plaintiffs, together with interest and costs as allowed by law, or, in the alternative, to judgment against Insight, Horing, Murdock, Insight II, Insight Cayman II, Insight III, Insight Co-Investors, Insight Cayman III, Raghavendran, Sobiloff and UBS in an amount to be determined at trial, reflecting the value of such money and securities, together with interest, costs, and attorneys fees and allowed by law.

**AS AND FOR A SIXTEENTH CAUSE OF ACTION AGAINST INSIGHT, HORING, MURDOCK, INSIGHT VENTURE II, INSIGHT VENTURE III, INSIGHT II, INSIGHT CAYMAN II, INSIGHT III, INSIGHT CO-INVESTORS, INSIGHT CAYMAN III, RAGHAVENDRAN, SOBILOFF AND UBS**

**(Mandatory Injunction)**

280. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 279 of this Amended Complaint as if set forth in full herein.

281. As a result of the wrongful actions of the Defendants as set forth herein, the Defendants and/or their affiliates have wrongfully acquired or retained property, in the form of securities, options, and other non-cash property, rightfully belonging to Plaintiffs.

282. A mandatory injunction should be issued requiring the Defendants and/or their affiliates to turn over to Plaintiffs all such wrongfully obtained and/or retained securities, options, and other property.

283. Plaintiffs have no adequate remedy at law to obtain these securities, options, and other non-cash property because each of these securities, options, and other non-cash property has increased significantly in value since their acquisition by the Defendants and/or their affiliates and the opportunity to acquire those investments at the price they were acquired by the Defendants and/or their affiliates no longer exists, and their opportunity to profit therefrom has been significantly reduced or eliminated.

**AS AND FOR A SEVENTEENTH CAUSE OF ACTION AGAINST INSIGHT, HORING, MURDOCK, INSIGHT VENTURE II, INSIGHT VENTURE III, INSIGHT II, INSIGHT CAYMAN II, INSIGHT III, INSIGHT CO-INVESTORS, INSIGHT CAYMAN III, RAGHAVENDRAN, AND SOBILOFF**

***(Imposition of a Constructive Trust)***

284. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 283 of this Amended and Consolidated Complaint as if set forth in full herein.

285. By virtue of the investment advisor relationship between Insight and Plaintiffs, and the inextricable interconnections among Insight and defendants Horing, Murdock, Insight Venture II, Insight Venture III, Insight II, Insight Cayman II, Insight III, Insight Co-Investors, Insight Cayman III, Raghavendran, and Sobiloff, each of those Defendants was, or should be deemed to have been, in a confidential and/or fiduciary relationship with Plaintiffs.

286. As a consequence of the wrongs alleged herein, the Insight Defendants caused to be transferred to themselves or their affiliates Investment Opportunities rightfully belonging to Plaintiffs.

287. As a result of the Insight Defendants' wrongful diversion to themselves or their affiliates of Investment Opportunities that rightfully should have been allocated to Plaintiffs as set forth herein, the Insight Defendants and/or their affiliates have been unjustly enriched and are in the possession of securities, options, and other property that rightfully belongs to Plaintiffs, or if they have liquidated those investments, of the proceeds thereof.

288. As a consequence of the foregoing, Plaintiffs are entitled to the imposition of a constructive trust on all investments, and/or any proceeds or profits therefrom, made or received by the Insight Defendants and/or their affiliates, with respect to Investment Opportunities as to which Plaintiffs were wrongfully denied their rights under the Consulting Agreements.

289. Plaintiffs have no adequate remedy at law.

**AS AND FOR A EIGHTEENTH CAUSE OF ACTION AGAINST INSIGHT, HORING, MURDOCK, INSIGHT VENTURE II, INSIGHT VENTURE III, INSIGHT II, INSIGHT CAYMAN II, INSIGHT III, INSIGHT CO-INVESTORS, INSIGHT CAYMAN III, RAGHAVENDRAN, SOBILOFF AND UBS**

**(Accounting)**

290. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 289 of this Amended and Consolidated Complaint as if set forth in full herein.

