SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

IMPRIMIS INVESTORS LLC and
WI SOFTWARE INVESTORS LLC,

Plaintiffs,

Index No. 00-604431

-against-

Justice Cahn

INSIGHT VENTURE MANAGEMENT, INC.,
JEFFREY HORING, JERRY MURDOCK,
INSIGHT VENTURE ASSOCIATES II, LLC, and
INSIGHT VENTURE ASSOCIATES III, LLC,

Defendants.

INSIGHT VENTURE MANAGEMENT, INC.,
INSIGHT VENTURE ASSOCIATES II, LLC,
JEFFREY HORING, JERRY MURDOCK and
PETER SOBILOFF,

Counterclaim and
Third-Party Plaintiffs,

-against-

IMPRIMIS INVESTORS LLC, WI SOFTWARE
INVESTORS LLC, WEXFORD CAPITAL
LLC f/k/a WEXFORD MANAGEMENT LLC,
WEXFORD SPECIAL SITUATIONS 1997, L.P.,
CHARLES DAVIDSON, ROBERT HOLTZ and
JOSEPH JACOBS,

Counterclaim and
Third-Party Defendants.

**VERIFIED ANSWER TO THE AMENDED AND CONSOLIDATED COMPLAINT, AFFIRMATIVE DEFENSES, COUNTERCLAIMS AND THIRD-PARTY COMPLAINT**

RAMANAN RAGHAVENDRAN,

Plaintiff,

Index No. 02-600071

-against-

Justice Cahn

IMPRIMIS INVESTORS LLC, WEXFORD
SPECIAL SITUATIONS 1997, L.P., WEXFORD
SPECIAL SITUATIONS INSTITUTIONAL, L.P.,
WEXFORD SPECTRUM INVESTORS LLC,
WEXFORD MANAGEMENT LLC, WEXFORD
INSIGHT SOFTWARE INVESTORS LLC and
DOES 1-10,

Defendants.

EXHIBIT
24

| | | |
|---|---|---|
| IMPRIMIS INVESTORS LLC and WI SOFTWARE INVESTORS LLC,<br><br>Plaintiffs,<br><br>-against-<br><br>INSIGHT CAPITAL PARTNERS II, L.P., INSIGHT CAPITAL PARTNERS (CAYMAN) II, L.P., INSIGHT CAPITAL PARTNERS III, L.P., INSIGHT CAPITAL PARTNERS III CO-INVESTORS, L.P., INSIGHT CAPITAL PARTNERS (CAYMAN) III, L.P., RAMANAN RAGHAVENDRAN, PETER SOBILOFF, AND UBS CAPITAL II LLC,<br><br>Defendants. | : | Index No. 02-601619<br><br>Justice Cahn |
| PETER SOBILOFF,<br><br>Counterclaim and Third-Party Plaintiff,<br><br>-against-<br><br>IMPRIMIS INVESTORS LLC, WI SOFTWARE INVESTORS LLC, WEXFORD CAPITAL LLC f/k/a WEXFORD MANAGEMENT LLC, WEXFORD SPECIAL SITUATIONS 1997, L.P., CHARLES DAVIDSON, ROBERT HOLTZ and JOSEPH JACOBS,<br><br>Counterclaim and Third-Party Defendants. | : | |

Defendants Insight Venture Management, Inc., Jeffrey Horing, Jerry Murdock, Peter Sobiloff, Insight Venture Associates II, LLC, Insight Venture Associates III, LLC, Insight Capital Partners II, L.P., Insight Capital Partners (Cayman) II, L.P., Insight Capital Partners III, L.P., Insight Capital Partners III Co-Investors, L.P., Insight Capital Partners

(Cayman) III, L.P. by their attorneys, Sullivan & Cromwell, for their response to the Amended and Consolidated Complaint, aver as follows:

1. Deny the allegations of paragraph 1 of the Amended and Consolidated Complaint, except admit that plaintiffs purport to seek the relief to which they refer.

2. Deny the allegations of paragraph 2 of the Amended and Consolidated Complaint, except respectfully refer the Court to the agreements to which plaintiffs refer for a full understanding of their provisions, terms and requirements.

3. Deny the allegations of paragraph 3 of the Amended and Consolidated Complaint.

4. Deny the allegations of paragraph 4 of the Amended and Consolidated Complaint.

5. Deny the allegations of paragraph 5 of the Amended and Consolidated Complaint.

6. Deny the allegations of paragraph 6 of the Amended and Consolidated Complaint.

7. Deny the allegations of paragraph 7 of the Amended and Consolidated Complaint.

8. Admit, on information and belief, the allegations of paragraph 8 of the Amended and Consolidated Complaint.

9. Admit, on information and belief, the allegations of paragraph 9 of the Amended and Consolidated Complaint.

10. Admit the allegations of paragraph 10 of the Amended and Consolidated Complaint, except deny that Insight maintains its principal offices at 527 Madison Avenue, New York, New York 10022.

11. Deny the allegations of paragraph 11 of the Amended and Consolidated Complaint, except admit that Mr. Horing is an officer and director of Insight, a Managing Member of Insight Venture II and Insight Venture III and is a limited partner of Insight Co-Investors.

12. Deny the allegations of paragraph 12 of the Amended and Consolidated Complaint, except admit that Mr. Murdock maintains a place of business at 300 Puppysmith Street, Suite 205, Aspen, Colorado 81611, is an officer and director of Insight, a Managing Member of Insight Venture II and Insight Venture III and is a limited partner of Insight Co-Investors.

13. Deny the allegations of paragraph 13 of the Amended and Consolidated Complaint, except admit that Mr. Raghavendran was at certain times a Member of Insight Venture II and Insight Venture III and is a limited partner of Insight Co-Investors.

14. Deny the allegations of paragraph 14 of the Amended and Consolidated Complaint, except admit that Mr. Sobiloff is presently an officer of Insight, a Member of Insight Venture II and Insight Venture III and a limited partner of Insight Co-Investors.

15. Deny the allegations of paragraph 15 of the Amended and Consolidated Complaint, except admit that (a) Insight Venture II is a Delaware limited

liability company and is the general partner of Insight II and Insight Cayman II, (b) Messrs. Murdock and Horing are Managing Members of Insight Venture II, (c) Mr. Sobiloff is a Member of Insight Venture II, (d) Mr. Raghavendran has been a Member of Insight Venture II, and (e) Insight Venture II was a Member of WISI and a party to the WISI Limited Liability Company Agreement (the "WISI LLC Agreement"), and is a Member of Imprimis, and a party to the Imprimis Limited Liability Company Agreement (the "Imprimis LLC Agreement").

16. Deny the allegations of paragraph 16 of the Amended and Consolidated Complaint, except admit that (a) Insight Venture III is a limited liability company and is the general partner of Insight III, Insight Co-Investors, and Insight Cayman III, (b) Messrs. Murdock and Horing are Managing Members of Insight Venture III, (c) Mr. Sobiloff is a Member of Insight Venture III, and (d) Mr. Raghavendran was at certain times a Member of Insight Venture III.

17. Admit the allegations of paragraph 17 of the Amended and Consolidated Complaint.

18. Admit the allegations of paragraph 18 of the Amended and Consolidated Complaint.

19. Admit the allegations of paragraph 19 of the Amended and Consolidated Complaint.

20. Admit the allegations of paragraph 20 of the Amended and Consolidated Complaint.

21. Admit the allegations of paragraph 21 of the Amended and Consolidated Complaint.

22. Deny the allegations of paragraph 22 of the Amended and Consolidated Complaint.

23. Deny the allegations of paragraph 23 of the Amended and Consolidated Complaint.

24. Admit, on information and belief, the allegations of paragraph 24 of the Amended and Consolidated Complaint.

25. Deny the allegations of paragraph 25 of the Amended and Consolidated Complaint, except admit, on information and belief, that venue is proper in this county.

26. Admit the allegations of paragraph 26 of the Amended and Consolidated Complaint.

27. Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 27 of the Amended and Consolidated Complaint.

28. Deny the allegations of paragraph 28 of the Amended and Consolidated Complaint, except admit that Charles Davidson made an investment based on the recommendation of Messrs. Horing and Murdock and that thereafter Insight and Wexford entered into three consulting agreements, and further aver that Mr. Davidson's investment was very profitable, as were many of the other investments Wexford-controlled entities made in companies recommended by Insight.

29. Deny the allegations of paragraph 29 of the Amended and Consolidated Complaint, except admit that Insight leased office space from Wexford in the period from Summer of 1996 until Fall of 1997, and that Insight and Wexford entered into a consulting agreement in 1996, and respectfully refer the Court to the agreement to which plaintiffs refer for its provisions, terms and requirements.

30. Deny knowledge or information sufficient to form a belief as to the truth of the allegations of the second sentence of paragraph 30 of the Amended and Consolidated Complaint, and admit the allegations of the first sentence of paragraph 30 of the Amended and Consolidated Complaint.

31. Deny the allegations of paragraph 31 of the Amended and Consolidated Complaint, except admit that Wexford Insight LLC ("Wexford/Insight") entered into a consulting agreement with Insight, dated as of June 1, 1996, and respectfully refer the Court to the agreement to which plaintiffs refer for its provisions, terms and requirements.

32. Deny the allegations of paragraph 32 of the Amended and Consolidated Complaint, except respectfully refer the Court to the agreement to which plaintiffs refer for its provisions, terms and requirements.

33. Deny the allegations of paragraph 33 of the Amended and Consolidated Complaint, except respectfully refer the Court to the agreement to which plaintiffs refer for its provisions, terms and requirements.

34. Deny the allegations of paragraph 34 of the Amended and Consolidated Complaint, except respectfully refer the Court to the agreement to which plaintiffs refer for its provisions, terms and requirements.

35. Admit the allegations of paragraph 35 of the Amended and Consolidated Complaint, and further aver that as a result of the skill and efforts of Insight, Wexford/Insight made large profits.

36. Deny the allegations of paragraph 36 of the Amended and Consolidated Complaint, except admit that WISI (an entity managed by Wexford) and Insight entered into a consulting agreement dated as of April 3, 1997, and respectfully refer the Court to the agreement to which plaintiffs refer for its provisions, terms and requirements.

37. Deny the allegations of paragraph 37 of the Amended and Consolidated Complaint, except admit that Imprimis and Insight entered into a consulting agreement dated as of September 30, 1998, and respectfully refer the Court to the agreement to which plaintiffs refer for its provisions, terms and requirements.

38. Deny the allegations of paragraph 38 of the Amended and Consolidated Complaint.

39. Deny the allegations of paragraph 39 of the Amended and Consolidated Complaint, except admit that (a) on or about April 3, 1997, WISI and Insight executed the WISI Consulting Agreement and (b) the WISI Consulting Agreement was by its terms, to expire on April 3, 1999, and respectfully refer the Court to the agreement to which plaintiffs refer for its provisions, terms and requirements.

40. Deny the allegations of paragraph 40 of the Amended and Consolidated Complaint, except admit that (a) on information and belief, WISI is a Delaware limited liability company and (b) Insight Venture II entered into the WISI LLC Agreement, dated as of April 3, 1997, and respectfully refer the Court to the agreement to which plaintiffs refer for its provisions, terms and requirements.

41. Deny the allegations of paragraph 41 of the Amended and Consolidated Complaint, except respectfully refer the Court to the contract to which plaintiffs refer for its provisions, terms and requirements.

42. Deny the allegations of paragraph 42 of the Amended and Consolidated Complaint, except respectfully refer the Court to the agreement to which plaintiffs refer for its provisions, terms and requirements.

43. Deny the allegations of paragraph 43 of the Amended and Consolidated Complaint, except respectfully refer the Court to the agreement to which plaintiffs refer for its provisions, terms and requirements.

44. Deny the allegations of paragraph 44 of the Amended and Consolidated Complaint, except respectfully refer the Court to the agreement to which plaintiffs refer for its provisions, terms and requirements.

45. Deny the allegations of paragraph 45 of the Amended and Consolidated Complaint, except respectfully refer the Court to the agreement to which plaintiffs refer for its provisions, terms and requirements.

46. Deny the allegations of paragraph 46 of the Amended and Consolidated Complaint, except respectfully refer the Court to the agreement to which plaintiffs refer for its provisions, terms and requirements.

47. Deny the allegations of paragraph 47 of the Amended and Consolidated Complaint.

48. Admit the allegations of paragraph 48 of the Amended and Consolidated Complaint, and further aver that on some occasions WISI declined to participate in investments recommended to it by Insight, and, further, that WISI made large profits on many of its investments.

49. Admit the allegations of paragraph 49 of the Amended and Consolidated Complaint.

50. Deny the allegations of paragraph 50 of the Amended and Consolidated Complaint, except respectfully refer the Court to the agreement to which plaintiffs refer for its provisions, terms and requirements.

51. Deny the allegations of paragraph 51 of the Amended and Consolidated Complaint, except deny knowledge or information sufficient to form a belief as to Wexford's state of mind.

52. Deny the allegations of paragraph 52 of the Amended and Consolidated Complaint.

53. Deny the allegations of paragraph 53 of the Amended and Consolidated Complaint, except admit that both the WISI Consulting Agreement and the Imprimis Consulting Agreement expired on April 3, 1999, and respectfully refer the

Court to the agreement to which plaintiffs refer for its provisions, terms and requirements.

54. Deny the allegations of paragraph 54 of the Amended and Consolidated Complaint, except respectfully refer the Court to the agreement to which plaintiffs refer for its provisions, terms and requirements.

