IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| IMPRIMIS INVESTORS LLC, WEXFORD SPECIAL SITUATIONS 1997 INSTITUTIONAL, LP, TAX MATTERS PARTNER,<br>Plaintiffs,<br>v.<br>THE UNITED STATES,<br>Defendant. | No. 07-209T<br>(Judge Marian Blank Horn) |

**DECLARATION OF ARTHUR H. AMRON**

I, Arthur H. Amron, declare the following:

1. I am a partner and the general counsel for Wexford Capital LLC ("Wexford Capital") and an officer of Imprimis Investors LLC ("Imprimis"). I make this declaration in support of the parties' Joint Stipulation and the Plaintiff's Contested Material Facts. I have personal knowledge of the matters set forth in this declaration. In particular, I represented Imprimis in the negotiations with Insight Venture Management, Inc. ("Insight Venture"), Insight Venture Associates II LLC ("Insight"), and entities and individuals related to Insight that resulted in a settlement agreement ("Settlement Agreement") concerning all issues raised in certain actions between the parties that were filed in the Supreme Court of the State of New York. I am also familiar with the negotiation of the Imprimis LLC Agreement in which Insight was given a non-participating partnership interest.

2. Imprimis is an investment vehicle which makes, holds, and manages investments on behalf of certain investment funds affiliated with and managed by Wexford Capital.



EXHIBIT
40

STIP0904

3. Wexford Capital is an investment advisor registered with the Securities and Exchange Commission. It was formed in 1994 and manages a series of hedge funds and private equity funds from its Greenwich, Connecticut headquarters.

4. In the fall of 1998, Imprimis entered into a consulting agreement with Insight Venture, an investment consultant. Pursuant to that agreement, Imprimis agreed to pay Insight Venture for its investment advice and services in certain market sectors. That compensation took two forms: (1) fixed fees, which were based upon the capital Imprimis invested in investments identified by Insight Venture; and (2) performance-based or incentive fees, which were based upon the profits Imprimis realized from those investments. Ordinarily, both forms of payment would have been taxed at ordinary income rates.

5. To accommodate Insight Venture, and to give it an opportunity to earn fees that would be taxed at a rate lower than ordinary income rates, Imprimis agreed to distribute one form of payment, the incentive fees, to Insight Venture by providing it or an affiliate with an interest in Imprimis and having such payments made as distributions relating to such interest. Because the other members of Imprimis provided all the capital for investment and Insight provided none of the capital, the interest given to Insight Venture was a non-participating interest. Insight Venture designated an affiliate, Insight, to become the non-participating member of Imprimis.

6. To reflect that Insight's incentive fees would have been ordinary income and taxed as such, the parties agreed to compensate Insight by allocating to it in the first instance whatever income or gains would be taxed at the rates in effect for ordinary income. Because the rates in effect for ordinary income were the same rates as those in effect for short term capital

gain, Insight would receive all ordinary income and short term capital gain earned by Imprimis before receiving any long term capital gain.

7. Imprimis agreed to this structure to accommodate Insight Venture and give it the potential to receive income that would not be taxed at ordinary income rates. Imprimis did not agree, however, to shift Insight's rightful tax burden to the shoulders of those providing the investment capital by giving Insight long term capital gain when there was ordinary income and short term capital gain to allocate.

8. The parties memorialized their understanding in Section 3(f) of Exhibit B of the Imprimis LLC Agreement ("Insight Allocation"), which provided that "in the event any Net Profits consist of items of ordinary income, then, in lieu of [certain specified allocations] (i) a special gross income allocation shall be made to Insight of such items or [sic] ordinary income (to the extent thereof) equal to the Tentative Insight Allocation . . . ."

9. In the fall of 2000, Imprimis sued Insight and several of its affiliates in New York state court alleging that Insight had breached its obligations under its consulting agreement. The suit was the first of three cases filed by the parties, all of which were eventually consolidated. In those suits, Insight's claims concerned among other things the meaning of the allocation provision referred to above concerning "items of ordinary income." Specifically, Insight asserted that it had been allocated a disproportionately large amount of short term capital gain and a disproportionately small amount of long term capital gain.

10. The parties eventually settled the consolidated New York suits.

**REDACTED**

11. REDACTED

12. REDACTED

13. REDACTED

14. REDACTED

**REDACTED**

15. Attached to this declaration as Exhibit A is a file copy of a letter dated May 23, 2003. Because it is a file copy, it is missing my signature. In all other respects, it is a true and correct copy of the letter I sent to David Tulchin of Sullivan & Cromwell.

16. Attached to this declaration as Exhibit B is a file copy of a letter dated May 30, 2003. Because it is a file copy, it is missing my signature. In all other respects, it is a true and correct copy of the letter I sent to David Tulchin of Sullivan & Cromwell.

17. Attached to this declaration as Exhibit C is a file copy of a letter dated February 9, 2004. Because it is a file copy, it is missing my signature. In all other respects, it is a true and correct copy of the letter I sent to David Tulchin of Sullivan & Cromwell.

18. Attached to this declaration as Exhibit D is a true and correct copy of a letter dated March 5, 2004, that I sent to David Tulchin of Sullivan & Cromwell.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on 11/9/07

[signature]

Arthur H. Amron