IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 07-209 T
(Judge Marian Blank Horn)

IMPRIMIS INVESTORS LLC, WEXFORD SPECIAL SITUATIONS 1997 INSTITUTIONAL, LP, TAX MATTERS PARTNER,

Plaintiff

v.

THE UNITED STATES OF AMERICA,

Defendant.

# RESPONSE BY THE UNITED STATES TO MOTIONS FOR SUMMARY JUDGMENT BY PLAINTIFF AND PARTICIPATING PARTNER ADDRESSING INTERPRETATION OF THE PARTNERSHIP AGREEMENT

NATHAN J. HOCHMAN
Assistant Attorney General

DAVID GUSTAFSON
STEVEN I. FRAHM
JENNIFER P. WILSON
Attorneys
Justice Department (Tax)
Court of Federal Claims Section
P.O. Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-6495
(202) 514-9440 (facsimile)

# INDEX

Page

Statement of facts:

A. Formation of the Imprimis Partnership . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

B. Partnership Agreement Provides for Allocations of Partnership Income . . . . . . . 3

C. Partnership Reported Income and Allocations for Tax Year 2000 . . . . . . . . . . . . 5

D. Insight Notified the IRS that it Reported Net Short Term Capital Gain on its 2000 Return Inconsistently with the Schedule K-1 Issued by Imprimis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

E. The Internal Revenue Service Examined the Partnership's Reporting . . . . . . . . . 7

F. New York State Court Litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

G. Imprimis Commenced This Partnership Proceeding and Insight Elected to Participate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

H. The Dispute At Issue in the Pending Motions . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Argument:

I. THE PLAIN LANGUAGE OF THE INSIGHT ALLOCATION IS LIMITED TO ITEMS OF ORDINARY INCOME, WHICH DOES NOT INCLUDE SHORT-TERM CAPITAL GAIN . . . . . . . . . . . . . . . . 11

A. Relevant Principles of Contract Interpretation . . . . . . . . . . . . . . . . . . . . . 12

B. The Plain Language of the Insight Allocation . . . . . . . . . . . . . . . . . . . . . . 13

C. Insight's Interpretation of Ordinary Income Is Reasonable . . . . . . . . . . . 14

D. Imprimis' Interpretation of Ordinary Income Is Not Reasonable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Page

II. THE SETTLEMENT AGREEMENT DOES NOT HAVE ANY EFFECT ON THE INTERPRETATION OF THE PARTNERSHIP AGREEMENT FOR PURPOSES OF THIS TAX DISPUTE . . . . 19

III. THE DETERMINATION OF THE THRESHOLD INTERPRETATION ISSUE WILL NARROW AND FRAME THE REMAINING ISSUES IN THIS CASE . . . . 21

Conclusion . . . . 22

## CITATIONS

**Cases:**

*Crisp v. United States*, 34 Fed. Cl. 112 (1995) . . . . 16

*Ed Fine Oldsmobile, Inc. v. Diamond State Telegraph Co.*, 494 A.2d 636 (Del. 1985) . . . . 16

*George Hyman Construction Co. v. United States*, 832 F.2d 574 (Fed. Cir. 1987) . . . . 16, 18

*Lane Bryant, Inc. v. United States*, 35 F.3d 1570 (Fed. Cir. 1994) . . . . 18

*Lauritzen v. Larsen*, 345 U.S. 571 (1953) . . . . 12

*Majkowski v. American Imaging Management Services, LLC*, 913 A.2d 572 (Del. Ch. 2006) . . . . 16, 19

*Metric Constructors, Inc. v. NASA*, 169 F.3d 747 (Fed. Cir. 1999) . . . . 14

*M.G. Construction, Inc. v. United States*, 67 Fed. Cl. 176 (2005) . . . . 13

*Nama Holdings, LLC v. World Market Center Venture, LLC*, 2007 WL 2088851 (Del. Ch. 2007) . . . . 13

*NVT Technologies v. United States*, 370 F.3d 1153 (Fed. Cir. 2004) . . . . 13, 14

Page

**Cases (continued):**

*Shell Oil Co. v. United States*, 80 Fed. Cl. 411 (2008) . . . . . . . . . . . . . . . . . . . . . . . 16

*Specialty Trans., Inc. v. United States*, 57 Fed. Cl. 1 (2003) . . . . . . . . . . . . . . . . 13, 19

*Thoughtworks, Inc. v. SV Investment Partners, LLC*, 902 A.2d 745 (Del. Ch. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13,14, 18, 19

**Statutes:**

Internal Revenue Code of 1986 (26 U.S.C.):

§ 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
§ 64 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
§ 703 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
§ 704 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 21
§ 761 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 20
§ 1222 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
§ 6222 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
§ 6226 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 20

**Miscellaneous:**

B. Bittker & L. Lokken, Federal Taxation of Income, Estates and Gifts ¶ 46.2.1 (2008) (2000 WL 485606 (W.G.&.L.)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Tax Reform Act of 1986, Pub. L. No. 99-514, §§ 301, 311, 100 Stat. 2216, 2219 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
(Judge Marian Blank Horn)
No. 07-209 T

---

IMPRIMIS INVESTORS LLC, WEXFORD SPECIAL SITUATIONS 1997 INSTITUTIONAL, LP, TAX MATTERS PARTNER,

Plaintiff,

v.