291. In light of Defendants' wrongful actions as set forth herein, Plaintiffs are entitled to an accounting from Defendants regarding all Investment Opportunities, in

which they invested, or diverted to affiliates, co-investors or others, setting forth all investments made in such Opportunities, the profits and/or appreciation received therefrom or in connection therewith, and regarding all board, break-up fees, closing fees, consulting fees, advisory fees, transaction fees, other fees, options, hot issue IPO allocations, or other benefits paid to or received by Defendants or any of their affiliates that in any way arose from Investment Opportunities subject to the Consulting Agreements.

292. Plaintiffs have no adequate remedy at law.

**WHEREFORE**, Plaintiffs respectfully demand judgment as follows:

i. on the First Cause of Action, compensatory damages against Defendant Insight, in an amount to be established at trial, but believed to be no less than $288.7 million, together with interest and costs as allowed by law;

ii. on the Second Cause of Action, compensatory damages against Defendant Insight, in an amount to be established at trial, but believed to be no less than $288.7 million, together with interest and costs as allowed by law;

iii. on the Third Cause of Action, compensatory and punitive damages against Horing, Murdock, Insight Venture II, Insight Venture III, Insight II, Insight Cayman II, Insight III, Insight Co-investors, Insight Cayman III, Raghavendran, and Sobiloff, in an amount to be established at trial, but believed to be no less than $288.7 million, together with interest, costs, and attorneys fees as allowed by law;

iv. on the Fourth Cause of Action, compensatory and punitive damages against Defendant Insight, in an amount to be established at trial, but believed to be no less than $288.7 million, together with interest, costs, and attorneys fees as allowed by law;

v. on the Fifth Cause of Action, compensatory and punitive damages against Horing, Murdock, Insight Venture II, Insight Venture III, Insight II, Insight Cayman II, Insight III, Insight Co-investors, Insight Cayman III, Raghavendran, and Sobiloff, in an amount to be established at trial, but believed to be no less than $288.7 million, together with interest, costs, and attorneys fees as allowed by law;

vi. on the Sixth Cause of Action, compensatory and punitive damages against Insight, Horing, Murdock, Insight Venture II, Insight Venture III, Insight II, Insight Cayman II, Insight III, Insight Co-investors, Insight Cayman III, Raghavendran, and Sobiloff, in an amount to be established at trial, but believed to be no less than $288.7 million, together with interest, costs, and attorneys fees as allowed by law;

vii. on the Seventh Cause of Action, compensatory and punitive damages against Insight, Horing, Murdock, Insight Venture II, Insight Venture III, Insight II, Insight Cayman II, Insight III, Insight Co-investors, Insight Cayman III, Raghavendran, and Sobiloff, in an amount to be established at trial, but believed to be no less than $288.7 million, together with interest, costs, and attorneys fees as allowed by law;

viii. on the Eighth Cause of Action, compensatory and punitive damages against Defendants Horing, Murdock, Insight, and Insight Venture II, in an amount to be established at trial, together with interest, costs, and attorneys fees as allowed by law;

ix. on the Ninth Cause of Action, compensatory and punitive damages against Defendants Insight, Horing, Murdock, Raghavendran and Sobiloff, damages in an amount to be determined at trial, including but not limited to lost opportunity damages represented by, in the case of securities still possessed by said defendants, the difference between the highest intermediate value of the securities during the period of conversion and their value as of the date of judgment, and in the case of securities disposed of by said defendants, the highest intermediate value of the securities during the period of conversion, along with the value of any fees, options, allocations or other distributions to which Plaintiffs are entitled, together with interest, costs, and attorneys fees as allowed by law;

x. on the Tenth Cause of Action, compensatory and punitive damages against Insight Venture II, Insight II and Cayman II, in an amount to be established at trial, including but not limited to lost opportunity damages represented by, in the case of securities still possessed by said defendants, the difference between the highest intermediate value of the securities during the period of conversion and their value as of the date of judgment, and in the case of

securities disposed of by said defendants, the highest intermediate value of the securities during the period of conversion, along with the value of any fees, options, allocations or other distributions to which Plaintiffs are entitled, together with interest, costs, and attorneys fees as allowed by law;