55. Deny the allegations of paragraph 55 of the Amended and Consolidated Complaint, except respectfully refer the Court to the agreement to which plaintiffs refer for its provisions, terms and requirements.

56. Deny the allegations of paragraph 56 of the Amended and Consolidated Complaint, except respectfully refer the Court to the agreement to which plaintiffs refer for its provisions, terms and requirements.

57. Deny the allegations of paragraph 57 of the Amended and Consolidated Complaint, except respectfully refer the Court to the agreement to which plaintiffs refer for its provisions, terms and requirements.

58. Deny the allegations of paragraph 58 of the Amended and Consolidated Complaint, except respectfully refer the Court to the agreement to which plaintiffs refer for its provisions, terms and requirements.

59. Deny the allegations of paragraph 59 of the Amended and Consolidated Complaint, except respectfully refer the Court to the agreement to which plaintiffs refer for its provisions, terms and requirements.

60. Deny the allegations of paragraph 60 of the Amended and Consolidated Complaint.

61. Admit the allegations of paragraph 61 of the Amended and Consolidated Complaint, and further aver that on some occasions Imprimis declined to participate in investments recommended to it by Insight, and, further, that Imprimis made large profits on many of its investments.

62. Deny the allegations of paragraph 62 of the Amended and Consolidated Complaint, except admit that Illuminet provides advanced intelligent network, database and billing services to the telecommunications industry.

63. Deny the allegations of paragraph 63 of the Amended and Consolidated Complaint, except admit that Insight had been in contact with Illuminet in or prior to July 1998.

64. Deny the allegations of paragraph 64 of the Amended and Consolidated Complaint and aver that Illuminet was not then an Investment Opportunity as defined in the Consulting Agreements.

65. Deny the allegations of paragraph 65 of the Amended and Consolidated Complaint, except admit that on or about August 31, 1998, Insight Venture II, as the general partner of Insight II, executed documents pursuant to which Insight II and Insight Cayman II purchased 240,000 shares of Illuminet common stock (post-split) at a cost of $1,335,000.

66. Deny the allegations of paragraph 66 of the Amended and Consolidated Complaint, except admit that on or about December 10, 1998, Insight Venture II, as the general partner of Insight II and Insight Cayman II, executed documents

pursuant to which Insight II and Insight Cayman II purchased 237,716 shares of Illuminet common stock (post-split) at a cost of $958,590.

67. Deny the allegations of paragraph 67 of the Amended and Consolidated Complaint, except admit that HUON is a vendor of enterprise-wide property and casualty insurance software.

68. Deny the allegations of paragraph 68 of the Amended and Consolidated Complaint, except admit that on or about December 21, 1998, Insight Venture II, as the general partner of Insight II, executed documents pursuant to which Insight II and Insight Cayman II made a $4.8 million investment in HUON.

69. Deny the allegations of paragraph 69 of the Amended and Consolidated Complaint, except admit that plaintiffs and Wexford were informed of and knew about the Illuminet and HUON investments in 1998 and 1999, and that plaintiffs and Wexford were also informed in or about August 1999 that Illuminet had filed a Form S-1 registration statement in connection with an initial public offering, and aver that plaintiffs chose not to make any investment in Illuminet or HUON.

70. Deny the allegations of paragraph 70 of the Amended and Consolidated Complaint.

71. Deny the allegations of paragraph 71 of the Amended and Consolidated Complaint, except admit that plaintiffs stated that their files contained no information on Illuminet or HUON, and aver that this was a false statement.

72. Admit the allegations of paragraph 72 of the Amended and Consolidated Complaint, and aver that plaintiffs and Wexford were informed about

Illuminet and HUON in 1998, expressed no interest in participating in either, and expressly declined to make any investment.

73. Admit the allegations of paragraph 73 of the Amended and Consolidated Complaint, and aver that plaintiffs' statement was false.

74. Deny the allegations of paragraph 74 of the Amended and Consolidated Complaint, except admit that on or about October 8, 1999, Mr. Murdock reminded plaintiffs that he had previously told them (a) about the Illuminet investment, (b) that the CEO of Illuminet had left the company, and (c) that the Illuminet valuation was "tough" in part because Illuminet, a telecommunications company, was not a software company and was thus outside Insight's area of expertise.

75. Deny the allegations of paragraph 75 of the Amended and Consolidated Complaint.

76. Deny the allegations of paragraph 76 of the Amended and Consolidated Complaint.

77. Deny the allegations of paragraph 77 of the Amended and Consolidated Complaint.

78. Deny the allegations of paragraph 78 of the Amended and Consolidated Complaint, except admit that on October 8, 1999, Mr. Horing stated: "I am sorry about the confusion as well as the poor communication. I am sure that we will have ample opportunity to make it up to you," and further aver that (a) plaintiffs then and thereafter failed to assert that Insight had breached any contractual or other obligations in

connection with Illuminet and (b) neither Mr. Horing's statement nor any other statement conveyed or was intended to convey an acknowledgment of wrongdoing.

79. Deny the allegations of paragraph 79 of the Amended and Consolidated Complaint, except admit that, although Insight had no obligation to do so after the Consulting Agreements expired, Insight identified investment opportunities to plaintiffs and offered to permit them to participate in such opportunities.

80. Deny the allegations of paragraph 80 of the Amended and Consolidated Complaint, except admit that Insight II and Insight Cayman II invested $2,293,590 in Illuminet and that Insight II and Insight Cayman II have realized profits from Illuminet, that Illuminet completed an initial public offering on October 7, 1999 at $19 per share and the value of Illuminet shares increased thereafter.

81. Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 81 of the Amended and Consolidated Complaint.

82. Deny the allegations of paragraph 82 of the Amended and Consolidated Complaint, except admit that (a) on or about August 31, 1998, Insight prepared an investment memorandum regarding LPA Software, that it provided that investment memorandum to Wexford and respectfully refer the Court to that document for its terms and provisions, and (b) that LPA Software ("LPA") is engaged in business-to-business e-commerce and supply chain management.

83. Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 83 of the Amended and Consolidated Complaint,

except admit that on or about September 14, 1998, Wexford notified Insight that it declined to invest in LPA.

84. Deny the allegations of paragraph 84 of the Amended and Consolidated Complaint, except admit that on September 21, 1998, Insight notified certain potential investors via e-mail about certain proposed terms of a contemplated deal and respectfully refer the Court to that e-mail for its terms and provisions.

85. Deny the allegations of paragraph 85 of the Amended and Consolidated Complaint, except admit that Insight did not send the e-mail referred to above to plaintiffs.

86. Deny the allegations of paragraph 86 of the Amended and Consolidated Complaint, except admit that on or about October 23, 1998, Insight Venture II, as the general partner of Insight II and Insight Cayman II, executed documents pursuant to which those entities purchased 205,535 shares of Series A Convertible Participating Preferred Stock of LPA Software, Inc., and aver that plaintiffs had no right to participate in the LPA transaction.

87. Deny the allegations of paragraph 87 of the Amended and Consolidated Complaint, except admit that on or about December 29, 1998, Insight Venture II, as the general partner of Insight II and Insight Cayman II, executed documents pursuant to which those entities purchased 36,158 shares of Series A Convertible Participating Preferred Stock of LPA Software, Inc.

88. Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 88 of the Amended and Consolidated Complaint.

89. Deny the allegations of paragraph 89 of the Amended and Consolidated Complaint, except admit that Messrs. Horing and Murdock were Managing Members of Insight Venture II and that Messrs. Raghavendran and Sobiloff were Members of Insight Venture III.

90. Deny the allegations of paragraph 90 of the Amended and Consolidated Complaint.

91. Deny the allegations of paragraph 91 of the Amended and Consolidated Complaint.

92. Deny the allegations of paragraph 92 of the Amended and Consolidated Complaint, except admit that a certain draft of the UBS/Insight Co-Investment Agreement referred to a certain draft of the Imprimis Consulting Agreement.

93. Deny the allegations of paragraph 93 of the Amended and Consolidated Complaint, except admit that Quest is engaged in the business of providing database tools and e-commerce infrastructure.

94. Deny the allegations of paragraph 94 of the Amended and Consolidated Complaint, except admit that Insight attempted to negotiate a potential investment with Quest, and presented plaintiffs with an investment memorandum, dated December 11, 1998, and respectfully refer the Court to that document for its terms and provisions, and further aver that the 1998 investment in Quest did not close.

95. Deny the allegations of paragraph 95 of the Amended and Consolidated Complaint.

96. Deny the allegations of paragraph 96 of the Amended and Consolidated Complaint, except admit that as of January 1999, the investment in Quest was "dead," and that on February 16, 1999, Mr. Horing sent an e-mail predicting that "Quest will be pretty close to the same. . . ."

97. Deny the allegations of paragraph 97 of the Amended and Consolidated Complaint, except admit that on April 9, 1999, Insight notified Imprimis that a possible Quest deal was being discussed, that on that date Insight sent Wexford by e-mail deal documents for the potential Quest investment and that among those documents was an investment memorandum for Quest, that stated: "InSight Venture Associates has the opportunity to invest $25.0 million in Quest Software, Inc. . . ."

98. Deny the allegations of paragraph 98 of the Amended and Consolidated Complaint, except respectfully refer the Court to the documents to which plaintiffs refer for their provisions, terms and requirements.

99. Deny the allegations of paragraph 99 of the Amended and Consolidated Complaint, except admit that plaintiffs were fully informed about the possible Quest deal by April 12, 1999, and aver that plaintiffs expressly agreed that they had no contractual right to invest in Quest.

100. Deny the allegations of paragraph 100 of the Amended and Consolidated Complaint, except admit that Mr. Murdock correctly stated that plaintiffs did not have a contractual right to invest in Quest, and aver that plaintiffs conceded that that was correct.

101. Deny the allegations of paragraph 101 of the Amended and Consolidated Complaint, except admit that Insight charged plaintiffs for certain costs associated with the Quest investment, and aver that doing so was entirely proper under the Imprimis Consulting Agreement and the parties' other agreements.

102. Deny the allegations of paragraph 102 of the Amended and Consolidated Complaint.

103. Deny the allegations of paragraph 103 of the Amended and Consolidated Complaint, except admit that Wexford and plaintiffs agreed to a special arrangement with regard to the possible Quest investment that would have been beneficial to Insight Venture II and its Members, and aver that Wexford and plaintiffs then breached that arrangement and caused significant harm to Insight Venture II and its Members.

104. Deny the allegations of paragraph 104 of the Amended and Consolidated Complaint.

105. Deny the allegations of paragraph 105 of the Amended and Consolidated Complaint.

106. Deny the allegations of paragraph 106 of the Amended and Consolidated Complaint, except admit that the Quest deal could have "blown up" at any time prior to closing, that Wexford was aware of this fact, and that, on information and belief, a Wexford executive wrote an e-mail purporting to describe an April 20, 1999 call from Mr. Murdock and that such e-mail described a "panicked call from Jerry Murdock, . . . telling me he needed to have me sign signature pages for the Quest deal right away.

When I told him we hadn't received final documents yet, he told me if we don't sign tonight the deal would blow-up."

107. Deny the allegations of paragraph 107 of the Amended and Consolidated Complaint, and aver that Wexford was well aware of the terms of the Quest investment before signing the closing documents.

108. Deny the allegations of paragraph 108 of the Amended and Consolidated Complaint, except admit that on or about April 21, 1999 WISI invested \$4.5 million in Quest, Insight II and Insight Cayman II invested \$5 million and UBS invested \$15.5 million in Quest, that plaintiffs and Wexford were aware if those facts at the time the investment closed, and aver that neither Wexford nor plaintiffs ever complained about the size of their investment, asked for a larger piece of the investment, or alleged that their contractual rights were violated until more than a year after the investment closed.

109. Deny the allegations of paragraph 109 of the Amended and Consolidated Complaint, except admit that Mr. Murdock received 265,000 shares of Quest common stock as the result of an investment in Quest in 1995.

110. Deny the allegations of paragraph 110 of the Amended and Consolidated Complaint.

111. Deny the allegations of paragraph 111 of the Amended and Consolidated Complaint, and aver plaintiffs did not seek to invest more than \$4.5 million in Quest at the time of the investment in April 1999 or thereafter.

112. Deny knowledge or information sufficient to form a belief as to the truth of the allegations of the first sentence of paragraph 112 of the Amended and Consolidated Complaint; deny the allegations of the second sentence of Paragraph 112 of the Amended and Consolidated Complaint, except respectfully refer the Court to the agreement to which plaintiffs refer for its provisions, terms and requirements.

113. Deny the allegations of paragraph 113 of the Amended and Consolidated Complaint, except admit that UBS was introduced to Quest by Insight.

114. Deny the allegations of paragraph 114 of the Amended and Consolidated Complaint.

115. Deny the allegations of paragraph 115 of the Amended and Consolidated Complaint, except admit that (a) Quest went public on August 13, 1999, offering to sell 4.4 million shares of common stock at $14 per share and (b) the price of Quest stock rose to $102 per share on December 31, 1999, and aver that as of the close of business on August 28, 2002, Quest was trading at $10.16 per share.

116. Deny the allegations of paragraph 116 of the Amended and Consolidated Complaint, except with respect to WISI's actions, deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 116 of the Amended and Consolidated Complaint.

117. Deny the allegations of paragraph 117 of the Amended and Consolidated Complaint, except admit that Convergent is a provider of e-commerce systems integration services to the utility and public sectors.