THE UNITED STATES OF AMERICA,

Defendant.

---

**RESPONSE BY THE UNITED STATES TO MOTIONS FOR SUMMARY JUDGMENT BY PLAINTIFF AND PARTICIPATING PARTNER ADDRESSING INTERPRETATION OF THE PARTNERSHIP AGREEMENT**

---

Pursuant to the Court's instructions, the plaintiff, Imprimis Investors LLC (through its tax matters partner) and the participating partner, Insight Ventures Associates II, LLC, have filed motions for summary judgment addressing the interpretation of the Imprimis partnership agreement. The United States agrees with the arguments in the motion filed by Insight and disagrees with the arguments in the motion filed by Imprimis. The meaning of the term "items of ordinary income," which is the critical term in the provision at issue in the Imprimis partnership agreement, is unambiguous and does not include capital gain. In addition, the settlement of a separate, state court action in which the United States was not a party, does not have any effect on the interpretation of the Imprimis partnership agreement. The United States asks the Court to make these determinations, which will narrow and frame the remaining issues in this case.

## STATEMENT OF FACTS[1]

### A. Formation of the Imprimis Partnership

Imprimis Investors LLC ("Imprimis"), the partnership at issue in this proceeding, is an investment vehicle which makes, holds, and manages investments on behalf of investment funds for Wexford Capital LLC. (Revised Joint Stip. ¶ 1.) During the tax year ended December 31, 2000, the tax year at issue in this proceeding, Imprimis' membership consisted of: Wexford Special Situations 1997 Institutional, L.P.; Wexford Spectrum Investors LLC; Wexford Partners Investment Company (collectively, the "Wexford Members"); and Insight Ventures Associates II, LLC ("Insight"). (*Id.* ¶ 4.) Wexford Capital LLC is an investment advisor registered with the Securities and Exchange Commission. (*Id.* ¶ 2.) Insight is a limited liability company that is in the business of investments, and is affiliated with a venture capital firm, Insight Venture Partners. (*Id.* ¶¶ 6, 7.) The Wexford Members and Insight entered into a limited liability company agreement (referred to herein as the "Imprimis partnership agreement"), effective as of September 30, 1998. (*Id.* ¶ 9 and Ex. 1.) The stated purpose of the company is to make investments. (*Id.* ¶ 2.3.)

The partnership agreement provides that Imprimis was formed under the law of Delaware, and that the agreement is governed by, interpreted, and enforced in accordance with Delaware law. (Ex. 1 ¶¶ 2.1, 12.1.) The partnership agreement constituted the complete agreement among the members with regard to the subject matter addressed in the agreement, and

[1]This factual statement is based entirely on the stipulated facts and the exhibits included with that stipulation contained in the revised joint stipulation of facts and exhibits, filed on December 6, 2007, under seal. Because we do not discuss in detail any of the facts or exhibits that raise confidentiality concerns or bear a notation "under seal" in the factual stipulation, we have not filed this brief under seal.

superseded all prior written and oral statements, discussions, and agreements relating to the same subject matter. (Ex. 1 ¶ 12.8.)

### B. Partnership Agreement Provides for Allocations of Partnership Income

Article VII of the partnership agreement governs distributions, allocations, and expenses generally, other than as specifically provided in the exhibits and schedules attached to the agreement. (Ex. 1 at CFC000031.) The partnership agreement provides that distributions to Insight shall be made only as provided by Exhibits B or C:

> Except as otherwise provided on Exhibit B or C with respect to the investments identified on Schedule 1 and Schedule 2 of Exhibit A, the Company shall make distributions to Wexford Members pro rata in accordance with the Distribution Share of each Wexford Member with respect to the applicable Class. *Distributions to Insight or to any other Non-Participating Member shall be made only as set forth in Exhibit B or Exhibit C.*

(Ex. 1 ¶ 7.1, emphasis added.) Exhibit A to the partnership agreement identifies the members with interests in Class A and Class B, and has attached Schedules 1 and 2, listing particular investments. (Ex. 1 at CFC000043-47.) The Wexford Members had interests and distribution shares in Class A and B. (*Id.* at CFC000043-44.) Insight had an interest in Class A, but had a 0% distribution share, and did not have an interest in Class B. (*Id.* at CFC000043.) The partnership agreement provides, with respect to investments listed on Schedule 1, "Insight shall receive allocations and distributions as provided in Exhibit B," and with respect to investments listed on Schedule 2, "Insight shall receive allocations and distributions as provided in Exhibit C." (*Id.* at CFC000043 n.1; *see also* Schedules 1 and 2 at CFC000045-47.) In addition, the partnership agreement provides that "[w]ith respect to investments that are not listed on either Schedule 1 or Schedule 2, Insight shall not receive any allocation or distribution." (*Id.*)

According to these provisions, allocations and distributions to Insight are governed exclusively by the terms set forth in Exhibits B and C of the partnership agreement.