xi. on the Eleventh Cause of Action, compensatory and punitive damages against Insight Venture III, Insight III, Insight Co-investors and Insight Cayman III in an amount to be established at trial, including but not limited to lost opportunity damages represented by, in the case of securities still possessed by said defendants, the *difference between the highest intermediate value of the securities during the period of conversion and their value as of the date of* judgment, and in the case of securities disposed of by said defendants, the highest intermediate value of the securities during the period of conversion, along with the value of any fees, options, allocations or other distributions to which Plaintiffs are entitled, together with interest, costs, and attorneys fees as allowed by law;

xii. on the Twelfth Cause of Action, compensatory and punitive damages against Defendant UBS, in an amount to be established at trial, including but limited to lost opportunity damages represented by, in the case of securities still possessed by said defendant, the difference between the highest intermediate value of the securities during the period of conversion and their value as of

the date of judgment, and in the case of securities disposed of by said defendant, the highest intermediate value of the securities during the period of conversion, together with interest, costs, and attorneys fees as allowed by law;

xiii. on the Thirteenth Cause of Action, compensatory damages against Insight, Horing, Murdock, Insight Venture II and Insight Venture III, in an amount to be established at trial, but believed to be no less than $288.7 million, together with interest, costs, and attorneys fees as allowed by law;

xiv. on the Fourteenth Cause of Action, compensatory and punitive damages against Insight, Horing, Murdock, Insight Venture II, Insight Venture III, Insight II, Insight Cayman II, Insight III, Insight Co-investors, Insight Cayman III, Raghavendran, Sobiloff and UBS in an amount to be established at trial, together with interest, costs, and attorneys fees as allowed by law;

xv. on the Fifteenth Cause of Action, an Order requiring Insight, Horing, Murdock, Insight II, Insight Cayman II, Insight III, Insight Co-Investors, Insight Cayman III, Raghavendran, Sobiloff and UBS to turn over to Plaintiffs all money and securities that belong to Plaintiffs, together with interest, costs, and attorneys fees as allowed by law; or, in the alternative, a money judgment for the value thereof, in an amount to be determined at trial, together with interest, costs, and attorneys fees as allowed by law;

xvi. the Sixteenth Cause of Action, for a mandatory injunction requiring Insight, Horing, Murdock, Insight Venture II, Insight Venture III, Insight II, Insight Cayman II, Insight III, Insight Co-investors, Insight Cayman III, Raghavendran, Sobiloff and UBS to turn over to Plaintiffs all securities, options, or other non-cash property that rightfully belong to Plaintiffs;

xvii. on the Seventeenth Cause of Action, imposing a constructive trust on all investments, and/or proceeds or profits flowing therefrom to Insight, Horing, Murdock, Insight Venture II, Insight Venture III, Insight II, Insight Cayman II, Insight III, Insight Co-investors, Insight Cayman III, Raghavendran and Sobiloff, or their affiliates, in connection with Investment Opportunities that wrongfully were denied to Plaintiffs;

xviii. on the Eighteenth Cause of Action, for an accounting from Insight, Horing, Murdock, Insight Venture II, Insight Venture III, Insight II, Insight Cayman II, Insight III, Insight Co-investors, Insight Cayman III, Raghavendran, Sobiloff and UBS regarding all Investment Opportunities under the Agreements and all fees, options, "hot issue" IPO allocations, and other benefits received by Defendants that in any way arose from Investment Opportunities subject to the Consulting Agreements; and

xix. for such other and further relief as to the Court deems just and proper.

Dated: New York, New York
August 9, 2002

BROWN RUDNICK BERLACK ISRAELS LLP,

By: Martin S. Siegel
Martin S. Siegel, Esq.
Andrew Dash, Esq.
Peter Adelman, Esq.

120 West 45th Street
New York, New York 10036
(212) 704-0100

Attorneys for Imprimis Investors LLC and WI Software Investors LLC

TO: David B. Tulchin, Esq.
Sullivan & Cromwell
125 Broad Street
New York, New York 10004
(212) 558-4000

Attorneys for the Insight Defendants

Michael A. Rogoff, Esq.
Kay Scholer LLP
425 Park Avenue
New York, New York 10022
(212) 836-8000

Attorneys for UBS Capital II LLC

John McFerrin-Clancy, Esq.
Schlam Stone & Dolan
26 Broadway
New York, New York 10004
(212) 344-5400

Attorneys for Ramanan Raghavendran

8076092.3