118. Deny the allegations of paragraph 118 of the Amended and Consolidated Complaint, except admit that (a) Insight prepared a draft letter of intent for an investment in Convergent on or about March 12, 1999, (b) no letter of intent was signed until June 23, 1999, and (c) Insight billed Wexford for certain expenses for Convergent, as permitted by the Consulting Agreements and other agreements with Wexford and plaintiffs.

119. Deny the allegations of paragraph 119 of the Amended and Consolidated Complaint, and further aver that the parties expressly agreed that plaintiffs had no contractual right to invest in Convergent.

120. Deny the allegations of paragraph 120 of the Amended and Consolidated Complaint, except admit and aver that Wexford and plaintiffs chose to invest $5 million in Convergent and declined to invest more than such amount when they had an opportunity to do so.

121. Deny the allegations of paragraph 121 of the Amended and Consolidated Complaint, except admit that (a) Insight Venture III, as the general partner of Insight III, Insight Co-Investors and Insight Cayman III, executed documents pursuant to which those limited partnerships invested $17.273 million of the total investment in Convergent, (b) Imprimis and WISI invested $5 million of the total investment, (c) UBS invested $17.273 million, (d) non-parties GS Private Equity Partners II, L.P., GS Private Equity Partners II Offshore, L.P., GS Private Equity Partners III, L.P., GS Private Equity Partners III Offshore, L.P., and NBK/GS Private Equity Partners, L.P. invested $5 million, and (e) another co-investor invested $1 million.

122. Deny the allegations of paragraph 122 of the Amended and Consolidated Complaint.

123. Deny the allegations of paragraph 123 of the Amended and Consolidated Complaint.

124. Deny knowledge or information sufficient to form a belief as to the allegations in the first sentence of paragraph 124 of the Amended and Consolidated Complaint, and deny the remaining allegations of paragraph 124 of the Amended and Consolidated Complaint, except admit that UBS was invited into the Convergent investment by Insight.

125. Deny the allegations of paragraph 125 of the Amended and Consolidated Complaint.

126. Deny the allegations of paragraph 126 of the Amended and Consolidated Complaint, except admit that Greenfield Online is a provider of internet-based marketing and research information services.

127. Deny the allegations of paragraph 127 of the Amended and Consolidated Complaint, and aver that the parties expressly agreed that plaintiffs had no contractual right to invest in Greenfield because the Imprimis Consulting Agreement had expired.

128. Deny the allegations of paragraph 128 of the Amended and Consolidated Complaint, except admit that (a) Insight executed a letter of intent with Greenfield Online on or about March 4, 1999, (b) Insight prepared an investment memorandum on or about April 1, 1999, stating that Greenfield Online "represents an

opportunity for Insight to invest in" that company, and (c) Insight later properly, and in accordance with the applicable contracts and agreements, charged plaintiffs for a percentage of the expenses incurred with respect to Greenfield Online.

129. Deny the allegations of paragraph 129 of the Amended and Consolidated Complaint, except admit that (a) Imprimis chose to invest $2.5 million in Greenfield Online, knew of the amount being invested by Insight III, Insight Cayman III and Insight Co-Investors III and never complained about the amount or extent of its investment until more than a year later, (b) Insight III invested $8.26 million, Insight Cayman III invested $2.5 million, and Insight Co-Investors III invested $1.38 million, (c) UBS invested $2.5 million, and (d) other investors invested $5.85 million in Greenfield Online.

130. Deny the allegations of paragraph 130 of the Amended and Consolidated Complaint.

131. Deny the allegations of paragraph 131 of the Amended and Consolidated Complaint.

132. Deny knowledge or information sufficient to form a belief as to the allegations in the first sentence of paragraph 132 of the Amended and Consolidated Complain and deny the rest of the allegations of paragraph 132 of the Amended and Consolidated Complaint, except respectfully refer the Court to the agreements to which plaintiffs refer for their provisions, terms and requirements.

133. Deny the allegations of paragraph 133 of the Amended and Consolidated Complaint.

134. Deny the allegations of paragraph 134 of the Amended and Consolidated Complaint, except admit that Click markets collaborative commerce solutions permitting automated information flows within multi-channel distribution networks for Fortune 1000 manufacturers.

135. Deny the allegations of paragraph 135 of the Amended and Consolidated Complaint, except admit that the parties expressly agreed that plaintiffs had no contractual right to invest in Click and that Insight later sought reimbursement from plaintiffs for certain costs for this investment as permitted by the Consulting Agreements and the agreements between the parties.

136. Deny the allegations of paragraph 136 of the Amended and Consolidated Complaint, except admit that Mr. Horing told plaintiffs that there was "no room" for plaintiffs in the Click investment.

137. Deny the allegations of paragraph 137 of the Amended and Consolidated Complaint, except admit that, in June and July 1999, Insight Venture III, as the general partner of Insight III, Insight Co-Investors, and Insight Cayman III, executed documents pursuant to which those entities purchased from Click 1,086,957 shares of its Series A Convertible Participating Preferred Stock for $6 million plus an investment in Warranty Check.

138. Deny the allegations of paragraph 138 of the Amended and Consolidated Complaint.

139. Deny the allegations of paragraph 139 of the Amended and Consolidated Complaint, except admit that in January 2000 Insight III, Insight Co-Investors and Insight Cayman III participated in a further financing for Click.

140. Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 140 of the Amended and Consolidated Complaint.

141. Deny the allegations of paragraph 141 of the Amended and Consolidated Complaint, except admit that Compaq's investment in the Click deal made it impossible to involve plaintiffs, and further aver that no plaintiff had any right, contractual or otherwise, to participate in this investment in Click.

142. Deny the allegations of paragraph 142 of the Amended and Consolidated Complaint, except admit that plaintiffs were offered $500,000 of Click stock, that they chose to make such an investment, and further aver that no Plaintiff had any right, contractual or otherwise to invest in Click.

143. Deny the allegations of paragraph 143 of the Amended and Consolidated Complaint.

144. Deny the allegations of paragraph 144 of the Amended and Consolidated Complaint.

145. Deny the allegations of paragraph 145 of the Amended and Consolidated Complaint, except admit that Authorize.Net is a leading payment authorization service for online businesses and that, on or about July 1, 1999, Authorize.Net was acquired by Go2Net.com, an internet portal company whose stock is publicly traded on the Nasdaq market.

146. Deny the allegations of paragraph 146 of the Amended and Consolidated Complaint, except admit that Insight incurred due diligence expenses before April 3, 1999.

147. Deny the allegations of paragraph 147 of the Amended and Consolidated Complaint, except admit that on or about April 12 1999, Insight III lent Authorize.Net $900,000.

148. Deny the allegations of paragraph 148 of the Amended and Consolidated Complaint, except admit that (a) the investments in Authorize.Net by Insight III, Insight Cayman III and Insight Co-Investors have been profitable, (b) in July 1999, the above entities received $778,643 in cash as part of the transaction with Go2Net, (c) the above entities sold 45,289 shares of Go2Net for more than $3 million, and (d) the above entities retained rights to certain equities.

149. Deny the allegations of paragraph 149 of the Amended and Consolidated Complaint.

150. Deny the allegations of paragraph 150 of the Amended and Consolidated Complaint, except admit that Insight was in contact with Altitude Software, then know as Easyphone, before July 1998, and that Altitude develops and markets contact center management software.

151. Deny the allegations of paragraph 151 of the Amended and Consolidated Complaint, except admit that (a) WISI made a $2.75 million investment in Altitude, (b) Insight II and Insight Cayman II made an equal investment, and (c) WISI and the Insight entities received warrants to purchase 618,000 shares of Altitude stock.

152. Deny the allegations of paragraph 152 of the Amended and Consolidated Complaint, except admit that (a) in or about July 1999, third-party private investors made an investment in Altitude and (b) Insight Venture II executed an "Investment Agreement" in connection with the transaction.

153. Deny the allegations of paragraph 153 of the Amended and Consolidated Complaint, except respectfully refer the Court to the agreement to which plaintiffs refer for its provisions, terms and requirements.

154. Deny the allegations of paragraph 154 of the Amended and Consolidated Complaint.

155. Deny the allegations of paragraph 155 of the Amended and Consolidated Complaint.

156. Deny the allegations of paragraph 156 of the Amended and Consolidated Complaint.

157. Deny the allegations of paragraph 157 of the Amended and Consolidated Complaint.

158. Deny the allegations of paragraph 158 of the Amended and Consolidated Complaint.

159. Deny the allegations of paragraph 159 of the Amended and Consolidated Complaint.

160. Deny the allegations of paragraph 160 of the Amended and Consolidated Complaint, except respectfully refer the Court to the agreements to which plaintiffs refer for their provisions, terms and requirements.

161. Deny the allegations of paragraph 161 of the Amended and Consolidated Complaint.

162. Deny the allegations of paragraph 162 of the Amended and Consolidated Complaint.

163. Deny the allegations of paragraph 163 of the Amended and Consolidated Complaint, except admit that certain defendants have received certain stock allocations, and aver plaintiffs had no right, contractual or otherwise, to any such allocations.

164. Deny the allegations of paragraph 164 of the Amended and Consolidated Complaint, except admit that plaintiffs proposed to retain Deloitte & Touche LLP to help resolve certain disputes between plaintiffs and Insight and that plaintiffs agreed to pay for Deloitte & Touche's work.

165. Deny the allegations of paragraph 165 of the Amended and Consolidated Complaint, except admit that Insight and Wexford executed the August 8 Agreement and respectfully refer the Court to the agreement to which plaintiffs refer for its provisions, terms and requirements.

166. Deny the allegations of paragraph 166 of the Amended and Consolidated Complaint, except respectfully refer the Court to the agreement to which plaintiffs refer for its provisions, terms and requirements.

167. Deny the allegations of paragraph 167 of the Amended and Consolidated Complaint, except respectfully refer the Court to the agreement to which plaintiffs refer for its provisions, terms and requirements.

168. Deny the allegations of paragraph 168 of the Amended and Consolidated Complaint.

169. Deny the allegations of paragraph 169 of the Amended and Consolidated Complaint.

**AS TO PLAINTIFFS'**
**"FIRST CAUSE OF ACTION"**

170. Repeat and reallege the responses in paragraphs 1 through 169 as if fully set forth herein.

171. Deny the allegations of paragraph 171 of the Amended and Consolidated Complaint.

172. Deny the allegations of paragraph 172 of the Amended and Consolidated Complaint.

173. Deny the allegations of paragraph 173 of the Amended and Consolidated Complaint.

**AS TO PLAINTIFFS'**
**"SECOND CAUSE OF ACTION"**

174. Repeat and reallege the responses in paragraphs 1 through 173 as if fully set forth herein.

175. Deny the allegations of paragraph 175 of the Amended and Consolidated Complaint.

176. Deny the allegations of paragraph 176 of the Amended and Consolidated Complaint.

**AS TO PLAINTIFFS'**
**"THIRD CAUSE OF ACTION"**

177. Repeat and reallege the responses in paragraphs 1 through 176 as if fully set forth herein.

178. Deny the allegations of paragraph 178 of the Amended and Consolidated Complaint, except admit that the parties entered into certain contractual agreements and that Mr. Horing and Mr. Murdock had some knowledge of and about those contracts.

179. Deny the allegations of paragraph 179 of the Amended and Consolidated Complaint.

180. Deny the allegations of paragraph 180 of the Amended and Consolidated Complaint.

181. Deny the allegations of paragraph 181 of the Amended and Consolidated Complaint, except admit that Insight II and/or Insight Cayman II purchased shares in Illuminet, HUON, LPA, and Quest and that Insight Venture II executed closing documents necessary to effect those purchases.

182. Deny the allegations of paragraph 182 of the Amended and Consolidated Complaint, except admit that Insight III, Insight Co-Investors, and/or Insight Cayman III purchased shares in Click, Authorize.Net, Convergent, and Greenfield Online and that Insight Venture III executed closing documents necessary to effect those purchases.

183. Deny the allegations of paragraph 183 of the Amended and Consolidated Complaint.

**AS TO PLAINTIFFS'**
**"FOURTH CAUSE OF ACTION"**

184. Repeat and reallege the responses in paragraphs 1 through 183 as if fully set forth herein.

185. Deny the allegations of paragraph 185 of the Amended and Consolidated Complaint, and aver that Insight always acted in a responsible and lawful manner, and with utmost good faith.

186. Deny the allegations of paragraph 186 of the Amended and Consolidated Complaint, and aver that Insight always dealt fairly and honestly with plaintiffs and never engaged in any fraudulent or other wrongful conduct.