Exhibit B provides for the allocation of "Net Profits and Net Losses" with respect to the investments identified on Schedule 1. (Ex. 1, Exhibit B ¶ 3.) The allocation of "Net Profits" to Insight that is at issue in this proceeding is reflected in Section 3(f) of Exhibit B (referred to herein as the "Insight Allocation" or "special allocation") and provides a supervening rule when Net Profits consist of items of ordinary income:

> (f) thereafter, 80% to the Wexford Members and 20% to Insight; <u>provided, however</u>, *that in the event any Net Profits consist of items of ordinary income, then, in lieu of the above allocations (i) a special gross income allocation shall be made to Insight of such items or ordinary income (to the extent thereof) equal to the Tentative Insight Allocation* (as defined below) and (ii) the resulting Net Profits, computed without regard to the items of gross income allocated under the preceding clause (i), shall be allocated:
>
> > (i) if the initial allocation made in clause (f)(i) above (the "Initial Insight Allocation") equals the Tentative Insight Allocation, to the Wexford members, or
> >
> > (ii) if the Initial Insight Allocation is less than the Tentative Insight Allocation, an amount equal to such shortfall to Insight and the remainder to the Wexford Members.
>
> For purposes of the preceding sentence the "Tentative Insight Allocation" shall mean the amount of Net Profits that would otherwise have been allocated to Insight under this Agreement absent the proviso of such preceding sentence.

(Ex. 1, Exhibit B ¶ 3(f), emphasis added.) Exhibit C provides for the allocation of "Net Profits and Net Losses" with respect to the investments identified on Schedule 2, and includes the same Insight Allocation. (Ex. 1, Exhibit C ¶ 3(d).)

The term "Net Profits and Net Losses" is defined for purposes of the partnership

agreement and the attached exhibits as "the net income or loss of the Company allocable to a Class, determined in accordance with Section 703 of the Code . . . . [subject to certain adjustments]."[2] (Ex. 1 ¶ 7.3(a).) The term "items of ordinary income" – which is the critical term at issue in this proceeding – is not defined in the partnership agreement or the attached exhibits.

### C. Partnership Reported Income and Allocations for Tax Year 2000

For the tax year ended December 31, 2000, Imprimis reported income in the following amounts on its Form 1065 U.S. Return of Partnership Income:[3]

| Interest Income | Ordinary Dividends | Net Short Term Capital Gain | Net Long Term Capital Gain |
|---|---|---|---|
| $1,882,005 | $21,678 | $99,821,405 | $73,444,348 |

(Ex. 3, Schedule K, p. 5, lines 4(a), (b), (d), and (e).) Imprimis issued Schedules K-1 reflecting the following distributive share of the above items of income to the members:

[2]The partnership agreement defines "Code" to mean "the Internal Revenue Code of 1986, as amended from time to time." (Ex. 1 ¶ 1.6.)

[3]The partnership also reported "other portfolio income" in the amount of $8,607. (Ex. 3, Schedule K, p. 5, line 4(f).)

| | Interest Income | Ord. Div. | Net Short Term Capital Gain | Net Long Term Capital Gain |
|---|---|---|---|---|
| Wexford 1[4] | $806,388 | $16,945 | $49,384,376 | $57,410,272 |
| Wexford 2[5] | $225,216 | $4,733 | $13,792,529 | $16,034,076 |
| Wexford 3[6] | $53,036 | $0 | $21,412 | $0 |
| Insight[7] | $797,243 | $0 | $36,623,088 | $0 |
| Wexford 4[8] | $122 | $0 | $0 | $0 |

The amounts of distributive shares reported on the Schedules K-1 reflect the total amount of each category of income reported by the partnership on Schedule K.

The partnership return was due to be filed on April 15, 2001, and appears to have been filed on or about March 30, 2001. (*See* Ex. 3.)

**D. Insight Notified the IRS that it Reported Net Short Term Capital Gain on its 2000 Return Inconsistently with the Schedule K-1 Issued by Imprimis**

For the 2000 tax year, Insight filed a Form 8082 Notice of Inconsistent Treatment with the Internal Revenue Service pursuant to Internal Revenue Code § 6222(b). Insight reported inconsistent reporting of net short term capital gain. (Ex. 35, item 10, at CFC000772.) In the

---

[4]"Wexford 1" is identified on the Schedule K-1 as "Wexford Special Situations 1997 L.P." (Ex. 3, Schedule K-1, pp. 18-21.)

[5]"Wexford 2" is identified on the Schedule K-1 as "Wexford Special Situations 1997 Institutional." (Ex. 3, Schedule K-1, pp. 22-25.)

[6]"Wexford 3" is identified on the Schedule K-1 as "Wexford Spectrum Investors LLC." (Ex. 3, Schedule K-1, pp. 26-28.)

[7]"Insight" is identified on the Schedule K-1 as "Insight Venture Associates II, LLC." (Ex. 3, Schedule K-1, pp. 29-31.)

[8]"Wexford 4" is identified on the Schedule K-1 as "Wexford Partners Investment Company." (Ex. 3, Schedule K-1, pp. 32-33.)

attached statement, Insight stated, in pertinent part:

> The $36,623,088 reported on Line 4d of the Schedule K-1 received by the taxpayer from Imprimis Investors, LLC ("Imprimis") was not properly reported. This amount reflects an allocation of entirely short-term capital gain that is an improper allocation under the terms of the operating agreement for Imprimis. . . . . It would appear that Imprimis, which generated approximately $189,450,006 of capital gains (of which $97,991,181 was short-term and $91,458,825 was long-term) has included "short-term"capital gain in ordinary income. . . . .
>
> In accordance with both the Code, and the operating agreement of Imprimis, the correct allocation of the $36,623,088 of capital gain allocated to the taxpayer would be as follows:
>
> $18,942,926 short-term capital gain
> $17,680,162 long-term capital gain

(*Id.* at CFC000773.)