187. Deny the allegations of paragraph 187 of the Amended and Consolidated Complaint.

188. Deny the allegations of paragraph 188 of the Amended and Consolidated Complaint.

189. Deny the allegations of paragraph 189 of the Amended and Consolidated Complaint.

190. Deny the allegations of paragraph 190 of the Amended and Consolidated Complaint.

191. Deny the allegations of paragraph 191 of the Amended and Consolidated Complaint.

**AS TO PLAINTIFFS'**
**"FIFTH CAUSE OF ACTION"**

192. Repeat and reallege the responses in paragraphs 1 through 191 as if fully set forth herein.

193. Deny the allegations of paragraph 193 of the Amended and Consolidated Complaint.

194. Deny the allegations of paragraph 194 of the Amended and Consolidated Complaint.

195. Deny the allegations of paragraph 195 of the Amended and Consolidated Complaint.

196. Deny the allegations of paragraph 196 of the Amended and Consolidated Complaint.

197. Deny the allegations of paragraph 197 of the Amended and Consolidated Complaint.

**AS TO PLAINTIFFS'**
**"SIXTH CAUSE OF ACTION"**

198. Repeat and reallege the responses in paragraphs 1 through 197 as if fully set forth herein.

199. Deny the allegations of paragraph 199 of the Amended and Consolidated Complaint.

200. Deny the allegations of paragraph 200 of the Amended and Consolidated Complaint.

201. Deny the allegations of paragraph 201 of the Amended and Consolidated Complaint.

202. Deny the allegations of paragraph 202 of the Amended and Consolidated Complaint.

203. Deny the allegations of paragraph 203 of the Amended and Consolidated Complaint.

204. Deny the allegations of paragraph 204 of the Amended and Consolidated Complaint.

205. Deny the allegations of paragraph 205 of the Amended and Consolidated Complaint.

206. Deny the allegations of paragraph 206 of the Amended and Consolidated Complaint.

207. Deny the allegations of paragraph 207 of the Amended and Consolidated Complaint.

208. Deny the allegations of paragraph 208 of the Amended and Consolidated Complaint.

**AS TO PLAINTIFFS'**
**"SEVENTH CAUSE OF ACTION"**

209. Repeat and reallege the responses in paragraphs 1 through 208 as if fully set forth herein.

210. Deny the allegations of paragraph 210 of the Amended and Consolidated Complaint.

211. Deny the allegations of paragraph 211 of the Amended and Consolidated Complaint.

212. Deny the allegations of paragraph 212 of the Amended and Consolidated Complaint.

213. Deny the allegations of paragraph 213 of the Amended and Consolidated Complaint.

214. Deny the allegations of paragraph 214 of the Amended and Consolidated Complaint.

215. Deny the allegations of paragraph 215 of the Amended and Consolidated Complaint.

216. Deny the allegations of paragraph 216 of the Amended and Consolidated Complaint.

217. Deny the allegations of paragraph 217 of the Amended and Consolidated Complaint.

**AS TO PLAINTIFFS'**
**"EIGHTH CAUSE OF ACTION"**

218. Repeat and reallege the responses in paragraphs 1 through 217 as if fully set forth herein.

219. Deny the allegations of paragraph 219 of the Amended and Consolidated Complaint.

220. Deny the allegations of paragraph 220 of the Amended and Consolidated Complaint.

221. Deny the allegations of paragraph 221 of the Amended and Consolidated Complaint.

222. Deny the allegations of paragraph 222 of the Amended and Consolidated Complaint.

223. Deny the allegations of paragraph 223 of the Amended and Consolidated Complaint.

**AS TO PLAINTIFFS'**
**"NINTH CAUSE OF ACTION"**

224. Repeat and reallege the responses in paragraphs 1 through 223 as if fully set forth herein.

225. Deny the allegations of paragraph 225 of the Amended and Consolidated Complaint.

226. Deny the allegations of paragraph 226 of the Amended and Consolidated Complaint.

227. Deny the allegations of paragraph 227 of the Amended and Consolidated Complaint.

228. Deny the allegations of paragraph 228 of the Amended and Consolidated Complaint.

229. Deny the allegations of paragraph 229 of the Amended and Consolidated Complaint.

**AS TO PLAINTIFFS'**
**"TENTH CAUSE OF ACTION"**

230. Repeat and reallege the responses in paragraphs 1 through 229 as if fully set forth herein.

231. Deny the allegations of paragraph 231 of the Amended and Consolidated Complaint, except admit that on or about August 31, 1998, Insight Venture II, as the general partner of Insight II and Insight Cayman II, executed closing documents through which Insight II and Insight Cayman II purchased 240,000 shares (post-split) of Illuminet Common Stock.

232. Deny the allegations of paragraph 232 of the Amended and Consolidated Complaint.

233. Deny the allegations of paragraph 233 of the Amended and Consolidated Complaint, except admit that, on or about December 10, 1998, Insight Venture II, as the general partner of Insight II and Insight Cayman II, executed closing documents through which Insight II and Insight Cayman II purchased 237,716 shares (post-split) of Illuminet Common Stock.

234. Deny the allegations of paragraph 234 of the Amended and Consolidated Complaint.

235. Deny the allegations of paragraph 235 of the Amended and Consolidated Complaint, except admit that, on or about December 21, 1998, Insight Venture II, as the general partner of Insight II and Insight Cayman II, executed closing documents through which Insight II and Insight Cayman II made a $4.8 million investment in HUON.

236. Deny the allegations of paragraph 236 of the Amended and Consolidated Complaint.

237. Deny the allegations of paragraph 237 of the Amended and Consolidated Complaint, except admit that on or about October 23, and December 29, 1998, Insight Venture II, as the general partner of Insight II and Insight Cayman II, executed closing documents pursuant to which Insight II and Insight Cayman II purchased 241,693 Series A Convertible Participating Preferred Shares in LPA for $5 million.

238. Deny the allegations of paragraph 238 of the Amended and Consolidated Complaint.

239. Deny the allegations of paragraph 239 of the Amended and Consolidated Complaint, except admit that, on or about April 21, 1999, Insight Venture II, as the general partner of Insight II and Insight Cayman II, executed closing documents through which Insight II and Insight Cayman II purchased 888,889 shares of Quest Series A Preferred Stock.

240. Deny the allegations of paragraph 240 of the Amended and Consolidated Complaint.

241. Deny the allegations of paragraph 241 of the Amended and Consolidated Complaint.

242. Deny the allegations of paragraph 242 of the Amended and Consolidated Complaint.

243. Deny the allegations of paragraph 243 of the Amended and Consolidated Complaint.

**AS TO PLAINTIFFS'**
**"ELEVENTH CAUSE OF ACTION"**

244. Repeat and reallege the responses in paragraphs 1 through 243 as if fully set forth herein.

245. Deny the allegations of paragraph 245 of the Amended and Consolidated Complaint, except admit that, on or about August 13, 1999, Insight Venture III, as the general partner of Insight III, Insight Co-Investors, and Insight Cayman III, executed closing documents through which those limited partnerships purchased 15,920,106 shares of Convergent Common Stock.

246. Deny the allegations of paragraph 246 of the Amended and Consolidated Complaint.

247. Deny the allegations of paragraph 247 of the Amended and Consolidated Complaint, except admit that, on or about May 17, 1999, Insight Venture III, as the general partner of Insight III, Insight Co-Investors III, and Insight Cayman III, executed closing documents through which those limited partnerships collectively purchased 528.26 Member Units of Greenfield Holdings LLC.

248. Deny the allegations of paragraph 248 of the Amended and Consolidated Complaint.

249. Deny the allegations of paragraph 249 of the Amended and Consolidated Complaint.

250. Deny the allegations of paragraph 250 of the Amended and Consolidated Complaint.

251. Deny the allegations of paragraph 251 of the Amended and Consolidated Complaint.

252. Deny the allegations of paragraph 252 of the Amended and Consolidated Complaint.

253. Deny the allegations of paragraph 253 of the Amended and Consolidated Complaint.

254. Deny the allegations of paragraph 254 of the Amended and Consolidated Complaint.

255. Deny the allegations of paragraph 255 of the Amended and Consolidated Complaint.

**AS TO PLAINTIFFS'**
**"TWELFTH CAUSE OF ACTION"**

256. Repeat and reallege the responses in paragraphs 1 through 255 as if fully set forth herein.

257. Deny the allegations of paragraph 257 of the Amended and Consolidated Complaint, except admit that on or about April 21, 1999, UBS purchased 977,778 shares of Quest Series A Preferred Stock and 1,777,778 shares of Quest Series B Redeemable Preferred Stock.

258. Deny the allegations of paragraph 258 of the Amended and Consolidated Complaint, except admit that, on or about August 13, 1999, UBS purchased 15,920,076 shares of Convergent stock.

259. Deny the allegations of paragraph 259 of the Amended and Consolidated Complaint, except admit that, on or about May 17, 1999, UBS purchased 108.70 Member Units of Greenfield Holdings LLC.

260. Deny the allegations of paragraph 260 of the Amended and Consolidated Complaint.

261. Deny the allegations of paragraph 261 of the Amended and Consolidated Complaint.

**AS TO PLAINTIFFS'**
**"THIRTEENTH CAUSE OF ACTION"**

262. Repeat and reallege the responses in paragraphs 1 through 261 as if fully set forth herein.

263. Deny the allegations of paragraph 263 of the Amended and Consolidated Complaint.

264. Deny the allegations of paragraph 264 of the Amended and Consolidated Complaint.

265. Deny the allegations of paragraph 265 of the Amended and Consolidated Complaint.

266. Deny the allegations of paragraph 266 of the Amended and Consolidated Complaint.

267. Deny the allegations of paragraph 267 of the Amended and Consolidated Complaint.

268. Deny the allegations of paragraph 268 of the Amended and Consolidated Complaint.

269. Deny the allegations of paragraph 269 of the Amended and Consolidated Complaint.

270. Deny the allegations of paragraph 270 of the Amended and Consolidated Complaint.

271. Deny the allegations of paragraph 271 of the Amended and Consolidated Complaint.

272. Deny the allegations of paragraph 272 of the Amended and Consolidated Complaint.

**AS TO PLAINTIFFS'**
**"FOURTEENTH CAUSE OF ACTION"**

273. Repeat and reallege the responses in paragraphs 1 through 272 as if fully set forth herein.

274. Deny the allegations of paragraph 274 of the Amended and Consolidated Complaint.

275. Deny the allegations of paragraph 275 of the Amended and Consolidated Complaint.

**AS TO PLAINTIFFS'**
**"FIFTEENTH CAUSE OF ACTION"**

276. Repeat and reallege the responses in paragraphs 1 through 275 as if fully set forth herein.

277. Deny the allegations of paragraph 277 of the Amended and Consolidated Complaint.

278. Deny the allegations of paragraph 278 of the Amended and Consolidated Complaint.

279. Deny the allegations of paragraph 279 of the Amended and Consolidated Complaint.

**AS TO PLAINTIFFS'**
**"SIXTEENTH CAUSE OF ACTION"**

280. Repeat and reallege the responses in paragraphs 1 through 279 as if fully set forth herein.

281. Deny the allegations of paragraph 281 of the Amended and Consolidated Complaint.

282. Deny the allegations of paragraph 282 of the Amended and Consolidated Complaint.

283. Deny the allegations of paragraph 283 of the Amended and Consolidated Complaint.

**AS TO PLAINTIFFS'**
**"SEVENTEENTH CAUSE OF ACTION"**

284. Repeat and reallege the responses in paragraphs 1 through 283 as if fully set forth herein.

285. Deny the allegations of paragraph 285 of the Amended and Consolidated Complaint.

286. Deny the allegations of paragraph 286 of the Amended and Consolidated Complaint.

287. Deny the allegations of paragraph 287 of the Amended and Consolidated Complaint.

288. Deny the allegations of paragraph 288 of the Amended and Consolidated Complaint.

289. Deny the allegations of paragraph 289 of the Amended and Consolidated Complaint.

**AS TO PLAINTIFFS'**
**"EIGHTEENTH CAUSE OF ACTION"**

290. Repeat and reallege the responses in paragraphs 1 through 289 as if fully set forth herein.

291. Deny the allegations of paragraph 291 of the Amended and Consolidated Complaint.

292. Deny the allegations of paragraph 292 of the Amended and Consolidated Complaint.

**FIRST AFFIRMATIVE DEFENSE**

293. The Amended and Consolidated Complaint, and each and every "cause of action" therein, fails to state a claim upon which relief can be granted.

**SECOND AFFIRMATIVE DEFENSE**

294. Plaintiffs' claims are barred under the doctrines of waiver, estoppel and/or laches.

**THIRD AFFIRMATIVE DEFENSE**

295. Plaintiffs' claims are barred because of their breach of contract.

**FOURTH AFFIRMATIVE DEFENSE**

296. Plaintiffs' claims are barred under the doctrine of unclean hands.

**FIFTH AFFIRMATIVE DEFENSE**

297. Defendants did not engage in any schemes or artifices to defraud and at all times acted without scienter or any intention to defraud.

**SIXTH AFFIRMATIVE DEFENSE**

298. Any injury allegedly sustained by plaintiffs was not directly or proximately caused by any conduct or act of defendants.

**SEVENTH AFFIRMATIVE DEFENSE**

299. The Amended and Consolidated Complaint fails to plead fraud with particularity.

**EIGHTH AFFIRMATIVE DEFENSE**

300. Plaintiffs' claims are barred, in whole or in part, because they have not suffered any injury in fact.

**NINTH AFFIRMATIVE DEFENSE**

301. Plaintiffs' claims are barred, in whole or in part, by their failure to mitigate damages.

**TENTH AFFIRMATIVE DEFENSE**

302. Defendants are indemnified for their actions by plaintiffs.

**ELEVENTH AFFIRMATIVE DEFENSE**

303. Plaintiffs' claims are barred, in whole or in part, by the Statute of Frauds.

**TWELFTH AFFIRMATIVE DEFENSE**

304. Plaintiffs' claims are barred, in whole or in part, under the doctrine of accord and satisfaction.

**THIRTEENTH AFFIRMATIVE DEFENSE**

305. Jeffrey Horing, Jerry Murdock and Peter Sobiloff acted at all times on behalf of Insight Venture Management, Inc. or Insight Venture II or Insight Venture III and are not personally liable on any of the causes of action asserted against them.