**E. The Internal Revenue Service Examined the Partnership's Reporting**

The Internal Revenue Service began a partnership-level examination of Imprimis for its 2000 tax year in July, 2004. (Revised Joint Stip. ¶ 28.) On January 2, 2007, the Service issued a Final Partnership Administrative Adjustment ("FPAA"). (*Id.* ¶ 32, Ex. 39.) In the Schedule of Adjustments, the Service determined that it would accept the amounts reported on the partnership return as filed, but made two alternative determinations with respect to the partnership's allocation of short-term capital gain.[9] (Ex. 39 at CFC000008-12.) In "Inconsistent Position A," the Service determined that the revised allocation of short-term capital gain claimed by Insight in the Form 8082 is disallowed, and the original Schedule K-1 issued by Imprimis to Insight for the 2000 tax year is "deemed to be correct." (*Id.* at CFC000010.) In "Inconsistent Position B," the

[9]On line 2, the Service appears to correct the amount of dividends reported by the partnership from $21,678 to $24,678, but the corrected number is erroneous, as reflected by the $0 adjustment. (Ex. 39 at CFC000008.) In addition, the corrected amount of net long-term capital gain of $73,488,348 is erroneous, as reflected by the $0 adjustment. (*Id.*) The United States has admitted that these entries in the FPAA were erroneous. (*See* Answer ¶¶ 14.e-f.)

Service reached the opposite conclusion, determining that Imprimis incorrectly allocated short-term capital gain to Insight in the amount of $36,623,088, and re-allocating the short-term capital gain between Insight, Wexford Special Situations 1997 L.P., and Wexford Special Situations 1997 Institutional (*i.e.* Wexford 1 and Wexford 2 on the chart on page 6 of this brief). (*Id.*)

**F. New York State Court Litigation**

On October 12, 2000, the first of several lawsuits involving Wexford (and affiliated entities) and Insight (and affiliated entities and members) was filed in New York state court. (Revised Joint Stip. ¶¶ 15-21.) The state court lawsuits, which were consolidated into one action on July 9, 2002 (*id.* ¶ 22), were resolved in July 2003 by a settlement agreement executed by all of the parties to the consolidated action ("Settlement Agreement"). (*Id.* ¶ 25; Ex. 31.) Neither the United States, nor the Internal Revenue Service was a party to or had any involvement in the actions filed in New York state court.

**G. Imprimis Commenced This Partnership Proceeding and Insight Elected to Participate**

On March 29, 2007, the tax matters partner for Imprimis, Wexford Special Situations 1997 Institutional, LP, filed a petition for readjustment of partnership items in this Court, pursuant to Internal Revenue Code § 6226(a). Imprimis contests the determinations made the Service in "Inconsistent Position B" of the FPAA, and agrees with the determination made in "Inconsistent Position A." (Complaint ¶ 7.) Imprimis asserts that Insight was correctly allocated $36,623,088 of short-term capital gain pursuant to the terms of the partnership agreement. (*Id.* ¶¶ 15(h)-(j).)

On May 9, 2007, Insight filed a notice of election to participate and an amendment to the complaint, pursuant to Code § 6226(c)(2) and Rule 4(b) of Appendix F of the Rules of the

United States Court of Federal Claims. Insight contests the Service's conclusions set forth in the Schedule of Adjustments in the FPAA, and in "Inconsistent Position A." (Amendment to Complaint ¶ 7.) Insight contends that although Section 3(f) of Exhibit B to the Imprimis partnership agreement purports to specially allocate ordinary income to Insight, but it does not purport to provide for a disproportionate allocation of short-term capital gain. (*Id.* ¶¶ 11, 26, 27.) Insight thus contends that the disproportionate allocation of short-term capital gain is contrary to the partnership agreement. (*Id.* ¶ 28.)

### H. The Dispute At Issue in the Pending Motions

Following a conference on April 11, 2008, the Court instructed the parties to complete briefing on the two issues identified in the joint statement of issues of law that involve the interpretation of the partnership agreement. The two issues were stated by the parties as follows:

> 1. Whether the Amended and Restated Limited Liability Company Agreement of Imprimis Investors LLC, dated September 30, 1998 ("Imprimis LLC Agreement"), as applicable to the Imprimis 2000 tax year, provided a special allocation to Insight of items of short term capital gain.
>
> 2. What is the effect, if any, of the executed settlement of the claims by Insight and Imprimis in a lawsuit filed in the New York Supreme Court (the "Settlement Agreement") on the tax dispute at issue in this TEFRA proceeding, which arose from the allocation of partnership income to Insight as reflected in this Imprimis partnership tax return for the 2000 tax year and the related Schedule K-1 issued to Insight.

(Joint Statement of Issues of Law, Docket Entry No. 17.)

Imprimis had previously filed a brief addressing both of these issues, in addition to other issues, pursuant to the Court's order dated December 11, 2007.[10] With respect to issue 1,

---

[10]For convenience, we refer herein to the Corrected Brief in Support of Plaintiff's Motion for Summary Judgment, filed by Imprimis on February 21, 2008 (Docket Entry No. 30-3.), as the "Imprimis Motion."