**FOURTEENTH AFFIRMATIVE DEFENSE**

306. Plaintiffs' remedies are contractually limited to the recovery of the management fees plaintiffs paid Insight under the Agreements.

WHEREFORE, defendants respectfully demand judgment dismissing the Amended and Consolidated Complaint with prejudice, awarding them their costs and disbursements of this action (including reasonable attorneys' fees), and for such other and further relief as this Court may deem just and proper.

## COUNTERCLAIMS AND THIRD-PARTY COMPLAINT

For their Counterclaims and Third-Party Complaint, Counterclaim and Third-Party Plaintiffs Insight Venture Management, Inc. ("Insight"), Insight Venture Associates II, LLC ("Insight Venture II"), Jeffrey Horing, Jerry Murdock and Peter Sobiloff, by their attorneys, Sullivan & Cromwell, allege as follows:

### Parties

#### A. Counterclaim and Third-Party Plaintiffs

307. Defendant and Counterclaim and Third-Party Plaintiff Insight is a corporation organized and existing under the laws of the State of Delaware and having its principal place of business at 680 Fifth Avenue, New York, New York 10019. Jeffrey Horing and Jerry Murdock are officers and directors of Insight.

308. Defendant and Counterclaim and Third-Party Plaintiff Insight Venture II is a limited liability company organized and existing under the laws of the State of Delaware and having its principal place of business at 680 Fifth Avenue, New York, New York 10019. Its Members include Jeffrey Horing, Jerry Murdock and Peter Sobiloff. Messrs. Horing and Murdock serve as Insight Venture II's Managing Members. Insight Venture II is a Member of Imprimis Investors LLC ("Imprimis").

309. Defendant and Counterclaim and Third-Party Plaintiff Jeffrey Horing is an individual with a principal place of business at 680 Fifth Avenue, New York, New York 10019. Mr. Horing is a Member of Insight Venture II.

310. Defendant and Counterclaim and Third-Party Plaintiff Jerry Murdock is an individual with a principal place of business at 680 Fifth Avenue, New York, New York 10019. Mr. Murdock is a Member of Insight Venture II.

311. Defendant and Counterclaim and Third-Party Plaintiff Peter Sobiloff is an individual with a principal place of business at 680 Fifth Avenue, New York, New York 10019. Mr. Sobiloff is a Member of Insight Venture II.

**B. Counterclaim and Third-Party Defendants**

312. Third-Party Defendant Wexford Capital LLC (formerly known as Wexford Management LLC) ("Wexford") is a limited liability company organized and existing under the laws of the State of Connecticut and having its principal place of business at 411 West Putnam Avenue, Greenwich, CT 06830. Wexford is in the business of making private equity investments, and is the Manager of Imprimis and WISI and controls both those entities. In connection with the matters described below, Wexford has transacted business within the State of New York, has contracted for delivery of services within the State of New York and has committed tortious acts within the State of New York.

313. Plaintiff and Counterclaim Defendant WI Software Investors LLC ("WISI") is a limited liability company organized and existing under the laws of the State of Delaware and having its principal place of business at 411 West Putnam Avenue, Greenwich, CT 06830. WISI was formed for the purpose of making investments in companies identified by Insight in the software and related industries. Wexford is the Manager of, and controls, WISI.

314. Plaintiff and Counterclaim Defendant Imprimis is a limited liability company organized and existing under the laws of the State of Delaware and having its principal place of business at 411 West Putnam Avenue, Greenwich, CT 06830. Imprimis was formed for the purpose of making investments, including investments in companies engaged in the software and related industries. Wexford is the Manager of, and controls, Imprimis. Except for Insight Venture II, all of the Members of Imprimis -- Wexford Special Situations 1997, L.P., Wexford Special Situations Institutional L.P. and Wexford Spectrum Investors LLC -- are controlled by, and affiliated with, Wexford Capital LLC. Imprimis' profits "flow through" Imprimis to the Wexford Members of Imprimis and Insight Venture II.

315. On information and belief, Third-Party Defendant Charles Davidson is an individual having his principal place of business at 411 West Putnam Avenue, Greenwich, Connecticut, 06830. Mr. Davidson is the Chairman of Wexford and is a control person of that entity. Mr. Davidson also has a beneficial interest in the profits realized by Imprimis, Wexford and Imprimis' Wexford Members. In connection with the matters described below, Mr. Davidson has transacted business within the State of New York, has contracted for delivery of services within the State of New York and has committed tortious acts within the State of New York.

316. On information and belief, Third-Party Defendant Joseph Jacobs is an individual having his principal place of business at 411 West Putnam Avenue, Greenwich, Connecticut, 06830. Mr. Jacobs is a founder of Wexford and is a control person of that entity. Mr. Jacobs also has a beneficial interest in the profits realized by

Imprimis, Wexford and Imprimis' Wexford Members. In connection with the matters described below, Mr. Jacobs has transacted business within the State of New York, has contracted for delivery of services within the State of New York and has committed tortious acts within the State of New York.

317. On information and belief, Third-Party Defendant Robert Holtz is an individual having his principal place of business at 411 West Putnam Avenue, Greenwich, CT 06830. Robert Holtz is a control person of Wexford and has a beneficial interest in the profits realized by Imprimis, Wexford and Imprimis' Wexford Members. In connection with the matters described below, Mr. Holtz has transacted business within the State of New York, has contracted for delivery of services within the State of New York and has committed tortious acts within the State of New York.

318. On information and belief, Third-Party Defendant Wexford Special Situations 1997, L.P. is a limited partnership organized and existing under the laws of Connecticut having its principal place of business at 411 West Putnam Avenue, Greenwich, CT 06830. Wexford Special Situations 1997, L.P. is the Tax Matters Partner of Imprimis and, on information and belief, is controlled by Wexford and the other individual Wexford parties. In connection with the matters described below, Wexford Special Situations 1997, L.P. has transacted business within the State of New York and has committed tortious acts within the State of New York.

319. Wexford manages and controls numerous other entities that are in the business of making investments, including Imprimis S.B., L.P., Wexford Special Situations 1997, L.P., Wexford Special Situations 1997 Institutional, L.P., Wexford

Spectrum Fund I, L.P., Wexford Spectrum Fund II, L.P., Wexford Offshore Spectrum Fund, Wexford Partners Investment Company LLC, Wexford Spectrum Investors LLC and WI Software Holding LLC.

320. On information and belief, Imprimis S.B., L.P. is a Limited Partnership organized under the laws of Delaware and affiliated with and controlled by Wexford.

321. In connection with the transactions and actions described herein, Imprimis, WISI, Wexford, and Wexford Special Situations 1997, L.P. were entirely controlled by Charles Davidson, Robert Holtz and Joseph Jacobs and were used for the purpose of injuring defendants/counterclaim plaintiffs and enriching Messrs. Davidson, Holtz and Jacobs independent of any benefit to the entities themselves. On information and belief, the counterclaim and third-party defendants did not preserve the formalities and paraphernalia supporting their existence as corporate or limited liability entities and all of the counterclaim and third-party defendants shared common office space, address and telephone numbers. Messrs. Davidson, Holtz and Jacobs allowed various Wexford-controlled entities to make investments that should have been made by Imprimis or WISI under the Consulting Agreements; there was an overlap in ownership, officers, directors, Members and personnel among the counterclaim and third-party defendants and none of them had independent business discretion as all of the relevant decisions were made by Messrs. Davidson, Holtz and Jacobs. As set forth further below, Messrs. Davidson, Holtz and Jacobs also defrauded the Insight parties and used their control of these entities to defraud the Insight Parties. As such, Messrs. Davidson, Holtz and Jacobs are not entitled

to the protection of the corporate or limited liability form and are personally liable for the actions of the other counterclaim and third-party defendants.

**Background**

322. Jeffrey Horing and Jerry Murdock formed Insight in 1995 for the purpose of investing in companies in the software and related industries.

323. In 1996, Insight agreed to provide investment advice for a period of time and pursuant to certain contracts, to Wexford and entities controlled by Wexford (referred to herein as the "Wexford entities") in exchange for, among other things, payment of fees, payment of certain expenses, and a right to obtain a percentage of the profits gained by Wexford and Wexford entities from investments made on Insight's advice.

324. Since 1996, Insight has provided Wexford and Wexford entities with numerous opportunities to invest in companies in the software and related industries. Wexford and Wexford entities have greatly profited from the investments identified to them by Insight. These profits are a direct result of Insight's skill and acumen, and not at all a result of any skill, effort or insight on the part of Wexford or Wexford entities.

325. Between 1996 and 1999, Wexford and Wexford entities executed a series of three Consulting Agreements and three Limited Liability Company Agreements with Insight and Insight affiliates.

326. Pursuant to these agreements, Insight was to receive, among other things, management fees and reimbursement for certain costs, and was to identify certain investment opportunities for certain Wexford entities. In addition, under the applicable

agreements, Insight or an Insight affiliate is entitled to receive, among other things, a percentage of any profits realized by the specified Wexford entity to which Insight identified investment opportunities.

**The Wexford/Insight Agreements in 1996**

327. Wexford Insight LLC ("Wexford/Insight") was formed through a limited liability company agreement dated as of June 1, 1996, for the purpose of investing in companies in the software and related industries identified by Insight. Under the Limited Liability Company Agreement of Wexford Insight LLC (the "Wexford/Insight LLC Agreement"), Wexford was appointed Manager of Wexford/Insight, and the Members of Wexford/Insight were Insight and certain other Wexford entities.

328. At the same time as the Wexford/Insight LLC Agreement was executed, Insight and Wexford/Insight executed a Consulting Agreement (the "Wexford/Insight Consulting Agreement"), under which Insight agreed to identify certain investment opportunities for Wexford/Insight, all as set forth in that contract, and for a period of one year.

329. Pursuant to the Wexford/Insight LLC Agreement, Insight had a right to obtain a percentage of Wexford/Insight's profits over and above certain rates of return on Wexford/Insight's investments. Such an entitlement to a share of profits is sometimes referred to in the industry as a "carry." Pursuant to the Wexford/Insight LLC Agreement, Insight received a 15 percent carry on investments until Wexford/Insight had reached an established level of profit, at which point Insight's carry was increased to 20 percent.

**The WISI Agreements in 1997**

330. WISI was formed through a limited liability company agreement dated as of April 3, 1997, for the purpose of investing in companies in the software and related industries identified by Insight. Under the Limited Liability Company Agreement of WI Software Investors LLC (the "WISI LLC Agreement"), Wexford was appointed Manager of WISI, and the Members of WISI were Insight Venture II and certain other Wexford entities.

331. At the same time as the WISI LLC Agreement was executed, Insight and WISI executed a Consulting Agreement (the "WISI Consulting Agreement"), under which Insight agreed to provide WISI with certain opportunities to invest, all as set forth in that contract, and for a period of two years.

332. Pursuant to the WISI LLC Agreement, Insight Venture II was entitled to a 20 percent carry on WISI's profits over and above certain rates of return.

**The Imprimis Agreements in 1998**

333. Imprimis was formed through an amended and restated limited liability company agreement dated as of September 30, 1998, for the purpose of investing in companies in the software and related industries identified by Insight. Under the Amended and Restated Limited Liability Company Agreement of Imprimis Investors LLC (the "Imprimis LLC Agreement"), Wexford was appointed Manager of Imprimis, and the Members of Imprimis were Insight Venture II and certain other Wexford entities.

334. Insight and Imprimis also executed a Consulting Agreement (the "Imprimis Consulting Agreement"), under which Insight agreed to provide Imprimis with

certain opportunities to invest in companies in the software and related industries until April 3, 1999 (the "Investment Period"), all as set forth in that contract. In addition, on or about September 30, 1998, Insight Venture II executed a letter agreement transferring its interest in WISI to Imprimis. Wexford also represented that it would, and agreed to, include the investments that Wexford entities had made prior to the date of the Imprimis LLC Agreement on the schedules attached to the Imprimis LLC Agreement. Wexford also represented that it would, and agreed to, add any future investments Imprimis made on Insight's recommendation to Schedule 1 of the Imprimis LLC Agreement.

335. Pursuant to the Imprimis LLC Agreement, Insight Venture II was entitled to a 20 percent or more carry on the profits from investments in companies listed on schedules attached to the Imprimis LLC Agreement. At the time the Imprimis LLC Agreement was executed, Wexford agreed that it would modify those schedules to include any future investments Imprimis made at Insight's recommendation.

336. Section 3(f) of Exhibit B to the Imprimis LLC Agreement provides that any Net Profits allocable to Insight Venture II as part of its carry be allocated first from any ordinary income earned by Imprimis (up to Insight Venture II's share of Net Profits). To the extent that Insight Venture II's share of Imprimis' Net Profits exceeds Imprimis' ordinary income for the year, Insight Venture II is entitled to its proportionate share of short-term and long-term capital gains.

337. There is no provision of the Imprimis LLC Agreement that would allow Imprimis to allocate to Insight Venture II only Imprimis' short-term capital gains when long-term capital gains are also available for allocation.

338. The Imprimis LLC Agreement contains a provision that ensures that the Members of Imprimis (and, ultimately, the individuals who actually incur the tax liabilities) are financially able to satisfy in a timely manner any tax liabilities resulting from their participation in Imprimis. Section 5(a) of Exhibit B to the Imprimis LLC Agreement provides that, before any other distribution is made, Imprimis will distribute a portion of the allocated Net Profits:

> "first, to each Member, not later than 90 days after the close of each Fiscal Year, in an amount equal to the local, state, and Federal Income tax liability of such Member (calculated as if each Member was a individual taxpayer subject to the highest marginal rates applicable to residents of New York City) in respect of the excess of Net Profits over Net Losses allocated to such Member for such Fiscal Year (as shown on the Company's Federal income tax return), less all amounts distributed to such Member for the then current and all prior Fiscal Years pursuant to Section 5."