Imprimis contends that it is entitled to summary judgment based on: "(1) a plain and fair reading of the operative provision of the Imprimis LLC Agreement (*i.e.* the Insight Allocation); and (2) the extrinsic evidence supporting Wexford's understanding of what that provision meant." (Imprimis Motion, p. 44.) With respect to issue 2, Imprimis contends that the Settlement Agreement resolved the interpretation issue of the term "items of ordinary income" in Section 3(f) of Exhibit B of the partnership agreement. (*Id.*, p. 50.)

On May 7, 2008, Insight filed a motion for summary judgment addressing issues 1 and 2. With respect to issue 1, Insight contends that the partnership agreement unambiguously provides for a special allocation of only ordinary income to Insight, and not a special allocation of short-term capital gain. (Insight Motion, pp. 10-22.) With respect to issue 2, Insight contends that the Settlement Agreement has no effect on the tax allocations currently in dispute. (*Id.*, pp. 23-25.)

## ARGUMENT

The threshold tax issue in this case is whether the Imprimis partnership agreement provided for the special allocation of short-term capital gain to Insight that the partnership made in the year 2000. As between Imprimis and Insight, the Court's resolution of the issue will determine their relative tax burdens.

The parties agree that the operative provision of the Imprimis partnership agreement is Section 3(f) of Exhibit B. Specifically, the analysis hinges on the meaning of the term within that provision "items of ordinary income." As explained in Section I, the government agrees with Insight that the meaning of this term is unambiguous, and does not include items of short-term capital gain.[11] In addition, as explained in Section II, the Settlement Agreement has no effect on the interpretation of the Imprimis partnership agreement.

### I.

### THE PLAIN LANGUAGE OF THE INSIGHT ALLOCATION IS LIMITED TO ITEMS OF ORDINARY INCOME, WHICH DOES NOT INCLUDE SHORT-TERM CAPITAL GAIN

The starting point for the analysis of the tax issue in this case is the language of the partnership agreement. *See* § 704(a) (providing that a partner's distributive share of income, gain, etc. shall be determined by the partnership agreement, except as otherwise provided). A partnership agreement includes "any modifications of the partnership agreement made prior to, or at, the time prescribed by law for the filing of the partnership return for the taxable year (not including extensions) which are agreed to by all the partners, or which are adopted in such other

---

[11]In the interest of efficiency, in instances where the government agrees with the analysis and conclusions provided by Insight in its motion, we reference the pages of Insight's motion and state the basis for our agreement, rather than re-stating Insight's analysis in its entirety.

manner as may be provided by the partnership agreement. § 761(c).

The partnership agreement in this case is the Amended and Restated Limited Liability Company Agreement of Imprimis Investors LLC, effective as of September 30, 1998. (Ex. 1.) The agreement expressly states that it constituted the complete agreement among the members with regard to the subject matter addressed in the agreement, and superseded all prior written and oral statements, discussions, and agreements relating to the same subject matter. (Ex. 1 ¶ 12.8.) Because there is no evidence that the September 30, 1998, partnership agreement was modified prior to or at the time for filing the year 2000 tax return, April 15, 2001, it constitutes the complete and operative partnership agreement.

It is undisputed that Imprimis allocated $36,623,088 of short-term capital gain, and no long-term capital gain to Insight, purportedly pursuant to Section 3(f) of Exhibit B to the partnership agreement. The question is whether the partnership agreement actually provides for that. This is an issue of contract interpretation.[12]

### A. Relevant Principles of Contract Interpretation

"It is well settled that if the terms of a contract are clear, the court must accord the language its ordinary meaning." *Thoughtworks, Inc. v. SV Investment Partners, LLC*, 902 A.2d 745, 752 (Del. Ch. 2006). If, however, a contract term is ambiguous on its face, a court may consider extrinsic or parol evidence to determine the parties' intent in entering into the contract.

[12]The partnership agreement provides that Imprimis was formed under the law of Delaware, and that the agreement is governed by, interpreted, and enforced in accordance with Delaware law. (Ex. 1 ¶¶ 2.1, 12.1.) Accordingly, we refer primarily to Delaware state law. *See Lauritzen v. Larsen*, 345 U.S. 571, 588-89 (1953) ("Except as forbidden by some public policy, the tendency of the law is to apply in contract matters the law which the parties intended to apply."). However, to the extent that the Federal Circuit and this Court have employed identical (and well settled) contract interpretation principles in deciding cases involving interpretation of a contract term, we refer to those decisions as well.

*Id.* In order to demonstrate ambiguity, "a party must show that the instruments in question can be reasonably read to have two or more meanings." *Id.; see also Nama Holdings, LLC v. World Market Center Venture, LLC*, 2007 WL 2088851 at *6 (Del. Ch. 2007) ("a contract is only ambiguous when a disputed provision is susceptible to two reasonable interpretations) (internal quotation and citation omitted)), *aff'd*, 2008 WL 571543 (Table) (Del.Supr. 2008). Extrinsic evidence should not be considered in determining whether a contract is ambiguous. *Specialty Transp. Inc. v. United States*, 57 Fed. Cl. 1, 9 (2003). The interpretation of a contract term, and the determination of ambiguity, are questions of law. *NVT Technologies, Inc. v. United States*, 370 F.3d 1153, 1159 (Fed. Cir. 2004); *M.G. Const., Inc. v. United States*, 67 Fed. Cl. 176, 181 (2005), *aff'd*, 253 Fed.Appx. 935 (Fed. Cir. 2007).