339. By providing in Section 5(a) for a "Tax Distribution," the Imprimis LLC Agreement insured that the individual Members of Insight Venture II would have distributed to them sufficient funds each year to pay any tax liabilities incurred as a result of any profits earned by Imprimis LLC and allocable to Insight Venture II.

340. The Imprimis LLC Agreement provided a procedure pursuant to which additional distributions could be made once distributions pursuant to section 5(a) of the Imprimis LLC Agreement had been made. Under these provisions of the Imprimis LLC Agreement, each Member of Imprimis was required to be treated equally, without any disparate treatment as against the other Members.

341. Section 4.4 of the Imprimis LLC Agreement requires that "Capital Accounts shall be established and maintained for each Member with an Interest in a

particular Class on the Company's books representing each Members's respective capital contributions to the Company with respect to such Class and such Member's allocable share of the Company's Net Profit relating to such Class . . . ."

342. The Capital Accounts created by section 4.4 of the Imprimis LLC Agreement comprise a series of specific, identifiable funds. Other provisions of the Imprimis LLC Agreement, including but not limited to sections 3 and 5 of Exhibit B, provide the manner in which those specific, identifiable funds are to be treated for purposes of profit allocation and distribution.

343. Section 10.1 of the Imprimis LLC Agreement requires that Imprimis maintain "[p]roper and complete books and records." It also provides that "[e]ach Member, at its own expense, will have the right upon reasonable notice to inspect the books and records of [Imprimis] during business hours at the principal place of business of" Imprimis.

***Investments After April 3, 1999***

344. Pursuant to the Imprimis Consulting Agreement, the relevant Investment Period (the period in which Imprimis had a specified right of first refusal) ended on April 3, 1999. Even after the expiration of that Investment Period, however, Insight on certain occasions recommended certain investments to Wexford and permitted WISI or Imprimis to participate in those investments. Although it had no obligation to do so, in 1999 Insight recommended, and permitted Wexford entities to make investments in, each of Quest Software, Inc. ("Quest"), Convergent Group Corp. ("Convergent"), Greenfield Online ("Greenfield") and Click Interactive (now Click Commerce) ("Click").

These opportunities, as with those identified by Insight pursuant to the contracts, were identified as a result of Insight's skill and acumen, and not at all as a result of any skill, effort or insight on the part of Wexford or Wexford entities. As a result, and in accordance with the Parties' agreements, Imprimis, under the control of Wexford, Charles Davidson, Joseph Jacobs and Robert Holtz, listed each of those investments (except Click) on Schedule 1 to the Imprimis LLC Agreement, and then allocated profits from those investments to Insight Venture II under section 3 of Exhibit B to the Imprimis LLC Agreement.

345. Wexford, Imprimis and WISI declined to invest in certain investment opportunities provided to them by Insight in this same period.

346. The investments made by Imprimis, WISI and other Wexford entities in Quest and Convergent have appreciated in value since the time they were made.

347. By contract, under the Imprimis LLC Agreement, Insight Venture II is entitled to its carry on profits from the Quest and Convergent investments in the amount of at least $31 million. By contract, Insight Venture II is also entitled to its carry on any realized profits from Click (which was wrongfully left off Schedule 1 to the Imprimis LLC Agreement) and Greenfield.

348. Wexford, Imprimis and WISI have not paid Insight Venture II its carry on any profits from Quest, Convergent, Click or Greenfield.

**<u>Other Investments</u>**

349. From May 1998 through March 1999, Imprimis S.B., L.P. and WISI invested in a company identified to WISI by Insight then called Software Technologies Corp. (now SeeBeyond Technology Corp.) ("SeeBeyond").

350. The investments in SeeBeyond by Imprimis S.B., L.P. and WISI have resulted in Imprimis' realizing profits of at least $25 million.

351. Wexford, Imprimis and WISI have not paid Insight Venture II its carry on the profits from SeeBeyond.

352. WISI, Imprimis or other Wexford entities have invested in other companies recommended by Insight and, on information and belief, have realized a total of at least $260 million in profits. Insight Venture II is entitled to its carry -- at least $50 million -- on all of those investments.

353. Wexford, Imprimis and WISI have also failed to pay Insight management fees and expenses due under the Consulting Agreements.

**The Wexford Parties' Wrongful Conduct**
**<u>With Respect to Imprimis' 2000 Profits</u>**

354. Imprimis' 2000 earnings were comprised of $797,243 in "Interest Income," $97,991,181 in "short-term capital gains," and $91,458,825 in "long-term capital gains." After deduction of Imprimis' expenses, its total 2000 income was about $189 million. These profits were primarily the result of Imprimis' investments in Quest and Convergent, both of which had been recommended to Wexford by Insight.

355. At the end of March 2001 or the beginning of April 2001, Insight Venture II received from Imprimis a Schedule K-1 to IRS Form 1065, which reported

Insight Venture II's share of Imprimis' profits for 2000 (the "Insight Venture II K-1"). This K-1 reported Insight Venture II's share of Imprimis' interest income as $797,243 and its share of net short-term capital gain as $36,623,088. Insight Venture II was not allocated any long-term capital gains.

356. Imprimis' allocation to Insight Venture II of more than $36 million of short-term capital gains was wrongful. It substantially overstated the tax liabilities of the Members of Insight Venture II -- including Messrs. Horing, Murdock and Sobiloff. This is because the highest marginal federal tax rate applicable to long-term capital gains is 20%, while the short-term marginal rate is 39.6%. Thus, by allocating to Insight Venture II more than $36 million in short-term capital gain (instead of approximately $18 million in short-term and $18 million in long-term capital gains), Imprimis improperly informed the Internal Revenue Service of "facts" that caused Insight Venture II's Members to owe for 2000 many millions of dollars more in taxes than they actually owed.

357. Under the terms of the Imprimis LLC Agreement, Imprimis should have allocated short-term and long-term capital gains to Insight Venture II in the same proportion as they were realized by Imprimis.

358. On April 3, 2001, Imprimis, through its counsel, stated in writing that the allocations in the Insight Venture II K-1 were the result of Imprimis' investments in "Quest Software, See Beyond, Convergent Group, and Harris & Jeffries."

359. On April 6, 2001, Arthur Amron, Wexford's general counsel, on Imprimis' behalf, stated in writing that the allocations in the Insight Venture II K-1 were

the result of Imprimis' investments in Quest, Conexant, Optum Software, Convergent, SeeBeyond Technologies, Software Technologies Corp. and QRS Corporation.

360. Notwithstanding the fact that Imprimis allocated profits to Insight Venture II from the investments in Quest and Convergent listed on Schedule 1 to the Imprimis LLC Agreement, and reported that profit allocation to Insight Venture II and the IRS on a Schedule K-1 to Form 1065 -- forcing the Members of Insight Venture II to pay millions of dollars to the Internal Revenue Service as a result -- Imprimis has falsely represented to this Court through the sworn affidavits of Robert Holtz and Arthur Amron that the Schedule 1 including those investments, and upon which the allocations were based, is nothing more than an "internal document" with no binding effect. As a result, Imprimis has taken the position that Insight Venture II is not entitled to any distribution (including the Tax Distribution) of Imprimis' profits from the Schedule 1 investments.

361. Imprimis has made no distribution to Insight Venture II for the year 2000 or 2001.

362. On information and belief, Imprimis distributed more than $143 million to its Members other than Insight Venture II for 2000. These distributions reflected those Members' share of Imprimis' 2000 profits. Insight Venture II's share of 2000 profits is more than $37 million, yet it has received nothing in distributions.

363. Notwithstanding the fact that Insight Venture II requested upon reasonable notice to inspect the books and records of Imprimis during business hours at Imprimis' principal place of business, Imprimis has refused to provide Insight Venture II access to such books and records.

364. The wrongful actions described above were the consequence of a scheme that Charles Davidson, Joseph Jacobs, Robert Holtz, Wexford, Wexford Special Situations 1997, L.P., WISI and Imprimis developed in late 2000 or early 2001, to cause injury to Insight Venture II and its Members, particularly Jeffrey Horing and Jerry Murdock, and to benefit themselves in the amount of millions of dollars.

365. By preparing and filing with the Internal Revenue Service a Schedule K-1 which allocated to Insight Venture II $37 million in short-term capital gains from investments listed on Schedule 1 to the Imprimis LLC Agreement, thereby representing that Insight Venture II was entitled to that money, while at the same time distributing nothing to Insight Venture II and contending that Insight Venture II was entitled to nothing, Imprimis, under the control of Charles Davidson, Joseph Jacobs, Robert Holtz, Wexford and Wexford Special Situations 1997, L.P., intentionally and maliciously made knowingly false statements to Insight Venture II and caused injury to Insight Venture II and its Members.

366. This scheme intentionally to injure Insight Venture II and its Members was created to force the Members of Insight Venture II to be liable for and to pay millions of dollars to the Internal Revenue Service. At the same time, this enabled Imprimis' Members -- Wexford Special Situations 1997, L.P., Wexford Special Situations 1997 Institutional, L.P. and Wexford Spectrum Investors, L.P. -- to avoid paying millions of dollars to the IRS.

367. Charles Davidson, Joseph Jacobs and Robert Holtz created and entered into this scheme in bad faith and with the intention to harm Insight Venture II and

its Members, and, possibly, to profit themselves, by causing the Members of Insight Venture II to pay the taxes on profits which they have kept for themselves, under their control, and to which they falsely contend Insight Venture II is not entitled.

**COUNT I**

**(Declaratory Judgment – Sought By Insight and Insight Venture II Against Wexford, Imprimis and WISI)**

368. Insight and Insight Venture II repeat and reallege the allegations contained in paragraphs 307-367 above and incorporate them by reference as if set forth fully herein.

369. Imprimis and WISI assert that they had a right to participate in investments made after the expiration of the respective Investment Periods set forth in the Imprimis and WISI Consulting Agreements. Based on this assertion, Imprimis and WISI have brought claims against Insight and the other defendants in this action.

370. Insight and Insight Venture II fulfilled their contractual and other obligations under and in connection with the Consulting and LLC Agreements.

371. Insight and Insight Venture II are entitled to a declaratory judgment that neither Imprimis, WISI, Wexford nor any other Wexford-controlled entity had any right of first refusal with respect to investments made after the expiration of the Investment Periods set forth in such contracts.

**COUNT II**

**(Breach of Contract -- Asserted By Insight Against**
***Wexford, Imprimis and WISI)***

372. Insight repeats and realleges the allegations contained in paragraphs 307-371 above and incorporates them by reference as if set forth fully herein.

373. Wexford, Imprimis and WISI failed to fulfill their duties and obligations under the Imprimis and WISI Consulting Agreements by failing to pay Insight management fees and costs to which it is entitled.

374. Insight has suffered and continues to suffer damages as a result of this breach of contract.

375. Wexford, Imprimis and WISI's actions were outrageous, malicious *and evidence a reckless disregard for Insight's rights and interests.*

**COUNT III**

**(Breach of Contract -- Asserted By Insight**
**Venture II, Mr. Horing, Mr. Murdock and Mr. Sobiloff Against**
**Wexford, Wexford Special Situations 1997, L.P. and Imprimis)**

376. Insight Venture II, Mr. Horing, Mr. Murdock and Mr. Sobiloff repeat and reallege the allegations contained in paragraphs 307-375 above and incorporate them by reference as if set forth fully herein.

377. Mr. Horing, Mr. Murdock and Mr. Sobiloff, as Members of Insight Venture II, were intended third-party beneficiaries of the Imprimis LLC Agreement.

378. Wexford, Wexford Special Situations 1997, L.P. and Imprimis failed to fulfill their duties and obligations under the Imprimis LLC Agreement by

refusing to allocate to Insight Venture II its proportional share of both short-term and long-term capital gains for 2000.

379. Mr. Horing, Mr. Murdock, Mr. Sobiloff and Insight Venture II have suffered and continue to suffer damages as a result of this breach of contract.

380. Wexford, Wexford Special Situations 1997, L.P. and Imprimis' actions were outrageous, malicious and evidence a reckless disregard for Mr. Horing, Mr. Murdock, Mr. Sobiloff and Insight Venture II's rights and interests.

## COUNT IV

**(Breach of Contract -- Asserted By Insight Venture II, Mr. Horing, Mr. Murdock and Mr. Sobiloff Against Wexford and Imprimis)**

381. Insight Venture II, Mr. Horing, Mr. Murdock and Mr. Sobiloff repeat and reallege the allegations contained in paragraphs 307-380 above and incorporate them by reference as if set forth fully herein.

382. Mr. Horing, Mr. Murdock and Mr. Sobiloff were intended third-party beneficiaries of the Imprimis LLC Agreement.

383. Wexford and Imprimis failed to fulfill their duties and obligations under the Imprimis LLC Agreement by refusing to distribute profits due Insight Venture II and by refusing to make a Tax Distribution on or before the date on which they were obliged to do so under the Imprimis LLC Agreement.

384. Mr. Horing, Mr. Murdock, Mr. Sobiloff and Insight Venture II have suffered and continue to suffer damages as a result of this breach of contract.