**B. The Plain Language of the Insight Allocation**

Contract interpretation begins with the plain language of the written agreement. *NVT Technologies*, 370 F.3d at 1159; *M.G. Const., Inc.*, 67 Fed. Cl. at 182. The contract at issue here provides that "Net Profits" will be allocated: "80% to the Wexford Members and 20% to Insight; provided, however, that in the event any Net Profits consist of *items of ordinary income*, then, in lieu of the above allocations (i) a special gross income allocation shall be made to Insight of *such items or ordinary income* (to the extent thereof) equal to the Tentative Insight Allocation . . . ." (Ex. 1, Exhibit B, ¶ 3(f).)

Within this structure, there is a general allocation of "Net Profits", as between Insight and the Wexford Members. But under the special allocation, relatively more items of ordinary income are allocated to Insight. Thus, the pivotal term, determining the character of income allocated among the partners, is "items of ordinary income." The partnership agreement does not

define this term.

The parties to the agreement, Imprimis and Insight, both view the term "items of ordinary income" as unambiguous, but disagree regarding its meaning. Imprimis contends that the term refers to "allocations of income or gain taxable at the rates applicable to ordinary income." (Imprimis Motion, p. 47.) In 2000, the tax rate applicable to short-term capital gain was the tax rate on ordinary income. On that basis, Imprimis concludes that items of ordinary income under the partnership agreement includes short-term capital gain. (*Id.*) Imprimis argues further that its interpretation is supported by the definition of ordinary income in the Fifth Edition of Black's Law Dictionary, which was published in 1979. (*Id.*)

Insight, on the other hand, contends that the Insight Allocation operates according to the definition of ordinary income in the Internal Revenue Code, which definition does not include short-term capital gain. (Insight Motion, pp. 12-16.) This disagreement between Imprimis and Insight with respect to the interpretation of "items of ordinary income" does not necessarily mean that the term is ambiguous. *Thoughtworks*, 902 A.2d at 752. The term is ambiguous only if both parties' interpretations fall within a "zone of reasonableness." *NVT Technologies*, 370 F.3d at 1159 (quoting *Metric Constructors, Inc. v. NASA,* 169 F.3d 747, 751 (Fed. Cir. 1999)).

### C. Insight's Interpretation of Ordinary Income Is Reasonable

We agree with the analysis in Insight's motion (at pp. 12-16), leading to the conclusion that ordinary income is defined by reference to the Internal Revenue Code. In particular, we agree with Insight's observation that it is significant that the Insight Allocation addresses the allocation of "Net Profits," which term is defined in the partnership agreement by reference to the Internal Revenue Code. (Ex. 1 ¶ 7.3(a).) It is reasonable to conclude that ordinary income,

another term within the same provision, should also be defined by reference to the Internal Revenue Code. This conclusion is reasonable for the additional reason that the Internal Revenue Code is the most logical source for a definition of ordinary income, a term that has obvious tax effects, but (at least in this context), does not purport to affect the amount of dollars distributed to Insight or the Wexford Members.

We also agree with Insight that the Internal Revenue Code provides mutually exclusive definitions of ordinary income and capital gain. (Insight Motion at pp. 13-15.) Internal Revenue Code Section 64 defines ordinary income as income derived from the sale or exchange of property that is not a capital asset. Capital gain, however, is defined by Internal Revenue Code Section 1222 as gain realized from the sale or exchange of a capital asset.[13] Plainly, the terms ordinary income and capital gain reflect two different classifications of sources of income. In addition to being separately defined, ordinary income and capital gain are treated differently in other Code sections (some of which are identified at pp. 14-15 of Insight's motion). Thus, "items of ordinary income" are distinct from items of capital gain, notwithstanding that one category of capital gain – short term capital gain – is taxed at the same rates as ordinary income.[14]

---

[13]A capital gain is short-term if the capital asset was held for not more than one year, § 1222(l), whereas a capital gain is long-term if the capital asset was held for more than one year. § 1222(3). Long term capital gains are currently given a preferential tax rate. § 1(h).

[14]Congress can, and often does, change the tax rates applicable to capital gains (as well as the rates on ordinary income). For example, during the period 1982 through 1986, there was a special tax rate for capital gains of 40 percent of the rate that would otherwise apply to the gain. *See* B. Bittker & L. Lokken, Federal Taxation of Income, Estates and Gifts ¶ 46.2.1 (2008) (2000 WL 485606 (W.G.&.L.)). However, the Tax Reform Act of 1986, Pub.L. 99-514, §§ 301, 311, 100 Stat. 2216, 2219, eliminated the differential tax rates for capital gains and ordinary income, and during the period 1987 through 1990, there was no preferential rate for capital gains. *Id.* It would be incongruous to conclude, as Imprimis' position demands, that short term capital gains are items of ordinary income in years in which the tax rates on both are the same, but not when the tax rates differ.