385. Wexford and Imprimis' actions were outrageous, malicious and evidence a reckless disregard for Mr. Horing, Mr. Murdock, Mr. Sobiloff and Insight Venture II's rights and interests.

## COUNT V

**(Breach of Contract -- Asserted By Insight Venture II, Mr. Horing, Mr. Murdock and Mr. Sobiloff Against Wexford and Imprimis)**

386. Insight Venture II, Mr. Horing, Mr. Murdock and Mr. Sobiloff repeat and reallege the allegations contained in paragraphs 307-385 above and incorporate them by reference as if set forth fully herein.

387. Mr. Horing, Mr. Murdock and Mr. Sobiloff were intended third-party beneficiaries of the Imprimis LLC Agreement.

388. Wexford and Imprimis failed to fulfill their duties and obligations under the Imprimis LLC Agreement by refusing to grant Insight Venture II access to its books and records as required by section 10.1 of the Imprimis LLC Agreement.

389. Mr. Horing, Mr. Murdock, Mr. Sobiloff and Insight Venture II have suffered and continue to suffer damages as a result of this breach of contract.

390. Wexford and Imprimis' actions were outrageous, malicious and evidence a reckless disregard for Mr. Horing, Mr. Murdock, Mr. Sobiloff and Insight Venture II's rights and interests.

## COUNT VI

**(Breach of Implied Duties of Good Faith and Fair Dealing -- Asserted By Insight Venture II, Mr. Horing, Mr. Murdock and Mr. Sobiloff Against Wexford, Wexford Special Situations 1997, L.P. and Imprimis)**

391. Insight Venture II, Mr. Horing, Mr. Murdock and Mr. Sobiloff repeat and reallege the allegations contained in paragraphs 307-390 above and incorporate them by reference as if set forth fully herein.

392. Wexford, Wexford Special Situations 1997, L.P. and Imprimis owed to Mr. Horing, Mr. Murdock, Mr. Sobiloff, and Insight Venture II implied duties of good faith and fair dealing pursuant to the Imprimis LLC Agreement. These implied duties of good faith and fair dealing were breached when Wexford, Wexford Special Situations 1997, L.P. and Imprimis failed to: (i) properly allocate Insight Venture II's share of the profits earned by Imprimis in 2000, including its share of Imprimis' 2000 short-term and long-term capital gains; (ii) distribute to Insight Venture II the Tax Distribution required under section 5(a) of Exhibit B of the Imprimis LLC Agreement; (iii) pay all distributions to Insight Venture II required under Section 5 of Exhibit B of the Imprimis LLC Agreement; (iv) make distributions in a fair and equitable manner to Insight Venture II; and (v) treat each Member of Imprimis equally.

393. Mr. Horing, Mr. Murdock and Mr. Sobiloff were intended third-party beneficiaries of the Imprimis LLC Agreement.

394. Mr. Horing, Mr. Murdock, Mr. Sobiloff, and Insight Venture II have suffered injury as a direct and foreseeable result of Wexford, Wexford Special Situations 1997, L.P. and Imprimis' conduct.

395. Wexford, Wexford Special Situations 1997, L.P. and Imprimis' conduct was outrageous, malicious and evidenced a reckless disregard for Mr. Horing, Mr. Murdock, Mr. Sobiloff, and Insight Venture II's interests.

## COUNT VII

**(Breach of Fiduciary Duty -- Asserted By Insight Venture II, Mr. Horing, Mr. Murdock and Mr. Sobiloff Against Charles Davidson, Robert Holtz, Joseph Jacobs, Wexford, Wexford Special Situations 1997, L.P. and Imprimis)**

396. Insight Venture II, Mr. Horing, Mr. Murdock and Mr. Sobiloff repeat and reallege the allegations contained in paragraphs 307-395 above and incorporate them by reference as if set forth fully herein.

397. Charles Davidson, Robert Holtz, Joseph Jacobs, Wexford, Wexford Special Situations 1997, L.P. and Imprimis owed to Mr. Horing, Mr. Murdock, Mr. Sobiloff and Insight Venture II fiduciary duties, including, but not limited to, the duties of care, loyalty, good faith and fairness.

398. Charles Davidson, Robert Holtz, Joseph Jacobs, Wexford, Wexford Special Situations 1997, L.P. and Imprimis, acting alone and in concert with others, breached and conspired to breach their fiduciary duties to Insight Venture II by failing to: (i) properly allocate Insight Venture II's share of the profits earned by Imprimis in 2000, including its share of Imprimis' 2000 short-term and long-term capital gains; (ii) pay the Tax Distribution required under section 5(a) of Exhibit B of the Imprimis LLC Agreement; (iii) pay all distributions required under section 5 of Exhibit B of the Imprimis LLC Agreement; (iv) make distributions in a fair and equitable manner to Insight Venture II; and (v) treat each Member of Imprimis equally.

399. Mr. Horing, Mr. Murdock, Mr. Sobiloff and Insight Venture II have suffered injury as a direct and foreseeable result of the conduct of Charles Davidson, Robert Holtz, Joseph Jacobs, Wexford, Wexford Special Situations 1997, L.P. and Imprimis.

400. Charles Davidson, Robert Holtz, Joseph Jacobs, Wexford, Wexford Special Situations 1997, L.P. and Imprimis' conduct was outrageous, malicious and evidenced a reckless disregard for Mr. Horing, Mr. Murdock, Mr. Sobiloff and Insight Venture II's interests.

## COUNT VIII

**(Conversion -- Asserted By Insight Venture II, Mr. Horing, Mr. Murdock and Mr. Sobiloff Against Charles Davidson, Robert Holtz, Joseph Jacobs, Wexford, Wexford Special Situations 1997, L.P. and Imprimis)**

401. Insight Venture II, Mr. Horing, Mr. Murdock and Mr. Sobiloff repeat and reallege the allegations contained in paragraphs 307-400 above and incorporate them by reference as if set forth fully herein.

402. The Imprimis LLC Agreement created for the benefit of Insight Venture II, Mr. Horing, Mr. Murdock and Mr. Sobiloff a specific and identifiable fund and obligations regarding the manner in which that fund was to be treated with respect to, among other things, the allocation of profits to that fund and the distribution of profits from that fund.

403. Charles Davidson, Robert Holtz, Joseph Jacobs, Wexford, Wexford Special Situations 1997, L.P. and Imprimis conspired and agreed to ignore their obligations under the Imprimis LLC Agreement and to wrongfully convert the fund

created by the Imprimis LLC Agreement as part of their scheme to appropriate Insight Venture II's share of Imprimis' profits and injure Insight Venture II and its Members by creating a tax liability without providing any means by which to pay those taxes or pay any distributions to Insight Venture II.

404. Mr. Horing, Mr. Murdock, Mr. Sobiloff, and Insight Venture II have suffered injury as a direct and foreseeable result of the conduct of Charles Davidson, Robert Holtz, Joseph Jacobs, Wexford, Wexford Special Situations 1997, L.P. and Imprimis.

405. Charles Davidson, Robert Holtz, Joseph Jacobs, Wexford, Wexford Special Situations 1997, L.P. and Imprimis' conduct was outrageous, malicious and evidenced a reckless disregard for Mr. Horing, Mr. Murdock, Mr. Sobiloff and Insight Venture II's interests.

## COUNT IX

**(Unjust Enrichment -- Asserted By Insight, Insight Venture II, Mr. Horing, Mr. Murdock and Mr. Sobiloff Against Charles Davidson, Robert Holtz, Joseph Jacobs, Wexford, Wexford Special Situations 1997, L.P., WISI and Imprimis)**

406. Insight Venture II, Mr. Horing, Mr. Murdock and Mr. Sobiloff repeat and reallege the allegations contained in paragraphs 307-405 above and incorporate them by reference as if set forth fully herein.

407. By failing to properly allocate or distribute profits due Insight Venture II, Charles Davidson, Robert Holtz, Joseph Jacobs, Wexford, Wexford Special Situations 1997, L.P., WISI and Imprimis breached their contractual and fiduciary duties to Mr. Horing, Mr. Murdock, Mr. Sobiloff, Insight and Insight Venture II and have been

unjustly enriched by the portion of profits from investments in companies identified by Insight due Insight Venture II.

408. Charles Davidson, Robert Holtz, Joseph Jacobs, Wexford, Wexford Special Situations 1997, L.P., WISI and Imprimis' conduct was outrageous, malicious and evidenced a reckless disregard for Mr. Horing, Mr. Murdock, Mr. Sobiloff, Insight and Insight Venture II's interests.

**COUNT X**

**(Unjust Enrichment -- Asserted By Insight, Insight Venture II, Mr. Horing, Mr. Murdock and Mr. Sobiloff Against Charles Davidson, Robert Holtz, Joseph Jacobs, Wexford, Wexford Special Situations 1997, L.P., WISI and Imprimis)**

409. Insight, Insight Venture II, Mr. Horing, Mr. Murdock and Mr. Sobiloff repeat and reallege the allegations contained in paragraphs 307-408 above and incorporate them by reference as if set forth fully herein.

410. By failing to properly allocate or distribute profits due Insight Venture II, and by conspiring to withhold these distributions from Insight Venture II, Charles Davidson, Robert Holtz, Joseph Jacobs, Wexford, Wexford Special Situations 1997, L.P., WISI and Imprimis breached their fiduciary duties to Insight, Insight Venture II, Mr. Horing, Mr. Murdock and Mr. Sobiloff, breached the Consulting Agreements and failed to provide the consideration bargained for by Insight and Insight Venture II.

411. Accordingly, Charles Davidson, Robert Holtz, Joseph Jacobs, Wexford, Wexford Special Situations 1997, L.P., WISI and Imprimis have been unjustly enriched by every investment they or their affiliates made in companies identified by

Insight under the Imprimis and WISI Consulting Agreements, as well as by the investments made after April 3, 1999.

412. Charles Davidson, Robert Holtz, Joseph Jacobs, Wexford, Wexford Special Situations 1997, L.P., WISI and Imprimis' conduct was outrageous, malicious and evidenced a reckless disregard for Insight, Insight Venture II, Mr. Horing, Mr. Murdock and Mr. Sobiloff's interests.

## COUNT XI

**(Imposition of a Constructive Trust -- Asserted By Insight, Insight Venture II, Mr. Horing, Mr. Murdock and Mr. Sobiloff Against Charles Davidson, Robert Holtz, Joseph Jacobs, Wexford, Wexford Special Situations 1997, L.P., WISI and *Imprimis*)**

413. Mr. Horing, Mr. Murdock, Mr. Sobiloff, Insight and Insight Venture II repeat and reallege the allegations contained in paragraphs 307-412 above and incorporate them by reference as if set forth fully herein.

414. Under the arrangements between the parties, Charles Davidson, Robert Holtz, Joseph Jacobs, Wexford, Wexford Special Situations 1997, L.P., WISI and Imprimis owed Insight and Insight Venture II a fiduciary duty.

415. By failing to and conspiring to fail to properly allocate or distribute Insight Venture II's carry from investments made by Wexford-controlled entities in companies identified by Insight, Charles Davidson, Robert Holtz, Joseph Jacobs, Wexford, Wexford Special Situations 1997, L.P., WISI and Imprimis breached that duty and unjustly enriched Wexford and Wexford entities and their Members, including WISI, Imprimis S.B., L.P., Charles Davidson, Robert Holtz, Joseph Jacobs, Wexford, and Wexford Special Situations 1997, L.P.

416. Mr. Horing, Mr. Murdock, Mr. Sobiloff, Insight and Insight Venture II have no adequate remedy at law.

417. Accordingly, the Court should impose a Constructive Trust on all investments made by Wexford entities in companies identified by Insight and on any proceeds or profits realized from such investments.

## COUNT XII

**(Tortious Interference -- Asserted By Insight, Insight Venture II, Mr. Horing, Mr. Murdock and Mr. Sobiloff Against Charles Davidson, Robert Holtz, Joseph Jacobs, Wexford and Wexford Special Situations 1997, L.P.)**

418. Insight, Insight Venture II, Mr. Horing, Mr. Murdock and Mr. Sobiloff repeat and reallege the allegations contained in paragraphs 307-417 above and incorporate them by reference as if set forth fully herein.

419. Charles Davidson, Robert Holtz, Joseph Jacobs, Wexford and Wexford Special Situations 1997, L.P. were aware of the contractual arrangements between the parties as reflected in the various agreements.

420. Despite this knowledge, through the wrongful acts set forth herein, Charles Davidson, Robert Holtz, Joseph Jacobs, Wexford and Wexford Special Situations 1997, L.P. intentionally and knowingly acted to interfere with those relations by assisting in, or otherwise procuring, Imprimis and WISI's breach of the agreements through the acts alleged above.

421. Mr. Horing, Mr. Murdock, Mr. Sobiloff, Insight and Insight Venture II have suffered injury as a direct and foreseeable result of Charles Davidson,

426. Mr. Horing, Mr. Murdock, Mr. Sobiloff and Insight Venture II have suffered injury as a direct and foreseeable result of the conduct of Charles Davidson, Robert Holtz, Joseph Jacobs, Wexford and Wexford Special Situations 1997, L.P.

427. The conduct of Charles Davidson, Robert Holtz, Joseph Jacobs, Wexford and Wexford Special Situations 1997, L.P. was outrageous, malicious and evidenced a reckless disregard for Mr. Horing, Mr. Murdock, Mr. Sobiloff, Insight and Insight Venture II's interests.