Finally, we agree with Insight's analysis and conclusion that even if ordinary income is not defined by reference to the Internal Revenue Code (which it should be), the plain meaning of the term does not include short-term capital gain. (Insight's Motion, pp. 16-19.) As indicated by the definition in the edition of Black's Law Dictionary that was in effect when the partnership agreement was drafted in 1998 (the 6th edition, published in 1990), "ordinary income" is a "tax term" that does not include gain from the sale of a capital asset. *See, e.g., Shell Oil Co. v. United States*, 80 Fed. Cl. 411, 415-16 (2008) ("It has been repeatedly held that a court may rely on the dictionary definition of a contract term to identify that term's plain meaning."); *Crisp v. United States*, 34 Fed. Cl. 112, 118 (1995) (referring to contemporaneous law dictionary to determine plain meaning of term not defined in agreement); *Majkowski v. American Imaging Management Services*, LLC, 913 A.2d 572, 589 (Del. Ch. 2006) (same).

**D. Imprimis' Interpretation of Ordinary Income Is Not Reasonable**

Unlike the Insight interpretation, the Imprimis interpretation of "items of ordinary income" as meaning "items of income or gain taxable at the rates applicable to ordinary income," is not reasonable. First, that's not what the partnership agreement says. Imprimis' interpretation would require the insertion of additional words into the Insight Allocation, which would contravene well-settled contract interpretation principles. *See, e.g., George Hyman Const. Co. v. United States*, 832 F.2d 574, 581 (Fed. Cir. 1987) ("If we accepted this argument, we would have to rewrite the contract, and insert words the parties never agreed to, which we do not have the authority to do."); *Ed Fine Oldsmobile, Inc. v. Diamond State Tel. Co.*, 494 A.2d 636, 638 (Del. 1985) (not the function of a court to rewrite the plain language of an otherwise valid contractual provision); *Majkowski*, 913 A.2d at 588 ("courts will not bend contract language to read

meanings into the words that the parties obviously did not intend."). Second, Imprimis' interpretation flows from its erroneous assertion that the term ordinary income is defined by reference to the *rate* of taxation, rather than the *source*. As explained above (and by Insight in its motion at p. 15), the Internal Revenue Code defines ordinary income (and capital gain) by reference to the source of the income, and not the rate of taxation. Imprimis' attempt to bolster its reasoning by reference to one of the definitions of ordinary income in the Fifth Edition of Black's Law Dictionary, published in 1979, is unavailing for all of the reasons detailed by Insight (motion at pp. 19-20).

In addition to being unreasonable, the interpretation offered by Imprimis is also implausible. The Wexford Members and Insight are in the business of making investments. (Revised Joint Stip. ¶¶ 2, 6, 7.) Moreover, the stated purpose of the Imprimis partnership is to make investments. (*Id.* ¶¶ 2, 3.) Based on the two schedules attached to Exhibit A of the partnership agreement, the partnership invested in capital assets. (Ex. 1 at CFC000045-47.) It is reasonable to assume that parties who work in the field of investments and who entered into an investment partnership anticipated that at least some of the partnership's income would include capital gain. It is also reasonable to assume that these particular parties, given the nature of the business they were in, had the sophistication to understand that the terms ordinary income and capital gain had different meanings under the Internal Revenue Code (and in ordinary usage). In such circumstances, there is no reason to conclude that the plain language of the contract term is ambiguous. Indeed, if the parties to the partnership agreement had intended the term ordinary income to mean "income taxed at ordinary tax rates" (*i.e.* to have a definition different than that provided by the Internal Revenue Code), they could have included such definition in the

agreement.

Imprimis attempts to validate its interpretation of the term ordinary income by stating that such interpretation reflected the parties' understanding that Insight would receive performance-based fees, which would be subject to ordinary tax rates. (Imprimis Motion, pp. 45-46.) Imprimis states that this kind of fee arrangement is referred to in the private equity business as a "carry" or "carried interest." *(Id.*, p. 46.) Regardless whether Imprimis has accurately characterized the parties' intent,[15] such evidence has no bearing on the interpretation of the plain language of the agreement. *Lane Bryant, Inc. v. United States*, 35 F.3d 1570, 1576 (Fed. Cir. 1994) (court required to "take the allocation made by the parties at face value for tax purposes, regardless of what [court] might think of the 'economic realities' which drove the deal"); *George Hyman Const. Co.*, 832 F.2d at 581 ("[I]t is well established that evidence of trade usage and custom cannot be used to vary or contradict the terms of a contract."). Where, as here, the plain language of a contract term is unambiguous, there is no reason to examine the parties' reasoning or intent in drafting the language, or any other extrinsic evidence. *Thoughtworks, Inc.*, 902 A.2d at 752.

---

[15]The only evidence cited by Imprimis in support of its factual assertion is the Declaration of Arthur H. Amron (Ex. 40). (Imprimis Motion, pp. 45-46.) Because no discovery has been conducted, the United States is not in a position to determine whether Mr. Amron has accurately related the understanding of all of the parties to the partnership agreement, or whether contemporaneous documents or testimony from members of Insight would shed a different light on this factual issue. However, there is no reason to conduct discovery on this issue if the Court concludes that the plain language of the contract is unambiguous.