## COUNT XIV

**(Accounting -- Sought By Insight and Insight Venture II Against Wexford, Imprimis and WISI)**

428. Insight and Insight Venture II repeat and reallege the allegations contained in paragraphs 307-427 above and incorporate them by reference as if set forth fully herein.

429. In light of their actions, Wexford, Imprimis and WISI should be required to provide Insight and Insight Venture II with an accounting describing every investment made by either of them or by any Wexford-controlled entity in any investment identified by Insight, the profits derived therefrom, any holdings still maintained, and any distributions made.

430. Insight and Insight Venture II have no adequate remedy at law.

## COUNT XV

**(Prima Facie Tort -- Asserted By Insight, Insight Venture II, Mr. Horing, Mr. Murdock and Mr. Sobiloff Against Charles Davidson, Robert Holtz, Joseph Jacobs, Wexford, Wexford Special Situations 1997, L.P. and Imprimis)**

431. Insight, Insight Venture II, Mr. Horing, Mr. Murdock and Mr. Sobiloff repeat and reallege the allegations contained in paragraphs 307-430 above and incorporate them by reference as if set forth fully herein.

432. Charles Davidson, Robert Holtz, Joseph Jacobs, Wexford, Wexford Special Situations 1997, L.P. and Imprimis, intentionally, without justification and with the malicious intent to harm Insight, Insight Venture II, Mr. Horing, Mr. Murdock and Mr. Sobiloff, failed to: (i) properly allocate Insight Venture II's share of the profits earned by Imprimis in 2000, including its share of Imprimis' 2000 short-term and long-term capital gains; (ii) distribute to Insight Venture II the Tax Distribution required under section 5(a) of Exhibit B of the Imprimis LLC Agreement; (iii) make any distributions under section 5 of Exhibit B of the Imprimis LLC Agreement; (iv) make distributions in a fair and equitable manner to Insight Venture II; (v) treat each Member of Imprimis equally; and (vi) make required payments under the Consulting Agreements.

433. As a result of these wrongful acts, Insight, Insight Venture II, Mr. Horing, Mr. Murdock and Mr. Sobiloff incurred special damages in the amount of at least $37,420,348 and in additional amounts to be proved at trial relating to certain transactional and other costs incurred as a result of Imprimis' failure to properly make a Tax Distribution to Insight Venture II, as required under section 5(a) of Exhibit B of the

Imprimis LLC Agreement, or other distributions under section 5 of Exhibit B of the Imprimis LLC Agreement, or under the consulting agreements.

434. Charles Davidson, Robert Holtz, Joseph Jacobs, Wexford, Wexford Special Situations 1997, L.P. and Imprimis acted entirely out of malice and with the sole intent to injure Insight, Insight Venture II, Mr. Horing, Mr. Murdock and Mr. Sobiloff.

## COUNT XVI

**(Fraud and Misrepresentation -- Asserted By Insight Venture II, Mr. Horing, Mr. Murdock and Mr. Sobiloff Against Charles Davidson, Robert Holtz, Joseph Jacobs, Wexford, Wexford Special Situations 1997, L.P. and Imprimis)**

435. Insight Venture II, Mr. Horing, Mr. Murdock and Mr. Sobiloff repeat and reallege the allegations contained in paragraphs 307-434 above and incorporate them by reference as if set forth fully herein.

436. Pursuant to the Imprimis LLC Agreement, Imprimis must allocate and distribute profits to Insight Venture II from investments listed on Schedule 1 to that contract. Per the contract, if investments are not listed on Schedule 1 or Schedule 2, Imprimis may not allocate or distribute profits to Insight Venture II from those investments.

437. In the Insight Venture II K-1 that Imprimis, under the control of Charles Davidson, Robert Holtz, Joseph Jacobs, Wexford and Wexford Special Situations 1997, L.P., issued to Insight Venture II in 2000, Imprimis represented that it had allocated over $37 million in profits to Insight Venture II. In subsequent written communications on April 3 and April 6, 2001, Imprimis, under the control of Charles

Davidson, Robert Holtz, Joseph Jacobs, Wexford and Wexford Special Situations 1997, L.P., stated that those profits were the result of investments in, inter alia, Quest and Convergent, necessarily representing that all such investments were properly listed on Schedule 1 or Schedule 2 to the Imprimis LLC Agreement.

438. Charles Davidson, Robert Holtz, Joseph Jacobs, Wexford, Wexford Special Situations 1997, L.P. and Imprimis have since that time denied that the investments which gave rise to Insight Venture II's 2000 allocation are properly listed on Schedule 1 to the Imprimis LLC Agreement and have falsely claimed that the Schedule 1 listing such investments is merely an internal document with no binding effect.

439. Charles Davidson, Robert Holtz, Joseph Jacobs, Wexford, Wexford Special Situations 1997, L.P. and Imprimis thus knowingly misrepresented which investments were listed on Schedule 1 to the Imprimis LLC Agreement and intended that Insight Venture II would rely on their representation by, inter alia, paying the taxes due on those profits.

440. Insight Venture II and its Members, Messrs. Horing, Murdock and Sobiloff, did in fact rely on the fraudulent misrepresentations of Charles Davidson, Robert Holtz, Joseph Jacobs, Wexford, Wexford Special Situations 1997, L.P. and Imprimis in the 2000 K-1 and in the above mentioned subsequent communications and were injured in an amount to be determined at trial but at least $37 million.

441. The conduct of Charles Davidson, Robert Holtz, Joseph Jacobs, Wexford and Wexford Special Situations 1997, L.P. was outrageous, malicious and

evidenced a reckless disregard for Mr. Horing, Mr. Murdock, Mr. Sobiloff and Insight Venture II's interests.

WHEREFORE, Insight, Insight Venture II, Mr. Horing, Mr. Murdock and Mr. Sobiloff respectfully request that this Court enter an order:

i. On Count I, declaring that neither Wexford, Imprimis, WISI nor any other Wexford controlled entity had any right of first refusal with respect to investments made after the conclusion of the contractual Investment Periods;

ii. On Count II, directing Wexford, Imprimis and WISI to pay Insight compensatory damages in an amount to be determined at trial;

iii. On Count III, directing Wexford, Wexford Special Situations 1997, L.P. and Imprimis to pay Mr. Horing, Mr. Murdock, Mr. Sobiloff and/or Insight Venture II compensatory damages in an amount to be determined at trial, but in a sum no less than $37,420,348 plus interest;

iv. On Count IV, directing Wexford and Imprimis to pay Mr. Horing, Mr. Murdock, Mr. Sobiloff and/or Insight Venture II compensatory damages in an amount to be determined at trial, but in a sum no less than $50 million plus interest;

v. On Count V, directing Wexford and Imprimis to pay Mr. Horing, Mr. Murdock, Mr. Sobiloff, Insight and Insight Venture II compensatory damages in an amount to be determined at trial and to provide specific performance of its obligations under section 10.1 of the Imprimis LLC Agreement;

vi. On Count VI, directing Wexford, Wexford Special Situations 1997, L.P. and Imprimis to pay Mr. Horing, Mr. Murdock, Mr. Sobiloff and/or Insight

Venture II compensatory damages in an amount to be determined at trial, but in a sum no less than $50 million plus interest;

vii. On Count VII, directing Charles Davidson, Robert Holtz, Joseph Jacobs, Wexford Special Situations 1997, L.P., Wexford and Imprimis to pay Mr. Horing, Mr. Murdock, Mr. Sobiloff and/or Insight Venture II compensatory damages in an amount to be determined at trial, but in a sum no less than $50 million plus interest;

viii. On Count VIII, directing Charles Davidson, Robert Holtz, Joseph Jacobs, Wexford Special Situations 1997, L.P., Wexford and Imprimis to pay Mr. Horing, Mr. Murdock, Mr. Sobiloff, and/or Insight Venture II compensatory damages in an amount to be determined at trial, but in a sum no less than $50 million plus interest;

ix. On Count IX, directing Charles Davidson, Robert Holtz, Joseph Jacobs, Wexford Special Situations 1997, L.P., Wexford, WISI and Imprimis to pay Mr. Horing, Mr. Murdock, Mr. Sobiloff, Insight and/or Insight Venture II an amount to be determined at trial, but no less than $50 million plus interest;

x. On Count X, directing Charles Davidson, Robert Holtz, Joseph Jacobs, Wexford Special Situations 1997, L.P., Wexford, WISI and Imprimis to pay Insight, Insight Venture II, Mr. Horing, Mr. Murdock and Mr. Sobiloff an amount to be determined at trial, but no less than $260 million plus interest;

xi. On Count XI, imposing a Constructive Trust on all investments by any Wexford-controlled entity in companies identified by Insight to Imprimis, WISI or Wexford and on any proceeds or profits realized therefrom;

xii. On Count XII, directing Charles Davidson, Robert Holtz, Joseph Jacobs, Wexford Special Situations 1997, L.P. and Wexford to pay Mr. Horing, Mr. Murdock, Mr. Sobiloff, Insight and/or Insight Venture II compensatory damages in an amount to be determined at trial, but in a sum no less than $50 million plus interest;

xiii. On Count XIII, directing Charles Davidson, Robert Holtz, Joseph Jacobs, Wexford Special Situations 1997, L.P. and Wexford to pay Mr. Horing, Mr. Murdock, Mr. Sobiloff and/or Insight Venture II compensatory damages in an amount to be determined at trial, but in a sum no less than $50 million plus interest;

xiv. On Count XIV, granting Insight and Insight Venture II an accounting of investments made by Wexford controlled entities in investments identified by Insight, the profits derived therefrom, any distributions of those profits and any remaining holdings in those companies;

xv. On Count XV, directing Charles Davidson, Robert Holtz, Joseph Jacobs, Wexford Special Situations 1997, L.P., Wexford and Imprimis to pay Mr. Horing, Mr. Murdock, Mr. Sobiloff, and/or Insight Venture II compensatory damages in an amount to be determined at trial, but in a sum no less than $37,420,348 plus interest;

xvi. On Count XVI, directing Charles Davidson, Robert Holtz, Joseph Jacobs, Wexford Special Situations 1997, L.P., Wexford and Imprimis to pay Mr. Horing, Mr. Murdock, Mr. Sobiloff, and/or Insight Venture II compensatory damages in an amount to be determined at trial, but in a sum no less than $37,420,348 plus interest;

xvii. Awarding Mr. Horing, Mr. Murdock, Mr. Sobiloff, Insight and Insight Venture II punitive damages in an amount to be determined at trial, but in a sum

no less than $50 million with respect to the conduct alleged in the Amended Counterclaims and Third-Party Amended Complaint, and in particular on Counts VII, VIII, XII, XIII, XV and XVI;

xviii. Granting Mr. Horing, Mr. Murdock, Mr. Sobiloff, Insight and Insight Venture II the costs of this action, including their reasonable attorneys' fees; and

xix. Awarding Mr. Horing, Mr. Murdock, Mr. Sobiloff, Insight and Insight Venture II such further and other relief as this Court may deem appropriate.

Dated: New York, New York
August 29, 2002

David B. Tulchin /K.B.

David B. Tulchin
Michael B. Miller
Daniel H.R. Laguardia

SULLIVAN & CROMWELL
125 Broad Street
New York, New York 10004
(212) 558-4000

Attorneys for Insight Venture Management, Inc., Jeffrey Horing, Jerry Murdock, Peter Sobiloff, Insight Venture Associates II, LLC, Insight Venture Associates III, LLC, Insight Capital Partners II, L.P., Insight Capital Partners (Cayman) II, L.P., Insight Capital Partners III, L.P., Insight Capital Partners (Cayman) III, L.P., and Insight Capital Partners III, Co-Investors, L.P.

**VERIFICATION**

STATE OF NEW YORK )
:SS:
COUNTY OF NEW YORK )

JEFFREY HORING, being duly sworn, deposes and says:

1. I am an officer of Insight Venture Management, Inc.

2. I have read the Verified Answer to The Amended And Consolidated Complaint, Affirmative Defenses, Counterclaims And Third-party Complaint and know the contents thereof.

3. The Verified Answer to the Amended and Consolidated Complaint, Affirmative Defenses, Counterclaims and Third-party Complaint are true to my own knowledge, except as to matters therein alleged to be on information and belief, and as to those matters I believe them to be true.

JEFFREY HORING

Sworn to before me this
29th day of August, 2002

Notary Public

JUDE A. J. CAMERON
Notary Public, State of New York
No. 24-01CA5080191
Qualified in Kings County
Certificate Filed in New York County
Commission Expires June 16, 2003

**CERTIFICATE OF SERVICE**

I certify that, on this the 29th day of August, 2002, I caused a true and accurate copy of the foregoing Verified Answer to the Amended and Consolidated Complaint, Affirmative Defenses, Counterclaims and Third-Party Complaint to be served by hand on counsel for (1) Imprimis Investors LLC, WI Software Investors LLC, Wexford Capital LLC, Wexford Special Situations 1997, L.P., Charles Davidson, Robert Holtz and Joseph Jacobs, and (2) UBS Capital II LLC, and (3) Ramanan Raghavendran, at the following addresses:

Martin S. Siegel, Esq.
BROWN RUDNICK BERLACK ISRAELS LLP
120 West 45th Street
New York, New York 10036

Michael Rogoff
KAYE SCHOLER LLP
425 Park Avenue
New York, New York 10022

John J.D. McFerrin-Clancy
SCHLAM STONE & DOLAN LLP
26 Broadway
New York, New York 10004

Karl H. Buch