## II.

## THE SETTLEMENT AGREEMENT DOES NOT HAVE ANY EFFECT ON THE INTERPRETATION OF THE PARTNERSHIP AGREEMENT FOR PURPOSES OF THIS TAX DISPUTE

Imprimis contends that the interpretive question of what "items of ordinary income" means was "resolved" by the Settlement Agreement that concluded the New York state consolidated action involving Imprimis and Insight (and their members and affiliates). (Imprimis Motion, pp. 50-52.) Imprimis explains that the Settlement Agreement resolved the interpretation issue by resolving the claims, counterclaims, and defenses in the New York state consolidated action that related to the Insight Allocation in the partnership agreement. (*Id.*, p. 50.)

Contrary to Imprimis' argument, the Settlement Agreement does not have any effect on the interpretation of the partnership agreement for several reasons. First, the Settlement Agreement is extrinsic evidence. Since the language in the allocation provision, "items of ordinary income," is unambiguous (see Section I), extrinsic evidence can not be considered to give that language some other meaning. *See Thoughtworks, Inc.*, 902 A.2d at 752; *Majkowski*, 913 A.2d at 581; *Specialty Trans., Inc.*, 57 Fed. Cl. at 9.

Even if the term "items of ordinary income" was ambiguous, the Settlement Agreement would not be relevant to determine its meaning. The Settlement Agreement was executed by the members of Imprimis (and their members and affiliated parties), and is a contract between those parties. Accordingly, even assuming that the Settlement Agreement "resolved" the meaning of the term ordinary income, the Settlement Agreement amounts to an attempt by the parties to the partnership agreement to modify a term of their agreement that they later found to be either ambiguous or undesirable. The settlement agreement was executed in 2003, well after the time

permitted for modification of the partnership agreement for the 2000 tax year. *See* § 761(c) (partnership agreement includes any modifications of the partnership agreement made prior to, or at, the time prescribed by law for the filing of the partnership return for the taxable year, not including extensions). While the Settlement Agreement might have the effect of *prospectively* modifying the Imprimis partnership agreement for some tax period, it cannot have the effect of *retroactively* modifying the partnership agreement for the partnership's 2000 tax year.

The Settlement Agreement can not affect the interpretation of the Imprimis partnership agreement, and modify the tax consequences of the agreement, for the additional reason that the United States was not a party to the Settlement Agreement (and did not have any involvement in the New York state consolidated action). While the parties to the Settlement Agreement may have resolved certain disputes and/or created enforceable rights and obligations against each other, their agreement does not bind the United States or determine tax consequences under the Internal Revenue Code. Unlike the New York state consolidated action, this proceeding *does* include the United States as a party. Also unlike the New York state consolidated action, this proceeding involves a determination of all of the partnership items for the partnership's 2000 tax year to which the FPAA relates (*i.e.* whether to respect the partnership's allocations), and the proper allocation of such items among the partners. *See* § 6226(f). While the parties may have made claims with respect to the allocation of partnership income in the New York state consolidated action, their claims were for money damages against each other, and not against the United States for readjustment of partnership items for tax purposes. Accordingly, the Settlement Agreement has no effect on the outcome of this proceeding, which involves a different party (the United States) and a different legal issue (the proper allocation of partnership income for federal tax purposes).

## III.

## THE DETERMINATION OF THE THRESHOLD INTERPRETATION ISSUE WILL NARROW AND FRAME THE REMAINING ISSUES IN THIS CASE

The plain language of the Insight Allocation unambiguously provides a general allocation of "Net Profits" to Insight, and a special allocation of ordinary income, which does not include capital gain. In the year 2000, the partnership reported interest income of $1,882,005, ordinary dividends of $21,678, net short-term capital gain of $99,821,405, and net long-term capital gain of $73,444,348. (Ex. 3, Schedule K, p. 5.) According to the plain language of the partnership agreement, both short and long-term capital gain should have been allocated pursuant to the general allocation provision. The erroneous special allocation of short-term capital gain to Insight should be re-allocated in accordance with the general allocation provision. *See* § 704(a).[16]

After the partnership's capital gain is re-allocated, the only remaining partnership item to be determined is whether the allocation of ordinary income (*i.e.* interest income and ordinary dividends) made pursuant to the special allocation provision in the partnership agreement has "substantial economic effect" under § 704(b). Insight suggests that because of the relatively small amount of income involved, the issue "can likely be agreed to among the parties without the need for further intervention by the Court." (Insight Motion, p. 25.) The United States agrees, and is interested in pursuing an efficient resolution. However, no negotiations have occurred to date and it would be premature to engage in such negotiations prior to the Court deciding the threshold issue of how to interpret the partnership agreement.

---

[16]Once the Court reaches the conclusion that "items of ordinary income" does not include short term capital gain, the parties should be able to agree to computations and stipulate to the amounts to be adjusted.

## CONCLUSION

For the foregoing reasons, the United States requests that the Court determine that the plain language of the partnership agreement is unambiguous, and that the term "items of ordinary income" does not include items of capital gain. In addition, the United States requests that the Court determine that the Settlement Agreement does not have any effect on the interpretation of the partnership agreement.

Respectfully submitted,

s/Jennifer P. Wilson
JENNIFER P. WILSON
Attorney of Record
U.S. Department of Justice - Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Station
Washington, D.C. 20044
(202) 307-6495
(202) 540-9440 (facsimile)
jennifer.p.wilson@usdoj.gov

NATHAN J. HOCHMAN
Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims
STEVEN I. FRAHM
Assistant Chief, Court of Federal Claims

s/Steven I. Frahm
Of Counsel

Attorneys for Defendant

May 14, 2008